RITA M. HAEUSLER (SBN 110574)
rita.haeusler@hugheshubbard.com
HANNAH A. BOGEN (SBN 324294)
hannah.bogen@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1999 Avenue of the Stars, 9th Floor
Los Angeles, CA 90067-4620
Telephone: (213) 613-2800
Facsimile: (213) 613-2950

Attorneys for Applicants
PATH NETWORK, INC.; and TEMPEST HOSTING, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re *Ex Parte* Application of | CASE NO. |
| Path Network, Inc. and Tempest Hosting, LLC, | **DECLARATION OF DAINA SLENYS IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER TO TAKE EVIDENCE PURSUANT TO 28 U.S.C. §1782** |
| Applicants. | |

DECLARATION OF DAINA SLENYS IN SUPPORT OF *EX PARTE* APPLICATION
FOR AN ORDER TO TAKE EVIDENCE PURSUANT TO 28 U.S.C. §1782

104948493_1

**AFFIDAVIT OF DAINA SLENYS**

**I, Daina Slenys,** of the City of Toronto, in the Province of Ontario, Canada, **MAKE OATH AND SAY:**

1.        I am a law clerk employed by Investigation Counsel Professional Corporation, Ontario-based counsel for Path Network, Inc. ("Path Net") and Tempest Hosting LLC ("Tempest") (collectively, the "Plaintiffs"). Our firm is counsel to the Plaintiffs in ongoing litigation as against Curtis Michael Gervais ("Gervais"), his solely-owned company Packet Rabbit Inc. ("Packet Rabbit") under Court File No.: CV-22-0000000100-0000 in the Courts of Perth, Ontario (the "*Gervais* Action"). As such I have direct knowledge of the facts I herein depose, except where stated to be on information and belief, in which case I do verily believe the information to be true and provide my sources.

2.        I make this affidavit in support of the application under 28 U.S.C. section 1782 of Path Network, Inc. ("Path") and Tempest Hosting, LLC ("Tempest") which seeks information to assist the Court in the *Gervais* Action. This affidavit is also intended to provide the Courts in the United States of America with background information concerning the procedural and litigation history of the *Gervais* Action.

3.        This affidavit is submitted with an affidavit of Tom Warren. Mr. Warren is the data forensics expert who has had the responsibility of dealing with the defendant Gervais—and third parties as necessary—pursuant to the Anton Piller Order and evidence preservation orders. Whereas my affidavit provides the Court with a chronology of the *Gervais* Action, Mr. Warren's affidavit is intended to provide the Court with evidence regarding outstanding evidence preservation issues not within the jurisdiction of the Ontario Court.

**December 2022 – Motion Material Submitted to the Court**

4.        On or about December 21, 2022, the Plaintiffs' Notice of Action, Motion Record, and Factum were submitted to the Court for consideration of the Plaintiffs' motions for pre-litigation evidence preservation and a general injunctive order.  On March 9, 2023, a Statement of Claim was filed with the Court and served upon the Defendants. The Motion Record consisted of 11 affidavits sworn by the following individuals:

a)  Marshal Webb – CEO, Founder and Owner of Path Net and Tempest;

b)  Dylan Kraklan – Chief Operations Officer of Path Net;

c) Corey Shiratori – CFO of Path Net;

d) Lee Stubbs – Chief Information Officer of Path Net;

e) Russ Reese – CEO of Tempest;

f) Peter Potvin – Senior Systems Engineer for Tempest;

g) Kyan Gomes – Logistics Engineer for Tempest;

h) Leifur Gunnarsson – former customer of Tempest;

i) Alex Azzo – former employee of Tempest;

j) Michael DeBernardis - U.S. counsel to Path Net; and

k) Keith Elliott – licensed Ontario investigator.

5.      In the *Gervais* Action, the Plaintiffs allege that Gervais uses Discord to defame Path and Tempest on the internet and to third parties and to communicate confidential information of the Plaintiffs.  The Plaintiffs further allege third party Rene Roosen also uses the Discord platform to defame Path and Tempest and is a key participant and co-conspirator in Mr. Gervais's defamatory conduct. As a result of the evidence in the *Gervais* Action being held under seal, I decline to re-produce the affidavits filed in this action. Attached as **Exhibit A** to this my affidavit is a true copy of the Statement of Claim, filed March 9, 2023. (4879-6739-6950)

**January 9, 2023 – Court Issues *Ex Parte* Orders**

6.      After submission of the motion materials in December 2022, the Court later issued a hearing date for January 9, 2023. According to the prevailing practice directions in Perth, Ontario, ex parte motions for urgent relief are initially reviewed in writing and hearings before the Court are discretionary. In the days prior to the hearing, Supplemental Motion Records were submitted containing affidavit evidence on behalf of Mr. Webb on January 5, 2023 and January 6, 2023.

7.      On January 9, 2023, solicitors Groot and Keeble of our office attended before the Court to address the Plaintiffs' motions for urgent and ex parte evidence preservation and general injunctive relief. The Court granted the following orders:

a) an Anton Piller Order, which is analogous to a search warrant with respect to Gervais' residence in Lanark, Ontario. Attached as **Exhibit B** to this my affidavit is a true copy of the Anton Piller Order, dated January 9, 2023. (4889-6171-8344)

b) a 'Stand and Deliver' Order, which requires Gervais turn over off-site evidence and assets of Packet Rabbit to the Plaintiffs. Attached as **Exhibit C** to this my affidavit is a true copy of the 'Stand and Deliver' Order, dated January 9, 2023; and (4869-8285-8824)

c) a general injunctive order, which prohibits Gervais from continuing certain acts which resulted in the litigation. Attached as **Exhibit D** to this my affidavit is a true copy of the general injunctive order, dated January 9, 2023. (4855-9100-5256)

8.      The Court also issued an Endorsement briefly providing reasons for granting the relief sought. Paragraph 5 of the Endorsement reads (emphasis added):

> [5] In the result, I am satisfied that the circumstances exist for granting of the Anton Piller Order in that:
> 1) The Plaintiff has demonstrated a strong prima facie case;
> 2) The damage to the Plaintiff of Gervais' alleged misconduct, potential or actual, is very serious;
> 3) There is convincing evidence that Gervais, as well as corporations under his direction or related to him, have in their possession incriminating evidence; and
> 4) There is a real possibility that Gervais **and others acting under his control may destroy, disseminate or make use of that evidence**, before the discovery process can do its work: *Celanese Canada Inc. v. Murray Demolition Corp.*, 2006 SCC 36 at para. 32, *TSI International Group Inc. v. Formosa*, 2015 ONSC 1138.

Attached as **Exhibit E** to this my affidavit is a true copy of the Endorsement dated January 9, 2023. (4895-3646-9832 / 4858-7372-7560)

**January 10, 2023 – Execution of Anton Piller Order**

9.      On January 10, 2023, the Anton Piller Order was carried out at Gervais' residence located at 1310 Concession 1B Dalhousie Road, Lanark, Ontario. Tom Warren, a data forensics expert, was present for the search and for other phases resulting thereafter with respect to carrying-out of the Court's orders. I have read the affidavit of Mr. Warren and agree with the evidence set out therein with respect to the execution of the Anton Piller Order and subsequent evidence preservation steps.

**January 13, 2023 – 1st Return Attendance**

10.     On January 13, 2023, the parties returned before the Court to address the Plaintiffs' motions to continue the ex parte orders. The Anton Piller Order, 'Stand and Deliver' Order, and general injunctive order were all extended to another return attendance on January 20, 2023. The Court also granted the Plaintiffs' motion for a Mareva injunction as against the corporate defendant Packet Rabbit. Attached as **Exhibit F** to this my affidavit is a true copy of the Order and Endorsement dated January 13, 2023. (4873-5533-4475 / 4895-8476-2188)

11.     Following January 13, 2023, Mr. Warren continued his efforts to carry-out the Court's evidence preservation orders (in particular, the Anton Piller Order, the 'Stand and Deliver' Order, and paragraphs 7-9 of the Order dated January 13, 2023) as set out in Mr. Warren's sworn affidavit.

**January 20, 2023 – 2nd Return Attendance**

12.     On January 20, 2023, the parties returned before the Court to address the Plaintiffs' motions to continue the ex parte orders and the Mareva injunction. By this time, Gervais had retained counsel. June 2, 2023 was scheduled with the Court as the next return attendance with respect to the continuation of the Plaintiffs' orders and injunctions as against the Defendants. June 2, 2023 was also set as the date to adjudicate Gervais' anticipated motion to set aside the Plaintiffs' orders and injunctions. Attached as **Exhibit G** to this my affidavit is a true copy of the Order and Endorsement dated January 20, 2023. (4884-8268-5005 / 4889-0906-2221)

13.     Following January 20, 2023, Mr. Warren continued his efforts to carry-out the Court's evidence preservation orders as set out in Mr. Warren's sworn affidavit.

14.     I provide this affidavit to provide the Court with my evidence with respect to the procedural history of the litigation of the *Gervais* Action, and for no other or improper purpose.

15.     I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct, and that this Declaration was executed on May 4, 2023 in Toronto, Ontario, Canada.

| | |
|---|---|
| **SWORN BEFORE ME** remotely by ) <br> Daina Slenys, of the City of Toronto, ) <br> in the Province of Ontario, ) <br> before me at City of Toronto, ) <br> in the Province of Ontario, on this ) <br> __4th____ day of May, 2023, ) <br> in accordance with O. Reg. 431/20, ) <br> Administering Oath or Declaration ) <br> Remotely. | <br><br><br><br><br> *DS* <br> <span style="font-size:small">Daina Slenys (May 4, 2023 18:41 EDT)</span> <br> _____ <br> **Daina Slenys** |

*Geoff Keeble*
<span style="font-size:small">Geoff Keeble (May 4, 2023 18:42 EDT)</span>
_____
A Commissioner, etc.
G. Keeble (LSO No.: 76822P)

# Affidavit of Daina Slenys Re Roosen - May 4, 2023

Final Audit Report                                          2023-05-04

| | |
|---|---|
| Created: | 2023-05-04 |
| By: | Investigation Counsel (interface@investigationcounsel.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAWXUIPKEVwDvwGWymTCxMFitATZP3qxbI |

## "Affidavit of Daina Slenys Re Roosen - May 4, 2023" History

Document created by Investigation Counsel (interface@investigationcounsel.com)
2023-05-04 - 10:03:25 PM GMT- IP address: 208.69.14.151

Document emailed to dslenys@investigationcounsel.com for signature
2023-05-04 - 10:04:04 PM GMT

Email viewed by dslenys@investigationcounsel.com
2023-05-04 - 10:40:24 PM GMT- IP address: 72.143.204.196

Signer dslenys@investigationcounsel.com entered name at signing as Daina Slenys
2023-05-04 - 10:40:58 PM GMT- IP address: 72.143.204.196

Document e-signed by Daina Slenys (dslenys@investigationcounsel.com)
Signature Date: 2023-05-04 - 10:41:00 PM GMT - Time Source: server- IP address: 72.143.204.196

Document emailed to gkeeble@investigationcounsel.com for signature
2023-05-04 - 10:41:01 PM GMT

Email viewed by gkeeble@investigationcounsel.com
2023-05-04 - 10:41:58 PM GMT- IP address: 208.69.14.151

Signer gkeeble@investigationcounsel.com entered name at signing as Geoff Keeble
2023-05-04 - 10:42:13 PM GMT- IP address: 208.69.14.151

Document e-signed by Geoff Keeble (gkeeble@investigationcounsel.com)
Signature Date: 2023-05-04 - 10:42:15 PM GMT - Time Source: server- IP address: 208.69.14.151

Agreement completed.
2023-05-04 - 10:42:15 PM GMT

 Adobe Acrobat Sign

THE FOLLOWING DOCUMENT IS **EXHIBIT "A"** REFERRED TO IN THE AFFIDAVIT OF DAINA SLENYS SWORN BEFORE ME THE **4th** DAY OF **MAY**, 2023, IN ACCORDANCE WITH O.REG 431/20, ADMINISTERING OATH OR DECLARATION REMOTELY.

_____

**A Commissioner, etc.**
G. Keeble (LSO No. 76822P)

Electronically filed / Déposé par voie électronique : 09-Mar-2023
Perth Superior Court of Justice / Cour supérieure de justice

: Document 1-3   Filed 05/22/23   Page 8 of 127

Court File No.: CV-22-00000100-0000

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

B E T W E E N :

**PATH NETWORK, INC. and
TEMPEST HOSTING LLC**

Plaintiffs

and

**CURTIS MICHAEL GERVAIS,
PACKET RABBIT INC.,
JOHN DOES, JANE DOES, and DOE CORPORATIONS**

Defendants

**STATEMENT OF CLAIM**
(Notice of Action issued November 21, 2022)
(Statement of Claim issued March 9, 2023, pursuant to the order dated January 9, 2023)

1.      The plaintiffs Path Network Inc. ("Path Net") and Tempest Hosting LLC ("Tempest") (collectively the "Plaintiffs") claim as against the defendants Curtis Michael Gervais ("Gervais") and Packet Rabbit Inc. ("Packet Rabbit") (collectively the "Primary Defendants") for:

a)   a **Declaration and Judgment** for unlawful interference in economic interests, breach of contract, breach of fiduciary duty, breach of confidence, internet harassment, conspiracy, and spoliation;

b)   **general damages** in the amount of $1,000,000;

c)   **special damages** for investigation costs, lost opportunity, consequential losses, loss of business, and other such damages in the amount to be quantified prior to trial;

d)   **punitive, aggravated and exemplary damages** in the amount of $500,000.00 for general and specific deterrence, denunciation and retribution purposes;

e)   an **Order to continue the Anton Piller order** issued on January 9, 2023, executed at 1310 Concession 1B Dalhousie Road, Lanark, Ontario, K0B 1K0 (the "Gervais Property"), as more particularly set out in the Notice of Action, and extended on January 13, 2023, and extended again on January 20, 2023, to June 2, 2023;

f)   an **Order to continue the *in personam* Anton Piller order,** otherwise referred to as the Stand and Deliver order, executed at the business premises of Hive Data Centre located at 2900 Avenue Marie Curie, Saint-Laurent, Quebec, H4S 2C2, as more particularly

set out in the Notice of Action, issued on January 9, 2023, and extended on January 13, 2023, and extended again on January 20, 2023, to June 2, 2023;

g) an **Order to continue the *quia timet* injunction**, otherwise referred to as the general injunctive order, issued on January 9, 2023, and extended on January 13, 2023, and extended again on January 20, 2023, to June 2, 2023, restraining Gervais, Packet Rabbit, and all persons who have knowledge or notice of this Order from making, creating, publishing and posting on the World Wide Web or Internet postings, statements, photos, comments, blogs, pins and depictions (hereinafter the "Offending Statements") that refer to, relate to or are in connection with any of the Plaintiffs or persons related to them, and including without limitation, any express or implied statements on the World Wide Web or Internet that:

   i. the Plaintiffs are dishonest, incompetent, engaged in fraud, are under investigation for any criminal, immoral, illegal or improper behavior, conduct or acts or omissions;

   ii. the Plaintiffs have engaged in or will engage in any criminal, immoral, illegal or improper behavior, conduct or acts or omissions;

   iii. the Plaintiffs are or are at risk of insolvency / bankruptcy;

   iv. the Plaintiffs mislead their customers or are at risk of failing to deliver on services owed to their customers as a result of financial issues;

   v. the value of the Plaintiffs' service agreements and contracts with its current, former and prospective staff and its current, former and prospective customers;

   vi. contact information for the Plaintiffs' current, former and prospective staff and contact information for the Plaintiffs' current, former and prospective customers;

   vii. confidential or insider information with respect to the operations of the Plaintiffs;

   viii. the Plaintiffs do not pay just dues and debts; and

   ix. the Plaintiffs have or will engage in any conduct, behavior or acts or omissions which have the effect of impugning their respective reputations, character, intelligence, honesty, or civility in any way;

i) **an interim, interlocutory and permanent injunction and mandatory Order** that Gervais, and any person having knowledge of this Order, and any person having the ability to do so, shall forthwith take steps to remove any and all defamatory statements, postings, web pages, blogs, and ratings relating to the Plaintiffs, such removal to be supervised by a person duly authorized by this Court for such purpose;

j) an **Order to continue the Mareva injunction** issued on January 13, 2023, and continued on January 20, 2023, to June 2, 2023, restraining Gervais and Packet

Rabbit Inc. and such others as set out in the injunction from dissipating assets of the defendant Packet Rabbit or such others as set out in the order dated January 13, 2023, with ancillary orders including but not limited to the production of Packet Rabbit bank statements;

k) **an Order that Gervais account**, in writing and with supporting documentary evidence, for:

    i.  the receipt and disposition of some USD $106,496 transferred by the Plaintiffs to Gervais and/or Packet Rabbit between April 1, 2022, and July 12, 2022, pursuant to the Purchase Agreement of March 17, 2022 (as defined below);

    ii.  the equipment, hardware, servers, and digital and/or electronic assets of Packet Rabbit in the possession, power, control or knowledge of Gervais; and

    iii.  all the customers of Packet Rabbit serviced since March 17, 2022.

l) **an Order that Gervais attend at a Court Examiners Office** for examination on a date as set by this Court for the purposes of:

    i.  preserving evidence in the possession, power, control or knowledge of Gervais,

    ii.  ensuring the return by Gervais of Path Net's proprietary information,

    iii.  removing any defamatory statements from the internet and social media posted by Gervais,

    iv.  accounting with respect to the USD $106,496 transferred by the Plaintiffs to Gervais and/or Packet Rabbit between April 1, 2022, and July 12, 2022,

    v.  accounting for the assets and liabilities of Packet Rabbit (including equipment, servers, and customers) from March 17, 2022, to present, and

    vi.  for such other purposes as this Court may permit;

m) **pre-judgment interest and post-judgment interest** pursuant to s. 128 and s. 129 of the *Courts of Justice Act*, R.S.O 1990, c. C-43, as amended;

n) **litigation costs** of this action on a full indemnity basis inclusive of HST and disbursements; and

o) such further and other relief as this Honourable Court deems just.

2.    The Plaintiffs claim as against the defendants John Does, Jane Does, and the Doe Corporations (collectively the "Doe Defendants") for:

a) a **Declaration and Judgment** for conspiracy;

b) **general and special damages** in an amount to be particularized prior to trial;

c) **punitive, aggravated, and exemplary damages** in the amount of $100,000;

d) **pre-judgment interest and post-judgment interest** pursuant to s. 128 and s. 129 of the *Courts of Justice Act*, R.S.O. 1990, c. C-43, as amended;

e) **litigation costs** of this action on a substantial, or alternatively, a partial indemnity basis, inclusive of HST and disbursements; and

f) such further and other relief as this Honourable Court deems just.

**THE PARTIES**

3.      The plaintiff **Path Network, Inc. ("Path Net")** is a company incorporated according to the laws of the Delaware, United States of America, and headquartered in Phoenix, Arizona. Path Net is in the business of providing online data hosting, cybersecurity, and related services.

4.      The plaintiff **Tempest Hosting LLC ("Tempest")** is a wholly-owned subsidiary of Path Net which specializes in providing online virtual hosting services. As a subsidiary of Path Net, Tempest's losses are carried by Path Net.

5.      **Marshal Webb ("Webb")** is the founder, owner, and Chief Executive Officer of Path Net and the founder of Tempest. As Tempest is a subsidiary of Path Net, Webb has indirect and ultimate ownership and control over Tempest. Webb resides in Phoenix, Arizona.

6.      The defendant **Curtis Michael Gervais ("Gervais")** was at all material times and remains the sole director and officer of the defendant Packet Rabbit Inc. He is, and was at all material times, a resident of the Town of Lanark, Ontario. From approximately July 8, 2021, to September 16, 2022, Gervais was an employee of Tempest. From approximately February 10, 2022, to June 23, 2022, Gervais was Chief Executive Officer of Tempest. From June 30, 2022, to September 16, 2022, Gervais was Chief Operations Officer of Tempest. Throughout his employment, and particularly during his tenures as an officer of Tempest, Gervais had access to confidential information of the Plaintiffs.

7.      The defendant **Packet Rabbit Inc. ("Packet Rabbit")** is a company incorporated according to the laws of Canada bearing Federal Corporation No: 1250489-8 and Business No: 798959342RC0001. Gervais is the sole director and officer of the defendant Packet Rabbit. The registered corporate address of Packet Rabbit is 70 Bongard Avenue, Ottawa, Ontario. Packet Rabbit is in the business of online virtual hosting and is a competitor to Tempest.

8.      The website of Packet Rabbit is https://Packet_Rabbitinc.com/. The content on Packet Rabbit's website advertises:



9.      The registered corporate address of Packet Rabbit - 70 Bongard Avenue, Ottawa - is a virtual office rental (similar to WeWork or Regus) called "Collab Space". This address is essentially a mail drop for the company. Gervais does not attend this office on a regular basis. The server operations of Packet Rabbit is a colocation facility known as Vantage Data Center located at 2900 Avenue Marie Curie, Saint-Laurent, Quebec, H4S 2C2 (the "PR Data Center"). Gervais effectively operates Packet Rabbit from his home in the Town of Lanark, Ontario.

10.     The defendants **John and Jane Doe and the Doe Corporations** (the "Doe Defendants") are individuals and corporations whose identities and locations are currently unknown to the Plaintiffs. The identities of the Doe Defendants are entirely within the knowledge of Gervais, Packet Rabbit and/or the Doe Defendants. The proper names and further allegations of liability and damages of the Doe Defendants will be provided to the Court prior to trial.

11.     The **non-party Veilios Hosting LLC ("Veilios")** is a company incorporated according to the laws of New Mexico, United States of America. As described below, Packet Rabbit is continuing to carry on business, contrary to the Purchase Agreement dated March 17, 2022 (as described below), under the "veil" of Veilios.

4857-5370-8630, v. 1

12.     Although the corporate charter of Veilios (registered with the New Mexico government) indicates its registered corporate address is 530-B Harkle Road, #100, Santa Fe, New Mexico, Veilios' registration information on file with various internet regulators and registries indicates it is in fact located at 70 Bongard Avenue, Ottawa (being the registered corporate offices for Packet Rabbit and BruteForced Gaming Inc.).

13.     Veilios' nominal address in Santa Fe, New Mexico, is a corporate services and incorporation company called "New Mexico Registered Agent by High Desert Corporate Filings LLC". The corporate charter of Veilios indicates the sole officer of Veilios is one "Riley Park". Riley Park is an employee of Registered Agents Inc., a corporate services company. Riley Park is also an officer for 14,465 other US companies.

14.     The Plaintiffs allege that Veilios is shell company that is *de facto* and beneficially controlled by Gervais. The Plaintiffs allege that the sole purpose of Veilios is to provide a "veil" or concealment of Packet Rabbit's continued and unlawful operation in breach of the Purchase Agreement (as defined herein).

15.     The **non-party BruteForced Gaming Inc. ("BruteForced")** is a company incorporated according to the laws of Canada (bearing Federal Corporation No: 1413182-7 and Business No: 720195502RC0001). Gervais is the sole director and officer of the BruteForced. The registered corporate address of BruteForced is the same as the defendant Packet Rabbit: 70 Bongard Avenue, Ottawa, Ontario. As described below, the Plaintiffs have reason to believe that the sole purpose of BruteForced is to assist in the continued operations of Packet Rabbit contrary to the Purchase Agreement and to engage in the wrongful conduct as alleged herein.

16.     The **non-party Gervais Web Solutions Inc. ("GWS Inc.")** is a company incorporated according to the laws of Canada (bearing Federal Corporation No: 730213-4 and Business No: 832890669RC0001). Gervais' parents Barry and Kimberly Gervais are the directors of the GWS Inc. The registered corporate address of GWS Inc. is c/o Christian Tacit 320 March Road, Suite 604, Kanata, Ontario, K2K 2E3. Barry and Kimberly Gervais reside with Curtis Gervais and his wife and children at 1310 Concession 1B Dalhousie Road, Lanark, Ontario.

4857-5370-8630, v. 1

**THE FACTS**

17.     Path Net is an online data hosting and data security company. Path Net, on its own and through its subsidiary Tempest, owns and operates a number of server farms / data centers throughout the world. Its customers pay monthly subscription fees to lease space on its data-secure servers. The servers are used for hosting the customers' data 'on the cloud'. Path Net specializes in providing cutting-edge and boutique online hosting and security services tailored to businesses of all sizes, including businesses that require added cyber security to support cryptocurrency and blockchain payment transactions.

18.     Tempest is the arm of Path Net that specializes in the leasing of servers to customers and providing online virtual hosting. To put it simply, Tempest is a retail-oriented subsidiary of Path Net's business. Whereas Tempest specializes in leasing servers to customers, Path Net operates the servers and is focused on developing and providing cutting-edge cyber security and data protection to ensure the data stored on customers' servers is not compromised.

19.     The businesses of Path Net and Tempest depend on customers having confidence that their data is secured against all threats – both internal and external to Path Net and Tempest. As detailed below, the misconduct of Gervais started as an internal threat and evolved into an external threat, and strikes at the heart of the Plaintiffs' ability to maintain the trust, confidence and good will of their customers.

**June 2020 to July 2021 – Gervais becomes Acquainted with Webb / the Plaintiffs**

20.     In or about June 2020, Gervais became known to the Plaintiffs and Webb by virtue of being a customer. In November 2020, Gervais incorporated Packet Rabbit which thereafter became a customer of the Plaintiffs. As a customer of Tempest, Gervais became acquainted with Path Net's CEO, Marshal Webb ("Webb"). They had occasional and informal correspondence on messaging applications called Discord (https://discord.com/) and Slack. On Discord and Slack, Gervais went by the handle / username "cmg".

**Background on Packet Rabbit**

21.     In November 2020, Gervais incorporated Packet Rabbit which thereafter became a customer of the Plaintiffs. Like Tempest, Packet Rabbit is an online virtual hosting company – it operates servers and leases the servers to customers for monthly subscription fees. Its customers' data is stored on the servers and made available on the internet. The website of

Packet Rabbit is https://packetrabbitinc.com/. The content on Packet Rabbit's website advertises its online virtual hosting and related services which are similar to those offered by the Plaintiffs.

**July 8, 2021 – Gervais is Hired by Tempest**

22.     On or about July 8, 2021, Gervais was hired by Path Net to be an independent contractor for Tempest. Gervais was referred to Webb for employment by a customer of the Plaintiffs known as Francisco Diaz of Frantech a.k.a. PONYNET. His employment was approved by Webb on the basis of Mr. Diaz's referral, on the basis of Webb's acquaintanceship with Gervais as a customer, and on the strength of Gervais' representations to Webb with respect to his qualifications and education. Gervais represented to Webb that he had a degree in computer engineering and was qualified and willing to work for Tempest. It is not unusual for the Plaintiffs to hire from their customer base. Gervais' role when he was first hired was as a "Community Manager" for Tempest.

23.     When Gervais was hired, he signed an Independent Contractor Agreement (the "ICA"). Gervais provided his personal information to the Plaintiffs to be memorialized in the ICA. The ICA indicates that Gervais' resided at 1310 1st Concession B Dalhousie Road, Lanark, Ontario, K0G 1K0 (the "Gervais Property"). Gervais later provided his Ontario Driver's License, which also indicated he resided at the Gervais Property.

24.     Gervais signed the ICA via DocuSign. The Docusign Certificate for the ICA indicates the email address from which Gervais signed the ICA was cg@metaltux.com, that his IP address was 142.183.78.163, and that he signed the ICA using his mobile phone (implying that 142.183.78.163 is the IP address used for his mobile phone, and not for any of his computers).

25.     When Gervais was hired, he provided banking transit information to receive his income via direct deposit. Gervais provided Path Net banking information held in the name of Packet Rabbit as opposed to himself personally. Packet Rabbit's account was with the Royal Bank of Canada bearing account number: 003-00842-1008838 (the "Packet Rabbit Account").

        Account Holder:      PACKET RABBIT INC.
        Beneficiary:         Curtis Gervais
        Bank Name:           Royal Bank of Canada
        SWIFT/BIC:           ROYCCAT2XXX
        Recipient Account:   1008838
        Transit Number:      000842003

26.     The transit number for the Packet Rabbit Account (00842) refers to the RBC branch located at 93 Bridge Street, Carleton Place, Lanark County, Ontario. Throughout Gervais' employment with the Plaintiffs, his income was paid to the Packet Rabbit Account.

27.     From approximately July 8 to August 30, 2021, Gervais worked as a Community Manager for Tempest. Gervais was adequate at his job, but not suited to the customer-facing aspects of it. To state otherwise, Gervais exhibited limited human interaction skills. At the same time, Gervais exhibited significant technical skills. On or about August 30, 2021, Gervais was accordingly promoted to the position of 'engineer' at Tempest.

28.     On August 30, 2021, when Gervais was promoted to 'engineer', he signed an Employment Agreement (the "Employment Agreement"). The terms of the Employment Agreement that are relevant to this action are materially similar to that of the ICA, and include that:

   a) Clause 1(b) – all of Gervais professional time and energy must be solely devoted to the interests of his employers Path Net and Tempest, and that Gervais is prohibited from acting in a conflict of interest or conducting other businesses competitive to Path Net;

   b) Clause 3(b) – bonus payments are "in the sole discretion of the CEO" of Path Net;

   c) Clauses 6(a) and (b) – Gervais was obliged to maintain the confidentiality of Path Net's confidential, sensitive and proprietary information;

   d) Clause 6(c) – Gervais was prohibited, during his employment and for three years thereafter, from soliciting any of Path Net's employees or agents away from Path Net;

   e) Clause 6(d) – Gervais was prohibited from making negative comments or disparaging statements against Path Net, Tempest, or any of its employees or agents;

   f) Clause 6(e) – intellectual property developed by Gervais during his employment relating to the nature of his employment are the property of Path Net. Gervais was prohibited from using Path Net's property, assets, and resources for his own personal benefit;

   g) Clause 6(f) – Gervais was required to return all of Path Net's property, assets, and resources upon the end of his employment; and

   h) Clause 16 – the agreement was to be construed according to the Laws of Arizona, USA.

29.     Gervais signed the Employment Agreement via DocuSign. The Docusign Certificate for the Employment Agreement indicates that email address from which Gervais signed the ICA was curtis@thegeekbin.com and his IP address was 142.185.206.175.

30.     With this promotion, Webb advised Gervais that he could be classified in the Plaintiffs' employment records as an employee or as an independent contractor. The difference between the two was that Path Net deducts and remits income tax deductions of employees to the IRS in the US, whereas contractors are paid their wages in full and expected to remit their own taxes to their relevant tax regulator (the Canada Revenue Agency in Gervais' case). Gervais elected to be classified as an independent contractor.

31.     The fact that Gervais signed an Employment Agreement yet elected to be treated as an independent contractor for tax purposes has no bearing on the issues addressed in this action, as the restrictive clauses and covenants that Gervais breached appear in all of the ICAs and Employment Agreements that he signed.

**Ordinary Authorizations of Gervais as an Employee of Path Net and Tempest**

32.     Since July 8, 2021, when Gervais' began to work for Path Net and Tempest, Gervais was granted access to view and edit the billing information of customers Tempest (and some Path Net customers who were also Tempest customers). Tempest uses a software platform called **WHMCS** to input and track the billing information of its customers and diarize services provided. Path Net primarily uses a software platform called Salesforce to diarize the services provided to customers, however WHMCS is also used for customers who are customers of both Tempest and Path Net. WHMCS is an automated billing and accounting platform.

33.     Further as part of his employment, Gervais had access to Path Net's portal system (https://portal.path.net/#/) (the "**Path Portal**") and to Tempest's portal system (https://portal.tempest.net) (the "**Tempest Portal**"). The Path Portal is where Path Net's customers can log in to manage their Path Net services. The Tempest Portal is where Tempest's customers can log in to manage their Tempest services.

34.     Further as part of his employment, Gervais had access to Path Net's Grafana dashboard ("**Grafana**" or "**Grafana Dashboard**"). Grafana is an internal system for monitoring Path Net's infrastructure necessary to providing its services to clients. The Grafana dashboard is also used for storing data with respect to the security threats and attacks which are attempted on Path and its customers. This "attack data" is used by Path Net to help develop its digital security services.

**The Farooqui Investigation – Gervais' Knowledge of Employment Agreement Enforcement**

35.     In or around October 2021, Path Net was required to address unlawful conduct, internet terrorism, breach of employment agreement terms, and breach of fiduciary duty and confidence of a Tempest employee, Imadullah Farooqui. In the retainer agreement for the Farooqui investigation, Gervais was referred to as "Engineer and Ontario Litigation Liaison to the CEO" for Path Net.  The retainer was signed by Path Net's CEO Marshall Webb. As a result of the Farooqui investigation, Gervais knew precisely of the extent to which Path Net would protect its interests.

36.     Among many other facets, the Farooqui Action dealt with cyber terrorism. After Farooqui resigned from Tempest, he made malicious and false allegations of serious criminal misconduct as against Webb and Path Net's CFO, Mr. Shiratori. Farooqui posted his heinous allegations as well as the contact information of his victims on various internet message boards and forums for the purpose of inciting and facilitating harm and threats of harm against them. Webb and Mr. Shiratori and other senior staff with the Plaintiffs began receiving harassing messages and eventually death threats. The cyber terrorism was so severe that Mr. Shiratori legally had his name changed. All of this was all known to Gervais.

**November to December 2021 – Gervais' Disloyal Engagement with Kubbur Inc.**

37.     In November 2021, Gervais engaged in discussions with one Leifur Gunnarsson of Kubbur Inc. ("Kubbur"), an independent Iceland-based hosting company, to develop and provide DDoS mitigation services and XDP and eBPF filters for Kubbur. In other words, Gervais agreed to provide Kubbur with intellectual property and information that is identical or materially similar to the proprietary cyber security intellectual property of Path Net that Gervais had access to. Gervais accepted the offer. These facts were unknown to Webb and the Plaintiffs' management team at the time.

38.     Gervais' engagement with Kubbur and Mr. Gunnarsson was prohibited by his Employment Agreement - in particular, clauses 1(b), 6(a), 6(b) and 6(e). Gervais knew that he was at risk of breaching his obligations to Path Net and Tempest, as his engagement was with a competitor to Tempest, and because his engagement created an opportunity to provide Kubbur with the Plaintiffs' proprietary and confidential intellectual property. Gervais did not seek the authorization of Webb or Path Net's management team to do this.

39.     In December 2021, Mr. Gunnarsson contacted Webb on unrelated business and disclosed

that Gervais' engagement with Kubbur. Webb advised Gervais that he could not participate in this venture and that to do so would be a breach of his duties to Path Net and Tempest. This put an end to Gervais dealings with Mr. Gunnarsson and Kubbur.

**Farooqui Notice of Action – Gervais' Knowledge of Employment Agreement Enforcement**

40.     On December 21, 2021, Path Net issued action against Farooqui under Toronto Court File No. CV-21-00674150-0000. Path Net alleged breach of contract, breach of fiduciary duty breach of confidence, unlawful interference in economic interests, conversion, fraud, trespass to property, conspiracy, spoliation, defamation and internet harassment against Farooqui. Gervais had knowledge of Path Net's action against Farooqui and the extent to which the Plaintiffs would go to protect their interests.

41.     On February 7, 2022, the Ontario Superior Court of Justice in Toronto issued both an Anton Piller Order to be executed at the residence of Farooqui, and an injunction against Farooqui prohibiting him from engaging in conduct harmful to Path Net.

42.     On February 14, 2022, the Anton Piller Order was executed at the residence of Farooqui. By this point Gervais was the CEO of Tempest. Gervais had knowledge of Path Net's action against Farooqui and the extent to which the Plaintiffs would go to protect their interests.

**February 2022 - Gervais is Promoted to CEO of Tempest**

43.     In or about February 2022, Gervais was promoted by Webb to the position of CEO for Tempest. About one week prior to this, Gervais briefly held the title of Director of Engineering for Tempest. When he was promoted to Director of Engineering, he signed another ICA the terms of which were materially the same as the ICA dated July 8, 2021. He did not sign another agreement when he became the CEO a week later.

44.     The relevant terms of the ICA are materially the same as the Employment Agreement, dated August 30, 2022. For greater certainty, the written agreements Gervais was bound by at the material times all circumscribed Gervais' obligations to the Plaintiffs  - the terms are materially the same. The relevant terms of the ICA dated February 3, 2022 include:

a)  Clauses 3, 3.4 and Schedule B – Compensation - Gervais is compensated at the rate of USD $7,000 per month starting February 3, 2022. Gervais is not entitled to any bonus payments or other compensation, which remains in the discretion of Webb;

b) Clause 9, 9.5, and 12.1 – Restrictive Covenants on Confidentiality – provides that Gervais was obliged to maintain the confidentiality of Path Net's confidential, sensitive and proprietary information;

c) Clauses 9.5, 12.1-12.2, and 13.1 to 13.8 – Restrictive Covenant regarding Intellectual Property and Inventions – provides that intellectual property of Gervais developed during his employment relating to the nature of his employment are the property of Path Net. This covenant also provides that Gervais is prohibited from using Path Net's property, assets, and resources for his own personal benefit;

d) Clause 14, 14.1 and 14.2 – Restrictive Covenant on Non-Solicitation and Non-Interference of Employees and Agents – provides that Gervais was prohibited, during his employment and for two years thereafter, from soliciting any of Path Net's employees or agents away from Path Net;

e) Clause 14, 14.1 and 14.2 – Restrictive Covenant on Non-Solicitation and Non-Interference of Customers – provides that Gervais was prohibited, during his employment and for two years thereafter, from soliciting any of Path Net's customers, clients, prospects, suppliers, vendors, referral sources or other business relationships away from Path Net;

f) Clause 15 – Non-Competition Restrictive Covenant – provides that Gervais shall not take part in a business enterprise that competes directrly or indirectly with the Plaintiffs for one year after conclusion of his employment;

g) Clause 16 – Restrictive Covenant against Disparagement – provides that Gervais was prohibited from making negative comments or disparaging statements against Path Net, Tempest, or any of its employees or agents; and

h) Clauses 12.1 and 12.2 – Return of Company Property – provides that Gervais was obliged to return all of Path Net's property, assets, and resources upon the end of his employment.

45.    Approximately a week later (February 10, 2022) Gervais was promoted to CEO of Tempest. No new Employment Agreement, ICA, nor any other agreement was created at the time - Gervais acknowledged to Webb that he remained bound by the prior agreements all of which were materially the same. With this promotion, Gervais' income increased significantly. Gervais was still classified as an independent contractor because he wished to receive all his income without deduction to the IRS.

46.    As the CEO of Tempest, Gervais retained all his prior access and authorizations to the sensitive and confidential information of Path Net and Tempest (namely via WHMCS, the Path

13

Portal, the Tempest Portal, the Grafana Dashboard, and Crisp).

47.     Additionally, Gervais was granted access to the Docusign account used by Path Net and Tempest (the "Docusign Cloud"). The Docusign Cloud is used by Path Net and Tempest to store all their agreements with all employees (including contractors and management / executive staff) and all customers. As a result of Gervais' access to the Docusign Cloud, Gervais had the means of learning the value of the Plaintiffs' contracts with its staff and customers, the personal contact information for the Plaintiffs' contracts with its staff and customers, and scope of services the Plaintiffs provided to its customers.

**Access to Management Meetings**

48.     As CEO of Tempest, Gervais' duties including managing shifts and employees of Tempest, attending one-on-one employee meetings (daily or as-needed) and management meetings (weekly), maintaining and updating customer lists, overseeing services provided to customers, overseeing accounts receivables and payable for Tempest, overseeing the sale of hardware to customers and the purchase of hardware for Tempest. Notwithstanding that he was the CEO at the time, Gervais also had to respond to technical support tickets and prospective customer inquiries as needed.

49.     As mentioned, Gervais attended weekly management meetings for of both Path Net and Tempest. These meetings were attended by the executive staff and key management people in the organization. As the CEO of Tempest, Gervais was required to attend each of the weekly Tempest management meetings. In respect of the Path Net management meetings, Gervais did not attend every weekly management meeting, but he attended many of them.

50.     At these meetings, the brain trust of Path Net and Tempest discussed confidential and sensitive matters such as:

    a)  long- and short-term growth and strategies for Path Net and Tempest;

    b)  strategies to go after large corporate customers with lucrative contracts;

    c)  tailoring Path Net and Tempest's offerings to meet market demands, particularly for large corporate customers;

    d)  competitive pricing of hardware and services for customers;

    e)  monthly and annual budgeting of corporate expenses, including for acquisition of new hardware, servers, and intellectual property;

f)  planning for growth into new markets and regions around the world – to better deliver services to new customers;

g)  development of new proprietary software, filters and cybersecurity projects by Path Net;

h)  emerging cybersecurity threats and Path Net's plans to respond to them;

i)  private customer information, including the identity / contact details of various customers and their specific hosting and cybersecurity needs; and

j)  the overall budgeting and financial wellbeing of Path Net and Tempest.

To state otherwise, Gervais was privy to a significant amount of sensitive and confidential information of Path Net. These meetings typically occurred via Google Meets calls or videocalls.

51.    As mentioned, these management meetings occurred once per week. Gervais was CEO from approximately February 10, 2022, to June 23, 2022 (as discussed below). At some of these meetings,  Webb or other senior staff of Path Net provided handout material - internal memoranda, agendas or other confidential documents.

52.    It is because of the sensitive and confidential nature of the information that Gervais and other staff were privy to that Path Net requires employees and contractors to sign agreements such as the Employment Agreements and ICA which contain restrictive covenants that prohibit, among other things, the sharing of confidential information. The information that Gervais was privy to could be used to undercut or compromise the competitive edge of Path Net or Tempest.

**March 17, 2022 – Gervais Sells his Side-Business (Packet Rabbit Inc.) to Path Net.**

53.    Since approximately November 2020, Gervais had been operating the defendant company Packet Rabbit Inc. ("Packet Rabbit"). Packet Rabbit is an online virtual hosting company, and accordingly, is a competitor to Tempest. As a competing interest, it was contrary to Gervais' Employment Agreement to operate Packet Rabbit while working for the Plaintiffs. Moreover, as Gervais had become the CEO of Tempest, he owed fiduciary duties to Tempest and his operation of Packet Rabbit was a conflict of interest.

54.    In or around February 2022,  Webb on behalf of Path Net, began negotiations with Gervais for the acquisition of Packet Rabbit. Path Net had three paramount reasons for acquiring Packet Rabbit. Firstly, Webb wanted to remove Packet Rabbit as a distraction for Gervais (as Gervais had been spending a disproportionate amount of time working on his Packet Rabbit business and not enough time managing the business of Tempest). Second, Gervais' operation of Packet

Rabbit was contrary to the Employment Agreement and his fiduciary duties owed to Path Net, and purchasing Packet Rabbit was a reasonable and fair way of resolving the conflict. Third, by acquiring Packet Rabbit, Path Net would remove a competitor and obtain its revenue stream, assets, and customer base.

55.     As part of the negotiations process for the purchase of Packet Rabbit, Gervais showed Packet Rabbit's network to Webb over a Google Meets videocall. This included showing Webb the IP addresses, servers and cabinets, and list of customers / book of business of Packet Rabbit. To state otherwise, Gervais did not provide the Plaintiffs with any document describing the particulars of Packet Rabbit's assets. Gervais did, however, send Webb two photographs which he purported were of Packet Rabbit's physical assets. These two photographs depicted two (2) server cabinets containing at least 19 (nineteen) physical servers, plus additional equipment. Gervais' information, although vague, was sufficient for him and Webb to agree upon **$106,496 USD** as a fair price for the acquisition of Packet Rabbit.

56.     Further as part of the negotiation process, Gervais corresponded with Webb and Path Net's solicitor Mark Wilson. After Gervais and Webb formed an agreement in principle, solicitor Wilson was asked to prepare a Purchase Agreement to memorialize the transaction. Solicitor Wilson asked Gervais to particularize the interests and assets of Packet Rabbit. Gervais responded by assuring solicitor Wilson that simply referring to assets in general terms was sufficient for the purposes of their agreement. This made sense because what was contemplated was the acquisition of all of Packet Rabbit's assets - with no exceptions. Accordingly, when it came time to draft the Purchase Agreement, the assets of Packet Rabbit were not particularized.

57.     On March 17, 2022, Gervais, on behalf of Packet Rabbit and Webb on behalf of Path Net, signed a Purchase Agreement (the "**Purchase Agreement**") for the sale of all Packet Rabbit's interests and assets to Path Net. *Inter alia*, the Purchase Agreement provided that:

   a) the assets and interests of Packet Rabbit being sold included: the "IPv4 Numbers, AS Numbers, Equipment (including computer servers), and Customers";

   b) the purchase price was USD $106,496; and

   c) (Clause 3) payment was to be made to Gervais upon the transfer of the purchased assets and interests to Path Net.

58.     Also on March 17, 2022, Gervais on behalf of Packet Rabbit provided Webb / Path Net with a signed Bill of Sale, dated March 17, 2022 (the "Bill of Sale"). The Bill of Sale lists assets of Packet Rabbit to be transferred to Path Net, including specifically "Computer Equipment (servers), network devices (router, switches), internet resources (autonomous systems network, IPv4 and IPv6 addresses). The Bill of Sale demonstrates that all of the assets of Packet Rabbit are the property of Path Net.

**Gervais' Failure to Comply with Purchase Agreement**

59.     As stated, the Purchase Agreement obligated Gervais to transfer all the assets and interests of Packet Rabbit to Path Net *prior* to receiving payment. As a demonstration of good faith, and because Gervais had begun submitting invoices to Path Net for payments since at least March 2, 2022 (ie. before the written Purchase Agreement), Path Net made payments to Gervais before Gervais transferred all the assets and interests of Packet Rabbit to Path Net.

60.     Important to this litigation is that notwithstanding Path Net's good faith in making payment, Gervais failed to transfer all of the assets of Packet Rabbit. Rather, on or about March 25, 2022, Gervais transferred only the IPv4 addresses and AS numbers used by Packet Rabbit pursuant to the Purchase Agreement. This transfer was memorialized by a 'Ticket' submitted to American Registry for Internet Numbers (ARIN).[1] Gervais did not transfer the equipment (including computer servers) nor the customers of Packet Rabbit. These issues are addressed further below.

61.     Between April 1, 2022, and July 12, 2022, Path Net paid the **USD $106,496** to Gervais via three instalment e-payments pursuant to the Purchase Agreement. The payment dates were:

   a)  April 1, 2022;

   b)  May 20; and

   c)  July 12, 2022.

Path Net acted in good faith and upheld its end of the bargain with Gervais and Packet Rabbit.

62.     Path Net's payments were made to Gervais prior to transfer of all Packet Rabbit's assets because Gervais submitted invoices to Path Net via Quickbooks. To state otherwise, Gervais insisted upon being paid first, even though the Purchase Agreement required he transfer Packet Rabbit's assets first. Gervais was the sole controlling mind of Packet Rabbit.

---

[1] ARIN is the American Registry for Internet Numbers (https://www.arin.net/). ARIN regulates and administers the use of internet numbers (including IP addresses and AS numbers) across North America

63.     Webb authorized payment to Gervais of the purchase funds prior to receipt of all the above-mentioned assets because Gervais advised that it would take some time for him to transfer all of the assets and interests of Packet Rabbit. At the time that the payments were made, Webb trusted Gervais that he would honour the Purchase Agreement. Webb accepted Gervais' excuses for the delays that were taking place. Webb still viewed Gervais as an asset to Path Net.

64.     At around the time of the final tranche of the purchase funds (July 12, 2022), Webb learned that Gervais had made a threat to a former employee of Path Net (Alex Azzo). Gervais told Mr. Azzo that unless Webb paid his invoice, he (Gervais) would file a report to ARIN and allege that Path Net "stole" Packet Rabbit's IPv4 addresses and AS numbers. Gervais knew that Path Net had put these IPv4 addresses and AS numbers into use for serving its customers, and thus he knew his report to ARIN could cause a significant service disruption to Path Net's customers even if it was false. Despite Gervais conduct, Webb hoped to reform Gervais and viewed him as an asset to Path Net due to Gervais superior technical skills.

65.     The assets of Packet Rabbit that Gervais failed to transfer in breach of the Purchase Agreement relevant to this action include, but are not limited to:

   a) the equipment (including computer servers, routers and switches) of Packet Rabbit; and
   b) the customers / book of business of Packet Rabbit.

66.     The objective of the Purchase Agreement was the absorption of Packet Rabbit into the operations of Path Net. Had Gervais complied with Purchase Agreement, Packet Rabbit would have ceased as a going concern. To this day, and despite being served with the Notice of Action, Gervais has failed to transfer these assets and interests of Packet Rabbit and failed to provide a reason for his conduct. Rather, Gervais has continued to operate Packet Rabbit in breach of the Purchase Agreement and in breach of his fiduciary duties to Tempest as its CEO (and later, COO).

67.     As detailed below, the Plaintiffs have grounds to believe that Gervais has expanded the operations of Packet Rabbit after March 17, 2022, when it should have been wound down. As detailed below, Gervais has unlawfully solicited customers of Path Net and Tempest to join him at Packet Rabbit (contrary to his Employment Agreement and/or ICAs). The particulars provided below allege that Gervais used the confidential information of the Plaintiffs, including their customers contact information, to solicit those customers away from the Plaintiffs.

18

68.     The Plaintiffs state that because Gervais has expanded the operations of Packet Rabbit after the Purchase Agreement was executed, its expansion was financed with the USD $106,496 provided by Path Net pursuant to the Purchase Agreement. The Plaintiffs state that they have a purchase money security interest and resulting and/or constructive trust to all assets of Packet Rabbit purchased with the use of its USD $106,496 and seek an accounting of these funds in writing from the Defendants.

**April 2022 – Further Evidence of Gervais' Address**

69.     On or about April 11, 2022, Peter Potvin, a systems engineer for Tempest, contacted Gervais – his superior / supervisor at the time - to inquire about shipping a Path Net machine from a Path Net data center in Vancouver, BC, to Gervais for inspection and diagnosis. Gervais instructed Mr. Potvin to ship the Path Net machine to him at the address 1310 1st Concession B Dalhousie, Lanark, ON, K0G 1K0 (ie. the "Gervais Property").

**June 2022 – Gervais' "Active Scanning" Hacks on Game Server Kings ("GSK")**

70.     In or about June 2022, while Gervais was in his role as CEO of Tempest, Gervais told Mr. Potvin that he was engaged in hacking another online virtual hosting company known as Game Server Kings ("GSK"). GSK is in the same line of business as Tempest and Packet Rabbit - they are all online virtual hosting companies. Gervais mentioned this to Mr. Potvin during one of their daily Google Meets calls. Gervais told Mr. Potvin that he found out that GSK had left its SNMP unsecured because its SNMP string[2] had been left to the default setting.[3] To put this scenario in lay-man terms, Gervais had found an unlocked door at the secure business of GSK.

71.     Gervais told Mr. Potvin that he had gained access to the GSK network via the unsecured / default SNMP string and he was actively monitoring it of customer traffic and system information (ie. information regarding the operations / vulnerabilities of GSK's network and information of GSK's customers). To put this scenario in lay-man's terms, Gervais told Mr. Potvin that he had entered the secure business of GSK via the unlocked door and was taking private and  personal data. To state otherwise, while there may be an implied consent to walk up to a building, it is quite

---

[2] SNMP stands for simple network management protocol. The SNMP string is akin to a password in that it is a piece of information needed to gain access and retrieve information from a target network.

[3] In layman's terms, Gervais was telling Mr. Potvin that he had learned GSK was vulnerable to an active scanning attack. GSK's public SNMP in a sense made it possible for Gervais to carry-out active scanning attacks.

another thing to enter without express consent, let alone to take private and  personal data.

72.     An active scanning attack is a covert hack in which an unauthorized user (hacker) gains access into a target's network for the purpose of testing its vulnerabilities and gaining intelligence. Whereas "traditional" hacks are intended to cause damage to a target's network, active scanning attacks are similar to reconnaissance. The intelligence gained on a target network from active scanning can be used to launch destructive hacks later.

73.     Active scanning is unlawful and a criminal act in the United States contrary to the *Computer Fraud and Abuse Act (*18 U.S.C. § 1030)[4] [5] [6]. The difference between active scanning and passive scanning is that active scanning involves unlawful or unauthorized access into a target's network. Gervais told Mr. Potvin that he had access via cracking the default SNMP string of GSK. Given that GSK is located in Texas, and given that Gervais was the CEO of Tempest operating in Ontario, this unsanctioned access was concerning to Mr. Potvin.

74.     Mr. Potvin was aware that active scanning attacks were not permitted by Path Net. Mr. Potvin had no interest in being a part of Gervais' active scanning attack. However, given that Gervais was his superior, he was in a difficult position to speak out against what Gervais was doing. Accordingly, Mr. Potvin did not "blow the whistle" on Gervais at this time.

75.     Later in June 2022 (but prior to June 23, 2022), during a Google Meets videocall, Gervais asked Mr. Potvin if he / Mr. Potvin could set up a computer program known as LibreNMS (https://www.librenms.org/). LibreNMS is a program which facilitates management of multiple network devices to gather and analyse information pertaining to a target network. In other words, LibreNMS is a program that can be used to assist interpreting data derived from active scanning. Mr. Potvin inferred from this request that Gervais was asking him to help in his active scanning of GSK. Mr. Potvin declined Gervais' request. The Plaintiffs were not aware of Gevais' conduct.

**June 23, 2022 – Gervais Proclaims his Hacking and is Removed as CEO of Tempest**

76.     On June 23, 2022, Gervais boasted about his hacking of GSK privately to a Path Net senior management employee named Lee 'Zigi' Stubbs and on a secret Signal group chat that

---

[4] *Computer Fraud and Abuse Act*, 18 U.S. Code § 1030. See: https://www.law.cornell.edu/uscode/text/18/1030.

[5] *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1136 (9th Cir. 2009).

[6] *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1068 (9th Cir. 2016).

20

Gervais had set-up. In his messages to Mr. Stubbs, Gervais sent information regarding the GSK network (information that is the product of the hacking). Gervais further acknowledged to Mr. Stubbs the wrongfulness of his actions and that it constituted grounds for his termination. Gervais wrote: "*gsk now live-monitored*", and **"***In the event I get terminated, it has been a pleasure working with you.***"**

77.     Gervais' made similar posts on the signal group chat. Mr. Stubbs also saw the posts on the group chat, as did various other Tempest employees including Kyan Gomes and Peter Potvin.

78.     On June 23, 2022, Mr. Stubbs informed Webb of Gervais' hacking GSK and the data that Gervais had sent him. Recognizing the offensiveness / criminality of Gervais' conduct, and the difficult position that was created by the CEO of Tempest illegally hacking into the secure network of a competitor, Webb commenced an investigation with Mr. Stubbs and Mr. Kraklan.

79.     As part of the investigation, Gervais was interviewed by Mr. Stubbs and Mr. Kraklan via Google Meets. Gervais admitted his misconduct, including that he had gained access to GSK's network and was actively scanning it, but denied that it was illegal in Canada or that it was a big deal at all, saying this kind of stuff happens all the time. Gervais was advised by Webb that he was removed as CEO of Tempest effective immediately and suspended from further employment with the Plaintiffs until otherwise notified.

80.     Also on June 23, 2022, Path Net's management team commenced an internal investigation into Gervais' misconduct. As part of the investigation, Mr. Potvin was interviewed as were various other members of the secret group chat. Mr. Potvin disclosed that Gervais had advised him previously and independently of his active scanning attacks on GSK and that he (Gervais) had attempted to recruit him to assist in his misconduct. One Mr. Gomes and one Ms. Irizarry reported that they had read Gervais' admissions of hacking GSK on the secret group chat.

81.     On June 24, 2022, Mr. Kraklan of Path Net emailed Gervais to put in writing that he (Gervias) had been removed as CEO of Tempest effective immediately. Gervais acknowledged his wrongdoing by replying to Path Net management that his "*actions taken yesterday were inappropriate. These actions were not taken in a professional capacity. I apologize for this.*"

**June 30, 2022 – Gervais is Demoted to COO of Tempest**

82.    Notwithstanding the wrongfulness of Gervais' misconduct, on or about June 30, 2022, Webb offered Gervais to return to work for Tempest in the role of Chief Operations Officer. This was a demotion from CEO. The offer was made because Webb believed that Gervais could be a valuable asset to Tempest and could be rehabilitated. To state otherwise, Webb valued Gervais technical and creative skills as it applied to their industry. Webb believed that Gervais' misconduct demonstrated poor judgment that required having a person supervise him – accordingly, Webb promoted a Path Net employee named Russ Reese to assume the role of CEO for Tempest. Gervais accepted Webb's offer and signed another Employment Agreement dated June 30, 2022 which memorialized his obligations as COO. To state otherwise, Gervais promised to the Plaintiffs that he would not engage in any further misconduct.

83.    The terms of the Employment Agreement that Gervais signed on June 30, 2022, are materially the same to the prior Employment Agreement and ICAs. In fact, this Employment Agreement is identical in all respects (except job title and related job description) to the Employment Agreement dated August 30, 2022.

**June 24, 2022 – Gervais Confides to Alex Azzo his Malicious Intentions**

84.    On June 23 and 24, 2022, while Gervais was suspended from his employment and while Path Net's investigation of him was ongoing, but unbeknownst to the Plaintiffs, Gervais contacted Alex Azzo, a former employee of Path Net, privately via Signal. Gervais complained to Mr. Azzo about what he viewed as his mistreatment by Webb and the Plaintiffs. Gervais confided to Mr. Azzo that he harboured malicious intent towards Webb and the Plaintiffs  and intended to carry-out acts of retribution against them.

85.    Among other threats, Gervais told Mr. Azzo that he intended to file a complaint with ARIN alleging that Path Net had "stolen" Packet Rabbit's IPv4 addresses and AS numbers unless Mr. Webb / Path Net paid the final invoice to Gervais pursuant to the Purchase Agreement.

86.    Further, Gervais told Mr. Azzo that he was going to "*walk to [Webb's] biggest competitor and drown [Webb's] company*". At the time, Mr. Azzo believed that this meant Gervais would seek employment with a competing online virtual hosting company, such as GSK. What Gervais subsequently did demonstrates that his actual intentions were to provide GSK with the Plaintiff's sensitive and confidential information and cause irreparable harm to the Plaintiffs.

22

87.     Mr. Azzo did not immediately report this to Webb or the Plaintiffs. Accordingly, it was not until some time later that the Plaintiffs became aware that Gervais had malicious intentions.

88.     From approximately June 30, 2022, onward, Gervais continued in his employment with Tempest as COO. Gervais retained all the authorizations and access to the Plaintiff's above-mentioned systems and confidential information that he had previously. At the time, Path Net's management team were unaware that Gervais actually intended to follow through on his malicious campaign that he alluded to Mr. Azzo.

**Gervais Communicating Confidential Information to GSK and Renaul Roosen ("Roosen")**

89.     On or about June 24, 2022, unbeknownst to the Plaintiffs, Gervais began providing confidential and/or defamatory information with respect to the Plaintiffs to the CEO and founder of GSK – Rene 'Renaul' Roosen ("Roosen"). Roosen began using Gervais' information to solicit or induce customers of the Plaintiffs to terminate their service agreements and instead become a customer of his competing company, GSK. The Plaintiffs later learned that Roosen / GSK solicited Kubbur, Vital Game Network LLC ("Vital Network"), Anthony Modica, Nexus Online Services LLP ("Nexus"), and other companies and / or individuals that were clients of Path Net and Tempest.

90.     The Plaintiffs' later learned that, *at a minimum*, Kubbur, Vital Networks, Anthony Modica, and Nexus were solicited by Roosen using confidential information from Gervais. The Plaintiffs later learned of these facts because these customers reported Roosen's solicitations them. The Plaintiffs have reason to believe that numerous other customers of Path Net and Tempest have been solicited as a result of Gervais misconduct, but have not come forward to report it. To state otherwise, the Plaintiffs are restrained in their ability to identify customers who are being targeted and solicited by Roosen using confidential information acquired by Gervais because they are reliant upon the customers reporting it.

91.     To state otherwise, in Roosen's communications with Kubbur, Mr. Modica, and Nexus, Roosen sent screenshots of date-stamped communications that he had with Gervais which corroborates that Gervais was providing Roosen and GSK with confidential information of the Plaintiffs at least as early as June 24, 2022. The Plaintiffs further state that the reason Roosen

knew to solicit *specifically* Vital Networks, Mr. Modica, and Nexus was because Gervais had told Roosen that they were the Plaintiffs' customers and provided them their contact information.[7]

**Further Evidence of Gervais' Disclosure of Confidential Information to Roosen / GSK**

92.    On July 6, 2022, Mr. Gunnarsson (of Kubbur) and his business partner were contacted by one Rene 'Renaul' Roosen ("Roosen") via Discord. Roosen is the owner and CEO of GSK. Kubbur is a customer of the Plaintiffs, and Mr. Gunnarsson is its CEO. Roosen represented to them that Tempest was going bankrupt, intimating that if Kubbur cared about maintaining reliable service, it should terminate its agreements with the Plaintiffs and instead subscribe to his company, GSK. Roosen told them that the source of his information was Gervais himself. In other words, Roosen was intimating that they should rely and act on this information because the source was the former CEO of Tempest.

93.    To prop-up his statements, Roosen sent them screenshots of his (Roosen's) conversation with Gervais. The screenshots included statements from Gervais, dated June 29, 2022, stating that "[Tempest has] no money", is broke, and "every month the account goes negative".

94.    To be clear, Tempest is not insolvent nor at risk of shutting down or at risk of failing its customers. Gervais' statement to Roosen is unequivocally false. However, the fact that it was provided to Roosen / GSK evidences Gervais' wider intentions of causing harm to the Plaintiffs.

95.    On July 8, 2022, Roosen again contacted another customer of the Plaintiffs' known as Nexus Online Services via its owner, "Kyle". Roosen provided Nexus and Kyle with materially the same information that he had provided to Mr. Gunnarsson – namely that "Tempest is shutting down entirely in the near future" and that Nexus should terminate their agreements with Tempest if it cared about receiving reliable service going forward. Unlike with Mr. Gunnarsson, what Roosen did not disclose to Kyle was that the source of his information was Gervais. After this conversation, Kyle reported that he had been contacted to Webb. Kyle provided Webb with a copy of his correspondence with Roosen. As Roosen omitted to identify Gervais as his source, Webb did not know that Gervais was a risk.

---

[7] The Plaintiffs acknowledge that Roosen had prior correspondence with Mr. Gunnarsson / Kubbur. Gervais was not responsible for providing Roosen with Mr. Gunnarsson's contact information or reporting that Kubbur was a customer of the Plaintiffs.

96.     Roosen knew that Nexus was a customer of the Plaintiffs. Roosen knew that "Kyle" was the person he should contact if he wished to provoke Nexus to switch service providers. Gervais had access to the Plaintiffs' Docusign Cloud, which stored all of their service agreements with customers. Not all employees of Path Net or Tempest have access to the Docusign Cloud - it is a unique permission that only a few have access to. The Plaintiffs allege that Gervais accessed their service agreements with customers stored on the Docusign Cloud and the customer contact information stored therein and provided this information to Roosen / GSK to facilitate the solicitation of the Plaintiffs' customers. The Plaintiffs allege that Gervais accessed and made use of the Plaintiffs' confidential information stored on the Docusign Cloud.

**Further Solicited Customers of the Plaintiffs and Disclosed Confidential Information**

97.     Between July 6, 2022 and up to at least November 17, 2022, the Plaintiffs have learned that various other customers of theirs have been contacted either by Roosen or by Gervais directly and provided similar false and defamatory information about the Plaintiffs for the purpose of inducing those customers to terminate their agreements with the Plaintiffs. The Plaintiffs have further learned that some but not all of these customers have since subscribed to Gervais' company, Packet Rabbit.

98.     The Plaintiffs allege that that Roosen and/or Gervais had this information because Gervais acquired it from the Plaintiffs. As previously stated, customer contact information is defined in all of Gervais' employment / independent contractor agreements as "Confidential Information".

99.     Particulars of the Plaintiffs' information with respect to the interference committed by Gervais into its relationships with customers (or alternatively, Gervais' interference by way of Roosen) known to date includes:

   ***Vital Game Network LLC***

   a)   on July 11, 2022, a customer of the Plaintiffs known as Vital Game Network LLC ("Vital Network") reported to Tempest's new CEO, Mr. Reese, that they had been contacted out of the blue by Roosen. Roosen told them that the Plaintiffs were insolvent and at risk of shutting down. The purpose of this representation was to induce Vital Network to switch service providers to GSK. Mr. Reese could not dissuade them that Roosen's information was false. Vital Network subsequently terminated its agreement with the Plaintiffs;

### *Roosen's Admission of Knowledge of Plaintiffs' Customer Contracts*

b) on July 13, 2022, following Roosen's contact with Kyle / Nexus, Tempest's employee Mr. Gomes contacted Roosen (Mr. Gomes had a prior rapport with Roosen as GSK had been a service provider to Mr. Gomes who had once also operated an online hosting company, and Mr. Gomes successfully sold his company to Path Net, unlike Gervais). Roosen intimated that the source of his information was a member of Tempest's executive staff, but did not name Gervais as his source. Roosen later intimated that he knew the value of the Plaintiffs' service agreements with customers such as Iridium Satellites and UHaul – information that is only available on the Docusign Cloud;

### *Anthony Modica*

c) on or about July 17, 2022, Mr. Gomes was contacted by its customer, Anthony Modica. Mr. Modica advised him that he had been contacted by Roosen. Roosen told him that Tempest was going bankrupt and shutting down imminently. Roosen told Mr. Modica that the source of his information was Gervais "the former CEO of Tempest". Mr. Modica provided Mr. Gomes with his Discord correspondence with Roosen, and also provided a signed statement;

### *CFX.RE*

d) in or about August 2022, a company known as CFX.RE terminated its agreements with the Plaintiffs. CFX.RE did not provide Mr. Reese with reasons for terminating its service agreements. Tempest's service agreement with CFX.RE was signed by Gervais on June 9, 2022, when he was still CEO of Tempest, meaning that Gervais was expected to look after this customer. The Plaintiffs allege that Gervais or Roosen contacted CFX.RE, to persuade them terminate the agreement;

### *RSM*

e) on or about November 10, 2022, a Tempest customer known as RSM contacted Mr. Reese by way of its owner Karl Rehm. Mr. Rehm advised Mr. Reese that it was terminating its service agreement with Tempest. Mr. Rehm told Mr. Reese that the reason for terminating the agreement was because RSM wanted to access the network of Packet Rabbit. By December 8, 2022, RSM's website indicated it was "powered by Packet Rabbit" (whereas it was previously "Powered By" Path Net and Tempest; and

***Frantech***

f) on October 11, 2022, Gervais posted on the Discord channel for the Plaintiffs' customer Frantech. As previously mentioned, it was Frantech's owner Mr. Diaz who referred Webb to hire Gervais. Gervais' posts on the Frantech Discord channel stated that Path Net's servers and equipment were rudimentary, unsophisticated and not worth the money that Path Net charges customers. On November 17, 2022, Frantech advised Mr. Reese that it was terminating its service agreement with the Plaintiffs.

100.   The Plaintiffs cannot easily quantify the economic harm that Gervais' misconduct has caused. Presently the Plaintiffs have incomplete information of which of their customers have been contacted by Gervais and/or Roosen because they are reliant upon either being contacted by the customers themselves or fortuitously coming upon evidence to tie the customers to Gervais and Packet Rabbit or Roosen and GSK. The Plaintiffs do not believe that all of their customers are reporting to them that they are being targeted by Gervais and/or Roosen. To state otherwise, the information summarized above represents the known instances of Gervais' interference.

**June 30, 2022 – Path Net Received an Invoice for Packet Rabbit's Purchase of New Servers**

101.   On or shortly after June 30, 2022, a former employee for Path Net named Jack Cosens received an invoice payable by Gervais and Packet Rabbit (the "Kuxo Invoice"). Kuxo had sent this invoice to Mr. Cosens by mistake. Sometime later, after Mr. Cosens learned of Gervais' misconduct and his continued operation of Packet Rabbit in breach of the Purchase Agreement, Mr. Cosens forwarded the Kuxo Invoice to the Plaintiffs.

102.   The Kuxo Invoice was issued from a UK-based server wholesale company known as Kuxo Inc. ("Kuxo"). The Kuxo Invoice shows that Gervais, on behalf of Packet Rabbit, ordered two new servers. The Kuxo Invoice indicates that the purchaser, Gervais, was located at 2900 Avenue Marie, Curie, Saint-Laurent, Quebec. The Kuxo Invoice indicates that the address for deliverance of the servers was 2900 Avenue Marie, Curie, Saint-Laurent, Quebec.

103.   2900 Avenue Marie, Curie, Saint-Laurent, Quebec is a colocation facility for a company called Hive Data Centers ("Hive"). A colocation data center is a large data center that rents out rack space to third parties (such as Packet Rabbit) for their servers and other networking equipment. To state otherwise, the Kuxo Invoice demonstrated to the Plaintifffs that the site of server operations of Packet Rabbit is from within the Hive Data Center at 2900 Avenue Marie,

Curie, Saint-Laurent, Quebec. The site of server operations is a separate location from where Gervais was actually operating from – which was his residence in Lanark, Ontario.

104.    As a result of this development, it was apparent to the Plaintiffs that Gervais was not winding-down Packet Rabbit pursuant to the Purchase Agreement. Rather, it appeared to Path Net that Gervais was growing the Packet Rabbit business for his own purposes. To state otherwise, Gervais was continuing his unlawful conduct despite Webb's attempts to reform him.

**July 12, 2022 – Gervais Fails to Transfer Packet Rabbit Assets, despite Payment In Full**

105.    On July 12, 2022, Path Net paid the final portion of the purchase funds to Gervais pursuant to the Purchase Agreement dated March 17, 2022. This payment was made under protest as a result of the Plaintiffs' learning that Gervais had threatened to make a false report to ARIN to disrupt its customers services. During this time period, Mr. Kraklan, on behalf of Path Net, continued to communicate with Gervais with respect to requests for Gervais to transfer the servers, and customers of Path Net.

106.    Gervais provided Mr. Kraklan with various excuses for not complying with his agreement. Gervais did not follow-through on his obligations to transfer the all assets of Packet Rabbit pursuant to the Purchase Agreement. Among other representations of Gervais to Mr. Kraklan, he (Gervais) alleged that the servers and hardware of Packet Rabbit were "sitting on the floor" - by which Gervais meant that the servers had been taken offline. This in fact was not true.

**Resignation of Gervais and Use of Veilios to "Veil" Operation of Packet Rabbit**

107.    On August 7, 2022, Gervais paid for the LA Weekly publication to publish a "promotional article" with respect to himself and his company Packet Rabbit. As a sponsored / promotional article, it was ghost-written by Gervais himself. The article evidences that Gervais never intended to comply with the Purchase Agreement, but instead meant to continue to operate Packet Rabbit. The article makes various boasts about Gervais' honestly and integrity, the implied purpose being that customers should trust in Gervais / Packet Rabbit to keep their data secure.

108.    On or about August 23, 2022, due to Gervais' continued failure to transfer the servers and customers of Packet Rabbit pursuant to the Purchase Agreement, and because the Plaintiffs learned that Gervais had in fact expanded operations including with the purchasing of two new servers from Kuxo, the Plaintiffs set an administrative control within Path Net's network to reject

announcements from the ASN used by Packet Rabbit. Gervais had, up to that point, been operating on Path Net's network via the AS number 39967.

109.   It was expected that Packet Rabbit's operations would be frustrated by the administrative control. As particularized below, beginning on August 25, 2022, Packet Rabbit re-commenced operations using an ASN nominally registered to an entity known as Veilios Hosting LLC.

110.   At around this time Gervais was neglecting his work at Tempest. Gervais was failing to respond to customer tickets. Gervais also failed to attend staff meeting with Mr. Reese.

111.   On or about September 11, 2022, Gervais chatted with Mr. Potvin via Signal. In his communications, Gervais complained that he had issued invoices to Path Net which were not getting paid. Gervais did not provide Mr. Potvin further information. Gervais appeared disgruntled. Thereafter, Gervais did not communicate with anyone at Tempest or Path Net for two days. The Plaintiffs alleged that whatever invoices that Gervais was referring to are not a basis for Gervais to breach the terms of the Purchase Agreement. This issue was not conveyed to the Plaintiffs.

112.   On September 15, 2022, Gervais removed himself from a Discord chat room used by the Plaintiffs' staff. This act, combined with Gervais' conduct and in particular his failure to perform the basic aspects of his employment, signalled to the Plaintiffs that Gervais had resigned.

113.   Thereafter, Mr. Kraklan removed Gervais from a Signal chat for the Plaintiffs. Mr. Kraklan and the Plaintiffs' management staff expected that Gervais would contact them if there was a misapprehension as to Gervais' reasons and motive for removing himself from the Discord chat and for failing to perform the basic aspects of his employment.

114.   Later that day, Gervais contacted Webb and confirmed his intention to resign from the Plaintiffs. Gervais has subsequently confirmed that he resigned his employment at Tempest via postings on an online hosting forum known as LowEndTalk.

**Gervais begins Cyber-Defamation Campaign against the Plaintiffs**

115.   On or about September 19, 2022, Gervais set off on a campaign of cyber defamation and

"review bombing" of Path Net.[8] Gervais' defamatory statements against Path Net has spanned various public platforms and forums, including LinkedIn, Trust Pilot, LowEndTalk, Discord, and others, and is continuing to this date.

116.    On September 19, 2022, Gervais began posting on LinkedIn using the false identity of 'Johnaton Gater'. The alleged title / position of "Johnaton Gater" was "Chief Executive Officer of Path Net". As mentioned, Webb has been the CEO of Path Net since its inception. 'Johnaton Gater' is not a real person. In his posts as 'Johnaton Gater', Gervais slandered Path Net, Webb and various other members of Path Net's management team (such as Lee Stubbs) while also praising Roosen and GSK as a superior hosting service providers.

117.    The LinkedIn profile for 'Johnaton Gater' was deleted thereafter. It no longer exists.

118.    Notwithstanding that the LinkedIn profile for 'Johnaton Gater' was deleted, Gervais has continued in his campaign of cyber defamation as against the Plaintiffs. The Plaintiffs state that Gervais' continued acts of cyber defamation evidence that Gervais was 'Johnaton Gater'.

119.    As further evidence that Gervais is 'Johnaton Gater', the Plaintiffs state that the content of the posts of 'Johnaton Gater' references information that Gervais had access to. For example:

   a) in one post, 'Johnaton Gater' stated that he "just took out a new commit with CosmicGuard". CosmicGuard is the brand name / trade name for the hosting network known as Cosmic Global Networks. As discussed below, the Plaintiffs have learned that Packet Rabbit is now delivering services to customers via an ASN of a shell company known as Veilios Hosting LLC ("Veilios"). To state otherwise, for the purposes of records filed with internet regulators, Veilios is Packet Rabbit;

   b) Packet Rabbit / Veilios received upstream services[9] from Cosmic Global. The BPG webpage for Packet Rabbit's ASN shell company, Veilios, confirm this (https://bgp.tools/as/1002#asinfo);

   c) in another post, 'Johnaton Gater' stated that "*Hey Guys, Just wanna say thanks for the investment in Path Network, Inc., we are spending your money very wisely.*" Gervais, as

---

[8] "Review bombing" refers to the publication of false and defamatory statements posing as reviews on the internet. It is like leaving a bad review, except that the underlying facts alleged are false and is carried out by a malicious user with the intent to cause customers not to do business with the target company.
[9] "Upstreaming" refers to the intermediary that provides the host's (Packet Rabbit operating under Veilios) connection to its customers.

COO for Tempest was involved in discussions for securing capital investments, scheduled to close in or about September 2022;

d) also in this post, Gervais published the salary of Mr. Stubbs. As previously mentioned, Gervais was one of a few people who had access to the Plaintiffs' Docusign Cloud. Mr. Stubbs' employment agreement including information on his compensation is stored on the Docusign Cloud;

e) as previously mentioned, there is reason to believe that Gervais also previous accessed and provided Roosen documents on the Docusign Cloud in the form of the Plaintiffs' service agreements with UHaul and Iridium Satellites;

f) in another post, addressed to customers of the Plaintiffs known as Byteania and Jack Guild, 'Johnaton Gater' stated what is contained in the boxes in paragraph 72. In fact, Gervais and Mr. Stubbs did have discussions with respect to terminating the Plaintiffs' services to Byteania and Jack Guild. Gervais viewed Byteania as a competitor to Tempest, and regularly attempted to persuade Mr. Stubbs to ban Byteania from Path Net's network;

g) also in the post addressed to Byteania and Jack Guild, "Johnaton Gator" (sarcastically) alleged that the "new Sydney location" would not deploy on time. Gervais was aware that Path Net was opening a new data center based in Sydney, Australia, and even had complained to Mr. Kraklan that the servers for the Sydney, Australia had not been shipped.

**Gervais Wipes Two Servers, Path Net Investigates and Learns of Veilious Hosting LLC**

120.   On September 30, 2022, the Plaintiffs detected that a user operating an unauthorized customer account had logged into WHMCS (the client services management portal for Tempest's customers) and wiped two entire servers. The two servers were wiped by re-installing their operating system (Ubuntu). The customer account had permission to wipe the entire servers because, in Tempest's WHMCS portal, both servers were dedicated to that customer account. This was a very unusual event. This event prompted an investigation by Path Net.

121.   Mr. Stubbs was the Plaintiffs' primary internal investigator. He learned that the customer account at issue was registered to Gervais under the email address cg@metaltux.com (the same email address Gervais used to sign the Employment Agreement). The name on the customer account was literally "Curtis Gervais". Prior to this event, Tempest or Path Net were not aware that Gervais had this customer account.

122.    Mr. Stubbs investigated further and learned that Gervais, using his employee

authorization (Admin ID 16 / curtis@path.net), had been manipulating the WHMCS entries for his own customer account and set it to a free account. In other words, Gervais had misused his employee access to obtain services from Tempest for free.

123.    Mr. Stubbs' investigation further revealed that Gervais had used his customer account associated with the two "free" servers to provide services to customers of Packer Rabbit. To state otherwise, Gervais was using the Plaintiffs' hardware to operate Packet Rabbit. The customer account information for Gervais indicates that he had been doing this since approximately November 10, 2021.

**Mr. Stubbs' Investigation Reveals Packet Rabbit's ASN switch to Veilios**

124.    Mr. Stubbs continued his investigation. He was aware that Gervais had failed to transfer the servers and customers of Packet Rabbit as he was obliged to pursuant to the Purchase Agreement. Mr. Stubbs' investigation revealed that on or about August 25, 2022, Packet Rabbit ceased to receive ASN service from Path Net. An ASN provider is used by hosting companies such as Packet Rabbit to organize and group its servers together to form a cohesive network.

125.    Mr. Stubbs investigated some of the peering information that had historically been used by Packet Rabbit and sold and transferred to Path Net pursuant to the Purchase Agreement, including prefix 163.123.192.0/24 and AS number 39967. The Plaintiffs had been permitting Gervais to use this prefix and AS number based on a pretext by Gervais that he needed it for personal reasons and to wind down Packet Rabbit. However, after learning that Gervais was not winding down Packet Rabbit, the Plaintiffs cut off Packet Rabbit's access to this AS number.

126.    By viewing the peering information for this prefix and AS number, Mr. Stubbs learned that on or about August 25, 2022, Packet Rabbit's network began obtaining its own ASN from a company registered with ARIN as Veilios Hosting LLC ("Veilios").[10] Mr. Stubbs learned via the website BGP Tools (https://bgp.tools/as/1002) that Veilios' ASN number was AS1002.

127.    Mr. Stubbs found that from between approximately August 25 and September 16, 2022 (being the date that Gervais resigned), Packet Rabbit (now operating as Veilios) had some traffic running on Path Net's network. The flow traffic data of Path Net's network indicated that Packet

---

[10] By virtue of the Purchase Agreement, Path Net had knowledge of the prefix and AS number used by Packet Rabbit's hosting network.

Rabbit / Veilios' traffic began to decrease after approximately September 5, 2022, before terminating on or about the day that Gervais broke-off all contact with the Plaintiffs.

128.    Mr. Stubbs discovered that the flow traffic for Veilios was operating through Path Net's network by way of an upstreaming provider known as Frantech (also known as PONYNET) ("Frantech"). Frantech is a long-standing hosting customer of Path Net. Like Tempest, Frantech leases server space to customers. Mr. Stubbs verified on a website know as Radar by Qrator that Frantech (a.k.a. PONYNET) was an upstream service provider for Veilios during this time period.

129.    As part of Mr. Stubbs' investigation and in response to Gervais' misconduct, Mr. Stubbs (for Path Net) set up a control on Path Net's network to reject the announcements of Veilios through Frantech.[11] As a result on October 8, 2022, Mr. Stubbs caused Veilios to no longer receive upstreaming support from Frantech (https://radar.qrator.net/as1002/providers#startDate=2022-08-09&endDate=2022-11-09&tab=returning).

130.    To summarize facts particularized above:
   a)  on August 23, 2022, the Plaintiffs cut-off Packet Rabbit's access to use the ASN 39967;
   b)  on or about August 25, 2022, in place of Path Net's ASN, Packet Rabbit began receiving a new ASN by way of a network registered with ARIN as Veilios. The Plaintiffs state that Packet Rabbit did not procure or register an ASN with ARIN in its own name because that would have been searchable by the Plaintiffs. Gervais' motive for this was to conceal from Path Net the fact that Packet Rabbit was continuing to operate;
   c)  Mr. Stubbs was able to trace Packet Rabbit to Veilios by way of its known prefixes and its former AS number (from when Packet Rabbit received ASN services from Path Net); and
   d)  Mr. Stubbs also able to trace Packet Rabbit to Veilios by way of the upstreaming support it received by way of Frantech.

131.    The ordinary way for an individual to examine the customer traffic of a hosting provider (such as Packet Rabbit) is to look-up their ASN on websites such as PeeringDB (https://www.peeringdb.com/) and BGP Tools (https://bgp.tools/). By using the entity of Veilios as

---

[11] In layman's terms, Gervais used Frantech (a customer of Path Net) to acquire upstreaming support for Packet Rabbit / Veilios at a time when Gervais was attempting to conceal the continued operations of Packet Rabbit / Veilios. As Frantech was a customer of Path Net's, Mr. Stubbs had the ability to cut-off Packet Rabbit / Veilios from receiving the upstreaming support of Frantech.

Packet Rabbit's ASN provider, the Packet Rabbit customer network no longer appears on these websites. The Plaintiffs state that Gervais' motive for this switch was in furtherance of concealing from the Plaintiffs that Packet Rabbit was continuing to operate.

132.    For greater clarity, Packet Rabbit remains an active business. Packet Rabbit is simply using Veilios as the name of the company through which Packet Rabbit is listed in public databases. Gervais' operation of Packet Rabbit is in breach of the Purchase Agreement.

133.    Notwithstanding this distinction between Veilios and Packet Rabbit, the Plaintiffs state that Veilios *is* a sham business whose only purpose is to help conceal Packet Rabbit's customer traffic from the Plaintiffs. The Plaintiffs further state that Veilios is a shell corporation and that Gervais is the controlling mind behind Veilios. In support of these allegations, the Plaintiffs state that:

   a) on the PeeringDB webpage for Veilios (https://www.peeringdb.com/org/33150), the address of Veilios is 70 Bongard Avenue, Ottawa, Ontario. This is the address the same address as listed for Packet Rabbit in the Purchase Agreement and in its Federal Corporate Profile;

   b) the registered corporate address of Veilios (530-B Harkle Road, #100, Santa Fe, New Mexico) is a corporate services company known as "New Mexico Registered Agent by High Desert Corporate Filings LLC" (https://www.newmexicoregisteredagent.com/contact-us/);

   c) according to the OpenCorporates page for Veilios, between August 20 and September 1, 2021, the company "Registered Agents Inc." was added as an officer. Registered Agents Inc. is itself a corporate services company (https://www.registeredagentsinc.com/);

   d) the only listed officer on the corporate profile of Veilios according to OpenCorporates is one Riley Park. Riley Park is also a director and officer for 14,466 companies across the United States in his capacity on behalf of Registered Agents Inc. (https://www.bizapedia.com/people/riley-park.html); and

   e) as detailed below in the section concerning the present size and scope of Packet Rabbit, all of the servers nominally registered to Veilios have originating information associated with Packet Rabbit and Gervais.

**Information on the Size and Scope of Packet Rabbit**

134.    The websites Censys.io (https://search.censys.io/) and IPInfo.io (https://ipinfo.io) are online registries and public databases for online hosting service providers. Their purpose is to provide the public with transparent information with respect to the operations of online hosting

service providers. As a result of Packet Rabbit receiving ASN support via Veilios, Packet Rabbit no longer appears on these websites - instead, Veilios does. Veilios' AS number is 1002.

135.     According to the Censys.io page for Velios as of November 10, 2022,[12] Veilios has 57 "hosts" operating presently. Hosts is  word that often refers to servers (physical or virtual servers).

136.     Each host / server has its own IP address. As of November 10, 2022, 57 distinct IP addresses are registered to Packet Rabbit (via the Veilios ASN). In other words, as of November 10, 2022, the size and scale of Packet Rabbit's operation is 57 servers. However, as some of these servers may be "virtual servers" (ie. not physical machine servers slotted into racks in a data center), this number likely falls on the high end of Packet Rabbit's estimated size.

137.     An examination of each of the IP addresses registered to Packet Rabbit (o/a Veilios), indicates that they all have originating registration information for Packet Rabbit and Gervais. For example, the originating information for server bearing IP address 23.137.57.5 is registered to the ARIN number for Gervais, personally (GERVA23-ARIN).

**October 4, 2022, and Onward – Gervais directly solicits the Plaintiffs' Customers**

138.     After Packet Rabbits / Veilios lost access to Path Net's secure network as a result of Mr. Stubbs rejecting their announcements via Frantech, Gervais sought to re-gain access to Path Net's network by attempting to sign-up as a new customer account to Tempest.

139.     On or about October 3, 2022, Tempest received a new customer account request from a user providing the name of "Dees Nutiam" and the email address deesnutiam@protonmail.com. In the cybersecurity community, Proton Mail is widely known as an end-to-end encrypted and anonymous email service provider that caters to cybercriminals or those who seek to conceal their identity. Further, the "Dees Nutiam" user attempted to pay for their access to servers using cryptocurrency. These events triggered Tempest to request identity verification for the customer.

140.     "Dees Nutiam" did not provide identity verification. Instead, Dees Nutiam complained to a Tempest support person, Mr. Gomes. By this time, Mr. Gomes had become and employee of the

---

[12] The Censys.io page for Veilios, which updates frequently / daily, is accessible at: https://search.censys.io/search?resource=hosts&sort=RELEVANCE&per_page=25&virtual_hosts=EXCLUDE&q=autonomous_system.asn%3D1002.

Plaintiffs. Dees Nutiam communicated with Tempest's support person via the IP address of 198.98.50.36. This IP address is registered to Frantech (https://whatismyipaddress.com/ip/198.98.50.36).

141.    As previously stated, the only customer traffic of Frantech that was blocked was certain traffic identified as for Packet Rabbit / Veilios. To state otherwise, no one else using a Frantech IP address would have had an urgent rationale to try to sign up with Tempest on October 3, 2022, except for Gervais.

142.    The Plaintiffs further learned that the User Agent ID by which Dees Nutiam communicated with in the Tempest support chat is the same User Agent ID that was associated with Gervais' MacBook Pro that used while he was employed by the Plaintiffs.

**Harassment by Gervais of the Plaintiffs and their Staff – Record of Misconduct**

143.    After abusing Tempest's support person and being blocked and after being denied access to Tempest's services, "Dees Nutiam" began leaving offensive and defamatory posts on various online forums including Trust Pilot.

144.    The Plaintiffs allege that Gervais is "Dees Nutiam".

145.    On or about October 5, 2022, Gervais, using the username "wdmg", began posting false, slanderous and defamatory statements on a forum for online virtual hosting known as LowEndTalk (https://lowendtalk.com/). In his postings as "wdmg", Gervais states that he is a credible source for the statements that he was making because he is a former CEO of Tempest. As previously mentioned, "cmg" was Gervais' handle on Signal and Discord, which is substantially similar to wdmg used on LowEndTalk.

146.    Gervais' false and defamatory postings (whether as "wdmg" or "cmg") include statements against the Plaintiffs and certain of its staff. Among other things, Gervais has attempted to renew interest in a dangerous conspiracy that Mr. Shiratori is a sexual predator. That conspiracy had been pushed by Farooqui, a previous employee of Tempest, in which Farooqui doxxed Mr. Shiratori and Webb for the purpose of inciting harassment and death threats against them.[13]

---

[13] Toronto Court File No.: CV-22-00676147-0000. Farooqui commenced a hacking and cyber-defamation campaign against the Plaintiffs and certain of its staff. Among other conspiracies spread by the defendant in that case, was a conspiracy that Mr. Shiratori was a sexual predator. In that case, Farooqui spread his conspiracies on a website called

147.     Gervais' has also repeatedly made similar false and defamatory posts against the Plaintiffs on Discord via his known username of "cmg".

148.     Path Net conducted further investigations on open source internet sites published in the United States and Canada which gave them further concern that Gervais had previously engaged in unlawful conduct via the internet. Path Net took steps to verify the information posted.

149.     The further investigations conducted by Path Net of open source internet sites published in the United States and Canada which gave them further concern that Gervais had previously engaged in unlawful conduct via the internet added to the reasons why the Plaintiffs brought this litigation and the injunctive relief sought herein.

**Gervais Attempts to Access the Plaintiffs' Network**

150.     Between October 15 and October 22, 2022, Gervais attempted to access the Plaintiffs' network approximately 91 times using his employee credentials saved to his phone and computer. Gervais made these attempts notwithstanding his resignation on September 15, 2022. The fact that Gervais attempted 91 times to access the Plaintiffs' network invites the question: what would Gervais have done had the Plaintiffs not revoked his credentials.

**Gervais' Continued Solicitation of Path Net Customers**

151.     Since Gervais' abrupt resignation of his employment with Tempest on or about September 16, 2022, the Plaintiffs have learned that Gervais has targeted customers of the Plaintiffs to leave their service agreements with Path Net and Tempest and instead become a customer of Packet Rabbit / Veilios or alternatively GSK. Gervais signed a non-solicitation and non-compete restrictive covenants as part of his Employment Agreement, which included agreements to refrain from soliciting or competing for two years after termination of employment.

152.     The Plaintiffs state that, in addition to Gervais' breach of the non-solicitation and non-compete restrictive covenants of the Employment Agreement, Gervais has retained confidential

---

kiwifarms.net, which has a reputation for organizing cyber-harassment campaigns and acts of vigilantism. Mr. Shiratori and others began receiving death threats. Gervais had knowledge of the defendants' conspiracy-spreading and defamatory statements. By alluding to Mr. Shiratori remaining employed by the Plaintiffs online, Gervais' objective was to facilitate similar threats and harassment against him.

information of the Plaintiffs including specifically a list of the Plaintiffs' customers and their contact information and is using this confidential information to target them.

153.     On January 4, 2023, a Tempest customer known online by the handle / username "Jer" was contacted by Gervais over Discord. As Jer is a customer of Tempest, Gervais would have had correspondence with him during his employment with Tempest. Gervais attempted to persuade Jer to terminate his services with the Plaintiffs and retain his company, Packet Rabbit instead. Gervais' solicitation of Jer evidences that Gervais' misconduct had no sign of stopping even many months after his resignation. Jer later contacted the Plaintiffs and provided them with a record of his contact with Gervais.

**December 23, 2022 – Twitter Users Independently Link Packet Rabbit to Veilios**

154.     On December 23, 2022, a Twitter user known by the handle @KaliRoseWolf posted on Twitter that she had detected that Packet Rabbit was the hosting provider for alt-right doxing and cyber harassment platform known as kiwifarms.net. This is the same website that Farooqui had resorted to in the Farooqui Action to facilitate the death threats and cyber harassment against Mr. Shiratori and Webb.

155.     In one of @KaliRoseWolf's tweets, she traced the AS number of Veilios Hosting LLC ("Veilios") to deduce that Veilios is actually the same entity as Packet Rabbit. This is the same conclusion as drawn out above. At the same time, various other Twitter users had also made the connection that Veilios and Packet Rabbit were one in the same. Various Twitter users also arrives at the conclusion that Gervais was the operator of Packet Rabbit. The tweets of @KaliRoseWolf and other Twitter users reveal that they were interested in investigating Packet Rabbit o/a Veilios because Packet Rabbit o/a Veilios was providing hosting support to the alt-right doxing and cyber harassment platform, kiwifarms.net.

**January 5-6, 2023 – Ransoming of the Plaintiff's Stolen Code by Gervais**

156.     On January 5, 2023, at 6:37 PM MST (or 8:37 PM EST), an individual going by the username / handle of "Archetype" on Discord posted to the Discord channel of a former Path Net customer known as Frantech.  Archetype tagged Webb in his post to get his attention. In his post, Archetype advised that "theres a lot of code on same in a private community". The code Archetype was referring to was the Plaintiffs' code.

157.    Upon receiving this post, Webb convened a meeting on Google Meets of Path Net's staff including Mr. Kraklan, Mr. Stubbs, and Mr. Shiratori. Webb also to invite another Path Net employee, Chase Hiltz, to our meeting so that Mr. Hiltz could correspond with "Archetype" via private message on Discord.

158.    Between approximately 9:00 PM EST and 11:28 PM EST, Mr. Hiltz corresponded with Archetype via private messages on Discord.

159.    A review of the profile page for the user "Archetype" indicates that the profile was created *that very day, January 5, 2023.* The inference to be drawn from this is that "Archetype" is a persona created for the purpose of disseminating information with respect to the ransoming of our / the Plaintiffs' most sensitive and confidential information.

160.    A summary of Mr. Hiltz's Discord correspondence with Archetype is as follows:

a)  Mr. Hiltz asked Archetype for information on the "private community" where the Plaintiffs' most sensitive and confidential information was being advertised for ransom;

b)  "Archetype" refused to provide that information on the basis that it was invite only. The Plaintiffs concern was that if "Archetype" was an innocent third party as he claimed, there is no reason why he would he refuse to provide the person to whom he had addressed his correspondence with information to directly deal with their attacker / ransomer. The Plaintiffs' allege that "Archetype" is in fact the ransomer;

c)  Mr. Hiltz asked Archetype to provide information or snippets of the Plaintiffs' code / information being ransomed. This was so that the Plaintiffs could verify that the code / information was authentic. The snippets of code / information provided was authentic;

d)  Archetype alleged that the code fragments he provided were posted in the so-called "private community" that he would not identify. If "Archetype" was an innocent third party as he claimed, why would he act as the mouthpiece / intermediary for the ransomer? The Plaintiffs respectfully submit that this is a factor that militates the Court drawing the conclusion that "Archetype" our the ransomer;

e)  Mr. Hiltz asked Archetype for information with respect to the name or location of the Plaintiffs' attacker / ransomer. Archetype responded that the attacker / ransomer was operating on "tor" (TOR stands for The Onion Routing; in layman's terms, it refers to an encrypted a secure internet protocol that is used by users on the dark web to carry out illicit transactions online). Archetype stated that he could not provide a link to access the

TOR network to communicate with the attacker / ransomer. The Plaintiffs state that if "Archetype" was an innocent third party as he claimed, he would not act as an intermediary for the ransomer. The Plaintiffs' allege that "Archetype" is in fact the ransomer;

f)  Mr. Hiltz asked Archetype for more information regarding the Plaintiff's code / confidential information being posted. Archetype replied that the attacker / ransomer was advertising the following highly sensitive and proprietary property of the Plaintiffs for sale:

   i.   the Plaintiffs' C source code (C is a computer programing language)

   ii.   the Plaintiffs' Python source code (Python is a computer programing language);

   iii.   Path Net's Portal source code (refer to my affidavit sworn December 19, 2022 at paragraph 39);

   iv.   Tempest's WHMCS database backup data (refer to my affidavit sworn December 19, 2022 at paragraph 38. Refer to the my affidavit at paragraphs 167-168 and 178-179 for evidence regarding Gervais' previous improper access and tampering of Tempest's WHMCS data);

   v.   IP addresses of all the Plaintiffs' firewall servers;

   vi.   SSL certificates from NGINX; and

   vii.   more than 200MB of data.

The ransom price was $800,000. As stated previously, WHMCS is used to store all personal data for Tempest's customers. Were this data to be compromised or leaked, all the customers of Tempest would suffer the consequences of their personal data being put in the hands of rogues.

g)  Mr. Hiltz asked Archetype for further proof from the attacker / ransomer to validate the authenticity of the information / code being ransomed. Archetype provides some further information and advised that the so-called attacker / ransomer wanted a deposit of $50,000 for further information to verify authenticity. The Plaintiffs state that if "Archetype" was an innocent third party as he claimed, he would not continue to liaise between the Plaintiff and the attacker / ransomer for more information.

161.   During and following this correspondence with Archetype, Webb, Mr. Stubbs, and Mr. Kraklan investigated and verified the authenticity of the code fragments provided by Archetype. The code fragments were authentic. The codes are part of Path Net's proprietary computer code - its DDoS mitigation programs. DDoS mitigation is the most important and valuable aspect of Path Net's business. The damage to the Plaintiffs if these codes are leaked will be irreparable.

162.    The inference to be drawn from the authenticity of the code fragments provided is that the Plaintiffs' attacker / ransomer also has access to the other sensitive and confidential data being ransomed (ie. the Plaintiffs' C source code, the Plaintiffs' Python source code, Path Net's Portal source code, Tempest's WHMCS database backup data, IP addresses of all the Plaintiffs' firewall servers, SSL certificates from NGINX, and more than 200MB of data).

163.    As the code for Path Net's DDoS mitigation programs are incredibly valuable and sensitive, access to this information is highly restricted. As the code is for DDoS mitigation programs, the code is stored on a device called a "load balancer". A load balancer is a network device that filters incoming internet traffic and removes malicious traffic like DDoS attacks while allowing legitimate traffic to proceed. To further describe, it is the actual hardware which facilitates cyber security and DDoS mitigation.

164.    Although Path Net's DDoS mitigation code is stored on a number of load balancers, there is only one load balancer within which the Plaintiffs' C source code, Python source code, IP addresses of firewall servers, and SSL certificates from Nginx was stored. Gervais accessed this specific load balancer on June 21, 2022, at 16:35:24.

165.    With respect to the Tempest WHMCS database, this exists on a server that only Mr. Kraklan, Mr. Stubbs, and Gervais had access to during Gervais' employment. Gervais routinely accessed this device as part of his responsibilities to manage Tempest customer data on a technical level.

166.    With respect to the Path Portal source code, this data is located on a singular server. Gervais accessed this server on August 23, 2022, at 10:37 pm.  Although Gervais had access to the server containing the Path Portal source code, it was never a part of his job description to access or deal with this device or the code stored thereon. Gervais did not have any reason to access this server on August 23, 2022. At all times, Gervais worked for Tempest (not Path Net). There is no reason for him to access the Path Portal assets.

**Execution of Anton Piller Order**

167.    On January 9, 2023, the Court heard the Plaintiffs' *ex parte* motions for urgent injunctive relief. The Court granted three orders as against the defendants Gervais and Packet Rabbit:

    a)  an Anton Piller Order with respect to the Gervais Property located in Lanark, Ontario;

41

b) a 'Stand and Deliver' Order which required Gervais to deliver up all the off-site assets and data of Packet Rabbit where Packet Rabbit's servers were located; and

c) a general injunctive order which prohibited Gervais from continuing to engage in the harmful misconduct as described throughout this Statement of Claim.

The Court's ordered that the parties were to attend Court in-person on Friday, January 13, 2023, to advise on any outstanding issued following execution of the Anton Piller Order.

168.    On January 10, 2023, the Anton Piller Order was executed at the Gervais Property. Gervais was advised that the Anton Piller order provided him the right to contact and consult with his own lawyer before the search and preservation of the electronic and other documentation commenced. Gervais spoke to various lawyers between approximately 11:00am and 1:00pm. Gervais referred the Plaintiffs to a lawyer named Jonathan Kleiman who he alleged was involved in legal issues involving Packet Rabbit such that he had a defence to not transferring assets of Packet Rabbit to the Plaintiffs. Solicitor Kleiman advised that his involvement related only to issuing a demand letter for alleged owed bonuses – not a defence to issues with Packet Rabbit.

169.    During the search, various electronic devices were located including three laptops (two of which had fingerprint scanning security features), two cellular phones, and two iPad tablets. These devices were turned over to the independent supervising solicitor Michael Decsey and the data forensics expert Tom Warren. Mr. Warren indicated it was not feasible to mirror the data on-site. Gervais and the search team re-convened at a hotel to continue data preservation efforts.

170.    Prior to travelling to the hotel, a search of Gervais' pickup truck was conducted. In the pickup truck, many dozens of payment cards including credit cards and bank cards held in the name of Packet Rabbit were located. Also located in the pickup truck were deposit slips or receipts to Packet Rabbit from third parties.

171.    At the hotel, Mr. Warren and Mr. Decsey asked Gervais to provide access to his devices, including his MacBook 10 Pro laptop, and various local and cloud-based applications / websites within the scope of the Anton Piller order. Gervais alleged that he did not know the passwords to the applications / websites because all his log-in credentials were stored on an encrypted password repository known as "LastPass". Accordingly, Gervais had to provide access to LastPass to comply with the Anton Piller order.

42

172.    Gervais unlocked his LastPass password repository which revealed that he had saved approximately 417 sets of log-in credentials therein for Gervais' applications / websites. Mr. Warren's task was to review each application / website relevant to each password. The task could not be completed at the hotel. Gervais and Mr. Warren agreed upon a time to continue the task.

173.    In order to increase the likelihood that Gervais did not access, alter or delete relevant digital / electronic evidence prior to Mr. Warren having the chance to preserve it, Mr. Warren and Mr. Decsey decided that a new password should be created for Gervais' LastPass account. In other words, the plan was that if Gervais could not access his LastPass account, he ought not to be able to access his 417 accounts and the information stored thereon thereby safeguarding against Gervais altering or destroying or deleting evidence subject to the Anton Piller order. Gervais confirmed that he did not have other means to access his 417 (approximate) accounts than via LastPass and agreed to allow Mr. Warren and Mr. Decsey to proceed.

174.    At approximately 6:30pm, Mr. Warren's attempts to mirror Gervais' data that evening concluded. Pursuant to paragraph 9 of the Anton Piller order, Gervais' electronic devices were taken by Mr. Warren to be mirrored at his lab as it was impractical to mirror them on-site.

175.    As Gervais laptops had fingerprint scanning security technology, Plaintiffs' counsel requested that Gervais meet with Mr. Warren prior or following the Court attendance on January 13, 2023, to complete mirroring of the locally-stored data and the cloud-based data accessed by way of the device. Gervais agreed.

176.    Prior to concluding for the day, the Independent Supervising Solicitor and Plaintiffs' counsel re-iterated to Gervais the terms of the Anton Piller Order which prohibited him from tampering with the electronic evidence (see paragraph 24 of the Anton Piller Order). This point was stressed to Gervais because it was possible that Gervais could access some or all of his 417 virtual accounts and tamper with the data stored thereon before Mr. Warren had an opportunity to preserve everything. Gervais agreed to comply with this term of the order.

**Delayed Enforcement of 'Stand and Deliver' Order re Off-Site Evidence of Packet Rabbit**

177.    Due to the considerable time that was spent during the execution of the Anton Piller Order on January 10, 2023, there was insufficient time to act on or enforce the Stand and Deliver order

43

which required Gervais to cooperate with Plaintiffs' counsel and deliver up evidence and assets of Packet Rabbit which were housed at the Hive Data Center in Montreal.

178.    The Stand and Deliver order concerns the possession of the assets of Packet Rabbit, including specifically its servers and related computer equipment, and the electronic data stored thereon. The Stand and Deliver order also contemplates that the allegedly stolen and ransomed data of the Plaintiffs may be stored on the servers of Packet Rabbit - ie. the evidence may be located at a place other than the Gervais Property. During the execution of the Anton Piller order, Gervais advised Mr. Decsey that place of operations of the Packet Rabbit data center ("the PR Data Center") is at the Vantage and/or Hive Data Center located in St Laurent, Quebec.

**First Extension of *Ex Parte* Orders and Mareva Injunction re Packet Rabbit**

179.    On January 13, 2023, the parties attended before the Court in-person with Mr. Warren. Gervais was self-represented. Plaintiffs' counsel advised the Court of the extra ordinary level of security set-up by Gervais to safeguard his data. The Court issued an Order which provided that:

   a) the Anton Piller order, 'Stand and Deliver' order and general injunctive order issued on January 9, 2023 were extended to January 20, 2023;

   b) Gervais was required to provide Mr. Warren with his fingerprint to unlock his two laptops to facilitate the preservation of the data thereon;

   c) Mr. Warren was authorized to preserve Gervais' data by video-recording or by other means that, in my discretion he deemed most efficient and prudent;

   d) Gervais was ordered to provide Mr. Warren access to all data held by him and his company Packet Rabbit Inc. ("Packet Rabbit") stored off-site at the Vantage and/or Hive Data Center in Montreal;

   e) Mr. Warren was authorized to review the data associated with Gervais' 417 (at least) accounts on LastPass and preserve the relevant data;

   f) a Mareva injunction freezing the assets of Packet Rabbit;

   g) Gervais must produce account statements for himself and Packet Rabbit to Plaintiffs' counsel; and

   h) requiring the parties to attend Court on January 20, 2023, at 11:00 am for the return attendance with respect to issues of compliance and continuation of this Court's Orders.

180.    Following the Court attendance, Mr. Warren and Gervais met in Perth, Ontario. Gervais provided his fingerprint to unlock his two laptops and Mr. Warren mirrored the locally-stored data

thereon. Gervais' devices were then returned to him. With this accomplished, two outstanding issues remained:

    a)  providing Mr. Warren with access to the cloud-based data associated with Gervais' 417 (at least) online accounts so that it may be preserved; and

    b)  providing Mr. Warren with access to all data held by him and his company Packet Rabbit pursuant to the 'Stand and Deliver' Order and pursuant to the Court's Order dated January 13, 2023, that was located in Quebec or elsewhere.

Pursuant to the Anton Piller order, Gervais was required to provide 'necessary assistance' to permit Mr. Warren to preserve data as listed in the Schedule A.

**Failure to Provide 'Necessary Assistance' or Spoilation of Cloud-Based Data Preservation**

181.    Following Mr. Warren's data preservation efforts in Perth on January 13, 2023, Mr. Warren advised Gervais that he would access Gervais' LastPass program from his lab in Burlington, Ontario. Gervais acknowledged Mr. Warren's intention. When Mr. Warren attempted to access Gervais' LastPass program from his lab, he was denied access, reportedly because the IP address used is different than the IP address ordinarily used by Gervais. This was unexpected, as Gervais' LastPass account had been accessed from the hotel on January 10, 2023, using Mr. Decsey's computer - a different IP address. The LastPass program advised Mr. Warren that it had sent a verification email to Gervais' email address. Mr. Warren immediately contacted Gervais that he needed to verify his access attempt.

182.    Gervais failed to respond and did not verify Mr. Warren's attempt to access his LastPass program within the 1-hour window. Instead, after the 1-hour window had elapsed, Gervais alleged to Mr. Warren and Mr. Decsey that his email (curtis@thegeekbin.com) had been 'locked down'. In other words, access to LastPass could occur without access to Gervais' email and Gervais' email could not be accessed without access to LastPass - this is the conundrum created by Gervais' boobytrapping his own electronic devices and accounts.

183.    Gervais represented to Mr. Warren that he needs to email the administrator associated with his email address, mxlogin.com aka mxroute ("MXRoute") so that the administrator can grant him (Gervais, personally) access to his email address, and from there, 'verify' Mr. Warren's attempts to log-in to his LastPass account.

184.    Gervais' proposal presented an obvious evidence-tampering risk, as allowing him to deal

with MXRoute without supervision put him essentially on the honour system. If Gervais was successful in troubleshooting with MXRoute, he would be able to access his email then directly his 417 (at least) cloud-based accounts and interfere with the data thereon before Mr. Warren.

185.    On January 19, 2023, Gervais reported to Mr. Warren that he had – without authorization – telephoned MXRoute. Gervais alleged that he called to resolve the email access issue but did not get through. Following this event, Mr. Warren emailed MXRoute to follow-up on Gervais' alleged phone call. In response, MXRoute refused to co-operate in assisting 'unlock' Gervais email. MXRoute insisted that the Plaintiffs obtain a subpoena or order from a US judge.

186.    Following this event, and as described below, Gervais has met with Mr. Warren two additional times. On each of these occasions, Mr. Warren has requested that Gervais provide an update on resolving the MXRoute email issue. Mr. Warren has also had Gervais phone and email MXRoute directly in his presence - the rationale to this being that MXRoute is obligated to assist their client (Gervais) regardless of any subpoena. In response and according to Gervais, MXRoute has blatantly refused to assist him in resolving his own email issue. According to Gervais, he remains locked out of his email address to this date.

187.    Since this event, Gervais has put access to his email at issue on the stated basis that his 417 (at least) accounts cannot be accessed without email. As described below, the Plaintiffs have learned that Gervais' statements are false, and that Gervais has in fact been accessing various accounts (including at a minimum, Twitter and Discord). Gervais' has simply been using MXRoute as his dupe to frustrate the complete execution of the Anton Pillar Order.

**The January 20, 2023, Court Attendance**

188.    On or about January 19, 2023, solicitor Michael Katzman issued a Notice of Appointment.

189.    On January 20, 2023, solicitor Katzman attended before the Court for the return of the motions to extend the injunctive relief and preservation orders against the Defendants. Solicitor Katzman advised the Court the Defendants wished to move to set-aside all the injunctive orders on the basis of material non-disclosure.

190.    On January 20, 2023, the Court issued Orders that:

a) the Anton Piller Order, 'Stand and Deliver' Order, general injuctive order and Mareva Injunction all previously issued, were extended to June 2, 2023;

b) the Defendants were permitted a one-time withdrawal of $10,000 from the account of Packet Rabbit for the purposes of paying a legal retainer;

c) the Defendants were permitted to withdraw up to $3,000 each month from the account of Packet Rabbit for monthly living expenses;[14]

d) the Defendants were to immediately comply with the January 13, 2023, order requiring the production of the bank account statements for Packet Rabbit;

e) the parties are to attend Court on June 2, 2023, to address issues regarding compliance and continuation of the Court's orders; and

f) the parties were to adhere to a timetable for the motion to set aside the injunctions.

**Preserving data from the Hive / Vantage Data Center**

191.    Following the motion on January 20, 2023, Plaintiffs' counsel contacted solicitor Katzman and requested that he provide Gervais' availability to attend at the Hive / Vantage Data Center in Montreal with Mr. Warren as required pursuant to the 'Stand and Deliver' Order dated January 9, 2023, and the Order dated January 13, 2023.

192.    On January 26, 2023, counsel for Hive / Vantage advised that many of the servers installed in Packet Rabbit's cabinets were rented from Hive / Vantage. To state otherwise, they were not owned by Packet Rabbit as Gervais. The Plaintiffs state that they relied on Gervais representation that he owned the servers as a condition of their payment of $106,000 USD to Gervais.

193.    Thereafter Gervais confirmed that he would attend with Mr. Warren on January 28, 2023, at the Data Center in Montreal.

**Meeting in Perth to Preserve Data from the Cloud Accounts**

194.    On January 28, 2023, Mr. Warren and Gervais met in Perth, Ontario. Mr. Warren requested Gervais provide his MacBook Pro laptop for Mr. Warren to take a 'Time Machine' data backup. The reason for this request was to at least preserve some cloud-based data associated with Gervais 417 (at least) online accounts given the fact that MXRoute was refusing to cooperate and grant access. Gervais refused Mr. Warren's request on the basis that his lawyer told him to.

---

[14] This order was granted on the basis of solicitor Katzman's submission that $3,000 was the monthly revenue of Packet Rabbit, and that Gervais was the breadwinner for his family.

195.    Also during this meeting, Gervais represented to Mr. Warren that he had been unable to contact MXRoute to resolve the issue of access to his email, and by extension, access to his 417 (at least) online accounts. Mr. Warren then had Gervais email the owner of MXRoute directly. To Mr. Warren's knowledge, this person has not responded to Gervais.

196.    Also during this meeting, Gervais set-up his MacBook Pro laptop. Upon opening this computer, Mr. Warren observed a background window opened of an email service - ie. Gervais was logged into an email host. This was recorded on video. Gervais promptly used a hotkey to close the email host window. Upon further inquiry, it appeared to Mr. Warren that the hotkey sequence used deleted the email host data beyond the trash / recycling bin - meaning the email data is lost forever. This was captured on camera. The Plaintiffs state that Gervais did in fact have access to his email and could access his cloud based data.

197.    Mr. Warren then noticed that Gervais was still able to access his Discord account. When Mr. Warren asked Gervais how he had access to his Discord account, when he had previously alleged that resolving the MXRoute email issue was a necessary stepping-stone, Gervais replied that he could still use Discord because the session had not stopped. The Plaintiffs allege that Gervais information was false - that Mr. Warren had Gervais' computer previously and the Discord session was stopped when Mr. Warren shut down the laptop for imaging.

**Continued Efforts Preserving data from the Hive / Vantage Data Center**

198.    Later on January 28, 2023, Mr. Warren and Gervais attended the Data Center in Montreal. Mr. Warren asked Gervais to identify the servers of Packet Rabbit. Gervais responded but omitted key information. A Hive / Vantage employee who was present with Gervais and Mr. Warren advised that the Defendants had further servers that Gervais did not tell Mr. Warren of—namely:

a)  one off-line / disconnected server purportedly owned by GSK, which was in storage (the "GSK Server"); and

b)  various other servers and physical infrastructure for Packet Rabbit that were stored at another Hive / Vantage data center in Montreal.

199.    At the Data Center in Montreal, Mr. Warren obtained an inventory of the physical servers and equipment used by the Defendants. Gervais provided Mr. Warren with a list of approximately 60 clients of Packet Rabbit. Gervais indicated he would provide Mr. Warren (via his lawyer) with

the log-in credentials to access the Packet Rabbit servers remotely and preserve the data thereon. The parties then left the Data Center in Montreal.

200.    Thereafter, Gervais did not promptly provide Mr. Warren with the information necessary to preserve the electronic evidence on the Packet Rabbit servers. Requests were made of Gervais for a Zoom meeting with Mr. Warren for the purpose of providing Mr. Warren the required information to complete the preservation efforts and to schedule another attendance in Montreal.

201.    Gervais did not initially agree to the requested Zoom meeting. After the passage of time Gervais agreed to a zoom meeting with Mr. Warren.

202.    On February 11, 2023, Gervais and Mr. Warren attended in Hive / Vantage Data Center in Montreal. Mr. Warren completed preservation of the relevant (non-end-user) servers of Packet Rabbit and obtained an inventory of Packet Rabbit's additional servers and client list.

**Gervais Accesses his Discord and Twitter Accounts, Posts Job Ad for Packet Rabbit**

203.    As previously stated, Gervais represented not to have access to his 417 (at least) online accounts and alleged that access to his email (via MXRoute) was necessary to gain access. The Plaintiffs state that this story was proffered by Gervais to frustrate execution of the Anton Piller Order and that Gervais has in fact been able to access at least some of his 417 (at least) online accounts.

204.    Since approximately January 10, 2023, the Plaintiffs have learned that:

a)   Gervais has been operating a Twitter account via the handle / username @cmg0xfe (https://twitter.com/cmg0xfe). Among other tweets, Gervais has engaged with various people with respect to his / Packet Rabbit's / Veilios' hosting of the alt-right cyber harassment forum kiwifarms.net on February 3, 2023, and defended his policy of supporting the content of this website;

b)   since at least January 23, 2023, Gervais had had access to his Discord account. On or just prior to January 23, 2023, Gervais had changed his username on Discord to "1500", which although seemingly innocuous, is used on the internet to denote members of a swatting-for-hire group on Discord;[15] and

c)   Gervais, operating on Discord at "1500", has corresponded on Discord with members in

---

[15] https://www.urbandictionary.com/define.php?term=saint%231500

the Frantech discord group—in breach of the general injunctive order.

205.    Additionally, on or shortly prior to February 2, 2023, Gervais posted a job listing on Indeed.ca seeking a "Data Center Technician". The Plaintiff alleges that Gervais intended to use this person to access and deal with the servers and data of Packet Rabbit. One key skill read:

> *"Ability to drive to the datacenter in Pointe-Claire, QC to perform maintenance*
> *tasks as required when necessary in non-production hours."*

Gervais' job posting indicates the applicant must sign a non-disclosure agreement. The Plaintiffs state that the non-disclosure agreement is contrary to the purpose of this Court's orders.

**Outstanding Data Preservation Issues**

206.    To this date, Gervais has failed to "resolve" his MXRoute email login issue. The Plaintiffs state that Gervais does in fact have access to his email and has not rendered the necessary assistance contemplated by this Court's orders to Mr. Warren or anyone else to preserve data for use in this litigation. Furthermore, the Plaintiffs state that "resolving" the MXRoute email login issue is  necessary as Gervais' accessing of email (as witnessed by Mr. Warren on February 28, 2023), his Discord, and Twitter suggest that Gervais has consistently retained access to his online accounts via means other than LastPass and/or the MXRoute-administered email.

**Urgent Injunctive Relief Requested**

207.    The Plaintiffs have particularized numerous specific tortious acts of Gervais and Packet Rabbit (collectively, the "Primary Defendants") that support their allegations of unlawful interference in economic interests, trespass to property, internet hacking, internet harassment, defamation, breach of contract, breach of confidence, breach of fiduciary duty and trust, conversion, fraud (at equity and common law), unjust enrichment, conspiracy and spoliation.

208.    The Primary Defendants have caused the Plaintiffs a loss of business as a result of his soliciting customers to leave Path Net and / or Tempest - whether to join Gervais at Packet Rabbit or to join GSK and Roosen. The Plaintiffs have lost customer contracts at a higher rate since approximately June 2022 when Gervais' misconduct was originally detected. The precise number of customers that have cancelled their services with the Plaintiffs is not known because there is no way of determining who Packet Rabbit's / Veilios' customers are without the requested injunctive relief.

209.    The Plaintiffs seek an Anton Piller Order for the purpose of, amongst other reasons, preserving evidence in the possession, power or control of the Primary Defendants that will disclose how many customers have left the Plaintiffs for Packet Rabbit. The Plaintiffs seek urgent ancillary relief by way of examinations of Gervais under oath to disclose the extent to which he has breached his fiduciary duty by transferring confidential information to their competitors. The Plaintiffs seeks urgent ancillary relief by way of transferring the operational control of Packet Rabbit from Gervais to the Plaintiff. There is a demonstrated urgency that this motion proceed *ex parte*.

210.    Given that Gervais has not complied with demands of the Plaintiffs in the past, that he has breached his fiduciary duties to the Plaintiffs, that he has engaged in covert acts to engage in the unlawful conduct toward the Plaintiff, it is not reasonable to conclude that Gervais willingly comply orders to simply turn over control of Packet Rabbit to the Plaintiffs. Additional evidence preservation orders are required to give justice to the Plaintiffs.

211.    The damages caused by the Primary Defendants' conduct have not yet been precisely quantified and continue to escalate with each passing day. The damages caused by the Primary Defendants are of a nature that cannot be compensated by a simple dollar value judgment – they must be stopped now. The balance of convenience favours the Plaintiffs for an Anton Piller order, injunctive relief and the ancillary orders requested.

212.    The Plaintiffs plead that the acts of the Primary Defendants as particularized above justify the continuation of the injunctions with ancillary orders. The Plaintiffs plead that injunctive relief is required to:

   a)  exercise its ownership over the interests and assets of the Purchase Agreement,
   b)  prohibit the misconduct of Gervais as described herein,
   c)  preserve evidence of Gervais misconduct as described herein,
   d)  obtain the Plaintiffs' confidential information that Gervais has taken,
   e)  obtain further evidence regarding his solicitations to the Plaintiffs' customers,
   f)  prevent Gervais from continuing his publication / communication of defamatory statements of the Plaintiff to anyone,
   g)  remove from the internet defamatory statements that Gervais has posted, and
   h)  such other reasons as the Plaintiff may particularize in their motion record.

***Quia Timet*** **Injunctions and Mandatory Injunctions**

213.    The Plaintiffs plead that Gervais is responsible for publishing information online and communicating with the Plaintiffs' customers, potential customers, staff, competitors, and the public generally offensive, false and defamatory statements. The Plaintiffs state that Gervais made such posts for the purpose of causing harm to the Plaintiffs - whether to their reputation or to their economic interests. The offensive posts of Gervais include, but are not limited to, his public posts on Discord, LowEndTalk, Trust Pilot, and his direct communications via Signal using various aliases as described above.

214.    The Plaintiffs requests that the Court continue the injunctions requiring Gervais to take down and/or delete all posts or publications with respect to the Plaintiffs and/or its the personnel. The Plaintiffs further plead that the Court issue an injunction restraining Gervais from posting or publishing any further similar content.

**Unlawful Interference in Economic Interests and Breach of Confidence**

215.    The Plaintiffs claim as against the Primary Defendants the tort of unlawful interference in economic interests and breach of confidence. The particulars include, but are not limited to, that:

   a)  Gervais utilized his position of influence within Path Net and Tempest to gain access to its confidential business information, including but not limited to its various infrastructure and platforms (WHMCS, Path Portal, Tempest Portal, Grafana Dashboard, the DocuSign Cloud, and others) and contact information of and correspondence involving the Plaintiffs' customers and personnel, all of which was acquired by virtue of Gervais' employment with the Plaintiffs in a position of trust and confidence;

   b)  Gervais communicated to others and used for himself and Packet Rabbit the purloined confidential information of the Plaintiffs in secret, without knowledge or notice to the Plaintiffs;

   c)  Gervais, Packet Rabbit, and the third parties to whom Gervais transmitted the Plaintiffs' confidential information, including but not limited to Roosen and GSK, misused the confidential information;

   d)  Gervais utilized his position of influence within Path Net and Tempest to access and steal their sensitive data, including but not limited to WHMCS, the Path Portal, the Tempest Portal, the Grafana Dashboard, the DocuSign Cloud, and load balancers with the intention of using that data to harm the Plaintiffs—whether by transferring it to competitors such as GSK / Roosen, or by selling it on the dark web for $800,000;

52

e) Gervais communicated with Path Net's customers after his resignation for the purpose of soliciting their business for himself and spreading misinformation about the Plaintiffs' financial health lie to cause economic damage to the Plaintiffs; and

f) such other particulars as will be provided prior to trial.

216.  As a result of the above mentioned acts, the Primary Defendants have caused a corresponding pecuniary loss (loss of business) to the Plaintiffs, the extent of which has yet to be completely determined and remains under investigation.

217.  The Plaintiff pleads that the Primary Defendants engaged in the above-mentioned acts with the knowledge that such acts would cause injury to the Plaintiffs and interfere in the Plaintiffs' economic interests and the economic interests of the Plaintiffs' stakeholders, including Marshal Webb, Path Net's employees, customers and investors. The Plaintiffs further pleads that the Primary Defendants' acts were unlawful and committed for the purpose of causing loss to the Plaintiffs.

**Breach of Contract – ICAs/Employment Agreements and Purchase Agreement**

218.  The Plaintiffs plead that the Primary Defendants are liable to them for breach of contract. The Plaintiffs state that Gervais executed various Independent Contractor Agreement (the "ICA") and Employment Agreements ("Employment Agreements") with Path Net during his employment from approximately July 8, 2021, to September 15, 2022. The ICAs / Employment Agreements all contained provisions as set out above in this Statement of Claim. For Gervais' breach of the ICAs / Employment Agreements, he is personally liable.

219.  The Plaintiffs plead that Gervais breached the terms of the the ICAs / Employment Agreements with Path Net by, *inter alia*, dishonestly, unconscionably, knowingly and/or recklessly breaching the following clauses of the ICAs / Employment Agreements:

**ICA Clauses**

a) ICA – Clause 1(b) – devoting all of Gervais' professional time and energy to the interests of the Plaintiffs, and prohibiting Gervais from acting in a conflict of interest or conducting other businesses competitive to the Plaintiffs;

b) ICA – Clauses 6(a) and (b) – maintaining the confidentiality of the Plaintiffs' confidential, sensitive and proprietary information;

c) ICA – Clause 6(c) – Gervais was prohibited, during his employment and for three years

thereafter, from soliciting any of the Plaintiffs' employees or agents away from the Plaintiffs;

d)  ICA – Clause 6(d) – Gervais was prohibited from making negative comments or disparaging statements against the Plaintiffs or any of its employees or agents;

e)  ICA – Clause 6(e) – intellectual property developed by Gervais during his employment relating to the nature of his employment are the property of Path Net. Gervais was prohibited from using Path Net's property, assets, and resources for his own personal benefit;

f)  ICA – Clause 6(f) – Gervais was required to return all of Path Net's property, assets, and resources upon the end of his employment; and

g)  such further and other particulars as may be discovered and particularized before trial.

**Employment Agreement Clauses**

h)  Employment Agreement – Clause 9, 9.5, and 12.1 – Restrictive Covenants on Confidentiality – provides that Gervais was obliged to maintain the confidentiality of the Plaintiffs' confidential, sensitive and proprietary information;

i)  Employment Agreement – Clauses 9.5, 12.1-12.2, and 13.1 to 13.8 – Restrictive Covenant regarding Intellectual Property and Inventions – provides that intellectual property of Gervais developed during his employment relating to the nature of his employment are the property of the Plaintiffs. This covenant also provides that Gervais is prohibited from using the Plaintiffs' property, assets, and resources for his own personal benefit;

j)  Employment Agreement – Clause 14, 14.1 and 14.2 – Restrictive Covenant on Non-Solicitation and Non-Interference of Employees and Agents – provides that Gervais was prohibited, during his employment and for two years thereafter, from soliciting any of the Plaintiffs' employees or agents away from them;

k)  Employment Agreement – Clause 14, 14.1 and 14.2 – Restrictive Covenant on Non-Solicitation and Non-Interference of Customers – provides that Gervais was prohibited, during his employment and for two years thereafter, from soliciting any of the Plaintiffs' customers, clients, prospects, suppliers, vendors, referral sources or other business relationships away from them;

l)  Employment Agreement – Clause 15 – Non-Competition Restrictive Covenant – provides that Gervais shall not take part in a business enterprise that competes directly or indirectly with the Plaintiffs for one year after conclusion of his employment;

m) Employment Agreement – Clause 16 – Restrictive Covenant against Disparagement – provides that Gervais was prohibited from making negative comments or disparaging statements against the Plaintiffs or any of its employees or agents;

n) Employment Agreement – Clauses 12.1 and 12.2 – Return of Company Property – provides that Gervais was obliged to return all of the Plaintiffs' property, assets, and resources upon the end of his employment; and

o) such further and other particulars as may be discovered and particularized before trial.

220.    The Plaintiffs further plead that the Primary Defendants are liable to them for breach of contract for breaching the Purchase Agreement dated March 17, 2022. The Purchase Agreement contained provisions as set out above in this Statement of Claim. For breaching the Purchase Agreement, the Plaintiffs plead that Packet Rabbit is liable and that Gervais is liable as the sole directing mind of Packet Rabbit. The Plaintiffs plead that Gervais is liable for all the tortious acts of Packet Rabbit.

221.    The Plaintiffs plead that Gervais breached the terms of the Purchase Agreement with Path Net by, *inter alia*, dishonestly, unconscionably, knowingly and/or recklessly:

a) failing to transfer all the assets and interests of Packet Rabbit as bargained for, including specifically the physical servers, routers and switched, and its customers / book of business;

b) failing to transfer all the assets and interests of Packet Rabbit prior to receipt of the purchase funds;

c) failing to wind down the operation of Packet Rabbit upon receipt of the purchase funds, and instead continuing to operate Packet Rabbit;

d) such further and other particulars as may be discovered and particularized before trial.

222.    Consequently, upon the wrongful and unlawful conduct of the defendant Gervais, the Plaintiffs have suffered the loss and harm described in paragraph 1 of this Statement of Claim.

**Piercing the Corporate Veil**

223.    The Plaintiffs pleads that Gervais has acted outside of the scope of his duties as a director and officer of Packet Rabbit, and that he used Packet Rabbit (and any such other corporate defendants as may be particularized prior to trial) for, in part, carrying out the unlawful scheme and acts against the Plaintiffs as described throughout this Statement of Claim, for Gervais' own

personal benefit and/or the unauthorized benefit of others, and as such that the Court should pierce the corporate veil of Packet Rabbit (and any such other corporate defendants as may be particularized prior to trial) and find Gervais personally liable for the unlawful conduct as alleged.

224.    The Plaintiffs further pleads that although Packet Rabbit (and any such other corporate defendants as may be particularized prior to trial) may exist for some other and *bona fide* purpose other than to shelter Gervais from liability, it has been used by Gervais as a mere alter ego to engage in the unlawful conduct as alleged in this claim.

**Breach of Fiduciary Duty and Trust**

225.    The Plaintiffs plead that, at all material times, Gervais held a key position within the Plaintiffs' organization and had significant access to the Plaintiffs' back end (the Grafana Dashboard, Path Portal, Tempest Portal, the DocuSign Cloud, and technical infrastructure) and Path Net's front end systems (WHMCS, Path Portal, and Tempest Portal). Additionally, by virtue of his employment as CEO and COO of Tempest between approximately February 10 to September 15, 2022, Gervais held an utmost position of access, confidence and trust within the Plaintiffs' organization. Access to the Plaintiffs' systems and confidential information was essential to providing Gervais with the tools which he needed to carry out the key and ordinary duties of his employment with the Plaintiffs. As a key employee, Gervais owed the Plaintiffs the duty of fidelity, loyalty, good faith, honesty and the avoidance of conflict of interests, and the duty to act in the Plaintiffs' best interest at all material times. The Plaintiffs placed a high degree of trust, confidence, and reliance in Gervais, which was known to him.

226.    The Plaintiffs further pleads that in the modern commercial context, Gervais was a fiduciary with respect to his discretionary and unsupervised access to and handling of the Plaintiffs' systems, resources and funds, and confidential information, including but not limited to their list of customers, their staff, the contact information for customers and staff, the Grafana Dashboard, WHMCS, the Path Portal, the Tempest Portal, the Docusign Cloud, confidential DDos mitigation data held on the Plaintiffs servers and load balancers, internal memoranda and information as discussed at management meetings, and other sources of information as set out above. The Plaintiffs pleads that Gervais possessed the kind of authority typically found in a relationship of dependency and vulnerability, and thus the type of relationship which justifies the imposition of fiduciary and trust duties upon Gervais.

227.    The Plaintiffs pleads that Gervais breached his fiduciary and trust duties to the Plaintiffs in that Gervais, *inter alia*, dishonestly, unconscionably, knowingly and / or recklessly:

    a)  misappropriated, misapplied, diverted, embezzled, defalcated and / or otherwise converted resources and confidential information from the Plaintiffs for his and/or Packet Rabbit's own unauthorized use and benefit, and/or the unauthorized use and benefit of others such as Roosen and GSK;

    b)  failed to disclose to the Plaintiffs his unlawful, dishonest and faithless conduct;

    c)  maintained the Plaintiffs' confidential information after his resignation in breach of his Employment Agreements / ICAs;

    d)  misused the Plaintiffs' confidential information after his resignation in breach of his Employment Agreements and ICAs;

    e)  contacted and/or solicited the Plaintiffs' customers and staff in breach of his Employment Agreements and ICAs;

    f)  conspired with Roosen, GSK and the Doe Defendants to cause harm to the Plaintiffs;

    g)  contacted Path Net's customers, investors, and staff after his resignation for the purposes of disseminating false and defamatory misinformation; and

    h)  such other particulars as will be provided prior to trial.

228.    As a result of the unlawful conduct of Gervais and his breaches of trust and fiduciary duties, the Plaintiffs have suffered the harm referred to throughout this Statement of Claim.

**Internet Harassment**

229.    The Plaintiffs claim as against Gervais for the tort of internet harassment. The Plaintiffs rely upon this Court's decision in *Caplan v. Atas*, 2021 ONSC 670, with respect to the elements of the tort. The Plaintiffs state that, since June 23, 2022:

    a)  Gervais has maliciously and/or recklessly engaged in communications and conduct so outrageous in character, duration, and extreme in degree, so as to go beyond all possible bounds of decency and tolerance;

    b)  Gervais has engaged in the misconduct with the intention to cause fear, anxiety, emotional upset or to impugn the dignity of the Plaintiffs; and

    c)  the Plaintiffs have suffered such harm.

230.    Among other acts of harassment, the Plaintiffs refer to Gervais' commentary on LowEndTalk indicating that Mr. Shiratori remains employed by the Plaintiffs. Gervais posts on this

forum were directed to Joshua Moon a.k.a. Null who is the owner and administrator of kiwifarms.net - being the website responsible for facilitating the death threats that Mr. Shiraotir and Webb received as described in the Farooqui Action. All of this was known to Gervais. Gervais knew that consequent to the death threats, Mr. Shiratori legally changed his name. The Plaintiffs state that Gervais' comment on LowEndTalk was intended to revive the campaign of cyber harassment and death threats against Mr. Shiratori, Webb and other of the Plaintiffs' staff.

231.    Among other acts of harassment, the Plaintiffs reference Gervais' spreading of false and defamatory information about them on the internet and to third parties, including with respect to their financial health. The Plaintiffs plead for the relief set out in paragraph 1 of this Claim.

**Conspiracy**

232.    The Plaintiffs plead that the Primary Defendants and the Doe Defendants conspired between and among themselves by unlawful means for the predominant purpose of visiting harm upon the Plaintiffs.

233.    The unlawful acts include the Primary Defendants' dishonest misrepresentations and material omissions during the course of Gervais' employment with the Plaintiffs, Gervais' accessing and retention of the Plaintiffs' confidential information, Gervais' transmission of the Plaintiffs' confidential information, the Primary Defendants' unlawful and concealed use of the Plaintiffs' assets (including the Tempest servers), the 'wiping' of those servers on September 30, 2022, Gervais' misrepresentations with respect to the reasons for his failure to comply with the Purcahse Agreement and transfer the assets and interests of Packet Rabbit to Path Net, the cyber harassment and defamatory statements of Gervais, Roosen with respect to the Plaintiffs, and then the further unlawful acts in an attempt to conceal the Primary Defendants' tortious and unlawful conduct.

234.    Among other unlawful conspiracies, the Plaintiffs plead that Gervais conspired with the Doe Defendants including but not limited to Roosen and GSK to access and provide them with the Plaintiffs' confidential information to enable them to defame the Plaintiffs and target / solicit the business of their customers.

235.    At all material times, all Defendants were aware, or reasonably should have been aware, of Gervais' obligations to the Plaintiffs, whether at law or at equity, or according to any applicable

statutory obligations, or according to the terms of his employment. The Defendants engaged in a series of fraudulent or otherwise unlawful activities designed and intended to cause harm to the Plaintiffs, and then to further conceal their unlawful acts, to the detriment of the Plaintiffs. Consequently, the Plaintiffs seek the relief described through this Statement of Claim.

**Spoliation**

236.    The Plaintiffs plead that Gervais and Packet Rabbit have committed acts of spoilation with respect to documents of the Plaintiffs and with respect to evidence of their tortious and wrongful conduct at issue in this action. The Plaintiffs plead that Gervais, personally and by way of his company Packet Rabbit, has intentionally destroyed evidence that is relevant to the underlying litigation, and that such evidence was destroyed after Gervais carried out the various acts alleged in this Statement of Claim.

237.    In support of this pleading, the Plaintiffs specifically reference:

   a) the customer of Packet Rabbit that attended the Hive/Vantage Data Center on January 17 and 19, 2023, and attempted to forcibly gain access to the servers and equipment of Packet Rabbit. The Plaintiffs state that Gervais directed this person to do this;

   b) that, contrary to Gervais' representation that he is 'locked out' of his 417 (at least) online accounts and email address, Gervais has in fact had access to the same since at least February 3, 2023 (being the date upon which Gervais tweeted in defence of his/Packet Rabbit's / 'Veilios' hosting of kiwifarms.net);

   c) that, contrary to Gervais' representations, that Gervais was witnessed accessing his email by Mr. Warren on January 28, 2023, and that Gervais then used a hotkey sequence to immediately and irrevocably delete the contents of the email host used;

   d) that, contrary to Gervais' representations that he is 'locked out' of his 417 online accounts and email address, Gervais has had access to his Discord account as described above;

   e) that Gervais, contrary to the Anton Piller Order which required Gervais to provide all necessary assistance to the execution of the Court's orders, Gervais sequestered information with respect to:

      i.   the GSK Server; and

      ii.  the Packet Rabbit servers, equipment and data as housed at a second Data Center location;

   f) that Gervais has posted a job advertisement on Indeed.ca seeking a data technician for Packet Rabbit in the area of the Hive/Vantage Data Center in Montreal. This job posting

was created after the January 17 and 19, 2023, attendances of Gervais' customer at the Data Center. The obvious inference is that Gervais is seeking a dupe to access and remove relevant evidence from the servers of Packet Rabbit (or the servers themselves) from the Data Center;

g) Gervais' use of 'Veilios' as an online alias for Packet Rabbit demonstrates his intention to conceal the true state of affairs of Packet Rabbit, the assets and interests of which were to belong to Path Net since March 17, 2022, pursuant to the Purchase Agreement;

h) Gervais' 'wiping' of two Tempest servers on or about September 30, 2022; and

i) such further and other incidents as described throughout this Statement of Claim, or as may yet be discovered by the Plaintiffs.

238.    The Plaintiffs plead that the defendant Gervais destroyed the documents and evidence to affect the outcome of the litigation and in an attempt to further conceal his wrongful conduct and the wrongful conduct of all Defendants. The Plaintiffs state that Gervais' 'wiping' of two servers on September 30, 2022, was itself an act of spoliation in that it may have resulted in the destruction of evidence with respect to Gervais improper misuse of the Plaintiffs' resources at a minimum. Conceivably any evidence could have been stored on these wiped servers - the Plaintiffs state that Gervais' 'wiping' of these servers occurred shortly after he was logged accessing the Plaintiffs' key confidential code which was reportedly later advertised for sale on the dark web. Consequent upon the wrongful and unlawful conduct of Gervais, the Plaintiffs have suffered the loss and harm as described throughout this Statement of Claim.

**Quantum of Damages**

239.    The Plaintiffs claim against the Defendants for general and special damages resulting from the torts as set out above, including but not limited to:

a) the USD $106,496 paid to Gervais / Packet Rabbit pursuant to the Purchase Agreement which they breached;

b) the loss of customers to the Plaintiffs, whether caused by:

i.  Gervais' and/or Packet Rabbit's solicitation of their business;

ii. the Doe Defendants' solicitation of their business enabled by Gervais' providing confidential information (such as customers' contact information and the value of customers' service agreements with the Plaintiffs) and/or making defamatory and false statements about the Plaintiffs (such as by alleging that the Plaintiffs were insolvent and at risk of closing);

iii.   Gervais' dissemination generally of the Plaintiffs' confidential information and/or false and defamatory information about the Plaintiffs;

c)   the loss of goodwill and / or confidence in the Plaintiffs, caused by Gervais' above-described misconduct;

d)   the economic cost associated with the Plaintiffs' emergency response to the notice of 'Archetype' that the Plaintiffs' confidential information and code and protected information of their customers was for sale on the dark web; and

e)   further and other losses as may be particularized prior to trial.

240.   As stated throughout this Claim, the economic harm caused by the Gervais/Packet Rabbit's solicitation of the Plaintiffs' customers remains under investigation. The Plaintiffs are constrained in their ability to determine with certainty how many customers they have lost due to the tortious acts of the Primary Defendants because they rely on their customers self-reporting that they have been solicited. The Plaintiffs believe that not all their customers are reporting that they have been contacted by Gervais or by Doe Defendants via information from Gervais.

**Punitive, Aggravated and Exemplary Damages**

241.   The Plaintiffs pleads for punitive, exemplary and aggravated damages against Gervais for general and specific deterrence purposes, to denounce the conduct of Gervais, and as retribution for the Plaintiffs as against Gervais.

**Accounting / Tracing**

242.   The Plaintiffs plead that the Defendants be ordered to account, in writing and with refence to any and all bank statements, transaction documents, invoices, receipts, work orders, or other accounting documents as may be necessary for:

a)   the receipt and disposition of the USD $106,496 advanced to them from Path Net between April 1, 2022, and July 12, 2022, pursuant to the Purchase Agreement, which Gervais and Packet Rabbit breached;

b)   the equipment, hardware, servers, and digital and/or electronic assets of Packet Rabbit in the possession, power, control or knowledge of Gervais;

c)   all the customers of Packet Rabbit serviced since March 17, 2022; and

d) any consideration advanced to Gervais and/or Packet Rabbit in exchange for the Plaintiffs' confidential information, including but not limited to the sale/ransoming of the Plaintiffs' confidential information on or about January 5, 2023.

243.    The Plaintiffs plead that the Defendants be ordered to provide the Plaintiffs with an accounting of these funds and assets prior to trial, so that the Plaintiffs may determine the location of the funds and assets or the use made of them by the Defendants, for the purse of identifying the Doe Defendants, or other forms of liability as against the Defendants.

244.    If the Defendants fail to provide the requested accounting, the Plaintiffs seek an order for third party organizations to produce banking and transaction records of their bank accounts, prior to trial, for the purpose of tracing the above-mentioned funds and assets, identifying Doe Defendants, determining whether the Defendants are liable for other torts and asserting the Plaintiffs' ownership of the funds and assets.

**Venue**

245.    The Plaintiffs propose that this action be heard in Perth, Ontario – the jurisdiction in which Gervais resides and from which he operates Packet Rabbit.

March 9, 2023

**INVESTIGATION COUNSEL PC**
350 Bay Street, Suite 1100
Toronto, ON  M5H 2S6
Fax: 416-637-3445

**Norman Groot** / **LSO No.: 43721V**
Tel: 416-637-3141
ngroot@investigationcounsel.com

**Geoff Keeble / LSO No.: 76822P**
Tel: 416-637-3145
gkeeble@investigationcounsel.com

Lawyers for the Plaintiffs

4857-5370-8630, v. 1

Court File No.: CV-22-00000100-0000

**PATH NETWORK, INC. et al.**

Plaintiffs

v.

**CURTIS MICHAEL GERVAIS et al.**

Defendants

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
PROCEEDING COMMENCED AT
PERTH

**STATEMENT OF CLAIM**

**INVESTIGATION COUNSEL PC**
350 Bay Street, Suite 1100
Toronto, ON  M5H 2S6
Fax: 416-637-3445

**Norman Groot / LSO No.: 43721V**
Tel: 416-637-3141
ngroot@investigationcounsel.com

**Geoff Keeble / LSO No.: 76822P**
Tel: 416-637-3145
gkeeble@investigationcounsel.com

Lawyers for the Plaintiffs

{00270797.1}

THE FOLLOWING DOCUMENT IS **EXHIBIT "B"** REFERRED TO IN THE AFFIDAVIT OF DAINA SLENYS SWORN BEFORE ME THE **4th** DAY OF **MAY**, 2023, IN ACCORDANCE WITH O.REG 431/20, ADMINISTERING OATH OR DECLARATION REMOTELY.

_____

**A Commissioner, etc.**
G. Keeble (LSO No. 76822P)

Court File No.: CV-22-00000100-0000

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

| | | |
|---|---|---|
| THE HONOURABLE | ) | MONDAY, THE 9TH DAY |
| *Mi* JUSTICE ABRAMS | ) | OF JANUARY, 2023 |
| | ) | |

**B E T W E E N :**

**PATH NETWORK, INC. and
TEMPEST HOSTING LLC**

Plaintiffs

and

**CURTIS MICHAEL GERVAIS,
PACKET RABBIT INC.,
JOHN DOES, JANE DOES, and DOE CORPORATIONS**

Defendants

**WARNING
YOUR COMPLIANCE WITH THIS ORDER IS REQUIRED
IMPORTANT NOTICE TO THE OCCUPANT(S) OF:
1310 Concession 1B Dalhousie Road, Lanark, Ontario K0B 1K0**

(a)     This Order, as particularized below, requires you to allow the Authorized Persons mentioned below (the "Authorized Persons") to enter the premises at **1310 Concession 1B Dalhousie Road, Lanark, Ontario (the "Premises") immediately** to explain the contents of this order and the protocol to be followed in the execution of this order.

(b)     This Order requires you to allow the Authorized Persons to enter the Premises. After entry into the Premises by the Authorized Persons, you or the person appearing to be in control of the Premises are entitled to have the Independent Supervising Solicitor or the Plaintiff's lawyer explain to you what it means in everyday language.

(c)     The Independent Supervising Solicitor ("ISS"), or the Plaintiff's lawyer, as officers of this Court, will explain the effect of this Order to you. He or she is not providing legal advice to you and no solicitor-client relationship exists or is created between the ISS or Plaintiff's lawyer and you or the person appearing to be in control of the Premises.

(d)     You are entitled to refuse to permit initial entry to the Premises before 8:00 a.m. or after 6:00 p.m. on weekdays, and on Saturday and Sundays. You must permit the initial entry to the Premises if this order is executed on a weekday between 8:00am and 6:00pm.

(e)     You are entitled to seek legal advice regarding the nature and effect of this Order and of the rights you may have to assert, including solicitor-client privilege and the privilege

1

against self-incrimination found in s. 4 of the *Evidence Act*, RSBC 1996, c. 124. You may refuse to permit the search to begin while you consult with your solicitor for no longer than two hours, unless the ISS agrees to a longer period, but you must permit entry while you consult with your lawyer to ensure that no evidence is altered or tampered with.

(f)     This Order requires you to provide information regarding the specified articles to the Authorized Persons and to hand over the specified articles which are under your control for examination and removal or copying; and prohibits you from doing certain acts such as destroying evidence. You should read the terms of the Order very carefully.

(g)     You are at liberty to apply to this Court to set aside or vary this Order upon giving 24 hours' notice to the Plaintiff's solicitor of your intention to do so.

**If you disobey this Order you may be guilty of contempt of court and may be sent to prison or fined or your assets seized.**

### ORDER

**THIS MOTION,** brought by the Plaintiffs, without notice to the Defendants, in the nature of an Anton Piller Order, requiring the defendants Curtis Michael Gervais ("Gervais") and occupants of the Premises to permit Authorized Persons as defined below to enter and remain in the Premises for the purpose of identifying, inspecting, removing and preserving certain evidence set out in Schedule "A" hereto, and ancillary relief, was heard this day at the Superior Court of Justice, 43 Drummond Street East, Perth, Ontario.

**ON READING** the Motion Record of the Plaintiffs, including the affidavit of Marshal Webb sworn December 19, 2022, the affidavit of Dylan Kraklan sworn December 15, 2022, the affidavit of Corey Shiratori sworn December 15, 2022, the affidavit of Lee Stubbs sworn December 15, 2022, the affidavit of Russ Reese sworn December 15, 2022, the affidavit of Leifur Gunnarson sworn November 4, 2022, the affidavit of Alex Azzo sworn November 4, 2022, the affidavit of Peter Potvin sworn December 15, 2022, the affidavit of Kyan Gomes sworn December 15, 2022, the affidavit of solicitor Michael DeBernardis sworn December 20, 2022, and the affidavit of Keith Elliott sworn December 14, 2022, the Supplemental Motion Record of the Plaintiffs dated January 5, 2023, and the Supplemental Motion Record No. 2 of the Plaintiffs dated January 6, 2023; and upon noting the undertaking of the Plaintiffs to abide by any order concerning damages which the Court may make arising from the granting and enforcement of this Order, and on hearing submissions of the counsel for the Plaintiffs, this Court makes the following Orders:

**Anton Piller Order**

**Entry and Search of the Premises**

1. **THIS COURT ORDERS** that the defendant Curtis Michael Gervais ("Gervais"), and / or his partner, spouse, agent, parents, and / or anyone else acting on his behalf, and any person(s) appearing to be in charge of the premises known municipally as **1310 Concession 1B Dalhousie Road, Lanark, Ontario, K0B 1K0** (hereinafter the "**Premises**") shall forthwith permit entry into the Premises to the persons authorized herein for the purposes of searching for, identifying, inspecting, preserving, reproducing, and removing into the custody of the ISS (as defined in paragraph 2 herein), any and all documents, items, devices, equipment, and any component thereof, which are listed in **Schedule "A"** hereto ("the Evidence") or which the ISS believes to be the Evidence.

2. **THIS COURT FURTHER ORDERS** that, for purposes of this Order, the defendant Gervais and / or his partner, spouse, agent, parents, and / or anyone else acting on his behalf, and any person(s) appearing to be in charge of the Premises, shall grant entry and permit re-entry into the Premises during the times and in the manner specified in this Order to the following persons, collectively or individually, at the same time or different times (such persons hereinafter collectively referred to as "Authorized Persons"):

    (a) two solicitors from the law firm of Investigation Counsel PC solicitors for the Plaintiffs;[1]

    (b) one solicitor from the law firm of Liblong Digambar PC, the Independent Supervising Solicitor" ("ISS"), and such other persons as they may designate for the continuity of evidence;[2]

    (c) one search party / investigator designated by counsel for the Plaintiffs;[3]

    (d) one data forensics experts designated by counsel for the Plaintiffs;[4] and

    (e) one audio/visual recorder as designated by counsel for the Plaintiffs.[5]

3. **THIS COURT FURTHER ORDERS** that the Independent Supervising Solicitor shall act as an officer of the Court in respect of the observance and implementation of the terms of this Order.

---

[1] Solicitors Norman Groot and Geoff Keeble.
[2] Solicitor James Kitts.
[3] Private Investigator Keith Elliott.
[4] Data forensics expert Tom Warren.
[5] Private investigator from the firm Reed Research Ltd. as designated by Keith Elliott.

3

4. **THIS COURT FURTHER ORDERS** that all persons responsible for service and execution of this Order be entitled to take all necessary reasonable measures to enforce it and to reasonably prevent or remove any impediment to its execution.

5. **THIS COURT FURTHER ORDERS** that this Order may only be served, and the initial entry to the Premises made, between 8:00 a.m. and 6:00 p.m. on a weekday. This Court orders that execution may take place for six hours after the time of entry.

6. **THIS COURT FURTHER ORDERS** that following the service of the Order on any person(s) appearing to be in charge of the Premises, no entry to the Premises shall be permitted by non-parties unless they are present at the time of entry of the Authorized Persons, or any of them, provided that the ISS and such other persons as he may require are also present. All non-parties are required to provide proof of their identity to the ISS.

7. **THIS COURT FURTHER ORDERS** that the defendant Gervais and / or his partner, spouse, agent, parents, and / or anyone else acting on his behalf, and any person(s) appearing to be in charge of the Premises, shall allow the Authorized Persons to remain on the Premises to discharge their duties as set out in this Order.

8. **THIS COURT FURTHER ORDERS** that the defendant Gervais and / or his partner, spouse, agent, parents, and / or anyone else acting on his behalf, and any person(s) appearing to be in charge of the Premises, shall allow the Authorized Persons to record by audio, video or photograph the Evidence, the Premises, and all acts, conversations and discussions occurring in the course of the Authorized Persons' search of the Premises and that relate to this Order between the time this Order is served and the completion of the search, with the exception of communications between the Defendants and their solicitors. The recordings shall be maintained by the Authorized Persons and not disclosed outside of this litigation.

9. **THIS COURT FURTHER ORDERS** that if it is deemed impracticable by the ISS, in his or her discretion, to search for, identify, inspect or reproduce evidence located on any of Gervais' and/or Packet Rabbit's computers, digital or other storage media at the Premises, the data forensics expert under the supervision of the ISS shall be entitled to remove such electronic evidence into its possession for these purposes for a period of five (5) days or such further period as may be agreed to by the parties or ordered by the Court. The ISS may permit the

4

data forensics expert to take custody of Gervais' and/or Packet Rabbit's computers, digital or other storage media for the purposes of creating a first copy and a second working copy, both of which shall be given to the ISS and not provided to counsel for the Plaintiffs without authorization by this Court.

## Rights of the Defendants and Persons Served

10. **THIS COURT FURTHER ORDERS** that at the time of initial entry into the Premises, the defendant Gervais and / or his partner, spouse, agent, parents, and / or anyone else acting on his behalf, and any person(s) appearing to be in charge of the Premises, shall be served with this Order, the Statement of Claim herein, and a copy of the Motion Record containing the evidence by which the Order was obtained, with at least one solicitor of the Plaintiffs and the ISS being present at the time of initial entry into the Premises.

11. **THIS COURT FURTHER ORDERS** that upon service of this Order, the person(s) served shall forthwith be advised in plain language by the ISS or counsel for the Plaintiffs of the nature of the Order and their legal rights, including the right to seek legal advice and to segregate documents over which legal privilege is claimed ("Privileged Documents").

12. **THIS COURT FURTHER ORDERS** that upon service of this Order, the defendant Gervais and / or his partner, spouse, agent, parents, and / or anyone else acting on his behalf, and any person(s) appearing to be in charge of the Premises, shall be served with this Order, may consult with their own counsel for a period not to exceed two hours after which time the search for evidence on the Schedule "A" to this Order may take place.

13. **THIS COURT FURTHER ORDERS** that upon service of this Order, and during the two hours allocated for consulting with their own counsel, the defendant Gervais and / or his partner, spouse, agent, parents, and / or anyone else acting on his behalf, and any person(s) appearing to be in charge of the Premises, shall give access to the ISS, and such other persons as he may require, to enter the Premises and take such steps as they deem necessary to secure and preserve the Evidence therein and ensure that no steps are taken to alter, deface, discard, conceal or destroy any of the Evidence while the defendant Gervais and / or his partner, spouse, agent, parents, and / or anyone else acting on his behalf, and any person(s) appearing to be in charge of the Premises and/or person(s) served are seeking legal advice.

5

14. **THIS COURT FURTHER ORDERS** that the defendants Gervais, Packet Rabbit, and / or their solicitors shall be entitled, although not obligated, to be present during the search unless their attendance delays the execution of the search as defined above.

15. **THIS COURT FURTHER ORDERS** that any Privileged Documents, identified per paragraph 11 above, shall be provided directly to the ISS and sealed pending further order of the Court.

16. **THIS COURT FURTHER ORDERS** that the Plaintiffs' solicitors shall ensure that a list is made of all the evidence that is seized or delivered up pursuant to this order and shall serve a copy of that list on the Defendant or the Defendant's solicitors.

**Obligations of the Defendants and Persons Served**

17. **THIS COURT FURTHER ORDERS** that upon service of the Order, the defendant Gervais and / or any person(s) upon whom the Order is served, shall forthwith disclose to the Authorized Persons and grant access and deliver up to the Authorized Persons any and all of the Evidence, wherever situate, as set out in Schedule "A", including but not limited to the whereabouts of all of the Evidence, whether under the possession, custody or control of the Defendants or any third party.

18. **THIS COURT FURTHER ORDERS** that upon service of this Order, the defendant Gervais and / or any person(s) upon whom the Order is served, shall forthwith render any necessary assistance to the Authorized Persons to locate, decode, access, and decrypt the Evidence and any and all information or electronic data to which the Authorized Persons may not have ready and immediate access, including the provision of all keys, identification codes, passwords, passphrases, or any other information or knowledge necessary to achieve access thereto.

19. **THIS COURT FURTHER ORDERS** that upon service of this Order, the defendant Gervais and / or any person(s) upon whom the Order is served, shall forthwith render any necessary assistance to the ISS and the persons assisting him or her to enable them to effectively carry out their responsibilities under this Order including the provision of all identification codes, passwords, passphrases, or any other such information or knowledge necessary to download information from cloud technology.

6

**Custody of, Access to, and Use of Evidence Seized or Delivered Up**

20. **THIS COURT FURTHER ORDERS** that all evidence seized pursuant to this Order, including the Privileged Documents, shall be held in the custody of the ISS pending the trial of this action, or until such time as the Court orders otherwise.

21. **THIS COURT FURTHER ORDERS** that the defendant Gervais and/or his solicitors shall be provided with reasonable access to all evidence in the custody of the ISS for the purpose of examining and making copies of the said evidence in the presence of the ISS.

22. **THIS COURT FURTHER ORDERS** that the Plaintiffs shall not be permitted to access the evidence seized prior to the delivery of the Defendants' Affidavit of Documents unless the Defendants consent or this Court orders otherwise.

23. **THIS COURT FURTHER ORDERS** that the evidence seized shall be used by the Plaintiffs only for purposes of this Action unless the Court orders otherwise.

**Prohibited Acts**

24. **THIS COURT FURTHER ORDERS** that, unless otherwise ordered by this Court, the defendants Gervais, Packet Rabbit, and / or any person(s) served with this Order, shall not directly or indirectly, by any means whatsoever:
    (a) remove any Evidence from the Premises, erase or delete from any means of electronic storage, or transmit any of the evidence from the Premises, or alter, deface, discard, conceal or destroy in any manner any of the Evidence; and
    (b) touch, activate, or operate any computer equipment either locally or remotely from any location, or access or alter any text, graphics, electronic data, information, or other content of any web site or its databases or any electronic mail, newsgroup or Internet relay chat communications, or other information, instructions or data stored in any location remote from the Named Premises that may contain or constitute the Evidence.

25. **THIS COURT FURTHER ORDERS** that, in order to give effect to the Order, any person who is ordered not to do something, shall not do it personally, directly or indirectly, through others acting on his behalf, or on his instructions, or with his encouragement or acquiescence, or in any other way.

7

4887-7985-5432, v. 1

**Variation/Discharge or Confirmation of Order**

26. **THIS COURT FURTHER ORDERS** that the terms of this Order shall remain in force and be effective for ten (10) days, and that the Plaintiffs and the defendant Gervais attend to this Court on **Friday, January 13, 2023, at ~~10:00 a.m.~~**, *2:00 p.m.* or such other date and time as the Court may direct, to seek a continuation of this Order.

27. **THIS COURT FURTHER ORDERS** that the defendant Gervais or any person with notice of this Order, may apply to the Court at any time to vary or discharge this Order or so much of it as affects such person, but anyone wishing to do so shall provide the Plaintiffs' solicitors with at least twenty-four (24) hours' notice in writing thereof.

**Report to the Court**

28. **THIS COURT FURTHER ORDERS** that the ISS, upon receipt of a request in writing from any party, shall within seven (7) business days of receiving such request, deliver a report which describes the execution of this Order, who was present at the execution, and what materials were reproduced and/or removed into the custody of the ISS, and deliver a copy of the report to the parties, or their solicitors of record, and that the costs of the preparation of such a report shall be in the discretion of the Court as to quantum and the party who should bear them.

The Hon. Mr. Justice Brian W. Abrams
Superior Court of Justice

**PERTH**

JAN 0 9 2022

**73-38**

8

4887-7985-5432, v. 1

**SCHEDULE "A" - THE EVIDENCE**

i.    any assets, items, notes, files and such other documents, whether physical or electronic, located at 1310 Concession 1B Dalhousie Road, Lanark, Ontario (the "Premises"), which may have originated from Gervais' employment with the Plaintiffs;

ii.   any and all communications, business, or financial transactions (whether in hard copy or electronic form) conducted by Gervais and / or Packet Rabbit between March 17, 2022, to present with respect to the plaintiffs Path Network Inc. ("Path Net") and Tempest Hosting LLC ("Tempest") (collectively the "Plaintiffs"), the Plaintiffs' current or former staff, and all current, former, and prospective customers of the Plaintiffs;

iii.  any and all assets, items, notes, files and such other documents, whether physical or electronic, located in the Premises, which may have originated from Gervais' employment with Path Net and Tempest;

iv.   any and all assets and interests of Packet Rabbit including specifically all servers, all server cabinets, all IP addresses, all AS numbers, and information of all current and former customers of Packet Rabbit;

v.    any and all communication records, whether in hard copy or electronic form, involving Gervais (including by any alias of Gervais including but not limited to "cmg", "wdmg", "Dees Nutiam", "Johnaton Gater", "Archetype", cg@metaltux.com, curtis@thegeekbin.com, curtis@veilios.com, curtis@path.net, deesnutiam@protonmail.com, and such other aliases as may be provided, or any variation thereof), and in particular such communications with the Plaintiffs, their current and former staff, and the Plaintiffs' current, former, and prospective customers, involving the solicitation and diversion of customers of the Plaintiffs to Packet Rabbit and/or GSK (as defined in the Notice of Motion);

vi.   any and all of the following information, electronic data and / or code of the Plaintiffs as advertised for sale or ransom online pursuant to the information of "Archetype" (refer to the Affidavit of Marshal Webb, sworn January 6, 2022 and the Discord message attached as Schedule "B" to this Order):

     a)  the Plaintiffs' C source code;

9

b) the Plaintiffs' Python source code;

c) the source code for the Path Portal;

d) the Tempest's WHMCS database backup data;

e) IP addresses of all the Plaintiffs' firewall servers;

f) SSL certificates from NGINX; and

g) more than 200GB of the Plaintiff's data.

vii.   any and all statements and/or posts published by the user known as "wdmg" on the LowEndTalk internet forum (accessible at https://lowendtalk.com/) with respect to the Plaintiffs, their current and former staff, and the Plaintiffs' current, former, and prospective customers, involving the solicitation and diversion of customers of the Plaintiffs to Packet Rabbit and/or GSK (as defined in the Notice of Motion);

viii.  any and all statements and/or posts published by Gervais (including by any alias of Gervais as described above) on the website Trust Pilot for the plaintiffs Path Net (accessible at https://www.trustpilot.com/review/path.net and https://ca.trustpilot.com/review/path.net) and / or Tempest (accessible at https://www.trustpilot.com/review/tempest.net and https://ca.trustpilot.com/review/tempest.net);

ix.   any and all statements and/or posts published by Gervais (including by any alias of Gervais as described above) on communication programs known as Discord (https://discord.com/) and Slack (https://slack.com/) with respect to the Plaintiffs, their current and former staff, and the Plaintiffs' current, former, and prospective customers, involving the solicitation and diversion of customers of the Plaintiffs to Packet Rabbit and/or GSK;

x.   any and all communications records, whether in hard copy or electronic form, between Gervais (including by any alias of Gervais as described above) and any third parties, from March 17, 2022, to present, relating to any use which Gervais or Packet Rabbit may have made of confidential information which Gervais may have obtained from his employment with the Plaintiffs;

xi.   any and all communications and records, whether in hard copy or electronic form, related to or referencing the websites of Packet Rabbit (https://packetrabbitinc.com/) and Veilios Hosting LLC (https://veilios.com/), from March 17, 2022, to present;

10

xii.    any and all communications records, whether in hard copy or electronic form, by Gervais (including by any alias of Gervais as described above), from March 17, 2022, to present, referencing the Plaintiffs and any of its current or former staff members, including but not limited to: Marshal Webb, Corey Shiratori (a.k.a. August Heart f.k.a. Corey Barnhill), Russ Reese, Lee Stubbs (aka Zigi), Yvonne Irizarry, Dylan Kraklan, Victor Heilskov, Alex Azzo, Kyan Gomes, Peter Potvin, and others as may be particularized;

xiii.    any and all communications records, whether in hard copy or electronic form, involving, related to or referencing Gervais' (including by any alias of Gervais as described above), related to or referencing the Plaintiffs, any of its current or former staff, and any of its current, former or prospective customers, from March 17, 2022, to present;

xiv.    any and all communications records, whether in hard copy or electronic form, involving, related to or referencing Gervais' (including by any alias of Gervais as described above), related to or referencing Renaul Roosen, Game Server Kings, Cosmic Global Networks, or CosmicGuard, from March 17, 2022, to present;

xv.    any and all bank account statements and transaction records for the Royal Bank of Canada bank account of Packet Rabbit, bearing Account No.: 003-00842-1008838 (the "Packet Rabbit Account"), from March 17, 2022, to present;

xvi.    any and all banking, business or financial transactions conducted by Gervais and / or Packet Rabbit with respect to the Plaintiffs, and its current, former or prospective customers since March 17, 2022; and

xvii.    any and all banking, business or financial transactions conducted by Gervais and / or Packet Rabbit with respect to the receipt and disposition of USD $106,496 advanced to Gervais and / or Packet Rabbit between April 1, 2022, and July 12, 2022.

4887-7985-5432, v. 1

**Schedule "B"**

Discord Post of "Archetype" dated January 5, 2023, indicating the Plaintiffs' Assets for Sale on the Dark Web



**Archetype**  Today at 9:47 PM
post listed these

c source code
python source code
path portal source code
whmcs database backup
ips of all firewall servers
ssl certificates from nginx
more than 200mb data

code i shared u was posted as proof

for sale price is 800.000$

12

Court File No.: CV-22-00000100-0000

PATH NETWORK, INC. et al.

Plaintiffs

v.

CURTIS MICHAEL GERVAIS et al.

Defendants

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
PROCEEDING COMMENCED AT
PERTH

**ORDER**

**INVESTIGATION COUNSEL PC**
350 Bay Street, Suite 1100
Toronto, ON  M5H 2S6
Fax: 416-637-3445

**Norman Groot / LSO No.: 43721V**
Tel: 416-637-3141
ngroot@investigationcounsel.com

**Geoff Keeble / LSO No.: 76822P**
Tel: 416-637-3145
gkeeble@investigationcounsel.com

Lawyers for the Plaintiffs

THE FOLLOWING DOCUMENT IS **EXHIBIT "C"** REFERRED TO IN THE AFFIDAVIT OF DAINA SLENYS SWORN BEFORE ME THE **4th** DAY OF **MAY**, 2023, IN ACCORDANCE WITH O.REG 431/20, ADMINISTERING OATH OR DECLARATION REMOTELY.

_____

**A Commissioner, etc.**
G. Keeble (LSO No. 76822P)

Court File No.: CV-22-00000100-0000

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

| | | |
|---|---|---|
| THE HONOURABLE | ) | MONDAY, THE 9TH DAY |
| | ) | |
| *Ur* JUSTICE ABRAMS | ) | OF JANUARY, 2023 |

**B E T W E E N :**

**PATH NETWORK, INC. and
TEMPEST HOSTING LLC**

Plaintiffs

and

**CURTIS MICHAEL GERVAIS,
PACKET RABBIT INC.,
JOHN DOES, JANE DOES, and DOE CORPORATIONS**

Defendants

**ORDER**

**THIS MOTION,** brought by the Plaintiffs, without notice to the Defendants, in the nature of a **'Stand and Deliver' order**, and other relief, was heard this day at the Superior Court of Justice, 43 Drummond Street East, Perth, Ontario.

**ON READING** the Motion Record of the Plaintiffs, including the affidavit of Marshal Webb sworn December 19, 2022, the affidavit of Dylan Kraklan sworn December 15, 2022, the affidavit of Corey Shiratori sworn December 15, 2022, the affidavit of Lee Stubbs sworn December 15, 2022, the affidavit of Russ Reese sworn December 15, 2022, the affidavit of Leifur Gunnarson sworn November 4, 2022, the affidavit of Alex Azzo sworn November 4, 2022, the affidavit of Peter Potvin sworn December 15, 2022, the affidavit of Kyan Gomes sworn December 15, 2022, the affidavit of solicitor Michael DeBernardis sworn December 20, 2022, and the affidavit of Keith Elliott sworn December 14, 2022, the Supplemental Motion Record of the Plaintiffs dated January 5, 2023, and the Supplemental Motion Record No. 2 of the Plaintiffs dated January 6, 2023; and upon noting the undertaking of the Plaintiffs to abide by any order concerning damages which the

Court may make arising from the granting and enforcement of this Order, and on hearing submissions of the counsel for the Plaintiffs, this Court makes the following Orders:

1. **THIS COURT ORDERS** that upon service of this Order that the defendant Gervais immediately advise counsel for the Plaintiffs in writing of the identity of the data centre of operations of the corporate defendant Packet Rabbit (the "PR Data Center") and provide counsel for the Plaintiff any documentation for PR Data Center.

2. **THIS COURT FURTHER ORDERS** that within 24 hours of being served with this Order that the defendant Gervais attend with one or more of the Authorized Persons listed in paragraph 4 of the Notice of Motion to said PR Data Center and deliver to the Authorized Person(s):

    i. all assets and interests, including specifically all servers, all server cabinets, all IP addresses, and any other data and documentation related to Packet Rabbit; and, for greater clarity;

    ii. the items listed at paragraph 3(a) of the Notice of Motion; and

    iii. any and all of the following information, electronic data and / or code of the Plaintiffs as advertised for sale or ransom online pursuant to the information of "Archetype" (refer to the Affidavit of Marshal Webb, sworn January 6, 2022 and the Discord message attached as Schedule "A" to this Order):

        a) the Plaintiffs' C source code;

        b) the Plaintiffs' Python source code;

        c) the source code for the Path Portal;

        d) the Tempest's WHMCS database backup data;

        e) IP addresses of all the Plaintiffs' firewall servers;

        f) SSL certificates from NGINX; and

        g) more than 200GB of the Plaintiff's data.

The Hon. Mr. Justice Brian W. Abrams
Superior Court of Justice

**PERTH**

JAN 0 9 2022

**73-38**

**Schedule "A"**

Discord Post of "Archetype" dated January 5, 2023, indicating the Plaintiffs' Assets for Sale on the Dark Web



Court File No.: CV-22-00000100-0000

PATH NETWORK, INC. et al.

Plaintiffs

v.

CURTIS MICHAEL GERVAIS et al.

Defendants

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
PROCEEDING COMMENCED AT
PERTH

**ORDER**

**INVESTIGATION COUNSEL PC**
350 Bay Street, Suite 1100
Toronto, ON  M5H 2S6
Fax: 416-637-3445

**Norman Groot / LSO No.: 43721V**
Tel: 416-637-3141
ngroot@investigationcounsel.com

**Geoff Keeble / LSO No.: 76822P**
Tel: 416-637-3145
gkeeble@investigationcounsel.com

Lawyers for the Plaintiffs

THE FOLLOWING DOCUMENT IS **EXHIBIT "D"** REFERRED TO IN THE AFFIDAVIT OF DAINA SLENYS SWORN BEFORE ME THE **4th** DAY OF **MAY**, 2023, IN ACCORDANCE WITH O.REG 431/20, ADMINISTERING OATH OR DECLARATION REMOTELY.

_____

**A Commissioner, etc.**
G. Keeble (LSO No. 76822P)

Court File No.: CV-22-00000100-0000

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

| THE HONOURABLE | ) | MONDAY, THE 9TH DAY |
|---|---|---|
| M( JUSTICE ABRAMS | )<br>) | OF JANUARY, 2023 |

**B E T W E E N :**

**PATH NETWORK, INC. and
TEMPEST HOSTING LLC**

Plaintiffs

and

**CURTIS MICHAEL GERVAIS,
PACKET RABBIT INC.,
JOHN DOES, JANE DOES, and DOE CORPORATIONS**

Defendants

**ORDER**

**THIS MOTION,** brought by the Plaintiffs, without notice to the Defendants, in the nature of an interim and interlocutory injunction and mandatory orders with respect to the publication by the defendant Curtis Michael Gervais of defamatory posts and statements on the internet and various communication platforms regarding the Plaintiffs, and other relief, was heard this day at the Superior Court of Justice, 43 Drummond Street East, Perth, Ontario.

**ON READING** the Motion Record of the Plaintiffs, including the affidavit of Marshal Webb sworn December 19, 2022, the affidavit of Dylan Kraklan sworn December 15, 2022, the affidavit of Corey Shiratori sworn December 15, 2022, the affidavit of Lee Stubbs sworn December 15, 2022, the affidavit of Russ Reese sworn December 15, 2022, the affidavit of Leifur Gunnarson sworn November 4, 2022, the affidavit of Alex Azzo sworn November 4, 2022, the affidavit of Peter Potvin sworn December 15, 2022, the affidavit of Kyan Gomes sworn December 15, 2022, the affidavit of solicitor Michael DeBernardis sworn December 20, 2022, and the affidavit of Keith Elliott sworn December 14, 2022, the Supplemental Motion Record of the Plaintiffs dated January

1

5, 2023, and the Supplemental Motion Record No. 2 of the Plaintiffs dated January 6, 2023; and upon noting the undertaking of the Plaintiffs to abide by any order concerning damages which the Court may make arising from the granting and enforcement of this Order, and on hearing submissions of the counsel for the Plaintiffs, this Court makes the following Orders:

1. **THIS COURT ORDERS** that until and unless otherwise ordered by this Court, the defendant Curtis Michael Gervais ("Gervais") himself personally and via the corporation Packet Rabbit Inc. ("Packet Rabbit") are hereby prohibited from contacting or communicating, directly or indirectly, with the plaintiffs Path Network, Inc. ("Path Net") and Tempest Hosting LLC ("Tempest") or its staff, other than for litigation purposes. For greater clarity, from the time of service of this order, Gervais and Packet Rabbit may only communicate with counsel for the Plaintiffs for the purposes of responding to this action, not the Plaintiffs directly.

2. **THIS COURT ORDERS** that until and unless otherwise ordered by this Court, the defendant Gervais himself personally and via the corporation Packet Rabbit are hereby restrained and prohibited from posting, pinning, blogging, commenting, or publishing, directly or indirectly, anything on any internet website, chatroom or any other forum or digital medium with respect to allegations that:

    a) the Plaintiffs, or any of the Plaintiffs' current, former and prospective staff, are dishonest, incompetent, engaged in fraud, are under investigation for any criminal, immoral, illegal or improper behavior, conduct or acts or omissions;

    b) the Plaintiffs have engaged in or will engage in any criminal, immoral, illegal or improper behavior, conduct or acts or omissions;

    c) the Plaintiffs are or are at risk of insolvency / bankruptcy, or at risk of shutting down;

    d) the Plaintiffs mislead their customers or are at risk of failing to deliver on services owed to their customers as a result of financial issues;

    e) the value of the Plaintiffs' service agreements and contracts with its current, former and prospective staff and its current, former and prospective customers;

    f) contact information for the Plaintiffs' current, former and prospective staff and contact information for the Plaintiffs' current, former and prospective customers;

    g) confidential or insider information with respect to the operations of the Plaintiffs;

    h) the Plaintiffs do not pay just dues and debts; and

2

i)   the Plaintiffs have or will engage in any conduct, behavior or acts or omissions which have the effect of impugning their respective reputations, character, intelligence, honesty, or civility in any way.

3.   **THIS COURT FURTHER ORDERS** that Gervais, and any person served with this order, shall forthwith take steps to remove any and all defamatory statements, postings, web pages, blogs, and ratings relating to the Plaintiffs and their staff, and that such removal is to be supervised by the ISS, who is duly authorized by this Court for such purposes.

4.   **THIS COURT FURTHER ORDERS** that Gervais prepare and produce an accounting, in writing, served upon counsel for the Plaintiff within seven (7) days of service of the Order, and with supporting documentary evidence including bank statements, transaction records, and any other documents to account for:

a)   the receipt and disposition of the sum of USD $106,496 transferred by the Plaintiffs to Gervais and/or Packet Rabbit between April 1, 2022, and July 12, 2022, pursuant to the Purchase Agreement dated March 17, 2022;

b)   the equipment, hardware, servers, and digital and/or electronic assets of Packet Rabbit in the possession, power, control or knowledge of Gervais; and

c)   all customers Packet Rabbit serviced since March 17, 2022;

5.   **THIS COURT FURTHER ORDERS** that Gervais shall immediately cease all correspondence with all persons whatsoever with respect to the below-listed information, code and/or property of the Plaintiffs as advertised for sale online pursuant to the information of "Archetype" (refer to the Affidavit of Marshal Webb, sworn January 6, 2023, and the Discord message attached as Schedule "A" to this Order):

a)   the Plaintiffs' C source code;

b)   the Plaintiffs' Python source code;

c)   the source code for the Path Portal;

d)   the Tempest's WHMCS database backup data;

e)   IP addresses of all the Plaintiffs' firewall servers;

f)   SSL certificates from NGINX; and

g)   more than 200GB of the Plaintiff's data.

6. **THIS COURT FURTHER ORDERS** that Gervais shall attend before this Court on **Friday, January 13, 2023, at ~~10:00 a.m.~~** to advise the Court and the Plaintiff with respect to his access, possession, use and disposition (if any) of the Plaintiffs' information, code and/or property described in paragraph 5, above.

*B.A* *2:00 p.m.*

7. **THIS COURT FURTHER ORDERS** that the motion for Gervais to attend for examination under oath is adjourned and to be spoken to at the return date of this motion.

8. **THIS COURT FURTHER ORDERS** that the terms of this Order shall remain in force and be effective for ten (10) days, and that the Plaintiffs and the defendants Gervais and Packet Rabbit attend to this Court on **Friday, January 13, 2023, at ~~10:00 a.m.~~**, or such other date and time as the Court may direct, to seek a continuation of this Order.

*2:00 p.m.* 

9. **THIS COURT FURTHER ORDERS** that upon being served with the orders issued by this Court pertaining to this motion that Gervais provide counsel for the Plaintiff with an email address for service of documents in this Action.

10. **THIS COURT FURTHER ORDERS** that the orders issued by the Court and the Notice of Action be served in hard copy on Gervais, but that all other documents including the Motion Record(s) may be served in electronic format on Gervais and other parties as required.

11. **THIS COURT FURTHER ORDERS** that the time by which a Statement of Claim is served and filed is extended 60 days.

12. **THIS COURT FURTHER ORDERS** that costs of this motion be adjudicated on a date to be scheduled with this Court.

13. **THIS COURT FURTHER ORDERS** that until and unless otherwise ordered by this Court, the defendants Gervais and / or Packet Rabbit are hereby restrained from publishing or disseminating in any way any of the evidence filed by the Plaintiffs as part of this motion, with the exception that Gervais and / or Packet Rabbit may provide such material to a licensed lawyer retained to represent them in this litigation.

4

14. **THIS COURT FURTHER ORDERS** that the Court File for this action shall be sealed until further order of this Court.

15. **THIS COURT FURTHER ORDERS** that the defendants Gervais and / or Packet Rabbit or any person with notice of this Order, may apply to the Court at any time to vary or discharge this Order or so much of it as affects such person, but anyone wishing to do so shall provide the Plaintiffs' solicitors with at least twenty-four (24) hours' notice in writing thereof.

The Hon. Mr. Justice Brian W. Abrams
Superior Court of Justice

**PERTH**

JAN 0 9 2022

**73-38**

5

**Schedule "A"**

Discord Post of "Archetype" dated January 5, 2023, indicating the Plaintiffs' Assets for Sale on the Dark Web



6

Court File No.: CV-22-00000100-0000

PATH NETWORK, INC. et al.

Plaintiffs

v.

CURTIS MICHAEL GERVAIS et al.

Defendants

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
PROCEEDING COMMENCED AT
PERTH

**ORDER**

**INVESTIGATION COUNSEL PC**
350 Bay Street, Suite 1100
Toronto, ON  M5H 2S6
Fax: 416-637-3445

**Norman Groot / LSO No.: 43721V**
Tel: 416-637-3141
ngroot@investigationcounsel.com

**Geoff Keeble / LSO No.: 76822P**
Tel: 416-637-3145
gkeeble@investigationcounsel.com

Lawyers for the Plaintiffs

THE FOLLOWING DOCUMENT IS **EXHIBIT "E"**
REFERRED TO IN THE AFFIDAVIT OF DAINA SLENYS
SWORN BEFORE ME THE **4th** DAY OF **MAY**, 2023, IN
ACCORDANCE WITH O.REG 431/20, ADMINISTERING
OATH OR DECLARATION REMOTELY.

_____

**A Commissioner, etc.**
G. Keeble (LSO No. 76822P)

**COURT FILE NO.:** CV-22-00000100-0000
**DATE:** January 9, 2023

### ONTARIO

### SUPERIOR COURT OF JUSTICE

| | | |
|---|---|---|
| **BETWEEN:** | ) | |
| | ) | |
| | ) | |
| PATH NETWORK INC. | ) | *Norman Groot*, Counsel for Path Network |
| | ) | Inc. |
| | ) | |
| TEMPEST HOSTING LLC | ) | |
| | ) | *Geoff Keeble*, Counsel for Tempest Hosting |
| Plaintiffs | ) | LLC |
| | ) | |
| – and – | ) | |
| | ) | |
| CURTIS MICHAEL GERVAIS, PACKET | ) | |
| RABBIT INC., JOHN DOES, JANE DOES, | ) | |
| DOE CORPORATIONS | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**HEARD BY VIDEOCONFERENCE:**
**January 9, 2023**

### ENDORSEMENT

**ABRAMS, J**

**Introduction**

[1] This is the Plaintiff's Motion brought *ex parte* seeking an Anton Piller Order and
other related relief in the context of an action involving the sensitive corporate date of
the Plaintiff.

[2] In my view, the record on this motion for interim, injunctive relief is fulsome and
persuasive. More specifically, the affidavits filed focus on providing direct evidence

of the affiants where possible.  Further where the evidence of an affiant relies on hearsay evidence, the out of court statement is properly qualified.

[3] The Plaintiff acknowledges that Anton Piller Orders are a measure of last resort, very intrusive and an exceptional interlocutory order: *Bergmanis v. Diamond & Diamond*, 2012 ONSC 5762.

[4] I accept that the evidence presented by the Plaintiff justifies resort to the rare remedy sought, along with the related injunctive relief, and that no advance notice should be provided to the Defendant, Curtis Michael Gervais ("Gervais").

[5] In the result, I am satisfied that the circumstances exist for granting of the Anton Piller Order in that:

    1) The Plaintiff has demonstrated a strong *prima facie* case;

    2) The damage to the Plaintiff of Gervais' alleged misconduct, potential or actual, is very serious;

    3) There is convincing evidence that Gervais, as well as corporations under his direction or related to him; have in their possession incriminating evidence; and

    4) There is a real possibility that Gervais and others acting under his control may destroy, disseminate or make use of that evidence, before the discovery process can do its work: *Celanese Canada Inc. v. Murray Demolition Corp.*, 2006 SCC 36 at para. 32, *TSI International Group Inc. v. Formosa*, 2015 ONSC 1138.

[6] For these reasons, orders signed and to issue as requested.

_____

The Honourable Mr. Justice B. W. Abrams

Released: January 9, 2023

**COURT FILE NO.:** CV-22-00000100-0000
**DATE:**  January 9, 2023


# ONTARIO

## SUPERIOR COURT OF JUSTICE

**BETWEEN:**

PATH NETWORK INC.

-and-

TEMPEST HOSTING LLC

Plaintiffs


– **and** –

CURTIS MICHAEL GERVAIS, PACKET RABBIT
INC., JOHN DOES, JANE DOES, DOE
CORPORATIONS

Defendants


---

## ENDORSEMENT

---

Abrams, J.


**Released:** January 9, 2023



ONTARIO

**ONTARIO SUPERIOR COURT OF JUSTICE**
**Perth**

**ENDORSEMENT / ORDER**

CV-22-00000100-0000
Court File No.

**B E T W E E N**

PATH NETWORK, INC. ; TEMPEST HOSTING LLC

Plaintiff(s)/Applicant(s)

- and -

CURTIS MICHAEL GERVAIS; PACKET RABBIT INC. ; JOHN DOES; JANE DOES; DOE CORPORATIONS

Defendant(s)/Respondent(s)

**BEFORE:**   Justice B. ABRAMS

**HELD BY:**   ☐ In person  ☑ Videoconference  ☐ Teleconference  ☐ In writing

**DATE:**   ~~January 06, 2023 at 04:00pm~~   January 9, 2023

**EVENT TYPE:** Motion without notice

**APPEARING**:   (Names and email addresses)

Plaintiff(s)/Applicant(s):   PATH NETWORK, INC.    *Mr. Webb*                     Present  ☐

Representative:  NORMAN GROOT (mhastings@investigationcounsel.com)     Present  ☑

Plaintiff(s)/Applicant(s):   TEMPEST HOSTING LLC   *Mr. Kerbe*           Present  ☑

Representative:  NORMAN GROOT (mhastings@investigationcounsel.com)     Present  ☑

Defendant(s)/Respondent(s):   CURTIS MICHAEL GERVAIS                Present  ☐

Representative:                                         Present  ☐

Defendant(s)/Respondent(s):   PACKET RABBIT INC.                   Present  ☐

Representative:                                         Present  ☐

Defendant(s)/Respondent(s):   JOHN DOES                          Present  ☐

Representative:                                         Present  ☐

Defendant(s)/Respondent(s):   JANE DOES                          Present  ☐

Representative:                                         Present  ☐

Defendant(s)/Respondent(s):   DOE CORPORATIONS                   Present  ☐

Representative:                                         Present  ☐

Page 2 of 3

CV-22-00000100-0000
Court File No.

Third Party or Parties                                                    Present ☐

Representative:                                                           Present ☐

**RELIEF REQUESTED:**

☐ Per notice of motion/application   ☐ Per notice of appeal   ☐ Other (specify):

**DISPOSITION:**

☐ Order to go in the form of consent / draft order submitted
☐ Order to go as asked in paragraph(s) _____ of relief requested
☐ Costs of $ _____ on a _____ indemnity basis
   are payable by _____ to _____ by _____, 20__.
☐ Parties to provide submissions as to costs of no more than ___ pages by _____ , 20__.
☐ Parties to attend before me to make oral submissions on costs on _____ , 20__.
☐ Other (specify below):

☐ No formal order need be taken out.

**BRIEF REASONS** (if any):

This is the Plaintiff's Motion brought ex parte seeking an Anton Piller Order and other related relief in the context of an action involving the sensitive corporate data of the Plaintiff.

In my view, the record on this Motion for interim injunctive relief is fulsome and persuasive. More specifically, the affidavits filed focus on providing direct evidence of...

The affiants where possible. Further,
where the evidence of an affiant relies on
hearsay evidence, the out of court statement
is properly qualified.

The Plaintiff acknowledges that
Anton Piller Orders are a measure of last resort,
very intrusive and an exceptional interlocutory
Order: Bergman's v. Diamond & Diamond, 2012
ONSC 5762.

I accept that the evidence presented by
the Plaintiff justifies resort to the rare remedy
sought, along with the related injunctive relief,
and that no advance notice should be
provided to the Defendant, Curtis Michael Gervais
("Gervais").

In the usual, I am satisfied
that the circumstances exist for granting of
the Anton Piller Order in that:
1) The Plaintiff has demonstrated
a strong prima facie case;

2) The damage to the Plaintiffs from Gervais's alleged misconduct, potential or actual, is very serious;

3) There is convincing evidence that Gervais, as well as Corporations under his direction or related to him, have in their possession incriminating evidence; and

CV-22-00000100-0000
Court File No.

4) There is a real possibility that Gervais and others acting under his control

_____   _____
Date                        Signature of Judicial Official

may destroy, disseminate or make use of the evidence, before the discovery process can do its work.: Celanese Canada Inc. v. Murray Demolition Corp; 2006 SCC 36 at para. 32, TSI International Group Inc. v. Formosa, 2015 ONSC 1138.

For these reasons, Order signed and to issue as requested.

_Abrams J._

The Hon. Mr. Justice Brian W. Abrams
Superior Court of Justice

THE FOLLOWING DOCUMENT IS **EXHIBIT "F"**
REFERRED TO IN THE AFFIDAVIT OF DAINA SLENYS
SWORN BEFORE ME THE **4th** DAY OF **MAY**, 2023, IN
ACCORDANCE WITH O.REG 431/20, ADMINISTERING
OATH OR DECLARATION REMOTELY.

_____

**A Commissioner, etc.**
G. Keeble (LSO No. 76822P)

Court File No.: CV-22-00000100-0000

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

| | | |
|---|---|---|
| THE HONOURABLE | ) | FRIDAY, THE 13th DAY |
| | ) | |
| JUSTICE ABRAMS | ) | OF JANUARY, 2023 |

**B E T W E E N :**

**PATH NETWORK, INC. and
TEMPEST HOSTING LLC**

Plaintiffs

and

**CURTIS MICHAEL GERVAIS,
PACKET RABBIT INC.,
JOHN DOES, JANE DOES, and DOE CORPORATIONS**

Defendants

**NOTICE**

If you, the defendants Curtis Michael Gervais and Packet Rabbit Inc., disobey this order you may be held to be in contempt of court and may be imprisoned, fined or subject to such other order this Court deems fit.

Any other person who knows of this order and does anything which helps or permits the defendants Curtis Michael Gervais and Packet Rabbit Inc. to breach the terms of this Order may also be held to be in contempt of court and may be imprisoned, fined or subject to such other order this Court deems fit.

**ORDER**

**THIS MOTION,** brought by the Plaintiffs, on notice to the defendants Curtis Michael Gervais ("Gervais") and Packet Rabbit Inc. ("Packet Rabbit"), for an order extending the Anton Piller order, the Stand and Deliver order, and general injunctive order issued by the Court on January 9, 2023, for an order that Gervais provide the data forensics expert Tom Warren with his fingerprint to unlock his two laptops to continue Mr. Warren's data mirroring efforts pursuant to the Anton Piller order, a Mareva injunction as against the assets of Packet Rabbit, an order that Mr. Warren may

1

review the data of Gervais and Packet Rabbit for relevancy and preserve the data in the way that he deems most appropriate, an order that Gervais attend at an examination with respect to his compliance of this Court's orders, costs, and other relief, was heard this day at the Superior Court of Justice, 43 Drummond Street East, Perth, Ontario.

**ON READING** the Plaintiffs' Motion Record dated December 21, 2022, the Plaintiffs' Factum and List of Authorities dated December 21, 2022, the Plaintiffs' Supplemental Motion Record dated January 5, 2023, the Plaintiffs' Supplemental Motion Record No.2 dated January 6, 2023, the Plaintiffs' Supplemental Motion Record No.3 and Factum dated January 13, 2023, and upon noting the undertaking of the Plaintiffs to abide by any order concerning damages which the Court may make arising from the granting and enforcement of this Order, and on hearing submissions of the counsel for the Plaintiffs, ~~evidence of the forensic data expert Tom Warren~~ and the defendant Gervais in attendance, *and hearing his position on the record* this Court makes the following Orders:   *B.A*

1. **THIS COURT ORDERS** that the time to serve and file the Plaintiffs' Supplemental Motion Record No.3, dated January 13, 2023, is abridged and the said motion record shall be filed with the Court;

**Extension of Urgent and Ex Parte Orders** *a without prejudice basis*   *B.A*

2. **THIS COURT FURTHER ORDERS** that the Anton Piller order issued in this action on January 9, 2023, is extended *to January 20, 2023* as against the defendants Gervais and Packet Rabbit until further order of the Court. The defendants Gervais and Packet Rabbit may bring a motion to vary or set aside this order on 15 days notice to the Plaintiffs;   *on a without prejudice basis*

3. **THIS COURT FURTHER ORDERS** that the Stand and Deliver order issued in this action on January 9, 2023, is extended *to January 20, 2023* as against the defendants Gervais and Packet Rabbit until further order of the Court. The defendants Gervais and Packet Rabbit may bring a motion to vary or set aside this order on 15 days notice to the Plaintiffs;   *B.A*

4. **THIS COURT FURTHER ORDERS** that the general injunctive order issued in this action on January 9, 2023, is extended *to January 20, 2023* as against the defendants Gervais and Packet Rabbit until further order of the Court. The defendants Gervais and Packet Rabbit may bring a motion to vary or set aside this order on 15 days notice to the Plaintiffs;   *on a without prejudice basis*   *B.A*

2

**Orders to Give Effect to the Anton Piller Order** *without prejudice basis*

5. **THIS COURT FURTHER ORDERS** that *on a without prejudice basis* the defendant Gervais shall provide Tom Warren with his fingerprint and such further other information as may be necessary in order to provide Mr. Warren with access to Gervais' laptops and mirror the data stored thereon, in accordance with the Anton Piller order; *B.A*

6. **THIS COURT FURTHER ORDERS** that Mr. Warren shall delete or reset the security fingerprint option on Gervais' electronic devices, mirror the data stored thereon, and thereafter, return the devices to Gervais; *B.A*

7. **THIS COURT FURTHER ORDERS** that *on a without prejudice basis* the designated forensic data expert Tom Warren may forthwith videotape or preserve by other means the content of various communication accounts wherein the data cannot be preserved through mirroring in an efficient manner, including but not limited to communication programs such as Signal, Discord, and such other accounts as in the opinion of Mr. Warren are preserved more efficiently through videotaping or other means; *B.A*

8. **THIS COURT FURTHER ORDERS** that *on a without prejudice basis* the defendant Gervais shall grant access to the designated forensic data expert Tom Warren to preserve all data at the Vantage Data Centre in Montreal held in the name of Packet Rabbit and / or Gervais; *B.A*

9. **THIS COURT FURTHER ORDERS** that *on a without prejudice basis* Mr. Warren may review the data as stored on the 417 (approximate) accounts of the defendant Gervais for the sole purpose of determining whether the data is relevant and should be preserved pursuant to the Anton Piller order dated January 9, 2023. In aid of determining relevancy of the data, Mr. Warren should have regard to the list of terms and concepts at Schedule "A" to this draft order. *B.A*

**Mareva Injunction as against Packet Rabbit** *on a without prejudice basis*

10. **THIS COURT FURTHER ORDERS** an interim and interlocutory worldwide Mareva Injunction (asset freezing order) restraining: *B.A*

    a) the defendants Curtis Michael Gervais ("Gervais") and Packet Rabbit Inc. ("Packet Rabbit");

    b) any person, corporation, partnership, proprietorship, or business on behalf of or upon instruction from Gervais and/or Packet Rabbit; and

3

c) any person, corporation, partnership, proprietorship or business with knowledge of this order;

from:

i. disposing of, dealing with, transferring, encumbering, alienating, hypothecating, or diminishing the value, in any manner whatsoever, assets in their possession whether solely or jointly held, of any nature or kind, in any manner or form whatsoever, wherever situate, in which Packet Rabbit has either a direct or indirect interest pending final disposition of this action or further order of this Honourable Court;

ii. in any way altering, defacing, destroying, removing, any documents or things of any nature or kind whatsoever related to, arising from or connected with the assets of Packet Rabbit, from wherever they are now located, including all banking, business or financial transactions conducted by Packet Rabbit, or companies, partnerships, proprietorships or other entities controlled by Packet Rabbit, including particulars of the nature, location and value of any and all assets of Packet Rabbit;

iii. engaging in or proceeding with any transaction, the effect of which is to transfer or receive funds outside Ontario from the sale, transfer, assignment or encumbering of any assets of Packet Rabbit, without leave of the Court;

iv. instructing, requesting, counselling, demanding, or encouraging any other person to do so; and

v. facilitating, assisting in, aiding, abetting, or participating in any acts the effect of which is to do any of the things described above.

11. **THIS COURT FURTHER ORDERS** *on a without prejudice basis* that paragraph 10 applies to all assets of the defendant Packet Rabbit, whether or not they are held in Packet Rabbit's names, and whether they are *B.A.* solely or jointly owned. For the purpose of this order, Packet Rabbit's assets include any asset which Packet Rabbit has the power, directly or indirectly, to dispose of or deal with as if it were its own. Packet Rabbit is to be regarded as having such power if a third party holds or controls the assets in accordance with Packet Rabbit or Gervais' direct or indirect instructions.

12. **THIS COURT FURTHER ORDERS** *on a without prejudice basis* that the defendant Gervais forthwith produce to the *B.A.* Plaintiffs a copy of the Royal Bank of Canada account statements of Packet Rabbit and himself personally, from March 1, 2022 to present.

4

13. **THIS COURT FURTHER ORDERS** that the defendant Gervais facilitate and cooperate in having the Independent Supervising Solicitor ("ISS") be a co-signer on all bank accounts of Packet Rabbit applicable to any transaction of Packet Rabbit. For greater clarity, this Court orders that Gervais no longer conduct any financial transactions for Packet Rabbit without same-day disclosure of said transactions to the ISS.

14. **THIS COURT FURTHER ORDERS** that the defendants Gervais and Packet Rabbit shall be permitted to transfer $10,000 from the accounts of Packet Rabbit for the purpose of legal expenses in relation to this action after producing all bank statements for Packet Rabbit from March 1, 2022 to present to Plaintiffs' counsel, and after granting signing authority to the bank accounts of Packet Rabbit to the Independent Supervising Solicitor, Michael Decsey. The defendants Gervais and Packet Rabbit may seek the consent of the Plaintiffs for the release of further funds for legal expenses or bring a motion for the release of said funds.

15. **THIS COURT FURTHER ORDERS** that the defendant Gervais shall be permitted to withdraw $5,000 from the accounts of Packet Rabbit for the purpose of living expenses after producing his personal bank accounts from March 1, 2022, to present to the Plaintiff, and after granting signing authority to the bank accounts of Packet Rabbit to the ISS Michael Decsey. For greater clarity, living expenses shall be first be paid from the personal accounts of the defendant Gervais. When the balance of Gervais personal accounts falls below $2,500, transfers may be made from the accounts of Packet Rabbit to Gervais that are co-authorized by the ISS. The defendants Gervais and Packet Rabbit may seek the consent of the Plaintiffs for the release of further funds for living expenses from the accounts of Packet Rabbit or bring a motion for the release of said funds.

16. **THIS COURT FURTHER ORDERS** that the defendants Gervais and Packet Rabbit shall provide counsel for the Plaintiffs with monthly expense reports with respect to the use and disposition of funds from the accounts of Packet Rabbit. Gervais and Packet Rabbit shall provide monthly expense reports as soon as practically possible and by no later than the 15th day of each month for the previous month.

17. **THIS COURT FURTHER ORDERS** that the defendant Gervais shall attend for examination out of court by counsel for the Plaintiffs by videolink on Monday, January 16, 2023, at 11:00 am by videolink. The scope of the examination is with respect to Gervais' compliance with and

5

enforcement of the Anton Piller order, the Stand and Deliver order, the general injunctive order and the Mareva injunction and in aid of these orders. The defendant Gervais shall attend at a Court reporter's office in the vicinity of Perth, Ontario, for this examination.

_B.A_

18. **THIS COURT FURTHER ORDERS** that the parties shall attend before this Court on _January 20_____, 2023 _11:00 a.m._ to address issues relating to compliance and continuation of this Court's Orders., _which shall be heard virtually._

_B.A_

19. **THIS COURT FURTHER ORDERS** that costs of this motion be adjudicated on a date to be scheduled with this Court.

20. **THIS COURT FURTHER ORDERS** that the Court File for this action shall be sealed until further order of this Court.

21. **THIS COURT FURTHER ORDERS** that the defendants Gervais and / or Packet Rabbit or any person with notice of this Order, may apply to the Court at any time to vary or discharge this Order or so much of it as affects such person, but anyone wishing to do so shall provide the Plaintiffs' solicitors with at least twenty-four (24) hours' notice in writing thereof.

_B.A_

_Abrams J_

The Hon. Mr. Justice Brian W. Abrams
Superior Court of Justice

PERTH

JAN 1 3 2022

73-38

6

**Schedule "A"**

List of Terms and Concepts to Guide Mr. Warren's Review of Data for Preservation Purposes

Known or suspected aliases of Gervais
1. cmg
2. wdmg
3. Dees Nutiam – deesnutiam@protonmail.com
4. Johnaton Gater
5. Archetype
6. cg@metaltux.com
7. curtis@thegeekbin.com
8. curtis@veilios.com
9. curtis@path.net

Known or suspected aliases of Packet Rabbit Inc.
• Veilios – Veilios Hosting LLC

Terms and concepts informing relevancy of data on communication programs (Discord, Signal, Slack, Telegram Rocket Chat, Messenger / Instant Messenger, WhatsApp, etc.)
1. All correspondences of Gervais with activity since Thursday, January 5, 2023
2. Rene Roosen a.k.a. Renaul Roosen
3. Ryzor a.k.a. Ryz0r
4. Game Server Kings a.k.a. GSK
5. Cosmic Global
6. Cosmic Network
7. "Archetype"
8. Path – Path Net – Path Network
9. Tempest – Tempest Hosting
10. Packet Rabbit
11. Vantage - Vantage Data Center
12. Hive - Hive Data Center
13. RSM
14. Carl Morin
15. Karl Rehm
16. Francisco Diaz
17. Frantech
18. Load balancers
19. Vital Game Network
20. Nick Niemiec aka Neeko
21. Pink
22. Leifur Gunnarsson

7

23. CFX – CFX.RE – U+1F342 BV
24. FiveM
25. RedM
26. Infraly – Infraly LLC
27. Marshal – Marshal Webb - NotBigInternet
28. Corey – Corey Shiratori (aka August Heart, fka Corey Barnhill)
29. Russ Reese – Russ Reese
30. Lee Stubbs – Zigi
31. Dylan Kraklan
32. Victor Heilskov
33. All correspondence on kiwifarms.net
34. All correspondence on lowendtalk.com
35. Nexus Online Services – "Kyle"
36. Anthony Modica – "Silvery"

Terms and concepts informing relevancy of data on non-communication programs
1. Any and all data for which log-in credentials are associated with Packet Rabbit
2. Any and all data for which log-in credentials are associated with Veilios
3. Any and all data for which log-in credentials are associated with Vantage aka Vantage Data Center
4. Any and all data for which log-in credentials are associated with Hive aka Hive Data Center
5. IP addresses
6. Load balancers
7. ARIN
8. Tor – the onion router
9. WHMCS
10. Path Portal
11. Tempest Portal
12. Firewall code
13. SSL certificates

8

Snippets of data from the Plaintiffs' compromised data (per Affidavit of Marshal Webb sworn January 6, 2023):

**cpke** Today at 9:08 PM
Can you name any other files part of this codebase or any extracts of code, and what leads you to believe that it belongs to us?

**Archetype** Today at 9:11 PM
the post on private community include one header function and says path.net of breached place

```
def reconcile_blocklisted_sources(self,
self.reconcile_dest_srcs(state.get("existing_dest_srcs",
```

**cpke** Today at 9:14 PM
Is there anything else in it that can be used to verify?

**Archetype** Today at 9:15 PM
```
def reconcile_forever(self, stop_event):
    signal.signal(signal.SIGINT, signal.SIG_IGN)
    signal.signal(signal.SIGTERM, signal.SIG_IGN)

    while not stop_event.is_set():
```

**Archetype** Today at 9:15 PM
```
def reconcile_forever(self, stop_event):
    signal.signal(signal.SIGINT, signal.SIG_IGN)
    signal.signal(signal.SIGTERM, signal.SIG_IGN)

    while not stop_event.is_set():
        try:
            with psycopg2.connect(
                host=self.db_host,
                port=self.db_port,
                dbname=self.db_name,
                user=self.db_user,
                password=self.db_pass,
            ) as conn, pyroute2.IPRoute() as ip:
                conn.set_session(readonly=True, autocommit=True)
                cur = conn.cursor()
                while not stop_event.is_set():
                    self.reconcile(self.state, cur, ip)
                    stop_event.wait(self.interval)
        except Exception:
            logging.exception("")
            stop_event.wait(self.interval)
            self.state = {}
```

9



**cpke** Today at 9:39 PM
Most of our code is C to begin with, is there any of that?

**Archetype** Today at 9:47 PM
post listed these

c source code
python source code
path portal source code
whmcs database backup
ips of all firewall servers
ssl certificates from nginx
more than 200mb data

code i shared u was posted as proof

for sale price is 800.000$



**cpke** Today at 9:51 PM
Have any snippets of the C source code been provided?

**Archetype** Today at 10:00 PM
post says only buyers with deposit of 50.000$ can see more code, says
it is single sale
only other source piece is this
os.path.realpath(file))), "libbpf.so"

**Archetype** Yesterday at 10:28 PM
i msged seller while talking to u
seller offered two things KBUILD_MODNAME and __sk_buff as "random
code reference" and said theres hashmap tables like blocklist,
blocklist_cidr, lorbit_district, symmetric, filtered_addr
seller said no more will be shared until a deposit is made
seller says the c code is "the most valuable" of it so they are not willing
to give any more until deposit

10



**Archetype** Today at 10:40 PM
pushed seller for more
seller said no c but can share this
   local req = string.format('POST /fivem/%s/authorize_user/%s HTTP/1.1\r\n\r\n', txn.f:dst(), txn.f:src());
seller will share c code on deposit

11

Court File No.: CV-22-00000100-0000

| PATH NETWORK, INC. et al. | v. | CURTIS MICHAEL GERVAIS et al. |
|---|---|---|
| Plaintiffs | | Defendants |

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
PROCEEDING COMMENCED AT
PERTH

**ORDER**

**INVESTIGATION COUNSEL PC**
350 Bay Street, Suite 1100
Toronto, ON  M5H 2S6

**Norman Groot** / LSO No.: 43721V
Tel:      (416) 637-3141
ngroot@investigationcounsel.com

**Geoff Keeble** / LSO No. 76822P
Tel:      (416) 637-3145
gkeeble@investigationcounsel.com

Lawyers for the Plaintiffs

12

4863-1335-6105, v. 2

Court File No.: CV-22-00000100-0000

**PATH NETWORK, INC. et al.**

v.

**CURTIS MICHAEL GERVAIS et al.**

Plaintiffs

Defendants

January 13, 2023

Mr. Groot for the Plaintiffs.

Mr. Gervais appearing in his own behalf,
as well as for the other named Defendants.

Today is the first return date following
the granting of an Anton Piller Order and other
ancillary relief on January 9, 2023 and the subsequent
search of the Defendant's residence on
January 10, 2023.

The Defendant has not yet been
able to retain counsel, notwithstanding
ongoing efforts to do so.

Interim, without prejudice Order
granted, as amended, until the
return date on January 20, 2023 @ 11:00 a.m. Matter to proceed
virtually at that time as a status-check into the Defendants'
efforts to retain counsel.

Abrams J.

---

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
PROCEEDING COMMENCED AT
PERTH

**PLAINTIFFS' SUPPLEMENTAL
MOTION RECORD NO.3**
(urgent motion returnable January 13, 2023)

**INVESTIGATION COUNSEL PC**
350 Bay Street, Suite 1100
Toronto, ON  M5H 2S6

**Norman Groot** / LSO No.: 43721V
Tel:     (416) 637-3141
ngroot@investigationcounsel.com

**Geoff Keeble** / LSO No. 76822P
Tel:     (416) 637-3145
gkeeble@investigationcounsel.com

Lawyers for the Plaintiffs

THE FOLLOWING DOCUMENT IS **EXHIBIT "G"** REFERRED TO IN THE AFFIDAVIT OF DAINA SLENYS SWORN BEFORE ME THE **4th** DAY OF **MAY**, 2023, IN ACCORDANCE WITH O.REG 431/20, ADMINISTERING OATH OR DECLARATION REMOTELY.

_____

**A Commissioner, etc.**
G. Keeble (LSO No. 76822P)



Court File No.: CV-22-00000100-0000

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**

| THE HONOURABLE | ) | FRIDAY, THE 20th DAY |
|---|---|---|
| | ) | |
| JUSTICE ABRAMS | ) | OF JANUARY, 2023 |

**B E T W E E N :**

**PATH NETWORK, INC. and
TEMPEST HOSTING LLC**

Plaintiffs

and

**CURTIS MICHAEL GERVAIS,
PACKET RABBIT INC.,
JOHN DOES, JANE DOES, and DOE CORPORATIONS**

Defendants

**ORDER**

**THIS MOTION,** brought by the Plaintiffs, on notice to the defendants Curtis Michael Gervais ("Gervais") and Packet Rabbit Inc. ("Packet Rabbit"), for an order extending the Anton Piller order, the Stand and Deliver order, and general injunctive order issued on January 9, 2023, for an order extending the Mareva injunction issued on January 13, 2023, for an order to compel the defendant Gervais to immediately comply with the Order issued on January 13, 2023 which provided for the production of account statements for himself and Packet Rabbit, for an order that Gervais conduct the banking of Packet Rabbit only with the informed consent of the Independent Supervising Solicitor Michael Decsey, for an order, an order that Gervais attend for an examination with respect to his compliance of this Court's orders, costs, and other relief, was heard this day at the Superior Court of Justice, 43 Drummond Street East, Perth, Ontario.

**ON READING** the Plaintiffs' Motion Record dated December 21, 2022, the Plaintiffs' Factum and List of Authorities dated December 21, 2022, the Plaintiffs' Supplemental Motion Record dated January 5, 2023, the Plaintiffs' Supplemental Motion Record No.2 dated January 6, 2023, the Plaintiffs' Supplemental Motion Record No.3 and Factum dated January 13, 2023, the Plaintiffs'

1

Supplemental Motion Record No.4 dated January 19, 2023, and upon noting the undertaking of the Plaintiffs to abide by any order concerning damages which the Court may make arising from the granting and enforcement of this Order, and on hearing submissions of the counsel for the Plaintiffs, the Independent Supervising Solicitor Michael Decsey, Mr. Michael A. Katzman of Katzman Litigation P.C., Barrister & Solicitors, attending as agent for the Defendants, the defendant Gervais in attendance, and upon being advised the within Order is not opposed, without prejudice to any positions that the parties may wish to take in connection with the within proceeding:

1. **THIS COURT ORDERS** that the time to serve and file the Plaintiffs' Supplemental Motion Record No.4, dated January 19, 2023, is abridged and the said motion record shall be filed with the Court;

**Extension of Urgent and Ex Parte Orders**

2. **THIS COURT FURTHER ORDERS** that on a without prejudice basis the Anton Piller order issued in this action on January 9, 2023, and extended on January 13, 2023, is extended to **June 2, 2023**, as against the defendants Gervais and Packet Rabbit until further order of the Court. The defendants Gervais and Packet Rabbit may bring a motion to vary or set aside this order on 15 days' notice to the Plaintiffs;

3. **THIS COURT FURTHER ORDERS** that on a without prejudice basis the Stand and Deliver order issued in this action on January 9, 2023, and extended on January 13, 2023, is extended to **June 2, 2023,** as against the defendants Gervais and Packet Rabbit until further order of the Court. The defendants Gervais and Packet Rabbit may bring a motion to vary or set aside this order on 15 days' notice to the Plaintiffs;

4. **THIS COURT FURTHER ORDERS** that on a without prejudice basis the general injunctive order issued in this action on January 9, 2023, and extended on January 13, 2023, is extended to **June 2, 2023,** as against the defendants Gervais and Packet Rabbit until further order of the Court. The defendants Gervais and Packet Rabbit may bring a motion to vary or set aside this order on 15 days' notice to the Plaintiffs;

2

**Extension of Mareva Injunction against Packet Rabbit**

5.  **THIS COURT FURTHER ORDERS** that on a without prejudice basis the Mareva injunction issued in this action on January 13, 2023, is extended to **June 2, 2023,** as against the defendants Gervais and Packet Rabbit until further order of the Court, subject to the provisions at paragraphs 6 and 7, below. The defendants Gervais and Packet Rabbit may bring a motion to vary or set aside this order on 15 days' notice to the Plaintiffs;

6.  **THIS COURT FURTHER ORDERS** that the Defendants may withdraw up to **$10,000** from the bank account of Packet Rabbit for the sole purpose of payment of a legal retainer to counsel for this action;

7.  **THIS COURT FURTHER ORDERS** that on a without prejudice basis the Defendants may withdraw up to **$3,000 each month** from the bank account of Packet Rabbit for the purpose of payment of living expenses. The Plaintiffs may bring a motion to vary or set aside this order on 15 days' notice to the Defendants;

**Gervais Must Comply with Production Order for Account Statements**

8.  **THIS COURT FURTHER ORDERS** that the defendant Gervais is directed to comply with paragraph 12 of the Order dated January 13, 2023, which provided that:

> **12. THIS COURT FURTHER ORDERS** on a without prejudice basis that the defendant Gervais forthwith produce to the Plaintiffs a copy of the Royal Bank of Canada account statements of Packet Rabbit and himself personally, from March 1, 2022 to present.

by no later than January 31, 2023.

**Financial Monitoring of Packet Rabbit in Aid of Mareva Injunction**

9.  **THIS COURT FURTHER ORDERS** that the Plaintiffs' motion with respect to the appointment of the Independent Supervising Solicitor to be a co-signer with Gervais on all bank accounts of Packet Rabbit is adjourned to **June 2, 2023**.

**Examination of Gervais in Aid of Injunctive Orders**

10. **THIS COURT FURTHER ORDERS** that the Plaintiffs' motion for the defendant Gervais to attend for an examination out of court with respect to Gervais' compliance with and enforcement of the Anton Piller order, the Stand and Deliver order, the general injunctive order and the Mareva injunction and in aid of these orders is adjourned to **June 2, 2023**.

3

**Return Attendance and Defendants' Set Aside Motion Timetable**

11. **THIS COURT FURTHER ORDERS** that the parties shall attend before this Court on **June 2, 2023,** to address issues relating to compliance and continuation of this Court's Orders.

12. **THIS COURT FURTHER ORDERS** that the Defendants motion to set aside orders issued in this action has been scheduled for a full-day in-person motion to be heard on **June 2, 2023, commencing at 10:00am**. The parties have agreed to the following timetable with respect to the motion:

    a) Motion Record to be served by March 13, 2023;

    b) Responding Records to be served by March 30, 2023;

    c) Reply, if any, to be served by April 7, 2023;

    d) Cross-examinations to be completed by May 2 of 2023;

    e) Facta as per the *Rules*

    f) June 2, 2023, return date for Motion.

13. **THIS COURT FURTHER ORDERS** that costs of this motion be adjudicated on a date to be scheduled with this Court.

14. **THIS COURT FURTHER ORDERS** that the Court File for this action shall be sealed until further order of this Court, save that Orders and Endorsements of the Court may be served upon third parties as needed to effect compliance with the Orders.

PERTH
JAN 23 2023
73-38

Hon. B. Abrams

4

Court File No.: CV-22-00000100-0000

PATH NETWORK, INC. et al.                    v.          CURTIS MICHAEL GERVAIS et al.

Plaintiffs                                                                    Defendants

---

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
PROCEEDING COMMENCED AT
PERTH

---

**ORDER**

---

**INVESTIGATION COUNSEL PC**
350 Bay Street, Suite 1100
Toronto, ON  M5H 2S6

**Norman Groot / LSO No.: 43721V**
Tel:    (416) 637-3141
ngroot@investigationcounsel.com

**Geoff Keeble / LSO No. 76822P**
Tel:    (416) 637-3145
gkeeble@investigationcounsel.com

Lawyers for the Plaintiffs

---

5

4871-8225-0060, v. 1



ONTARIO

**ONTARIO SUPERIOR COURT OF JUSTICE**

**Perth**

**ENDORSEMENT / ORDER**

CV-22-00000100-0000
Court File No.

**B E T W E E N**

PATH NETWORK, INC. ; TEMPEST HOSTING LLC

Plaintiff(s)/Applicant(s)

- and -

CURTIS MICHAEL GERVAIS; PACKET RABBIT INC. ; JOHN DOES; JANE DOES; DOE CORPORATIONS

Defendant(s)/Respondent(s)

**BEFORE:**   Justice B. ABRAMS

**HELD BY:**   ☐ In person   ☑ Videoconference   ☐ Teleconference   ☐ In writing

**DATE:**   January 20, 2023 at 10:00am

**EVENT TYPE:** Motion for Status Hearing

**APPEARING:**   (Names and email addresses)

Plaintiff(s)/Applicant(s):   PATH NETWORK, INC.                                Present ☑

Representative:  NORMAN GROOT (mhastings@investigationcounsel.com)   Present ☑

Plaintiff(s)/Applicant(s):   TEMPEST HOSTING LLC                           Present ☐

Representative:  NORMAN GROOT (mhastings@investigationcounsel.com)   Present ☐

Defendant(s)/Respondent(s):  CURTIS MICHAEL GERVAIS                    Present ☑

Representative:                                                                          Present ☐

Defendant(s)/Respondent(s):  PACKET RABBIT INC.  *Mr. Katzman*         Present ☑

Representative:                                                                          Present ☑

Defendant(s)/Respondent(s):  JOHN DOES                                       Present ☐

Representative:                                                                          Present ☐

Defendant(s)/Respondent(s):  JANE DOES                                       Present ☐

Representative:                                                                          Present ☐

Defendant(s)/Respondent(s):   DOE CORPORATIONS                        Present ☐

Representative:                                                                          Present ☐

CV-22-00000100-0000
Court File No.

Third Party or Parties                                                    Present ☐

Representative:                                                           Present ☐

**RELIEF REQUESTED:**

☐  Per notice of motion/application    ☐ Per notice of appeal    ☐ Other (specify):

**DISPOSITION:**

☐  Order to go in the form of consent / draft order submitted
☐  Order to go as asked in paragraph(s) _____ of relief requested
☐  Costs of $ _____ on a _____ indemnity basis
   are payable by _____ to _____ by _____, 20__.
☐  Parties to provide submissions as to costs of no more than ___ pages by _____, 20__.
☐  Parties to attend before me to make oral submissions on costs on _____, 20__.
☐  Other (specify below):

☐  No formal order need be taken out.                   January 20, 2023

**BRIEF REASONS** (if any):

Order to go in accordance
with approved draft order to be filed
with schedule attached (litigation time table)
and without prejudice to any party's
position going forward. Matter adjourned
to full day hearing June 2, 2023 @
10:00 a.m. for set-aside motion)
which shall proceed in person in court.

ABRAMS ✓