**TENTATIVE ORDER**

1
2
3
4

**UNITED STATES DISTRICT COURT**

5

**NORTHERN DISTRICT OF CALIFORNIA**

6

**SAN FRANCISCO DIVISION**

7

| | |
|---|---|
| In Re *Ex Parte* Application of | Case No. 23-mc-80148-PHK |
| Path Network, Inc., and Tempest Hosting, LLC, | **NOTICE RE: TENTATIVE RULING** |
| Applicants. | Re: Dkt. No. 1 |

8
9
10
11
12
13

14      Attached hereto is the Court's **TENTATIVE ORDER** Re: *Ex Parte* Application to Take

15   Evidence Pursuant to 28 U.S.C. § 1782 [Dkt. 1], set for hearing on August 17, 2023, at 1:30 p.m.

16   This tentative ruling shall not be cited as authority or for any other purpose, as it is preliminary

17   and subject to change in whole or in part at the Court's discretion.

18

19      Dated: August 16, 2023

20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**TENTATIVE ORDER**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In Re *Ex Parte* Application of<br><br>Path Network, Inc., and Tempest Hosting, LLC,<br><br>                Applicants. | Case No. 23-mc-80148-PHK<br><br>**TENTATIVE ORDER GRANTING IN PART AND DENYING IN PART WITHOUT PREJUDICE PATH NETWORK, INC.'S AND TEMPEST HOSTING, LLC'S APPLICATION TO SERVE DISCOVERY PURSUANT TO 28 U.S.C. § 1782**<br><br>Re: Dkt. No. 1 |

Path Network, Inc. ("Path") and Tempest Hosting, LLC ("Tempest") (collectively "Applicants") have filed an *ex parte* application authorizing service of a subpoena for documents on Discord, Inc. ("Discord") pursuant to 28 U.S.C. § 1782. [Dkt. 1]. This application is made in connection with an action pending in the Superior Court of Justice in Ontario, Canada. After considering the application and after conducting an *ex parte* hearing with Applicants and proposed subpoenaed party Discord, Applicants' request is **GRANTED-IN-PART** and **DENIED-IN-PART WITHOUT PREJUDICE**.

# BACKGROUND

## I.    THE PARTIES AND UNDERLYING ALLEGATIONS

Path is an Arizona corporation providing data, hosting, and cyber services to subscribers. [Dkt. 1-2 at 2].[1] Path's wholly owned subsidiary, Tempest, is an Arizona company providing online

---

[1] For ease of reference, all page numbers cited to docket entries herein refer to the electronic page number in CM-ECF rather than the document's internal page number.

**TENTATIVE ORDER**

1   virtual hosting services specializing in the leasing of services to customers.  [Dkt. 1 at 4; Dkt. 1-2 at
2   2].

3        Applicants aver that Curtis Michael Gervais ("Gervais"), a Canadian citizen, was a Path and
4   Tempest customer in June 2020, and as such he became acquainted with the CEO of Path.  [Dkt. 1-
5   2 at 24].  Around approximately July 8, 2021, Path hired Gervais to work as an independent
6   contractor for Tempest.  *Id.* at 25.  His work for Tempest continued through various employment
7   roles until eventually Tempest promoted him to CEO in approximately February 2022.  *Id.* at 25-
8   29.  On or before June 2022, Gervais allegedly hacked into the internal network of an entity called
9   Game Server Kings ("GSK"), a competitor of Applicants.  *Id.* at 36.  The investigation into this
10  activity led Tempest to demote Gervais to COO and he eventually resigned on September 16, 2022.
11  *Id.* at 37–39, 45–46.

12       Prior to his work for Tempest, in November 2020, Gervais apparently started his own
13  company called Packet Rabbit, Inc. ("PR"), a Canadian corporation providing online virtual hosting
14  services that operates and leases services to customers for a monthly fee.  *Id.* at 24–25.  Gervais is
15  the sole director and officer of PR.  *Id.*

16       Applicants allege that, as the relationship deteriorated between Tempest and Gervais,
17  Gervais began undertaking actions adverse to Applicants through a variety of means.  *Id.* at 46.
18  Applicants allege that Gervais disclosed Applicants' confidential information to GSK and third
19  parties, made defamatory comments concerning Applicants, and told third parties of his intentions
20  to harm Applicants.  [Dkt. 1-3 at 29].  Applicants allege that Gervais conspired with Rene Roosen,
21  CEO and founder of GSK, to harm Applicants.  [Dkt. 1-2 at 11 n.1].  Specifically, Applicants allege
22  that Gervais provided Roosen with confidential and/or false information about Applicants, which
23  Roosen used to convince third parties to terminate their user agreements with Applicants and instead
24  start doing business with GSK.  *Id.* at 42–44, 46–47.

25        Germane to the instant dispute, Gervais and Roosen allegedly utilized Discord's messaging
26  platform to communicate with each other and further the alleged plans to harm Applicants' business.
27  *Id.* at 11 n.1.  Furthermore, Gervais and Roosen allegedly utilized various usernames or aliases for
28  Discord accounts, such as "Archetype," "1500," "Renual," and "cmg" as part of their efforts to

United States District Court
Northern District of California

2

**TENTATIVE ORDER**

communicate their plans to harm Applicants. [Dkt. 1-1 at ¶¶ 4-5; Dkt. 1-2 at 53, 56-57]. Specifically, the "Archetype" user account allegedly used Discord to communicate with an employee of Path to offer to ransom or sell back stolen copies of Applicants' confidential source code and other confidential information for approximately $800,000. [Dkt. 1-2 at 54–58]. Further, Applicants allege that Gervais used the alias or user name "wdmg" for an account on an online forum called LowEndTalk. *Id.* at 53. Applicants similarly allege that Gervais used an email address deesnutiam@protonmail.com and submitted the user name "Dees Nutiam" for a new user account on Tempest after he had separated from the company. *Id.* at 52.

On January 5, 2023, Applicants acted on suspicions that Gervais acted to harm their business using the alias Archetype, resulting in both pre-litigation investigation and the filing of the underlying Canadian lawsuit germane to the instant dispute. *Id.* at 56.

## II.    PRE-LITIGATION DISCOVERY AND THE UNDERLYING CANADIAN LAWSUIT

On December 21, 2022, Applicants allege they filed a Notice of Action, Motion Record, and Factum in the Canadian Court seeking pre-litigation evidence preservation and a general injunction. [Dkt. 1-3 at 2]. Applicants allege that on January 9, 2023, the Canadian Court held an *ex parte* hearing on Applicants' filings and accepted *ex parte* briefing regarding issuing pre-litigation orders. *Id.* at 2–3. The Canadian Court granted Applicants' request and issued a pre-litigation evidence preservation order;  so-called "Anton Piller" Orders; a Stand and Deliver Order; and a general injunctive order. *Id.* (The Canadian Court Orders). Under Canadian law, and in general terms, an Anton Piller Order is a civil case order analogous to a search warrant to under which a party is allowed the right to enter a location and seize evidence without advance notice to the party being searched, as part of an effort to reduce the risk of destruction of evidence. [Dkt. 1-2 at 2]. Under Canadian law, and in general terms, a Stand and Deliver Order requires individuals subject to the order to turn over off-site evidence and assets. *Id.*

Applicants allege that the Anton Piller Orders name certain individuals who were allowed to enter Gervais's home including several lawyers for Applicants and a data forensics expert for the

United States District Court
Northern District of California

**TENTATIVE ORDER**

Applicants, specifically Tom Warren ("Warren"). [Dkt. 1-3 at 74]. Germane to this application, Warren submitted a declaration in support of Applicants here. [Dkt. 1-2]. The Anton Piller Orders require Gervais to "grant access and deliver up to the Authorized Persons" certain evidence set forth in Schedule A to that order. [Dkt. 1-2 at 87]. Schedule A to the Anton Piller Orders specifies that the evidence to be delivered includes "any and all communications, whether in hard copy or electronic form, involving Gervais (including by any alias of Gervais including but not limited to 'cmg' . . . 'Archetype'[])" and "any and all of the following information, electronic data and/or code of the Plaintiffs as advertised for sale or ransom online pursuant to the information of 'Archetype' (refer to . . . the Discord message attached as Schedule 'B' to this Order)[.]" *Id.* at 90.

Following the execution of Canadian Court Orders, the persons conducting the searches for evidence delivered to their expert Warren three laptops, two cell phones, two iPads, and numerous credit cards in PR's name. [Dkt. 1-2 at 2]. Subsequently, Applicants allege Warren asked Gervais to "provide access to his devices" and "various local and cloud-based applications / websites within the scope of the Anton Piller Order." *Id.* at 59. Applicants aver that "Gervais alleged that he did not know the passwords to the applications / websites because all his log-in credentials were stored on an encrypted password repository known as 'LastPass.'" *Id.* Initially, Gervais provided Warren with access to LastPass; however, Gervais allegedly later implemented security measures to protect his computer from unauthorized access. *Compare* Dkt. 1-2 at 59, *with* Dkt. 1-2 at 62. Applicants allege that Gervais created risks of evidence tampering of the data and messages in Gervais's online accounts because the LastPass program restricted access based on the device's IP address. [Dkt. 1-2 at 62]. Applicants allege that Warren noticed "Gervais was still able to access his Discord account[,]" and when confronted about his ability to access that account, Gervais stated "he could still use Discord because the session had not stopped." *Id.* at 65. Applicants aver that "Gervais['s] information was false - that Mr. Warren had Gervais'[s] computer previously and the Discord session was stopped when Mr. Warren shut down the laptop for [data collection]." *Id.*

On March 9, 2023, Applicants allegedly asserted several claims against Gervais and PR in connection with their alleged unlawful conduct. *Id.* at 18–79. After filing the Canadian lawsuit, on April 10, 2023, Applicants requested that Discord preserve all messaging data related to Gervais

4

**TENTATIVE ORDER**

and Roosen.  [Dkt. 1-1 at ¶ 3].  The following day Discord responded that it would not preserve the requested data unless legally obligated to do so.  *Id.*  Subsequently, on May 22, 2023, Applicants filed the instant application seeking to serve Discord a subpoena pursuant to Section 1782 in support of the Canadian litigation.  [Dkt. 1].

## III.     PROPOSED SUBPOENA

Applicants submitted to the Court their proposed subpoena for documents directed to Discord, which is located in the geographic boundaries of the Northern District of California (as discussed further below).  *See* Dkt. 1-5.  With regard to logistics, the proposed subpoena requests that Discord produce documents in Los Angeles.  *Id.* at 2.  With regard to document categories sought, the proposed subpoena requests that Discord produce "documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of[:]"

> (1) All passwords and account data associated with Curtis Gervais, including any aliases he used, such as cmg#8239;
>
> (2) All passwords and account data associated with Rene Roosen, including any aliases he used, such as Renual#7394;
>
> (3) All passwords and account data associated with Archetype#8484;
>
> (4) Roosen, Gervais and Archetype#8484's login history for any and all Discord accounts, including but not limited to cmg#8239, Renual#7394, and Archetype#8484; and
>
> (5) Any and all messaging data associated with any of Roosen, Gervais, or Archetype#8484's Discord account(s) including cmg#8239, Renual#7394 and Archetype#8484.

*Id.* at 5.  The subpoena names Curtis Gervais and Rene Roosen, as well as the three Discord account usernames, but provides no other identifying information for these individuals or accounts.  *Id.*

# DISCUSSION

## I.     JURISDICTION

As an initial matter, this Court has jurisdiction to hear and decide this matter because the Applicants and Discord have all consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c).  *See CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 808 (9th Cir. 2022); *Williams*

*v. King*, 875 F.3d 500, 500 (9th Cir. 2017) (requiring both the Section 1782 applicant and the party from whom discovery is sought to consent to Magistrate Judge jurisdiction); Dkts. 3, 6 (Applicants and Discord consenting to Magistrate Judge jurisdiction).

## II.    APPLICABLE LEGAL STANDARDS

Evaluating an application for leave to serve a subpoena under Section 1782 requires a two-part analysis: (1) the statutory requirements and (2) the discretionary requirements. First with regard to the statutory requirements, Section 1782 authorizes district courts to permit discovery if: (A) the person from whom the discovery is sought "resides or is found" in the district of the district court where the application is made; (B) the discovery is "for use in a proceeding in a foreign or international tribunal;" and (C) the application is made by a foreign or international tribunal or "any interested person." *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019).

Second with regard to the discretionary factors, the Court considers the following discretionary factors to authorize discovery requested under Section 1782: (A) whether the "person from whom discovery is sought is a participant in the foreign proceeding;" (B) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance;" (C) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (D) whether the request is "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004).

"A district court's discretion is to be exercised in view of the twin aims of [Section] 1782: providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts." *In re Nat'l Ct. Admin. of the Republic of Korea*, No. 15-mc-80069-LB, 2015 WL 1064790, at *2 (N.D. Cal. Mar. 11, 2015). Unless the district court orders otherwise, the discovery authorized by the court must be obtained in accordance with the Federal Rules of Civil Procedure. *See* § 1782(a); *In re Tokyo Dist. Prosecutors Off., Tokyo, Japan*, 16 F.3d 1016, 1020 (9th Cir. 1994). The party seeking discovery need not establish that the information sought would be discoverable under the foreign court's law or that the U.S. would permit the discovery in an analogous domestic proceeding. *See Intel*, 542 U.S. at 261–

**TENTATIVE ORDER**

63.

1. **STATUTORY FACTORS**

    A.    **Residency of Discovery Target in the Northern District of California.**

    Applicants must first demonstrate that the entity from which they seek discovery resides in the geographic boundaries of the court to whom the application is addressed, here the Northern District of California. *Khrapunov*, 931 F.3d at 925; *In re Republic of Ecuador*, No. C-10-80225, 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010). A business entity's residency for the purpose of Section 1782 is "where the business is incorporated, is headquartered, or where it has a principal place of business." *In re Todo*, 2022 WL 4775893, at *2 (N.D. Cal. Sept. 30, 2022) (collecting cases); *In re Med. Inc. Ass'n Takeuchi Dental Clinic*, 2022 WL 10177653, at *2 (N.D. Cal. Oct. 17, 2022) (Google met residency requirement under Section 1782(a) due to headquarters and principal location in Mountain View).

    Here, Applicants request discovery from Discord. [Dkt. 1-5]. However, Applicants cite the statutory factors and yet provide no factual evidence or material to establish Discord's residence. [Dkt. 1 at 8-9]. Rather, Applicants conclusorily state, without citation to evidence or any documents in the record, that Discord is headquartered in the Northern District of California. [Dkt. 1 at 9].

    Nevertheless, the Court has the authority to take Judicial Notice of certain facts under the proper circumstances. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Minor v. FedEx Office & Print Servs.*, 78 F. Supp. 3d 1021, 1028 (N.D. Cal. 2015) (taking Judicial Notice of record of administrative agencies and publicly accessible websites).

    Publicly available records from the California Secretary of State and at least one website indicate that Discord has its principal place of business in San Francisco, California, which is located within the Northern District of California. *See* bizfile Online, Cal. Sec'y of State, https://bizfileonline.sos.ca.gov/search/business (search for "Discord Inc" or file no. 3472899) (last visited on Aug. 7, 2023) (Discord's "principal address" is in San Francisco); *Discord Company Information - Impressum*, https://discord.com/company-information (last visited on Aug. 7, 2023).

United States District Court
Northern District of California

**TENTATIVE ORDER**

The Court finds that these online materials are mutually corroborative and sufficiently reliable, and that their accuracy cannot be reasonably questioned. Thus, the residency of Discord is not subject to reasonable dispute.

Accordingly, the Court finds that the first statutory requirement of residency is met because Discord's principal office is in San Francisco. *See In re Hattori*, No. 21-mc-80236-TSH, 2021 WL 4804375, at *3 (N.D. Cal. Oct. 14, 2021) ("Applicant's request satisfies the statutory requirements of [Section] 1782. First, Google can be found in this district because its principal office is located in Mountain View, California.").

**B.      Discovery Sought Is for Use in a Proceeding in a Foreign Tribunal.**

Next, Applicants must show the discovery sought is for use in a proceeding before a foreign tribunal. *Khrapunov*, 931 F.3d at 925. To be "for use" in a foreign proceeding, the information sought must be relevant. *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1110 (N.D. Cal. 2018). "The party issuing the subpoena has the burden of demonstrating the relevance of the information sought." *Digital Shape Techs., Inc. v. Glassdoor, Inc.*, No. 16-MC-80150-JSC, 2016 WL 5930275, at *3 (N.D. Cal. Oct. 12, 2016).

The Canadian lawsuit is certainly a foreign proceeding. Here, Applicants seek information from Discord in connection with the complained-of activities allegedly committed by Gervais and Roosen, specifically including their use of Discord accounts to communicate allegedly harmful information about Applicants and to allegedly attempt to ransom stolen proprietary source code. [Dkt. 1-2 at 18–79]. These alleged unlawful activities and communications using Discord form bases of Applicants' Canadian lawsuit as summarized above. The discovery sought from Discord includes information concerning the account logins and passwords for the accused Discord user accounts (*i.e.*, Archetype, Renual, and cmg), as well as login histories and the messages themselves. [Dkt. 1-5]. The discovery is presumably sought in order to determine the connections between Gervais and Roosen to these accounts, which would be relevant to liability issues in the Canadian lawsuit – if the discovery demonstrates such a connection, that would impact liability; if the discovery demonstrates that no such connection exists (for example, if the user accounts were in

8

1    fact owned and used by unrelated third party actors), that also would be relevant to defenses in the

2    Canadian lawsuit.

3         Further, as Applicants argue, the discovery sought is relevant to carrying out the Canadian

4    court's Anton Piller Orders.  For example, as discussed above, the Anton Piller Order directed to

5    Gervais requires the delivery of evidence including "any and all communications, whether in hard

6    copy or electronic form, involving Gervais (including by any alias of Gervais including but not

7    limited to 'cmg' . . . 'Archetype' . . .)" and "any and all of the following information, electronic

8    data and/or code of the Plaintiffs as advertised for sale or ransom online pursuant to the information

9    of 'Archetype' (refer to . . . the Discord message attached as Schedule 'B' to this Order)[.]"  [Dkt.

10   1-2 at 90].  The Canadian court thus specifically ordered the production of evidence of Discord

11   messages from the user accounts identified by Applicants.  *Id.*

12        Accordingly, the Court finds that the discovery sought from Discord is relevant, for the

13   purposes of Section 1782, to the Canadian lawsuit.  The second statutory requirement under Section

14   1782 is satisfied.

15

16        **C.    Movants Are Interested Persons.**

17        Next under Section 1782, Applicants must show they are interested "persons."  *Khrapunov*,

18   931 F.3d at 925.  An interested person under Section 1782 "plainly reaches beyond the universe of

19   persons designated 'litigant,'" although there is "[n]o doubt [that] litigants are included among, and

20   may be the most common example[.]"  *Intel*, 542 U.S. at 256.

21        Here, Applicants are party litigants in the Canadian lawsuit.  *See* Dkt. 1-2 at 18–79.  As

22   litigants in the foreign proceeding, Applicants are prototypical interested persons.  Accordingly, the

23   Court finds that the third and final statutory factor under Section 1782 is satisfied.

24        In sum, because Applicants have satisfied all three statutory requirements, the Court

25   determines that, as a matter of statutory requirements, discovery relating to the foreign proceeding

26   is authorized under Section 1782.  Because the Court has discretion to deny the application even if

27   the statutory requirements are satisfied, the Court next analyzes the discretionary *Intel* factors.  *Intel*,

28   542 U.S. at 256.

United States District Court
Northern District of California

9

**TENTATIVE ORDER**

**2.  THE COURT'S DISCRETION TO AUTHORIZE THE REQUESTED DISCOVERY**

As discussed above, the discretionary factors under Section 1782 are: (A) whether the "person from whom discovery is sought is a participant in the foreign proceeding;" (B) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance;" (C) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (D) whether the request is "unduly intrusive or burdensome." *Id.* at 264–65.  The Court analyzes each discretionary factor in turn.

**A.    Whether the Person from Whom Discovery Is Sought Is a Party to the Foreign Proceeding.**

The first discretionary factor is whether the discovery is appropriate where the target of discovery is a party to the foreign litigation.  *Id.* at 265 "A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.* at 264.  However, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent [Section] 1782 aid." *Id.*  As such, the first discretionary factor favors discovery sought from non-parties to the foreign proceeding. *Cf. In re Varian Med. Sys. Int'l AG*, No. 16-MC-80048-MEJ, 2016 WL 1161568, at *4 (finding that the first *Intel* factor weighs heavily against seeking discovery from participants in foreign tribunals).

Here, Discord is not a party to the Canadian lawsuit and is only a third-party whose messaging platform was allegedly used by Gervais and Roosen to harm Applicants.  [Dkt. 1-2 at 18–79].  Accordingly, it appears the Canadian court lacks authority or jurisdiction to compel discovery from Discord.  Further, efforts to secure voluntary disclosure were unavailing – apparently, Discord refused to preserve messaging data absent a court order.  [Dkt. 1-1 at ¶ 3].  Applicants argue that "[i]f the Court does not grant the instant Application, Path and Tempest will be unable to fully execute the Canadian Court's Orders and engage in discovery essential to their

**TENTATIVE ORDER**

1  case[.]" [Dkt. 1 at 2]. The Court finds that this discretionary factor is satisfied, because Discord is

2  not a party to the foreign litigation and the requested discovery has been shown to be unavailable

3  otherwise. *Intel*, 542 U.S. 241.

4

5        **B.**     **The Nature of the Foreign Tribunal, the Character of the Proceedings**

6                      **Underway Abroad, and the Receptivity of the Tribunal to U.S. Judicial**

7                      **Assistance.**

8        The second *Intel* factor weighs in favor of discovery unless the foreign tribunal in question

9  has expressly made it clear that it would not accept the evidence. *In re Jt. Stock Co. Raiffeinsenbank*,

10  2016 WL 6474224, at *5 (N.D. Cal. Nov. 2, 2016) (Under this factor, "courts look for authoritative

11  proof that a foreign tribunal would reject evidence obtained with the aid of [Section] 1782."). A

12  district court's ability to order discovery under Section 1782 is not predicated on the discoverability

13  or admissibility of the evidence sought in that foreign tribunal. *See Intel*, 542 U.S. at 260. That is,

14  a court need not explore nor determine whether the information applicants seek is admissible in the

15  foreign jurisdiction. *See In re Seoul Dist. Criminal Court*, 555 F.2d 270, 723 (9th Cir. 1977).

16  Rather, in the absence of authoritative proof that a foreign tribunal would reject evidence obtained

17  with the aid of Section 1782, this discretionary factor tends to support authorizing the requested

18  discovery. *See, e.g., Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 915 (N.D. Cal. 2019)

19  (citation omitted); *In re Med. Corp. H&S*, No. 19-MC-80058-VKD, 2019 WL 1230440, at *3 (N.D.

20  Cal. Mar. 15, 2019) ("In the absence of evidence that Japanese courts would object to MCHS's

21  discovery of the information sought in the subpoena, or that they object more generally to the

22  judicial assistance of U.S. federal courts, the Court concludes that this factor weighs in favor of

23  authorizing service of the subpoena.").

24        Here, the Canadian Court is the Superior Court of Justice in Ontario. The Court takes

25  Judicial Notice that, in the Canadian legal system "Superior courts are the highest level of courts in

26  a province or territory. They deal with the most serious criminal and civil cases and have the power

27  to review the decisions of the provincial and territorial courts." *See* Government of Canada, *The*

28  *Judicial Structure – How the Courts are Organized* (Sept. 1, 2021),

TENTATIVE ORDER

https://www.justice.gc.ca/eng/csj-sjc/just/07.html (last visited Aug. 14, 2023) (information published by the Canadian government). The Canadian Court is thus apparently analogous to a trial court of general jurisdiction, and is not a specialized agency or limited jurisdiction tribunal. Further, the proceeding abroad is a civil action by Applicants against Gervais and his co-defendants, and that proceeding appears to be on a schedule which is intended to afford Applicants time to seek the discovery herein. Accordingly, the Court concludes that the nature of the Canadian Court is such that it is unlikely to object to judicial assistance from a U.S. District Court, and that the nature of the proceedings abroad favors discretionary authorization of discovery here.

Further, the record of proceedings from the Canadian litigation indicates that the Canadian Court has taken steps and issued orders to seek, within its own jurisdiction, the type of discovery and information sought here. As noted, the Anton Pillar Orders expressly order the production of information and electronic files relating to the Discord messages and user accounts which are the subjects of the instant request. [Dkt. 1-2 at 90]. In addition, the Canadian Court has extended the Anton Pillar Order two separate times to allow Applicants to try to obtain cloud-related discovery. *Id.* at 117–122. From the orders and steps taken by the Canadian Court, this Court concludes that the Canadian Court would be receptive to information sought from Discord under Section 1782. There is nothing in the record to imply, much less expressly indicate, that the Canadian Court would reject any evidence produced by Discord in response to a properly issued subpoena under Section 1782. Accordingly, the Court finds that the third discretionary factor weighs in favor of discovery.

### C.  Circumvention of the Foreign Court's Proof-Gathering Restrictions.

The third *Intel* factor considers whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264–65. "A perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to [Section] 1782 can be a factor in a court's analysis." *In re Cathode Ray Tube Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013) (citing *In re Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 107–08 (D.D.C. 2010)). Additionally, the perception that an applicant has immediately resorted to Section 1782, bypassing

United States District Court
Northern District of California

**TENTATIVE ORDER**

the foreign court's proof-gathering, can weigh against discovery.  *Id.* (citation omitted).

On the other hand, absence of evidence of attempted circumvention of the foreign tribunal's proof-gathering procedures weighs in favor of an application under Section 1782.  *See*, *e.g.*, *In re Google, Inc.*, No. 14-mc-80333-DMR, 2014 WL 7146994, at *2 (N.D. Cal. Dec. 15, 2014); *In re Eurasian Nat. Res. Corp. Ltd.*, No. 18-mc-80041-LB, 2018 WL 1557167, at *3 (N.D. Cal. Mar. 30, 2018); *In re Honda*, No. 21-mc-80167-VKD, 2021 WL 3173210, at *4 (N.D. Cal. July 27, 2021).

Here, the record of the proceedings in the Canadian lawsuit demonstrates Applicants pursued proof-gathering procedures in Canada extensively before filing the instant Application.  [Dkt. 1-2 at 18–79]. As summarized above, Applicants sought and were granted multiple Anton Pillar Orders, executed on those Orders, followed up with Gervais on the passwords for accounts, obtained extensions of the Anton Pillar Orders from the Canadian Court, and sought voluntary cooperation from Discord.  Applicants demonstrated diligence in using the Canadian Court system to try to obtain information about the Discord messages and accounts, both from Gervais and from Discord. *Id.*  Indeed, there is indication in the records provided that Gervais may have taken steps to delay or hinder access to his Discord account by claiming lack of access to his passwords stored in a LastPass account and by claiming lack of access to the email account linked to this LastPass account.  *Id.* at 62–63.

Accordingly, the Court concludes that Applicants' discovery request here is not an improper attempt to undermine the Canadian Court or its policies or proof-gathering restrictions.   Therefore, the Court finds that this discretionary factor weighs in favor of discovery.

**D.     Unduly Intrusive or Burdensome Discovery Requests.**

The final *Intel* factor addresses the intrusiveness and burden of the proposed discovery requests.  Discovery requests are unduly burdensome when they are "not narrowly tailored, request confidential information and appear to be a 'broad fishing expedition for irrelevant information.'" *In re Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016).  The "proper scope" of requests under section 1782 is "generally determined by the Federal Rules of Civil Procedure."  *In re Varian Med. Sys. Int'l AG*, 2016 WL 1161568 at *5. Thus, under this final discretionary factor, any "unduly

United States District Court
Northern District of California

**TENTATIVE ORDER**

1    intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 246.

2        While the Court finds that all the statutory and the other discretionary factors support

3    authorizing discovery, here the focus is on the proposed discovery and, as noted, whether the

4    proposed requests are impermissibly intrusive or burdensome using the discovery provisions of the

5    Federal Rules of Civil Procedure as guidelines, particularly Rule 45 governing subpoenas.  Here,

6    the proposed subpoena fails to comply with the applicable legal standards.

7        First, as discussed above, Applicants' proposed subpoena, as written, purports to require

8    Discord, headquartered in San Francisco, to produce documents in Los Angeles, California.  [Dkt.

9    1-5].  Under Rule 45(c)(2), a subpoena may only command "production of documents, electronically

10   stored information, or tangible things at a place within 100 miles of where the person resides, is

11   employed, or regularly transacts business in person[.]"  Applicants' proposed subpoena thus violates

12   the 100-mile restriction on subpoenas *duces tecum*, because San Francisco is more than 100 miles

13   from Los Angeles, California.    *Compare* bizfile Online, Cal. Sec'y of State,

14   https://bizfileonline.sos.ca.gov/search/business (search for "Discord Inc" or file no. 3472899) (last

15   visited Aug. 7, 2023) (Discord's "principal address" is in San Francisco), *with* Dkt. 1-5 at 2.

16   Instructive on the importance of the geographical limitation in Rule 45(c) is the Ninth Circuit's

17   recent opinion finding trial subpoenas improper where those subpoenas required witnesses to testify

18   remotely at trial because they were physically more than 100 miles from the location of the

19   proceeding.  *In re Kirkland*, No. 22-70092, -- F.4th --, 2023 WL 4777937, at *6–10 (9th Cir. July

20   27, 2023) (granting writ of mandamus and ordering trial court to quash subpoenas).  The Applicants'

21   proposed subpoena to Discord here is analogously improper for requiring production more than 100

22   miles from Discord's headquarters. *See In re Portfolio Recovery Assocs., LLC Tel. Consumer Prot.*

23   *ACT Litig.*, No. 11MD2295 JAH (BGS), 2021 WL 5920086, at *3 (S.D. Cal. Dec. 15, 2021).

24       Second, Applicants' proposed subpoena, particularly the descriptions of categories of

25   documents sought, does not satisfy the applicable legal standards.  Discovery requests are intrusive

26   or burdensome where they are overbroad and "not narrowly tailored temporally, geographically or

27   in their subject matter."  *In re Qualcomm Inc.*, 162 F. Supp. 3d at 1044.  Here, as discussed above,

28   the proposed subpoena refers to the names "Curtis Gervais" and "Rene Roosen" and asks for "all

United States District Court
Northern District of California

**TENTATIVE ORDER**

passwords and account data associated with" each of them, asks for their "login history for any and all Discord accounts," and seeks "[a]ny and all messaging data associated with any of Roosen [or] Gervais[.]"  [Dkt. 1-5 at 5].  While the requests provide examples of Discord accounts ("such as cmg#8329" or "such as Renual#7394" or "Archetype#8484"), all the requests are expressly not limited to those accounts and fail to provide Discord (the third-party which would be required to understand and search for documents) any other information on who these persons are, what other Discord accounts they may have, and what "any aliases" either of them used.  *Id.*

Under Rule 26(a)(1) of the Federal Rules of Civil Procedure, discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  As discussed, the proposed subpoena seeks "[a]ll . . . account data associated with" both Gervais and Roosen.  [Dkt. 1-5 at 5].  This includes "any aliases," "login history for any and all Discord accounts," and "[a]ny and all messaging data associated with any of Roosen [or] Gervais."  *Id.*  Given the lack of reasonable measures to identify Gervais and Roosen with any particularity, the breadth of the proposed subpoena is not proportional to the needs of the case.  *See Winet v. Arthur J. Gallagher & Co.*, 2020 WL 6449230, at *2 (S.D. Cal. Nov. 3, 2020) (request for production which sought "all documents" concerning, evidencing, and reflecting sales is overbroad and not proportional to the needs of the case).

While Applicants may know who Gervais and Roosen are and how to identify them, that information is notable by its absence from the proposed subpoena.  The proposed subpoena has no "definition" section and fails to provide any supplemental or explanatory information about Gervais or Roosen.  For example, the proposed subpoena lacks any personally identifying information about these persons, such as their home or correspondence addresses, business addresses, business affiliations, telephone or cellphone numbers, email addresses, or any other collateral data already in Applicants' possession to substantiate their identities.  *See* Dkt. 1-5 at 2.  It is evident from the materials provided this Court from the Canadian lawsuit that Applicants possess, minimally, at least some ancillary set of information that could facilitate a more precise identification of Gervais and

United States District Court
Northern District of California

**TENTATIVE ORDER**

Roosen to avoid burdening Discord in its search for responsive documents.

Furthermore, this Court takes Judicial Notice that Discord's registration panel appears to require the following information to create a user account: an email address; a username; a password; and a date of birth. *See Create an Account*, https://discord.com/register (last visited Aug. 9, 2023). If Applicants have email addresses and/or birth dates for Gervais and Roosen, that information would appear to be helpful in reducing the burden on Discord in its attempts to comply with a subpoena (indeed, Applicants' application recites multiple email addresses which Applicants believe Gervais has used, and yet inexplicably fails to include those in the subpoena).

Additionally, it is unknown how many other persons among Discord's worldwide customer base have the same or similar names as Gervais and Roosen. Similarly, it is unknown how many other users have user account names that are the same as or closely similar to "Archetype," "Renual," or "cmg." As drafted, the proposed subpoena would potentially implicate searching for and perhaps even producing information from innocent third parties unrelated to the Canadian lawsuit. The risk of misidentification of innocent parties and the disclosure of their personal messages or other information is thus exacerbated by the lack of definitional or narrowing information about Gervais and Roosen in the proposed subpoena. Thus, the proposed subpoena is not only unduly burdensome but also unduly intrusive, particularly with regard to the universe of innocent third parties whose information and data may be swept up by an overbroadly worded subpoena and resulting search.

As a consequence, the breadth of the subpoena as drafted risks compelling Discord to embark on a potentially complex task of discerning the specific "Curtis Gervais" or "Rene Roosen" contemplated by the subpoena in order to filter out any false hits or misidentified persons. Thus, the subpoena as drafted risks imposing further undue burden on Discord both in its search for responsive documents and in its attempts to reasonably filter out the truly irrelevant misidentified information from the information on the specific Messrs. Gervais and Roosen actually of interest.

Accordingly, the Court finds that application of this final *Intel* discretionary factor militates against approval of the proposed subpoena as presented to the Court. However, the Court finds that Applicants' failure to satisfy this discretionary factor does not require a negative finding on the

**TENTATIVE ORDER**

threshold issue of whether any discovery should be authorized in the first instance; rather this factor requires the Court to find that the proposed discovery, in its present form, should be rejected and trimmed because, as drafted, the proposed subpoena to Discord is overbroad, not narrowly tailored, unduly intrusive, and burdensome under the applicable legal standards.

### 3.   APPOINTMENT OF SECTION 1782 COMMISSIONER

In addition to the request for leave to serve the subpoena, the Court next addresses Applicants' ancillary request to appoint Mr. Warren as "Commissioner" for the purpose of issuing the subpoena and receiving the documents and materials in response thereto.  [Dkt. 1 at 14].  Under Section 1782, an order "may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court."  § 1782(a).  While the statute as written does not use the terminology "Commissioner," the Court understands Applicants to be requesting appointment of a "person" before whom the documents shall be produced .  Walter B. Stahr, *Discovery Under 28 U.S.C. § 1782 for Foreign and International Proceedings*, 30 Va. J. Int'l L. 597, 600–01 (1990) (discussing the history of United States federal discovery for foreign cases and how the term "Commissioner" was previously used in the statutory scheme).

A "person" appointed under Section 1782 (whether entitled "Commissioner" or not) is in a relatively unique position.  With regard to powers of the appointed "person" or Commissioner, the statute grants the authority to administer oaths but all other practices and procedures may be set by the Court (with the Federal Rules of Civil Procedure as an apparent default):

> By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

§ 1782(a).  The statute thus appears to contemplate that the "person" to be appointed would first be charged with taking testimony (for which the authority to administer necessary oaths is thus required) and second be charged with receiving the produced documents or things.

United States District Court
Northern District of California

**TENTATIVE ORDER**

As is proper in statutory analysis, the Court begins with the text of Section 1782 itself. *United States v. Nishiie*, 996 F.3d 1013, 1020 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2653 (2022) ("'Statutory construction is a holistic endeavor, and, at a minimum, must account for a statute's full text, language as well as punctuation, structure, and subject matter.' 'We begin, as we must, with the text' of the [Statute]. Our 'review is guided by well-established rules of statutory interpretation. We begin[ ] with the statutory text, and end[ ] there as well if the text is unambiguous.'") (citations omitted).  The statute has no express requirements or limitations on (and thus on its face provides no guidance about) who a "person" to be appointed should be.  Based on this Court's research, it appears that the Ninth Circuit has not provided interpretation of or guidance on who "a person" is within the meaning of Section 1782.

While Section 1782 provides no express qualifications of the "person" to be appointed, it does provide guidance on the characteristics of the type of person who should be appointed based on their express and potential duties under the statute.  That is, a "person" to be appointed should be expected to have the background, experience, skills, or qualities that would reasonably lead the Court to conclude that such person would be reasonably competent in performing the tasks and carrying out the duties of a Commissioner.  As particularly germane to the instant matter, the statute contemplates that the appointed "person" should receive the produced documents and things.  That duty requires, therefore, that the "person" should reasonably understand the process for document production in discovery under the Federal Rules of Civil Procedure, and thus should have skills, background, or experience sufficient to provide the Court with reasonable confidence that they understand document discovery, subpoenas, and receipt of evidence in federal court litigation.  Similarly, as discussed, the statute grants the appointed "person" the power to administer oaths.  Therefore, a person appointed for that duty should, reasonably, understand the process of administering oaths and thus have skills, background, or experience sufficient to provide the Court with the confidence that they understand the process of administering oaths and taking testimony in federal court litigation.

Precedent provides some guidance on the types of persons found qualified to serve under § 1782.  The Second Circuit found that "[p]rivate individuals may be appointed commissioners . . .

**TENTATIVE ORDER**

but . . . foreign governments typically turn to law-enforcement authorities for help in criminal matters[.]" *Young v. U.S. Dept. of Justice*, 882 F.2d 633, 635–36 (2d Cir.1989), *cert. denied*, 493 U.S. 1072 (1990).  Indeed, it appears that one court has recognized that, because a Section 1782 request is in aid of a foreign proceeding, the procedures in foreign tribunals may be instructive and thus further recognized that judicial officers in civil law jurisdictions normally undertake the process of obtaining evidence and not private attorneys.  *In re Supreme Ct. of Hong Kong*, 821 F. Supp. 204, 210 (S.D.N.Y. 1993) (citing *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 543 (1987)) ("The process of obtaining evidence in a civil-law jurisdiction is normally conducted by a judicial officer rather than private attorneys.").  Accordingly, it appears that one possible approach is to appoint a United States Magistrate Judge or an Assistant United States Attorney as a Commissioner or "person" under Section 1782.  *See* Edward C. Weiner, *In Search of International Evidence: A Lawyer's Guide Through the United States Department of Justice*, 58 Notre Dame L. Rev. 60, 66 (1982) (asserting conclusorily that it is "usual" to appoint a Magistrate Judge or Assistant United States Attorney, without citing any authority, evidence, or source for this proposition.); *see also In re United States of America*, No. 23-mc-80149-PHK (N.D. Cal. July 3, 2023), ECF No. 10 at 2 (granting an *ex parte* application pursuant to 28 U.S.C. § 1782).

Due to the lack of definitional language in the statutory language itself, the Southern District of New York indicated that a Commissioner could even be biased, that is, a person who has a direct stake in the outcome of the underlying action.  *In re Supreme Ct. of Hong Kong*, 821 F. Supp. at 211 ("Since the power of the commissioner comes from his appointment, any person who seems appropriate to the court may be appointed commissioner . . . .  Even if (as is not the case here) the Commissioner has a direct stake in the outcome of the case (as was the case in Haiti) that does not disqualify the Commissioner under American law.").  At least one secondary source appears to concur that courts have appointed persons with a direct stake in the outcome as Commissioners.  *See* Brian E. Bomstein & Julie M. Levitt, *Much Ado About 1782: A Look at Recent Problems with Discovery in the United States for Use in Foreign Litigation Under 28 U.S.C. S 1782*, 20 U. Miami Inter-Am. L. Rev. 429 (1989) (discussing decisions by some courts to allow individuals with a direct stake in the outcome to be appointed commissioner).

**TENTATIVE ORDER**

On the other hand, a secondary source recognizes the potential risks of serious misuse of the process if a person with a direct stake in the outcome is appointed as Commissioner under Section 1782. *Id.* at 465. Accordingly, "a way of preventing this serious misuse of section 1782 [is that] the district court should avoid appointing as commissioner a person with a current or potential 'interest' in the information discoverable pursuant to the district court's order." *Id.*

Because the statute directs that the Federal Rules of Civil Procedure should be followed unless the Court orders otherwise, the qualifications of a Commissioner under the Federal Rules is further instructive. Under the Federal Rules of Civil Procedure, the term "Commissioner" was used in the original Rule 53 regarding Special Masters; after the creation of full-time magistrate judges, the advisory notes indicate that "the definition of 'master' in subdivision(s) now eliminates the superseded office of commissioner." Fed. R. Civ. P. 53, advisory committee's notes to 1983 amendment. Accordingly, a Commissioner under the Federal Rules was historically a person who could have been appointed as Special Master. It is therefore not unreasonable to consider the issue of who to appoint as a "person" or Commissioner under Section 1782 as analogous to procedures for appointing a Special Master under the Federal Rules of Civil Procedure, particularly since Section 1782 expressly references the Federal Rules of Civil Procedure. As a baseline regarding a candidate competent to serve as a Special Master, such person should have the sufficient skills, background, and experience to provide the Court with reasonable confidence that they can perform their duties objectively and impartially. *Moore as Next Friend to Moore v. Tangipahoa Par. Sch. Bd.*, 912 F.3d 247, 251 (5th Cir. 2018) ("The Board is correct that special masters are obligated to be impartial and objective in the pursuit of their duties.") (citing *Newton v. Consol. Gas Co. of N.Y.*, 259 U.S. 101, 105 (1922)). That is, under Rule 53(a)(2), a Special Master must not have a relationship with the parties, attorneys, action, or court which would require disqualification. It is therefore at least reasonable to conclude that a "person" appointed under Section 1782 should similarly be competent to perform their duties objectively and impartially, and thus not have a disqualifying relationship with the parties, attorneys, action, or court.

Accordingly, in light of the analysis herein, the Court concludes that a "person" appointed under Section 1782 (whether titled "Commissioner" or not) should have at least the following

**TENTATIVE ORDER**

qualifications:  sufficient skills, background, and/or experience to provide the Court reasonable confidence that such person would competently understand and carry out the process of administering oaths and taking testimony; sufficient skills, background, and/or experience to provide the Court confidence that such person would competently understand and carry out receipt of evidence under the relevant processes for document production; and sufficient skills, background, and/or experience to be expected to understand and carry out their duties objectively and impartially, including being free from a relationship with the parties, attorneys, action, or court that would require disqualification if that person were a judge.

Here, Applicants request that Mr. Warren be appointed Commissioner for purposes of the requested subpoena.  [Dkt. 1 at 5–6.]  However, Applicants provide no analysis in their briefing on why any person needs to be appointed in the first instance, and only state conclusorily that Mr. Warren should be appointed to "allow him to execute his remaining tasks under the Canadian Court's Order."  [Dkt. 1 at 8].    Furthermore, Applicants state without explanation that "[t]he Canadian Court's Orders require that Warren collect Discord messaging data involving Gervais, Roosen, Archetype, Renual, and CMG," [Dkt. 1 at 8 n.1], but merely cite to the Anton Piller Orders which have no provision cited or quoted in which the Canadian Court ordered that Warren himself specifically was the individual required to collect data for the Canadian litigation.  On the contrary, the Canadian Court Order indicates that the Independent Supervising Solicitor "shall act as an officer of the Court in respect to the observance and implementation of the terms of [the] Order." [Dkt. 1-3 at 74].  Warren was therefore not singled out by the Canadian Court as the sole recipient charged with obtaining specifically the Discord-related information (indeed, it appears that the Independent Supervising Solicitor is more akin to or at least analogous to a Commissioner than Warren).  Finally, at a more general level Applicants provide no arguments or authority on the threshold issue of whether or not the Court should even consider appointing a "person" or Commissioner and, if so, what the qualifications of a Commissioner are under Section 1782.  As a consequence, Applicants provide no arguments or evidence that Warren is qualified to serve the Court in that capacity.

Further, the Anton Piller Orders submitted as support for the application make clear that, for

21

purposes of the Canadian lawsuit and this matter, Warren is a data forensics expert designated by counsel for the Applicants (Plaintiffs in the Canadian lawsuit).  [Dkt. 1-2 at 84 n.4; Dkt. 1-3 at 74 n.4].  Thus, it appears that Warren is a consultant or expert witness retained by Applicants to support their prosecution of the Canadian lawsuit.  As such, Warren would have a relationship with Applicants and their counsel directly related to their work in this matter.  This would be a disqualifying conflict of interest for a Master under Rule 53.

The Court is cognizant that a Commissioner or "person" appointed under Section 1782 acts, in some sense, as an officer or at least representative of the Court with respect to the discovery sought.  If such person were subject to the ethical rules of members of the bar of this jurisdiction and subject to the disciplinary oversight of the rules and guidelines of this Court, that would be another factor to further the Court's confidence to be placed in the person carrying out such role.  If a proposed Commissioner had previous experience in similar positions, such as appointment as Master or Commissioner for a court in prior cases, that would also be another factor favoring appointment of a candidate for such role.  *See Cruz v. Hauck*, 515 F.2d 322, 327 (5th Cir. 1975) (citing 5A J. Moore, Federal Practice ¶ 53.03, at 2922 (2d ed. 1974)) ("Under Rule 53, anyone, with certain exceptions not relevant here, may be appointed a master who is 'well versed in the law and fit to perform the duties incumbent on one sitting in the place of the court.'").

In view of the Court's discretion on whether or not to appoint a "person" under Section 1782, and in light of the above analysis, the Court concludes that this is a matter in which appointing a "person" under Section 1782 would be appropriate.  However, in view of the Court's discretion on whom to appoint and the Court's analysis of the reasonable qualifications of such an appointed "person," the Court in exercising its discretion **DENIES** Applicants' request to appoint Tom Warren as Commissioner.

## 4.  PROTECTIVE ORDER

Courts have discretion to issue a protective order *sua sponte* for "good cause" in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  Fed. R. Civ. P. 26(c).  To establish "good cause," there must be a demonstration of

**TENTATIVE ORDER**

specific prejudice or harm that would result from the absence of a protective order.  *Phillips ex rel. Ests. of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002).  "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test [for good cause]."  *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

Here, good cause exists to protect the privacy and rights of the persons whose information, messages, and documents may be produced by Discord in response to an appropriate subpoena.  As noted, the proposed subpoena is broadly drafted, and therefore documents, messages, and information produced in response to the requested subpoena may not lead to Gervais and Roosen.  Accordingly, it is necessary to protect the rights of any potential and innocent third parties.  *See, e.g., Strike 3 Holdings, LLC v. Doe*, No. 23-CV-01985-AMO, 2023 WL 3483288, at *2 (N.D. Cal. May 15, 2023).  The Court takes Judicial Notice of the fact Discord is a messaging platform which allows minor children to utilize the service. *See Discord's Terms of Service*, (Feb. 24, 2023), https://discord.com/terms#2 (last visited Aug. 14, 2023) (Section 2 indicating individuals must be thirteen years or older to utilize Discord's service.).  Indeed, it appears that Discord is a messaging platform which is popular with young people playing online video games.  *See* Kellen Browning, *5 Ways Young People Are Using Discord*, New York Times (Dec. 29, 2021), https://www.nytimes.com/2021/12/29/business/discord-users-gen-z.html (last visited Aug. 15, 2023) ("Discord, the online messaging platform, has long been popular with gamers. . . .  The site is particularly popular with young adults, teenagers and almost-teenagers.").  Because information, messages, and documents involving minors may be implicated (whether inadvertently or because the subpoena is broadly drafted) by the discovery sought, the Court finds that specific potential harm to minors should be addressed, as well as the annoyance, embarrassment, and undue burden suffered by any innocent third parties (whether minors or not) should their private messages be publicly produced by Discord with no confidentiality or other protections.

Accordingly, the Court finds that good cause exists to issue a confidentiality Protective Order to handle the confidential treatment of confidential documents, information, messages, or data produced by Discord in response to an appropriately framed subpoena.

United States District Court
Northern District of California

United States District Court
Northern District of California

# CONCLUSION

In view of the foregoing, the Court **GRANTS-IN-PART** Applicant's application and grants leave for Applicants to serve an appropriate subpoena for documents on Discord but **DENIES-IN-PART WITHOUT PREJUDICE** the application to the extent that the proposed subpoena submitted to the Court is rejected for the reasons stated herein.  Applicants are hereby **ORDERED** to meet and confer promptly with counsel for Discord to attempt to prepare a mutually agreeable subpoena for documents which complies with the Court's ruling herein, and specifically cures the intrusiveness and undue burden issues identified herein.  If Applicants and Discord are able to reach agreement, they shall submit a Stipulation with Proposed Revised Subpoena to the Court within thirty (30) days of entry of this Order.  If Applicants and Discord are unable to reach agreement on a revised subpoena, within thirty (30) days of entry of this Order they shall each file a brief no longer than three pages explaining their positions on areas of disagreement and attaching their respective proposed revised subpoena.

The Court **DENIES WITHOUT PREJUDICE** Applicants' request to appoint Tom Warren as Commissioner for purposes of the subpoena in this matter.  Within thirty (30) days of the date of entry of this Order, Applicants are granted leave to submit to the Court a Supplemental Request for Appointment of Commissioner, identifying at least one proposed Commissioner and including a description of the qualifications of such proposed candidate consistent with this Order.  The Supplemental Request may attach the candidate Commissioner's resume or CV, or provide a link to their online biography or profile.  Applicants may include a notice indicating whether or not they met and conferred with Discord regarding the new proposed Commissioner and whether or not that candidate is agreed upon by all Parties for the purposes of the application and subpoena process contemplated herein.

The Court further hereby **ORDERS** that Applicants and Discord meet and confer to discuss preparation and filing of a Stipulated Protective Order to address the confidential treatment and handling, CONFIDENTIAL-designations, and related procedures for production (including provisions regarding applicable privileges and any issues involving minors) for private or otherwise

**TENTATIVE ORDER**

confidential documents, information, data, electronic messages, and any other materials produced by Discord in this matter. Within forty-five (45) days of the date of entry of this Order, Applicants and Discord shall file a Joint Proposed Stipulated Protective Order if they are able to reach agreement. If the Parties are unable to reach agreement, they shall file a joint brief, no longer than four pages evenly divided between the Parties, explaining their positions on areas of disagreement and attaching a Proposed Protective Order with setting forth in plain text those areas on which they have no disputes and setting forth their respective proposed alternate language for each area of disagreement. The Court will then rule on any such disagreements and issue a final Protective Order for confidential handling of the discovery herein. Until entry of a Stipulated Protective Order in this matter, the Parties shall comply with the Court's Model Stipulated Protective Order (available on the Court's website) with regard to any documents, information, data, electronic messages, and any other materials (including testimony) produced by Discord in this matter.

    **IT IS SO ORDERED.**

Dated:  August __, 2023

_____
PETER H. KANG
United States Magistrate Judge