RITA M. HAEUSLER (SBN 110574)
rita.haeusler@hugheshubbard.com
HANNAH A. BOGEN (SBN 324294)
hannah.bogen@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1999 Avenue of the Stars, 9th Floor
Los Angeles, CA 90067-4620
Telephone: (213) 613-2800
Facsimile: (213) 613-2950

Attorneys for Applicants Path Network, Inc. and Tempest Hosting, LLC

NURY SIEKKINEN (PRO HAC VICE)
nury@zwillgen.com
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 706-5229
Facsimile: (202) 706-5298

Attorneys for Respondent Discord Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re *Ex Parte* Application of<br><br>Path Network, Inc. and Tempest Hosting, LLC,<br><br>       Applicants. | CASE NO. 3:23-MC-80148-PHK<br><br>[MAGISTRATE JUDGE PETER H. KANG]<br><br>**JOINT SUPPLEMENTAL BRIEFING** |

Pursuant to the Court's August 23, 2023 order, Applicants Path Network, Inc. ("Path") and Tempest Hosting, LLC ("Tempest") (collectively "Applicants") and Respondent Discord Inc. ("Discord"; collectively, the "Parties") submit joint briefing as follows:

## I.   Introduction

On May 22, 2023, Applicants filed an *Ex Parte* Application for Order to Take Evidence Pursuant to 28 U.S.C. §1782 ("Application") with this Court. (*See* ECF No. 1.) In the Application, Applicants asked the Court to issue a subpoena to Discord (the "Discord Subpoena") for data and communications in aid of a pending litigation in Canada (the "Canadian Action"). In the Canadian Action, Applicants allege that Curtis Gervais ("Gervais"), together with confederates including Rene Roosen ("Roosen") used Discord to engage in cyber harassment and to spread defamatory lies about Path and Tempest on the internet and to third parties. (*See* ECF No. 1 pp. 1-8 (detailing factual and procedural background).) After determining that evidence of Gervais's misconduct was in danger of spoliation, the Superior Court of Justice in Ontario, Canada (the "Canadian Court") issued three orders requiring Gervais to comply with collection of data and communications related to the Canadian Action (the "Canadian Court's Orders"). (*Id.*)

As alleged in the Application, despite good faith efforts by Applicants' data forensics specialist Tom Warren ("Mr. Warren") to collect the data subject to the Canadian Court's Orders and Gervais's pledge to cooperate, Gervais continues to engage in spoliation and appears to have intentionally prevented Mr. Warren from accessing the data. (See ECF No. 1 pp. 1-8 (detailing spoliation and obstruction).)

During a hearing on the Application on August 17, 2023, the Parties were ordered to meet and confer with respect to several issues raised by the Court. The Parties reached agreement on certain issues (*See* Parties' September 1, 2023 Joint Stipulation and Proposed Order). However, as detailed below, the Parties disagree with respect to (1) whether Discord can be prevented from notifying Gervais of the Discord Subpoena; (2) whether passwords constitute non-content exempt from the Stored Communications Act ("SCA"); (3) whether Gervais has impliedly consented to the disclosure of his Discord communications such that the SCA does not require his express consent to Discord's disclosure; and (4) whether a litigation hold pausing any of Discord's routine deletion

procedures is required, notwithstanding Discord's preservation of all responsive accounts.

## II. Notice

### a. Applicants' Statement

Gervais is not entitled to notice from Discord in advance of the disclosure of his respective communications. Instead, a brief non-disclosure order preventing Discord from disclosing the collection of Gervais's communications is appropriate. While non-disclosure orders in the context of a civil subpoena have not been addressed in the Ninth Circuit, or in the Northern District of California, they have been addressed in criminal matters. Pursuant to 18 U.S.C. § 2703, government entities may ask a provider of electronic communication services to produce certain subscriber communications that are material to an ongoing criminal investigation under specific circumstances. *See* 18 U.S.C. § 2703(c). The government entity may also request that the Court issue a non-disclosure order for a period not to exceed 90 days if disclosure of the subpoena and/or production could lead to an adverse result, including but not limited to "destruction of or tampering with evidence." 18 U.S.C. 2705(a)(2)(C); *Matter of Search Warrant for [redacted].com*, 248 F. Supp. 3d 970, 975 (C.D. Cal. 2017) (citations omitted) ("under Section 2705(a), if the government obtains evidence from an RCS provider *via* a subpoena or court order, the government may delay notifying the subscriber for up to 90 days upon demonstrating or certifying that notification "may" have a specified "adverse result."); *In re Grand Jury Proc.*, 17 F. Supp. 3d 1033, 1036 (S.D. Cal. 2013) (granting government request for non-disclosure order prohibiting disclosure of grand jury subpoena for 90 days where subjects of grand jury subpoena were residents of a foreign country and might flee if they found out about it). Non-disclosure orders require a "particularized showing of the need for a non-disclosure order based on the circumstances of each case[,]" and the non-disclosure order must be reasonable in scope. *In re Subpoena*, No. 2:18-MJ-00085-NJK, 2018 WL 565004, at *1 (D. Nev. Jan. 25, 2018) (citations omitted).

Here, no additional notice to Gervais is necessary and a non-disclosure order is appropriate. Additional notice from Discord would be duplicative under these circumstances because it would tell Gervais what he already knows – that the data subject to the Canadian

110203264_1

1  Court's Orders is being collected.  Further, a non-disclosure order from the Court prohibiting
2  Discord from disclosing the Discord Subpoena for 90 days is appropriate under these
3  circumstances.  The plain language of 18 U.S.C. § 2705(a)(2)C) states a Court may issue a non-
4  disclosure order upon request if the Court has reason to believe there is risk of "destruction of or
5  tampering with evidence." *Id.*  The risk is apparent here because the Canadian Action is largely
6  based on Gervais's destruction of evidence related to the suit, and the Canadian Court recognized
7  the risk of spoliation in its orders.  (*See* ECF Nos. 1, 1-1, 1-2 (Application and supporting
8  affidavits detailing Gervais's misconduct and spoliation); ECF No. 1-2 p. 110, Canadian Court's
9  Endorsement in Support of its Anton Piller Order ("There is convincing evidence that Gervais, as
10 well as corporations under his direction or related to him; have in their possession incriminating
11 evidence; and [t]here is a real possibility that Gervais and others acting under his control may
12 destroy, disseminate or make use of…evidence, before the discovery process can do its work[.]")
13 Applicants also made a particularized showing to this Court in their Application, supported by an
14 affidavit from Mr. Warren and copies of the Canadian Court's Orders, further supporting that a
15 90-day non-disclosure order is appropriate and reasonable under the circumstances.  (*See* ECF
16 Nos. 1, 1-1, 1-2.)

17       Notice to Gervais of the instant proceedings is unnecessary and a 90-day non-disclosure
18 order is appropriate given the high risk of ongoing spoliation and destruction of evidence.

19       **b.  Respondent's Statement**

20       In accord with Discord's general policy concerning third-party requests for user data,
21 Discord has the right to speak to any affected user—and intends to do so—after any Subpoena is
22 in fact issued and becomes binding upon Discord. Should the Court desire that the affected
23 accounts be notified prior to that, Discord does not oppose such notice.

24       Applicants urge that this Court should gag Discord from speaking to its users based on
25 Applicants' spoliation concerns, even though Discord has preserved all accounts responsive to
26 the Discord Subpoena. Any such order would run afoul of the First Amendment as an
27 impermissible content-based prior restraint on Discord's speech. *See Microsoft Corp. v. United*
28 *States Dep't of Just.*, 233 F. Supp. 3d 887, 905 (W.D. Wash. 2017). It is well-understood that

"witnesses and other third parties in possession of evidence relating to a civil or criminal proceeding generally have a robust First Amendment right, whether they are under subpoena or not, to speak freely about their knowledge and their involvement in the proceeding whenever and with whomever they please" and that "deviations from the norm of non-constraint require strong justification." *Facebook, Inc. v. Pepe*, 241 A.3d 248, 260–61 (D.C. 2020). Fear of spoliation is not sufficient to "curtail[ ] a subpoenaed party's First Amendment rights." *Id.* at 264

In addition, gagging Discord will not prevent Gervais from finding this matter through a public records search. Indeed, at the Hearing, Applicants argued that Gervais is on constructive notice of this matter due to proceedings in Canada. If that is so, Discord should not be prevented by this Court from notifying Gervais directly. Applicants cannot have it both ways.

### III. The Stored Communications Act

#### a. Applicants' Statement

##### i. Passwords are not Content

In the context of a motion to dismiss for claims of violations of the Wiretap Act, this district has held that a username and password, even taken together, do not constitute "content" for purposes of implicating the SCA.[1] *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083-84 (N.D. Cal. 2015) ("Plaintiffs [argued]…that when a user transmits *both* a user name and password together, a substantive communication with the destination server is created… and that the interception of the user name and password results in the interception of the entire substance of the communication. The Court is not persuaded…[j]ust as interception of [a] PIN number [does] not implicate 'content'…neither does interception of a user name or password. While such credentials may be a prerequisite to engaging in communications (i.e., entering a user name and password in order to access one's email), the credentials themselves do not reveal the substance, purport, or meaning of any communication.")[2]

---

[1] The Parties agree that the SCA does not apply to non-content.

[2] This case has received no negative treatment on this issue.

Here, as in *Carrier IQ*, Gervais and Roosen's usernames and passwords do not implicate the "substance, purport, or meaning" of their communications, do not constitute content covered by the SCA, and should be produced by Discord.

### ii. Gervais Impliedly Consented to Disclosure of his Communications

A provider can disclose communications without violating the SCA if the originator of the communications consents to disclosure. 18 U.S.C. § 2702(b)(3). This consent can be express or implied. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) (citations omitted). "The critical question with respect to implied consent is whether the parties…had adequate notice." *Id.* (citations omitted).

Here, Gervais was on notice that certain subsets of his Discord communications were ordered to be collected by the Canadian Court because he is a party to the Canadian Action. Further, Mr. Warren's affidavit (ECF No. 1-2) states that Gervais consented to the search of his devices which would provide access to his Discord communications. (*See* ECF No. 1-2 ¶ 12 ("Gervais unlocked his LastPass password repository which revealed that he had saved at least 417 sets of log-in credentials therein for Gervais' applications / websites…I advised Gervais that, pursuant to paragraph 9 of the Anton Piller Order, I would take his electronic devices to my lab in Burlington and mirror the data there. Gervais gave his consent."); *Id.* at ¶ 21 ("Gervais provided access to his fingerprint-secured laptops and I mirrored /preserved the locally-stored data thereon."); *Id.* at ¶ 23 ("I advised Gervais that I would access Gervais' LastPass program…and preserve the data associated with his 417 (at least) accounts from there. Gervais acknowledged my intention and agreed to lend necessary assistance if any was required."); *Id.* at¶ 44 ("Gervais indicated to me that he would provide me (via his lawyer) with the log-in credentials to access…servers remotely so that I could and preserve the data thereon remotely.").)

Given Gervais's active participation in the collection of his data in Canada and the fact that the scope of the revised Discord Subpoena[3] will not exceed the scope of the Canadian Court's

---

[3] After the Court rules on the Parties' Joint Briefing submitted on September 1, 2023 and September 8, 2023, Applicants will file a proposed revised Discord Subpoena that complies with

Orders, Gervais was on notice of the collection of his Discord data and Discord can produce his communications without violating the SCA.

### b. Respondent's Statement

#### i. Passwords

Aside from the question of communications, the SCA's prohibition implicitly includes passwords, the digital key to all electronic communications. The disclosure of passwords is antithetical to the robust protection of contents afforded by the SCA and would defeat the purpose of the law, "based on fundamental principles of protecting the secrecy of electronic communications." *In re Toft*, 453 B.R. 186, 201 (Bankr. S.D.N.Y. 2011); *Bower v. Bower*, 808 F. Supp. 2d 348, 350 (D. Mass. 2011) (SCA created a "zone of privacy" around the contents of communications). Applicants' position is akin to acknowledging a law forbids a bank from turning over a safe deposit box's contents but requires the bank to turn over the key. Applicants' cases are inapposite as they deal with passwords intercepted under the Wiretap Act and do not implicate the extreme privacy concern of third parties acquiring digital passwords via subpoena.

This dispute is largely academic, however, because Discord does not store plaintext passwords. Rather, Discord stores only the "hashed" and "salted" values of user passwords as a security feature. Discord does not have the capacity to undo these hashing and salting functions. Moreover, Discord understands that hashed and salted values cannot be reverted to plaintext even by experts. Thus, the relevance of the salted and hashed values is nonexistent and requiring Discord to produce the salted and hashed values is unduly burdensome.

#### ii. Gervais's Consent

The Parties agree that the Stored Communications Act, 18 U.S.C. §2701, *et seq.* (the "SCA"), prohibits Discord from disclosing the contents of electronic communications in response to any subpoena absent the consent of the user. The Parties agree that neither Gervais nor Roosen has (in fact or by implication) communicated to Discord their consent to disclosure of contents.

---

the Court's decision and does not exceed the exact scope of the discovery ordered to be collected and produced by the Canadian Court in the Canadian Court's Orders.

However, Applicants contend that Gervais's conduct allowing Mr. Warren to examine his devices constitutes "lawful consent" to Discord's disclosure of contents. This novel argument fails.

The caselaw interpreting Section 2702(b)(3) clarifies that "lawful consent" must be actual, consent-in-fact and cannot be implied through refusal to comply with court orders or discovery obligations. *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726 (9th Cir. 2011); *Negro v. Superior Ct.*, 230 Cal. App. 4th 879, 889, 179 Cal. Rptr. 3d 215, 222 (2014), *as modified* (Nov. 18, 2014); *Bower*, 808 F. Supp. at 348 (party's non-participation in the litigation did not mean that she had impliedly consented to the disclosure of her emails; court refused to compel providers to turn over her emails). *Negro* puts it succinctly: "The 'lawful consent' exception to the prohibitions of the [SCA] is not satisfied by consent that is merely constructive, implied in law, or otherwise imputed to the user by a court." As *Negro* instructs, courts interpreting "lawful consent" should err "in favor of a narrower conception of consent, not a broader one." *Negro*, 230 Cal. App. 4th at 889. This comports with the way courts have consistently interpreted Section 2702. *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 730 (9th Cir. 2011); *Commonwealth v. Augustine*, 4 N.E.3d 846, 852 (Mass. 2014); *see U.S. v. Councilman*, 418 F.3d 67, 75-76 (1st Cir. 2005) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."). With this guidance, *Negro* concluded that a lower court erred when it found that Negro had consented to disclosure of content when he failed to produce the emails himself after being ordered to do so. Such "consent by judicial fiat, in which a court orders a service provider to disclose stored messages based on its own declaration, contrary to fact, that the user has consented to disclosure" is impermissible under the SCA.

Here, Applicants ask the Court to decree consent by judicial fiat. Mr. Warren's Affidavit (DKT. 1-2 at 1-14) ("Warren Affidavit") does not demonstrate Gervais's or anyone else's "lawful consent" as required to allow for disclosure under Section 2702. First, the Warren Affidavit does not purport to come from Gervais, but rather recounts second-hand things that Gervais purportedly said and did. Second, far from showing Gervais's "lawful consent" to the disclosure of his Discord content, the Warren Affidavit is strong evidence of Gervais's lack of consent. It

recounts various instances of delaying tactics, lack of cooperation, and outright obstruction. *Id*. at 3 ("Gervais … ha[s] not rendered the 'necessary assistance' required" under the Anton Piller order such that Warren "ha[s] been frustrated by Gervais in [Warren's] efforts to preserve data"), 5 (expressing concern that Gervais would delete or alter information though he allowed the search), 8 (Gervais failing to respond to Warren's attempts to access password repository and that "Gervais had booby-trapped his own … account"), 11 (finding Gervais's explanations "not credible" in part because Gervais continued to access Discord), 12 (Gervais used a hotkey in Warren's presence to delete email account data) 12-13 (recounting Gervais's misrepresentations concerning his access to Discord). These acts demonstrate, if anything, a lack of consent.

Third, even if there is doubt concerning Gervais's consent with respect to Warrant, there is no dispute he consented to **Discord's** disclosure of anything. At most, the Warren Affidavit indicates that Gervais may have allowed Warren limited access to certain of his devices. Section 2702 clearly contemplates consent being aimed ***at the provider***. To find "lawful consent" here is a stretch—far from the "narrower conception of consent" urged by *Negro* and other cases.

This is not the end of the road for Applicants in their quest for this content. They can obtain the content by (1) subpoenaing other parties to the communications; (2) securing Gervais's voluntary lawful consent to the disclosure; or (3) enlisting the Canadian court's help to require Gervais to consent. What they cannot do is obtain content via a civil subpoena aimed at Discord.

IV.   **Litigation Hold**

a.   **Applicants' Statement**

A party's duty to preserve attaches when litigation is reasonably anticipated. *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 991–92 (N.D. Cal. 2012). This duty includes "suspend[ing] any existing policies related to deleting or destroying files and preserv[ing] all relevant documents related to the ligation." *Id.* (citations omitted). This obligation also extends to third parties not named in litigation. *See In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1069 (N.D. Cal. 2006) (holding that investors in company who were not parties to the litigation had duty to preserve documents after case against company it invested in was dismissed because further litigation was reasonably foreseeable, and it had been served with a subpoena).

JOINT SUPPLEMENTAL BRIEFING
110203264_1

Here, there is no question that litigation is reasonably anticipated because Discord was served with the Discord Subpoena to aid the Canadian Action, litigation that continues to date. As soon as Discord was served with the Discord Subpoena, it should have halted all routine deletion procedures, yet it did not. Pursuant to its policies, Discord only engages in routine deletion every six months.[4] Given the severe risk of spoliation in this case and the minimal burden associated with pausing deletion procedures with respect to certain accounts only twice a year, Applicants request that the Court issue an order requiring Discord to halt all routine deletion procedures with respect to Gervais's and Roosen's accounts (subject to the identifying information already provided to Discord by Applicants on August 17, 2023) until the Discord Subpoena is fully resolved and all responsive documents have been produced.

b.  **Respondent's Statement**

Discord has preserved all accounts it could identify based on the information provided by Applicants, to the extent any exist. Discord preserved such accounts using the preservation snapshot tool it uses in connection with preservation requests issued under 18 U.S.C. 2703(f), as Discord noted at the Hearing. No further action is necessary because the responsive accounts have been preserved. Those snapshots will not be affected by Discord's ordinary record retention policies, ameliorating any spoliation concern. Still, Applicants make the remarkable demand that Discord suspend its data retention policies because they want to capture *future* data indefinitely.

Discord does not have an obligation to preserve records beyond what the existing preservations. In ordinary litigation, Discord would have no continuing obligation to preserve records created after a subpoena was issued. Applicants' demand goes beyond what law enforcement can demand as 2703 preservations cannot be used to capture future data. *See* DOJ Manual, *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations* at 140, available at https://www.justice.gov/file/442111/download.

---

[4] *See* Discord, "Retention for Specific Purposes," (https://support.discord.com/hc/en-us/articles/5431812448791-How-long-Discord-keeps-your-information#:~:text=We%20retain%20certain%20information%20(including,for%20up%20to%20two%20years).

Respectfully submitted,

DATED: September 1, 2023

RITA M. HAEUSLER
HANNAH A. BOGEN
HUGHES HUBBARD AND REED LLP

By: /s/ Hannah A. Bogen
Hannah A. Bogen
Attorneys for Applicants
PATH NETWORK, INC. AND
TEMPEST HOSTING, LLC

DATED: September 1, 2023

NURY M. SIEKKINEN
ZWILLGEN PLLC

By: /s/ Nury M. Siekkinen
Nury M. Siekkinen
Attorneys for Respondent
DISCORD, INC.