1   MAYER BROWN LLP
    DOUGLAS A. SMITH (SBN 290598)
2   *dougsmith@mayerbrown.com*
    333 S. Grand Ave., 47th Floor
3   Los Angeles, CA 90071
    Telephone: (213) 229-9500
4   Facsimile: (213) 625-0248

5   Attorneys for Rene Roosen and
    HostingKing, Inc., d/b/a Game Server Kings
6

7

8                 **UNITED STATES DISTRICT COURT**

9                 **NORTHERN DISTRICT OF CALIFORNIA**

10

11                                          Case No. 3:23-mc-80148-PHK

12  In Re *Ex Parte* Application of          **[CORRECTED] (1) RENE ROOSEN'S AND
                                             GAME SERVER KING'S MOTION TO**
13  Path Network, Inc. and Tempest Hosting, LLC,  **INTERVENE AND QUASH, MODIFY, OR
                                             STAY EXECUTION OF THE SUBPOENA**
14                  Applicants.              **TO DISCORD, INC.**

15                                           *Filed under separate cover:*

16                                           **(2) DECLARATION OF RENE ROOSEN**

17
                                             **(3) DECLARATION OF RYAN M. NACKER**
18
                                             **(4) DECLARATION OF DOUGLAS A.
19                                              SMITH**

20                                           **(5) [PROPOSED] ORDER**

21                                           Judge:        Hon. Peter H. Kang

22                                           Date:         March 29, 2024

23                                           Time:         1:00 p.m.

24                                           Courtroom:    15F

25

26

27

28

1    **TO THE CLERK AND ALL COUNSEL OF RECORD:**

2        **PLEASE TAKE NOTICE THAT** on Friday, March 29, 2024, at 1 p.m. PT, or as soon as thereafter

3    as this Motion may be heard, in Courtroom 15F of this Court, located at 450 Golden Gate Avenue, San

4    Francisco, CA 94102, before the Honorable Peter H. Kang, Rene Roosen ("Roosen") and HostingKing,

5    Inc, doing business as Game Server Kings ("Game Server Kings"), will and hereby do move the Court to

6    (1) permit their intervention in this matter and (2) to quash, modify, or stay execution of Path Network, Inc.

7    and Tempest Hosting, LLC's document subpoena to Discord, Inc., which the Court on December 26, 2023,

8    allowed to be served.  (*See* ECF No. 29.)  Mr. Roosen and Game Server Kings make this Motion pursuant

9    to 28 U.S.C. § 1782 and Federal Rules of Civil Procedure 24 and 45.

10       The Court should grant Mr. Roosen's and Game Server Kings' motion to intervene because they

11   have a right to intervene and standing to quash, modify, or set aside Path's and Tempest's document

12   subpoena to Discord because they are the subpoena's "primary targets," as it seeks data and documents

13   associated with Mr. Roosen's use of Discord, Inc. for personal and business matters, including in regard to

14   his work as CEO of Game Server Kings.  The Court should also quash the subpoena *in its entirety* because

15   it does not legitimately seek information for use in the lawsuit Path and Tempest brought against Curtis

16   Gervais and his company Packet Rabbit, Inc. in a remote court in Canada—a suspect lawsuit that neither

17   Mr. Roosen nor his company HostingKing, Inc. are named as defendants.  Rather, the subpoena is nothing

18   more than a backdoor attempt by Game Server Kings' direct and primary competitors, Path and Tempest,

19   to obtain trade secret and other confidential information, including customer lists and contacts, pricing

20   information, intel on customer requests, and other confidential and competitively sensitive information by

21   a black-hat purportedly turned white-hat computer hacker and sophisticated cyber actor, Marshal Webb,

22   who runs Path and Tempest.  At a minimum, the Court should modify the subpoena because it seeks

23   irrelevant or overbroad information, including because it is unlimited in scope and timeframe; goes far

24   beyond what is relevant to the Canadian proceeding and the *now-expired* Anton Piller order in that

25   proceeding; and intentionally targets individuals Path and Tempest know are *not* Mr. Roosen nor Mr.

26   Gervais, such as independent contractor Ryan M. Nacker who performs customer service functions for

27   Game Server Kings.  And if any production of data or documents are permitted, the Court should order

28   that the production may *only* be seen by Outside Counsel Only—and only *United States* outside counsel

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

because of the nature of the secretive and suspicious Canadian proceedings and the lawyer, Norman Groot, who brought them.

      This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declarations of Rene Roosen, Ryan M. Nacker, and Douglas A. Smith; all the pleadings and papers on file in this action; all matters of which this Court may take judicial notice; and upon such other and further oral or documentary evidence as may be presented to the Court at or prior to the hearing on this Motion.

Dated: January 22, 2024                      MAYER BROWN LLP


                                          By:  */s/  Douglas A. Smith*
                                              Douglas A. Smith

                                      Attorneys for Rene Roosen and
                                      HostingKing, Inc., d/b/a Game Server Kings

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 6

    A. Marshal Webb: Path's CEO and Self-Proclaimed "World Renowned" Black Hat
    Purportedly Turned White Hat Hacker ............................................................ 6

    B. Roosen's Companies Are The Only Direct and Significant Competitors To
    Webb's Companies In The Niche Space of Game Server Hosting With
    State-of-the-Art DDoS Protection .................................................................. 7

    C. The Secretive, Mysterious, and Possibly Illegitimate Canadian Lawsuit Filed
    In Small-Town Perth, Canada By Norman Groot ............................................ 7

    D. Discord's Servers, Channels, Group Chats, and Direct Messages, And How
    GSK Uses Discord To Serve Its Clients. ........................................................ 9

    E. The Subpoena to Discord ........................................................................... 10

LEGAL STANDARD ......................................................................................... 10

ARGUMENT ..................................................................................................... 11

    I. As The Subpoena's True Targets, Mr. Roosen and Game Server Kings
    Should Be Permitted To Intervene For The Purpose Of Moving To Quash, Modify, Or
    Stay Execution Of The Subpoena. ................................................................. 11

        A. Roosen And GSK Have Standing To Challenge Issuance Of
        The Subpoena Under § 1782. ................................................................ 11

        B. Roosen And GSK Also Have A Right To Intervene Under FRCP 24(a)(2). ............... 13

    II. The Subpoena Should Not Have Issued Under 28 U.S.C. § 1782. ........................................... 14

        A. Path and Tempest Do Not Meet All The Statutory Requirements. .............................. 14

            1. The Anton Piller Order Is No Longer In Effect, As Of 6+ Months Ago,
            And Therefore, The Subpoena Does Not Seek Data For Use In The
            Canadian Proceeding. ..................................................................... 15

            2. The Anton Piller Order Does *Not* Authorize Seizing Mr. Roosen's and
            GSK's Discord Data For The Canadian Litigation. .......................................... 16

            3. Path And Tempest Seek Mr. Roosen's And GSK's Discord Data
            For Improper Ulterior Motives. ......................................................... 17

        B. The Discretionary *Intel* Factors Also Warrant Quashing Or
        Modifying The Subpoena. ................................................................... 18

            1. Path And Tempest Have Not Established That The Discovery
            They Seek Is Unavailable Through The Canadian Proceeding Or
            Gervais's Discord Data. ................................................................... 18

            2. Path and Tempest's Anton Piller Order And Corresponding Subpoena
            Evidences An Attempt To Circumvent Canada's Discovery Restrictions. ....... 19

            3. Path And Tempest's Requests Are Overbroad. ........................................... 20

    III. In The Alternative, The Court Should Modify The Subpoena, And Only Permit Production
    On An "Outside Counsel' Eyes' Only" Basis. ............................................................. 21

iii

[CORRECTED] RENE ROOSEN'S AND GAME SERVER KING'S MOTION TO INTERVENE AND
QUASH, MODIFY, OR STAY EXECUTION OF THE SUBPOENA TO DISCORD, INC.,
CASE NO. 3:23-MC-80148-PHK

A. The Subpoena Still Violates The Stored Communications Act By Requiring Production Of The Names of Private, Invite-Only Servers and Channels, Which Reveals Content. .......................................................................................... 21

B. The Timeframe Should Be Limited To June 24, 2022 to January 9, 2023 .................. 21

C. Mr. Roosen's Data Should Be Carved Out Entirely From The Subpoena Because He Is Not A Defendant In The Canadian Litigation. ........................................................... 22

D. Mr. Nacker (ryz0r)'s Data Should Be Carved Out Entirely From The Subpoena Because the Canadian Complaint Contains No Allegations About Him. .................... 22

E. Any Production Should Be Subject To An "Outside U.S. Counsel's Eyes' Only" Designation And Treated Accordingly. ......................................................................... 23

IV. In the Alternative, the Court Should Stay Execution of the Subpoena Pending Further Disclosure About the Secretive, Mysterious, and Possibly Illegitimate Canadian Proceedings Forming The Sole Basis for the Subpoena. ................................................................... 23

CONCLUSION .................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Al Sadeq*,
2021 WL 2828810 (N.D. Cal. Mar. 30, 2021)......................................................................17

*In re App. of Auto-Guadeloupe Investissement S.A., for an Ord. to Take Discovery
Pursuant to 28 U.S.C. Section 1782*,
2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) ........................................................11, 12, 20

*In re Ex Parte Apple Inc.*,
2015 WL 5838606 (S.D. Cal. Oct. 7, 2015) .......................................................................19

*In re Ex Parte Application of Qualcomm Inc.*,
162 F. Supp. 3d 1029 (N.D. Cal. 2016) .......................................................................11, 20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2013 WL 183944 (N.D. Cal. Jan. 17, 2013) .......................................................................19

*Matter of de Leon*,
Case No. 1:19-mc-00197-TSC-RMM (D.D.C. March 12, 2022) [ECF No. 41] ................13

*de Leon v. Clorox Co.*,
2020 WL 4584204 (N.D. Cal. Aug. 10, 2020) ...................................................................11

*In re Digitechnic*,
2007 WL 1367697 (W.D. Wash. May 8, 2007)...................................................................19

*Hester v. Regan*,
2023 WL 5610754 (N.D.N.Y. Aug. 30, 2023) ...................................................................17

*In re Hornbeam Corp.*,
2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015), *aff'd*, 722 Fed. Appx. 7 (2d Cir.
2018) ..............................................................................................................................13, 14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)..........................................................................................11, 14, 18, 20

*ISC MCC EuroChem v. Chauhan*,
2018 WL 9650037 (6th Cir. Sept. 14, 2018) .....................................................................18

*Kalbers v. U.S. Dep't of Justice*,
22 F.4th 816 (9th Cir. 2021) ...............................................................................................14

*Khrapunov v. Prosyankin*,
931 F.3d 922 (9th Cir. 2019) .........................................................................................11, 18

v

[CORRECTED] RENE ROOSEN'S AND GAME SERVER KING'S MOTION TO INTERVENE AND
QUASH, MODIFY, OR STAY EXECUTION OF THE SUBPOENA TO DISCORD, INC.,
CASE NO. 3:23-MC-80148-PHK

*In re LG Electronics Deutschland GmbH*,
2012 WL 1836283 .......................................................................................18

*In re Microsoft Corp.*,
2006 WL 825250 (N.D. Cal. Mar. 29, 2006)...........................................11

*In re NCAA Student-Athlete Name & Likeness Litig.*,
2010 WL 5644656 (N.D. Cal. Dec. 17, 2010) .........................................23

*In re Path Network, Inc.*,
2023 WL 8115045 (N.D. Cal. Nov. 22, 2023) .........................................21

*In re Petrobras Sec. Litig.*,
393 F. Supp. 3d 376 (S.D.N.Y. 2019)......................................................15

*Rainsy v. Facebook, Inc.*,
311 F. Supp. 3d 1101 (N.D. Cal. 2018) ...................................................17

*Sackman v. Liggett Grp., Inc.*,
167 F.R.D. 6 (E.D.N.Y. 1996) ..................................................................13

*Sun Sky Hosp. LLC v. U.S. Dept. of Agriculture*,
2018 WL 5425803 (D. Ariz. Oct. 29, 2018) ...........................................13

*In re Terra Invest*,
LLC, 2022 WL 19406162 (S.D. Fla. June 9, 2022)..................................12

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004) ...................................................................13

*United States v. Kopankov*,
2023 WL 3772804 (N.D. Cal. May 11, 2023) .........................................15

*In re Will Co.*,
2021 WL 5322653 (N.D. Cal. Nov. 16, 2021) .........................................11

*Winet v. Arthur J. Gallagher & Co.*,
2020 WL 6449230 (S.D. Cal. Nov. 3, 2020) ...........................................20

**Statutes**

A.R.S. § 13-3918(A) ............................................................................................16

28 U.S.C. § 1782 ...................................................................................... *passim*

Stored Communications Act, 18 U.S.C. § 2702 ...........................2, 3, 4, 5, 14, 21

Iowa Code § 808.8 ...............................................................................................15

**Other Authorities**

Fed. R. Civ. P. 5.2..................................................................................................................12

Fed. R. Civ. P. 24...................................................................................................................13

Fed. R. Civ. P. 26..................................................................................................................20

Fed. R. Civ. P. 45..................................................................................................................18

[CORRECTED] RENE ROOSEN'S AND GAME SERVER KING'S MOTION TO INTERVENE AND
QUASH, MODIFY, OR STAY EXECUTION OF THE SUBPOENA TO DISCORD, INC.,
CASE NO. 3:23-MC-80148-PHK

**INTRODUCTION**

On December 26, 2023, this Court allowed Applicants Path Network, Inc. and Tempest Hosting, LLC to serve a document subpoena on Discord, Inc., a communications platform originally built for video game players. The subpoena wrongly and intentionally targets the communications and other data of Rene Roosen, a Dutch citizen, who uses Discord for personal matters as well as business matters associated with his game server hosting company HostingKing, Inc., which does business as Game Server Kings. While Path and Tempest purportedly seek Mr. Roosen's information for use in a Canadian litigation against its former CEO Curtis Gervais and his company Packet Rabbit, Inc., another server hosting company, the subpoena's purpose is far from legitimate. The subpoena is nothing more than an improper backdoor attempt by Path and Tempest—who are the direct and only significant competitors to Game Server Kings— to obtain trade secret and other confidential information, including customer lists and contacts, pricing information, intel on customer requests and business operations, and other confidential and competitively sensitive information by a "black-hat purportedly turned white-hat" computer hacker and dangerous cyber actor, Marshal Webb, who runs Path and Tempest.

The underlying Canadian proceeding has been shielded in a mysterious cloak of secrecy under the guise that information about that proceeding purportedly cannot be provided because the case is sealed. Tellingly, Path and Tempest have provided little to no information about that proceeding to this Court for review in connection with their application for a subpoena to issue under 28 U.S.C. § 1782. And that information could have easily been provided through an "under seal" filing or through the submission of material for *in camera* review for the Court. But it was not—perhaps because of what shining a spotlight on that proceeding, purposefully brought in the remote town of Perth, Canada (population 6,469), or the lawyer who brought it and obtained the corresponding Anton Piller order, Norman Groot, would reveal.

Indeed, on information and belief, the **now-expired** Anton Piller order forming the **sole** basis for Path and Tempest's subpoena is subject to a pending motion to be set aside as improperly granted and by a judge who has recused himself in the face of motion alleging bias and has recommended to his supervising judge that the proceeding should be transferred to Toronto and out of his small-town courthouse in Perth with little judicial resources. If true, the lack of transparency and disclosure on Path and Tempest's part is extremely troubling—to say the least. Even worse, a journalist has described Norman Groot as a "violent

convicted felon and disgraced ex-cop turned lawyer" who was not only terminated from his Bay Street Canadian law firm for improper handling of a case but also "attained an Anton Piller" order (the very order he obtained here for Path and Tempest) "based on lies [his client] could not prove" in their ultimately dismissed court case and with the intent to "abuse the authority of the court."[1]

Even putting aside the suspicious circumstances of the secretive, mysterious, and perhaps wholly illegitimate Canadian proceedings and equally illegitimate Anton Piller order, the little information disclosed about those proceeding shows that Path and Tempest's subpoena, as initially and currently drafted, goes far afield of what the now-expired Canadian court's Anton Piller order actually allowed to be obtained and what United States law permits.  The subpoena itself therefore exposes Path and Tempest's true motive as an improper one.  Apparently blinded by their desire to obtain every single piece of information possible relating to Mr. Roosen and Game Server Kings, Path and Tempest proposed a subpoena for this Court's approval that had no discernable boundaries, whether as to timeframe, who or what it targeted, or anything else.  Falling within its unduly intrusive scope were even innocent, minor children (which this Court had to issue a protective order to protect) and Discord users who have no connection whatsoever with the world of game server hosting, much less with the matters in the Canadian litigation.  This Court itself recognized this in its tentative order on Path and Tempest's application for the subpoena, issuing an order to protect "specific potential harm to minors" and stating that the "subpoena fails to "comply with the applicable legal standards" because, "as drafted" it is "overbroad, not narrowly tailored, unduly intrusive, and burdensome under the applicable legal standards.[2]

More troubling yet, Path and Tempest's proposed subpoena reflected a flagrant and blatant attempt to violate the federal Stored Communications Act ("SCA"), 18 U.S.C. § 2702—which as companies that operate in the cyber space and who purport to provide cybersecurity services to protect client data, either know, or should know, does *not* permit the disclosure of the content of communications.  Even after Discord

---

[1] Declaration of Douglas A. Smith ("Smith Decl.") Ex. 1.

[2] (ECF No. 15 at 15-18, 24 ("Because information, messages, and documents involving minors may be implicated (whether inadvertently or because the subpoena is broadly drafted) by the discovery sought, the Court finds that specific potential harm to minors should be addressed, as well as the annoyance, embarrassment and undue burden suffered by any innocent third parties (whether minors or not) should their private messages be publicly produced by Discord with no confidentiality or other protection.").)

1    properly raised that the subpoena was *not* legally compliant because it sought content in violation of the

2    SCA, Path and Tempest were apparently undeterred and made a backdoor attempt, in a hacker-like move,

3    to obtain the very content the SCA prohibits to be disclosed by unabashedly seeking passwords for Mr.

4    Gervais' and Mr. Roosen's Discord accounts.  Discord properly refused once again, and this Court correctly

5    concluded that the SCA prohibits the disclosure of passwords—because they are the keys that would unlock

6    the doors to a treasure trove of private, confidential, and competitively sensitive content.  (*See* ECF No. 23

7    at 21-22 ("[W]hile a password is not the content of the intended message, a password controls a user's

8    assess to the content or services that require the user to prove their identity.").)  Access to such content, for

9    example, could have enabled Path and Tempest to poach GSK's enterprise clients and unfairly attack GSK,

10   their primary and only competitor in the niche space of providing servers for gamers with state-of-the-art

11   and sophisticated protection against malicious distributed denial-of-service ("DDoS") attacks.

12          And then after the Court rejected their multiple attempts to violate the SCA, Path and Tempest

13   pivoted to seeking information *for the first time* in the proposed subpoena from a new Discord user "ryz0r,"

14   claiming that "ryz0r" was a suspected Discord username of Mr. Roosen.  Nonsense.  **"ryz0r" is *not* Mr.**

15   **Roosen—and Path and Tempest's CEO, Mr. Webb, and others within the company know it**—as

16   confirmed through a serious of well documented Discord communications that Mr. Webb had with Mr.

17   Ryan Nacker.  (*See* Nacker Decl. ¶¶ 1-20.)  Mr. Nacker, a Software Test and Automation Developer with

18   Naval Air Systems Command ("NAVAIR") with the United States Navy and who holds a secret clearance,

19   is an independent contractor for GSK, providing customer support to GSK's clients on a part-time basis.

20   What Path and Tempest are therefore after is ***not*** discovery for legitimate use in the mysterious Canadian

21   proceeding.  Rather, Path and Tempest are ***intentionally*** seeking Discord information regarding "ryz0r"

22   under the false narrative that he might be Mr. Roosen.  This is because so-called "account data" and

23   "header" information about Mr. Nacker's private, invite-only Discord group chats, servers, and channels

24   through which he provides customer service would effectively reveal GSK's customer lists (a trade secret),

25   including a list of enterprise clients as well as contacts at those clients, and the general content or subject

26   matter of those conversations.  Confirming the point, along with adding "ryz0r" at the last minute to the

27   subpoena after they could not get passwords, Path and Tempest also added to the definition of the requested

28   "Account data" the Discord "servers and channels [the targeted usernames] maintain or join."

1    If that were not enough, events that have transpired since the Court allowed the subpoena to be

2  served on Discord further confirm that, as applied to Mr. Roosen and GSK, it is a sham.  The Canadian

3  proceeding alleges that a Discord user named "Archetype" ransomed Path and Tempest's source code on

4  Discord.  Path and Tempest then sought the subpoena in this Court on the basis that "Archetype" is Mr.

5  Roosen.  ***But Mr. Roosen is not Archetype.***  (*See* Roosen Decl. ¶¶ 11-13.)  Confirming the point, Discord

6  has sent notices to users whose data would be affected by the subpoena, such as Mr. Nacker, and addressed

7  those notices to the user's Discord username, such as "ryz0r" for Mr. Nacker.  Mr. Roosen did *not* receive

8  any notice from Discord addressed to "Archetype"—which confirms that Archetype is not him.  It also

9  further adds to the suspicious nature of the whole proceedings here and in Canada, raising serious questions

10  as to whether Path, Tempest, Marshal Webb, or someone else at Path and Tempest created "Archetype"

11  for the sole purpose of trying to set up Mr. Roosen in an attempt to have the Anton Piller order and

12  corresponding subpoena here issue.  Indeed, it would make zero sense, from a business or any other

13  standpoint, for Mr. Roosen to ransom Path and Tempest's purported source code, as he explains in his

14  declaration filed in support of this Motion.

15    Because § 1782 only authorizes this Court to permit document productions not client poaching or

16  theft of trade secret and other confidential information, the Court should quash the subpoena *in its entirety*

17  for multiple reasons, including the following:

18    *First*, the subpoena does ***not*** legitimately seek discovery for Path and Tempest's secretive,

19  mysterious, and potentially illegitimate Canadian lawsuit—to which neither Mr. Roosen nor Game Server

20  Kings are parties.  Rather, the subpoena is being sought by a dangerous "black-hat now purportedly turned

21  white-hat" hacker who runs companies who are the direct and only significant competitor of Mr. Roosen's

22  company GSK in the niche space of game server hosting with state-of-the-art DDoS protection.

23    *Second*, the subpoena still impermissibly seeks "content" in violation of the Stored

24  Communication Act, 18 U.S.C. § 2702.  Snuck into the proposed subpoena at the last minute and after the

25  Court rejected Path and Tempest's request for content of communications and then passwords to unlock

26  that content was a request for a listing of the Discord "severs and channels" Mr. Roosen and Mr. Gervais

27  "maintain or join."  Given how GSK has set up its Discord servers and channels (a fact known to Path and

28  Tempest), the mere listing by name of those servers and channels would effectively reveal GSK's customer

1    lists—which are protectable in the United States as trade secrets—among other private and competitively

2    sensitive information.  It cannot be the case that trade secrets are not "content" within the meaning of the

3    SCA; if the SCA protects mere "small talk" communications, trade secrets must certainly be protected as

4    well.  Moreover, the names of the servers and channels themselves would also reveal "content" of

5    communications—because Mr. Roosen and GSK use those servers and channels to serve their clients and

6    therefore the names contain the subject matter or other details of the *content* GSK, Mr. Roosen, or others

7    that work for his company, such as Mr. Nacker, are discussing therein.

8        *Third*, the sole basis for the subpoena, the Canadian Court's Anton Piller order, *expired more than*

9    *six months ago* on June 2, 2023.  (*See* ECF No, 1 at 9 ("On January 29, 2023, the Canadian Court extended

10    the time for Warren to execute the Canadian Court's Orders to June 2, 2023.").  Tellingly, Path and Tempest

11    have not informed this Court whether the order was extended, or if it has been perhaps stayed pending, on

12    information and belief, the issuing judge recusing himself in the face of a motion alleging bias, the pending

13    motion to set aside the order as wrongly granted, or the now-recused judge's recommendation to his

14    superior judge to transfer the case from his small-town courthouse in Perth to Toronto for lack of sufficient

15    judicial resources.  Given that the time for executing on the underlying Anton Piller order has expired,

16    there is zero reason for Discord to respond to the subpoena.  And it may never need to respond if the

17    Canadian proceeding is transferred to a new judge in Toronto who does not look favorably on what

18    transpired to obtain the Anton Piller order in the first place.  Just as a police officer generally may not

19    execute on an expired criminal search warrant here in the United States because it has become void, Path

20    and Tempest should not be allowed to execute on an expired Anton Piller order, which Path and Tempest

21    contend is "analogous to a search warrant in the United States." (ECF No. 1 at 8.)  And that is even putting

22    aside that the Anton Piller order was to search Mr. Gervais's Discord account data *only* at *his premises* in

23    Canada.  It was *not* to seize and search Mr. Roosen or GSK's account data on Discord.  So, any subpoena

24    targeting Mr. Roosen's or GSK's account data far exceeds the underlying terms of the Anton Piller order—

25    making the subpoena *per se* improper on its face.

26        At a minimum, the Court should modify the subpoena because it seeks irrelevant or overbroad

27    information, including because it is unlimited in scope, goes far beyond what is relevant to the Canadian

28    proceeding and the *now-expired* Anton Piller order, and intentionally targets individuals Path and Tempest

know are *not* Mr. Roosen nor Mr. Gervais, such as independent contractor Ryan M. Nacker.  And if any production of data or documents are permitted, the Court should order that the production may *only* be seen by Outside Counsel Eyes' Only—and only outside *United States* counsel—because of the nature of the secretive and suspicious Canadian proceedings and the disgraced lawyer, Norman Groot, who brought them.

      For the foregoing reasons, the Court should allow Mr. Roosen and GSK to intervene in this proceeding and grant their motion to quash the subpoena *in its entirety* and put an immediate stop to Path's and Tempest's shenanigans, if not falsehoods, and as respects Mr. Roosen and GSK, apparent abuse of the judicial systems and processes, both in Canada and here in the United States.

## BACKGROUND

### A. Marshal Webb: Path's CEO and Self-Proclaimed "World Renowned" Black Hat Purportedly Turned White Hat Hacker

      Marshal Webb serves as CEO of Path, which is also the parent company of Tempest, two companies that he founded.  Based on publicly available information, Marshal Webb, who attempts to market himself today as a "cybersecurity expert," was a member of Lulz Security, a hacking group claiming responsibility for several cyberattacks—including a 2011 cyberattack against Sony PlayStation servers affecting 100 million users.  (*See* Smith Decl. Exs. 2-3, 5, 7.)  Webb's membership in Lulz Security came to an end sometime in 2011, when the hacking group outed Mr. Webb as the user "m_nerva," apparently responsible for the Dues Ex game hack (along with other cybercrimes), for purportedly turning over the group's online chats to the FBI.  (*Id.* Ex. 2.)  Reports later came out that the FBI supposedly raided his home, though no charges were filed.  (*Id.* Ex. 4.)  It was only until Webb "found himself on the radars of global law enforcement agencies" that he purportedly "went straight," rebranding himself as a nefarious black hat hacker to a white hat hacker who helps companies and the government understand their cyber vulnerabilities by hacking into them.  (*Id.* Ex. 8.)

      According to an apparent Path company press release that Mr. Webb himself may have written and paid to be published, Marshal's cyber-attacks had him "on the wrong side of the law" and that he was

a "world-famous teen hacker" who (supposedly) "changed hats from black to white."[3]  Indeed, Mr. Webb's exploits as a "black hat" hacker are well documented.  Krebs on Security, a well-regarded blog within the cybersecurity community, wrote an article that BackConnect, Inc., for whom Mr. Webb served as the company's chief technology officer, "admitted to hijacking hundreds of Internet addresses from a European Internet service provider in order to glean information about attackers who were targeting BackConnect."[4]

### B. Roosen's Companies Are The Only Direct and Significant Competitors To Marshall Webb's Companies In The Niche Space of Game Server Hosting With State-of-the-Art DDoS Protection.

Rene Roosen is CEO of HostingKing, Inc., doing business as Game Server Kings, which also owns Cosmic Global, Inc.  (Declaration of Rene Roosen ("Roosen Decl.") ¶ 1.)  Path and Tempest are direct and primary competitors of the companies Mr. Roosen founded and runs, in that all the companies provide game servers and specialize in the prevention of DDoS attacks, which are a form of cyberattack that intends to cause a "Denial of Service," resulting in the server becoming unavailable.  (*Id.* ¶¶ 1, 6.)  Because of the likelihood that Path and Tempest and Mr. Roosen's companies are protecting against DDoS attacks using similar methodologies, there is an economic incentive to not disclose that methodology publicly or on the dark web, thereby jeopardizing his company's business model, the security of its clients, and possibly allowing another competitor to arise.  (Roosen Decl. ¶ 7.)

On information and belief, Mr. Roosen has heard about threats to his physical safety and life made by Path and Tempest as well as those companies engaging in corporate espionage on GSK—which Mr. Roosen is willing to describe for the Court in an *in camera* filing for the judge's eyes only given the seriousness of the threats.  (Roosen Decl. ¶ 10.)

### C. The Secretive, Mysterious, and Possibly Illegitimate Canadian Lawsuit Filed In Small-Town Perth, Canada By Norman Groot.

Path and Tempest have sued Tempest's former CEO Curtis Gervais and his company Packet Rabbit, Inc. in a Canadian court in Perth, Canada, which is a small town southwest of Ottawa with a

---

[3] Mint, *How former hacker Marshal Webb created a career in Network security*, (Nov. 8, 2021) https://www.livemint.com/brand-post/how-former-hacker-marshal-webb-created-a-career-in-network-security-11636378653444.html ("Brand Post" on livemint.com containing a "Disclaimer: This is a company press release.  No HT journalist is involved in the creation of this content.).
[4] Krebs on Security, *DDoS Mitigation Firm Has History of Hijacks*, (Sept. 20, 2016) https://krebsonsecurity.com/2016/09/ddos-mitigation-firm-has-history-of-hijacks/

population in 2021 of 6,469.  The filings in that case are sealed, preventing the public from accessing the court file.

The Canadian lawsuit was originally brought by lawyer Norman Groot.  Based on public information, Groot was a former police officer for the Peel Regional Police.  (Smith Decl. Ex. 6.)  He was suspended from that role after being charged and convicted with assaulting a handcuffed man in a police interview room.  (*Id.*)

Groot is now a fraud recovery lawyer.[5] According to Canadian litigation filings, Groot falsely accused defense counsel of improper transfers of funds while the case was ongoing, and attempted to argue that he was successful on a motion when he was not.  In fact, the court found it "concerning" that Groot sought to "relitigate" a motion after it had been decided.  *Bacchus v. Munn*, 2020 ONSC 7839 (CanLII).  Moreover, Groot has a history of being unnecessarily aggressive in litigation—to the point of the tribunals flagging their concerns with Groot's behavior.  For instance, Groot served parties that were represented by counsel,[6] brought unnecessary motions in court,[7] and improperly withheld documents during discovery.[8]  Groot also improperly sought evidence from a Canadian prosecutor about a defendant in a criminal case for a separate civil case against that same criminal defendant.  *R. v. Nowack*, 2019 ONSC 2922 (CanLII).

A journalist who had first-hand experiences with Groot describes him as "a violent convicted felon and disgraced ex-cop turned lawyer" who was terminated by his "prestigious Bay St. law firm" in Canada for how he handled a "totally unnecessary lawsuit," *Mustang Investigations v. John Ironside*, in which he attained an "Anton Piller [order] based on lies."

> [Mustang Investigations] hired a violent convicted felon and disgraced ex-cop turned lawyer, named Norman Groot, who attained an Anton Piller based on lies they later could not prove, which is why they lost in court. They never intended to prove their case, but instead to abuse the authority of the court. Ultimately Groot was ripped in a rather indignant manner from the website of the prestigious Bay St. law firm for which he worked, and I was told by the secretary at the firm that he had been terminated due to his handling of the case against me.

(Smith Decl. Ex. 1.)

---

[5] Investigation Counsel PC, *Meet Our Team*, https://investigationcounsel.com/our-team/norman-groot/, (accessed at Jan. 20, 2024).

[6] *Zachariadis Estate v. Giannopoulos*, 2020 ONSC 588 (CanLII).

[7] *Id.*

[8] *Bacchus v. Munn*, 2020 ONSC 7841 (CanLII).

On behalf of Path and Tempest, Groot has obtained an Anton Piller Order here. (ECF No. 1-2 at 82-94 n.1.) That order—which Groot appears to have written to be rubber-stamped by the Court since the only indication of judge involvement is a single handwritten interlineation with the judge's initials beside it—was only to "remain in force and to be effective for ten (10) days." (ECF No. 1-2 at 89, ¶ 26.) The order was purportedly extended to June 2, 2023. (ECF No. 1 at 6; *see also* ECF No. 1-2 at 47, ¶ 190.) Path and Tempest have not submitted any evidence, however, from the sealed Canadian proceedings that the order remains in force and effect after June 2, 2023—which was more than six months ago.

The Anton Piller order was to be executed against Mr. Gervais and at his premises in Lanark, Ontario. (ECF No. 1-2 at 84.) The order does not permit it to be executed against Mr. Roosen or any of his companies, including GSK. (*See id.*).

On information and belief, the judge who issued the Anton Piller order has recused himself from the case in the face of motion seeking his recusal for bias. That judge, also on information and belief, has recommended to his supervising judge that the litigation be transferred from Perth, which lacks judicial resources, to Toronto. Also, on information and belief, Gervais and Packet Rabbit have a pending motion to set aside the Anton Piller order as improperly granted.

**D. Discord's Servers, Channels, Group Chats, and Direct Messages, And How GSK Uses Discord To Serve Its Clients.**

Discord is an internet communications platform originally built for video game players to communicate among themselves. "Gamers" can communicate on Discord via "direct messages" similar to text messages on a smartphone. Gamers can also create "group chats" in "direct messages" similar to a "group text" on a smartphone. (*See* Declaration of Ryan Nacker ("Nacker Decl.") ¶ 6; Roosen Decl. ¶¶ 3-5.) A Discord user can also create a "server" for a particular discussion topic and then "channels" typically to communicate about subtopics within the server. (*See id.*)

Game Server Kings has a Discord server for its clients—which is private and by invitation only. One only has access to Game Server King's Discord "server" if a client and invited by receiving a link sent by GSK. (*See id.*) Within the GSK server, there are private, invitation only servers for each client, and then various private, invite-only channels within that server based on the client's needs. Each private, invite-only server or channel has members. (*See id.*) Those members can "group chat" within the server

- 9 -

or channel.  GSK performs customer service through Discord's server and channels.  (*See id.*)  The names of the servers and channels would thus indicate the name of the client, the contacts at that client, and the content being discussed within a particular channel within the server.  (*See id.*)

### E.  The Subpoena to Discord

On December 26, 2023, this Court allowed Applicants Path Network, Inc. and Tempest Hosting, LLC to serve a document subpoena on Discord, Inc.  Specifically, the subpoena requires Discord to produce the following:

> (1) All account data, not including the contents of electronic communications, associated with Curtis Gervais, including any aliases, usernames or Discord tags he used, such as cmg#82391;
>
> (2) All account data, not including the contents of electronic communications, associated with Rene Roosen, including any aliases, usernames or Discord tags he used, such as Renual#7394;
>
> (3) All account data, not including the contents of electronic communications, associated with Archetype#8484;
>
> (4) Roosen, Gervais and Archetype#8484's login history for any and all Discord accounts, including but not limited to cmg#8239, Renual#7394, and Archetype#8484; and
>
> (5) Any and all headers of messaging data associated with any of Roosen, Gervais, or Archetype#8484's Discord account(s) including cmg#8239, Renual#7394 and Archetype#8484.

(ECF No. 29 at 9.)  The subpoena defines "Account data" as including "a user's first and last name, email address, birthdate, and any other non-content records for a specific user, including but not limited to the servers and channels they maintain or join."  (*Id.*)  The subpoena defines "Header" as including the "name and Discord username / tag of the sender, recipient, and any copied or blind copied recipients in a particular Discord direct message, and the time that message was sent and/or received. Senders, recipients, those copied, and/or blind copied on messages include the recipients or viewers of direct messages on the Discord platform."  (*Id.*)

### LEGAL STANDARD

An applicant seeking discovery pursuant to 28 U.S.C. § 1782 must satisfy three statutory requirements: (1) the person from whom the applicant seeks discovery must "reside[]" or be "found" in the district; (2) the discovery must be "for use in a proceeding in a foreign or international tribunal"; and (3)

1  the applicant must be an "interested person." 28 U.S.C. § 1782(a).  If these requirements are met, "[t]he

2  statute authorizes, but does not require," the district court to permit the discovery.  *Intel Corp. v. Advanced*

3  *Micro Devices, Inc*., 542 U.S. 241, 255 (2004). "[T]he district court still retains substantial discretion to

4  permit or deny the requested discovery." *Khrapunov v. Prosyankin*, 931 F.3d 922, 926 (9th Cir. 2019); *see*

5  *In re Microsoft Corp*., 2006 WL 825250, at *3 (N.D. Cal. Mar. 29, 2006) ("Section 1782 does not give

6  either foreign tribunals or litigants before them any 'right' to assistance."); *In re Ex Parte Application of*

7  *Qualcomm Inc*., 162 F. Supp. 3d 1029, 1035 (N.D. Cal. 2016) ("[S]imply because a court has the authority

8  under Section 1782 to grant an application does not mean that it is required to do so.").

9       When exercising its "wide discretion in deciding whether to permit discovery under § 1782," a

10  district court should consider several prudential factors, known as the *Intel* factors.  *In re Will Co*., 2021

11  WL 5322653, at *2 (N.D. Cal. Nov. 16, 2021).  These factors include: (1) whether the discovery is available

12  through the foreign proceeding; (2) the nature and character of the foreign tribunal and proceeding, and

13  whether the foreign government or court would be receptive to judicial assistance from the United States;

14  (3) whether the discovery request is an "attempt to circumvent foreign proof-gathering restrictions or other

15  policies of a foreign country or the United States"; and (4) whether the discovery request is "unduly

16  intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

17                                      **ARGUMENT**

18  **I.    As The Subpoena's True Targets, Mr. Roosen and Game Server Kings Should Be Permitted**
        **To Intervene For The Purpose Of Moving To Quash, Modify, Or Stay Execution Of The**
19      **Subpoena.**

20          **A.   Roosen And GSK Have Standing To Challenge Issuance Of The Subpoena Under § 1782.**

21          "[S]tanding to oppose subpoenas issued under § 1782 is [not] limited to the subpoenaed witness."

22  *Application of Sarrio, S.A*., 119 F.3d 143, 148 (2d Cir. 1997). Indeed, individuals that are "the ultimate

23  targets of a § 1782 discovery order issued to third parties have 'standing to challenge the district court's

24  power to issue a subpoena under the terms of an authorizing statute.'" *de Leon v. Clorox Co*., 2020 WL

25  4584204, at *4 (N.D. Cal. Aug. 10, 2020) (quoting *Application of Sarrio, S.A*., 119 F.3d at 148). Courts

26  consider "ultimate targets" of § 1782 discovery as, among other things, non-party individuals that § 1782

27  discovery requests seek information about. *See In Re Req. of Susan Devine for Jud. Assistance pursuant*

28  *to 28 U.S.C. § 1782*, 2022 WL 1658586, at *3 (S.D.N.Y. May 25, 2022) (holding that the intervenor had

- 11 -

standing to challenge the § 1782 subpoena because the subpoena explicitly sought confidential documents belonging to the intervenor). And when § 1782 discovery seeks private information "[c]ourts have consistently allowed intervention for purposes of protecting private issues from disclosure." *In re Terra Invest*, LLC, 2022 WL 19406162, at *2 (S.D. Fla. June 9, 2022) (citation omitted).

Roosen and Game Server Kings easily meet this standard. Path and Tempest cannot legitimately dispute that Roosen and Game Server Kings are the intended targets of their § 1782 subpoena. The subpoena's second, fourth, and fifth requests expressly identify by name both Roosen himself and his suspected Discord username (*i.e.*, Renual#7394). Collectively, those requests seek all account data associated with him, including login information, the names and Discord usernames with whom he communicates, and the Discord servers and channels he maintains. (*See* ECF No. 29 at 9 (seeking "All account data . . . associated with Rene Roosen . . . .").) Such information is private and confidential to Mr. Roosen—particularly considering that Discord's servers and channels and the "group chats" occurring within them are private and by invitation-only.[9]

Similarly, Path and Tempest's § 1782 application identifies GSK by name, and the "Statement of Claim" in the underlying Canadian litigation alleges that the defendant, Gervais, provided confidential or defamatory information regarding Path and Tempest to the "CEO and founder of GSK – Rene 'Renaul' Roosen;" who then purportedly "began using Gervais' information to solicit or induce customers of the Plaintiffs to terminate their service agreements and instead become a customer of his competing company, GSK." (ECF No. 1-2 at 40; *see also* ECF No. 1 at 1.) Moreover, Roosen uses his Discord account to conduct business to conduct work for GSK. (Roosen Decl. ¶ 9.) Because the subpoena seeks Roosen's data, it necessarily seeks GSK's data too—which makes sense given that GSK is Path's and Tempest's direct and primary competitor.

Accordingly, both Roosen and GSK have a right to intervene to protect their data from disclosure, particularly under the far-from-transparent circumstances in the Canadian proceeding. *See Matter of de*

---

[9] As this Court knows, Path and Tempest made a public filing revealing Mr. Gervais's full birthday and birth month of Mr. Roosen, in violation of Federal Rule of Civil Procedure 5.2, which requires redaction of birthday information except for the birthyear. While perhaps an inadvertent, honest mistake, the Rule 5.2 violation is suspicious given the nature of Path's and Tempest's allegations and that its founder, Marshal Webb, was formerly a black hat hacker and member of a cyber gang.

*Leon*, Case No. 1:19-mc-00197-TSC-RMM (D.D.C. Mar. 12, 2022) [ECF No. 41] (finding that the intervenors had standing to move to quash the subpoenas that sought "their private financial information").[10]

**B.  Roosen And GSK Also Have A Right To Intervene Under FRCP 24(a)(2).**

Because Roosen and GSK have "standing to challenge the issuance of [the] § 1782 subpoena[] under the Rules of Civil Procedure and under the statute itself," it is not "necessary" for the Court to "determine whether Roosen and GSK satisfy the "requirements for intervention of right or permissive intervention pursuant to Federal Rule of Civil Procedure 24." *In re Hornbeam Corp*., 2015 WL 13647606, at *2 (S.D.N.Y. Sept. 17, 2015), *aff'd*, 722 Fed. Appx. 7 (2d Cir. 2018).  Regardless, Roosen and GSK meet that standard too.

To establish intervention *as of right* under Rule 24(a), the moving party must establish that "(1) [he] has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *United States v. Alisal Water Corp*., 370 F.3d 915, 919 (9th Cir. 2004) (quotation marks and citation omitted).  Each requirement is satisfied.

*First*, Mr. Roosen's and GSK's data, including trade secrets, a form of intellectual property, are the subject of the subpoena here.

*Second*, if the subpoena is not quashed, Mr. Roosen and GSK will not be able to protect their interests in the private, confidential data, including trade secrets, that would otherwise be disclosed by Discord in responding to the subpoena.[11]

---

[10] Neither Mr. Roosen nor HostingKing, Inc, doing business as Game Server Kings, consents to personal jurisdiction in this Court.  They are only moving to intervene in this Court for the limited purpose of moving to quash, modify, or stay execution of the subpoena to Discord.  They reserve all rights in regard to personal jurisdiction.

[11] *See Sun Sky Hosp. LLC v. U.S. Dept. of Agriculture*, 2018 WL 5425803, at *2 (D. Ariz. Oct. 29, 2018)  (allowing intervention as of right because intervenor "has a significantly protectable interest in the non-disclosure of [privileged] documents" and denial of motion to intervene "would impair or impede [its] ability to protect that interest."); *Sackman v. Liggett Grp., Inc*., 167 F.R.D. 6, 21 (E.D.N.Y. 1996) (granting intervention because to do otherwise would "force the movants to risk losing confidential documents, without them ever being afforded an opportunity to protect that  information").

*Third*, Mr. Roosen's and GSK's application is timely because the subpoena was only deemed served less than a month ago, on December 26, 2023, and they bring this application before the court's deadline for Discord to respond to the subpoena, and on the deadline of January 21, 2024, listed in Discord's notice to users affected by the subpoena.[12]  They also gathered evidence and prepared this motion as quickly as possible under the circumstances, hence its weekend, after midnight filing.  Moreover, the underlying Anton Piller order apparently expired in June 2023 so the subpoena, by definition, serves no purpose anyway in the apparently stalled Canadian proceedings.  So timing should be of no moment.

*Fourth*, the existing parties, Path and Tempest, do not and cannot adequately represent Roosen and GSK's interests in regard to the subpoena.  Rather, their interests are diametrically opposed to Roosen and GSK because they are seeking this information in an apparent campaign to destroy their direct and primary competitor.  And while Discord fought the subpoena, it is not Discord's job to represent the interest of Roosen and GSK, and Discord would not be able to do so adequately anyway given the history and context (of which it is unaware) between Roosen and GSK, on the one hand, and Path, Tempest, and Marshal Webb on the other—as well as the serious and troubling issues that the subpoena raises, including the potential risk of hacking and trade secret theft.  In particular, Discord took no position on the propriety of the mysterious and secretive Canadian proceeding, the validity of the now-expired Anton Piller order, or the scope of the subpoena in terms of timeframe or targeted users.  Discord was solely focused on rejecting Path and Tempest's repeated and improper attempts to violate the Stored Communications Act, which could have subjected Discord itself to possible liability.[13]

## II.   The Subpoena Should Not Have Issued Under 28 U.S.C. § 1782.

### A.   Path and Tempest Do Not Meet All The Statutory Requirements.

A district court *may* authorize subpoenas under 28 U.S.C. § 1782, only when (1) the target is found in the judicial district; (2) the discovery is meant for use before a foreign tribunal; and (3) the subpoenas were requested by a foreign tribunal or an interested party.  *See* 28 U.S.C. § 1782(a); *Intel Corp.,* 542 U.S.

---

[12] *See generally Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816, 822 (9th Cir. 2021).

[13] *In re Hornbeam Corp.*, 2015 WL 13647606, at *3 (no adequate representation where respondents "have not moved to quash" and "have not shown any interest in doing so").

at 247-49.  In contrast, where the applicant fails to show that he or she has satisfied any of these mandatory threshold requirements, the court must deny the application without regard to any of *Intel*'s discretionary factors.  *See In re Petrobras Sec. Litig.,* 393 F. Supp. 3d 376, 380 (S.D.N.Y. 2019) (denying application where the "motion fail[ed] to satisfy the first and second requirements").

Reserving right to contest whether the subpoena's target (which is effectively GSK and Roosen given the suspicious circumstances even though Discord is ostensibly the subpoena recipient) is found within this judicial district, Path and Tempest have not established that Roosen's and GSK's data is for use in the Canadian litigation.

**1.     The Anton Piller Order Is No Longer In Effect, As Of 6+ Months Ago, And Therefore, The Subpoena Does Not Seek Data For Use In The Canadian Proceeding.**

The sole basis for the subpoena, the Canadian Court's Anton Piller order, *expired more than six months ago* on June 2, 2023.  (*See* ECF No, 1 at 9 ("On January 29, 2023, the Canadian Court extended the time for Warren to execute the Canadian Court's Orders to June 2, 2023."); *see also* ECF No. 1-2 at 89, 26 ("THIS COURT FURTHER ORDERS that the terms of this Order shall remain in force and be effective for ten (10) days" (emphasis omitted).).  ***This alone suffices to quash the subpoena in its entirety.***  Tellingly, Path and Tempest have not informed this Court whether the order was extended for a second time and thus beyond June 2, 2023.  Therefore, they have not met *their burden* as applicants to establish that the Anton Piller order remains valid and enforceable.  Just as a police officer generally may not execute on an expired criminal search warrant here in the United States because it has become void, Path and Tempest should not be allowed to execute on an expired Anton Piller order, which Path and Tempest contend is "analogous to a search warrant in the United States."  (ECF No. 1 at 8.)  Accordingly, because there is no valid Anton Piller order, the information Path and Tempest seek to "seize" from Roosen and GSK (and Gervais and others) via the subpoena is *not* for use in the Canadian proceeding.  And it likely cannot ever be if the Anton Piller's expiration and enforcement time period means anything.  *See generally United States v. Kopankov*, 2023 WL 3772804, at *3 (N.D. Cal. May 11, 2023) ("The government got a warrant. But it expired. The government concedes it violated Attachment C [akin to Attachment A to the subpoena to Discord] by mirroring the device after the time to do so expired."); *accord* Iowa Code § 808.8 ("A search warrant shall be executed within ten days from its date; failure to execute within that period

- 15 -

1  shall void the warrant."); A.R.S. § 13-3918(A) ("A search warrant shall be executed within five calendar

2  days from its issuance ... [u]pon expiration of the five day period, the warrant is void unless the time is

3  extended by a magistrate.").

        **2.    The Anton Piller Order Does *Not* Authorize Seizing Mr. Roosen's and GSK's
                Discord Data For The Canadian Litigation.**

4

5       By its plain terms, the Anton Piller order only permits the seizure of data from Mr. Gervais and

6  only at his premises.

7       THIS COURT ORDERS that the **defendant Curtis Michael Gervais ("Gervais")**,

8       and/or his partner, spouse, agent, parents, and / or anyone else acting on his behalf, and
        any person(s)   appearing to be in charge of the premises known municipally as

9       [REDACTED STREET ADDRESS] Dalhousie Road, Lanark, Ontario, K0B 1K0
        (hereinafter the "Premises") shall forthwith permit entry into the Premises to the persons

10      authorized herein for the purposes of searching for, identifying, inspecting, preserving,
        reproducing, and removing into the custody of the ISS (as defined in paragraph 2 herein),

11      any and all documents, items, devices, equipment, and any component thereof, which are
        listed in Schedule "A" hereto ('the Evidence") or which the ISS believes to be the

12      Evidence.

13  (ECF No. 1-2 at 84 (emphasis added).)   Confirming that point, when the Canadian court extended the

14  Anton Piller Order on January 20, 2023, it did so only "as against the defendants Gervais and Packet

15  Rabbit." (ECF No. 1, Ex. H.)

16      The Anton Piller order therefore does *not* permit Path and Tempest to have its forensic examiner

17  (Tom Warren) effectively execute a search warrant on Mr. Roosen and GSK by having Path and Tempest's

18  U.S. lawyers apply for a subpoena to Discord.  None of Mr. Roosen's or GSK's data should be produced

19  by Discord.  If ordered to produce anything (which this Court should not for the numerous reasons stated

20  herein), Discord should only be producing Mr. Gervais' Discord data.  And even then, its production

21  should be limited to Mr. Gervais' Discord data actually relevant to the Canadian litigation, which can be

22  culled from the data Discord collects by running searches over that data using, among other things, Path

23  and Tempest's suspected aliases for Mr. Roosen.  Indeed, what Path and Tempest contend they are after

24  is "account data" and "header" information for communications between Mr. Gervais and Mr. Roosen—

25  which, if it existed, would be in Gervais' Discord data just as much as Roosen's data.

26      Accordingly, any subpoena seeking to seize and search Mr. Roosen's or GSK's account data far

27  exceeds the underlying terms of the Anton Piller order—making the subpoena *per se* improper on its face

28  because requests two, four, and five explicitly target Mr. Roosen's data.   This provides another

1  independently sufficient reason to quash the subpoena entirely as respects Mr. Roosen's and GSK's data.
2  *See generally Hester v. Regan*, 2023 WL 5610754, at *3 (N.D.N.Y. Aug. 30, 2023) ("In determining
3  whether a police officer exceeded the scope of search warrant, courts *look directly to the text of the search*
4  *warrant* to determine the permissible scope of an authorized search. (quotations omitted)).

5          **3.      Path And Tempest Seek Mr. Roosen's And GSK's Discord Data For**
6                  **Improper, Ulterior Motives.**

7          Mr. Roosen is not a defendant in the Canadian proceeding; the only defendants are Mr. Curtis
8  Gervais and his company Packet Rabbit, Inc.  As explained above, the now-expired Anton Piller order
9  only pertains to Mr. Gervais, which makes search of Mr. Roosen's and GSK's Discord data improper.
10 Disclosure of Mr. Roosen's and GSK's Discord data would result in disclosure to Path and Tempest of
11 GSK's confidential and trade secret information to its direct and primary competitors, given that Path and
12 Tempest likely know how GSK uses Discord to provide customer service to its customers and names its
13 Discord servers and channels accordingly.  (*See supra* Background.)  This strongly indicates that Path and
14 Tempest are not seeking Mr. Roosen's and GSK's Discord data for use in the Canadian litigation—but
15 rather to perhaps compete unfairly against GSK, including by poaching its clients.  Indeed, Path and
16 Tempest have not explained why they need a listing of the "servers and channels [Roosen and GSK]
17 maintain or join" to prosecute claims against misappropriation and defamation against Gervais in the
18 Canadian litigation, particularly when the Court has already ordered that Path and Discord are not entitled
19 to the "content" of communications occurring within those servers or channels.

20         The Court should quash the subpoena for this additional independently sufficient reason too.  *See*
21 28 U.S.C. § 1782 (requiring that the discovery sought be "*for use* in a proceeding in a foreign or
22 international tribunal" (emphasis added)); *Rainsy v. Facebook, Inc*., 311 F. Supp. 3d 1101, 1110 (N.D.
23 Cal. 2018) ("party seeking discovery pursuant to § 1782 must show that the discovery sought is relevant
24 to the claims and defenses in the foreign tribunal" and concluding that certain requests did not satisfy
25 § 1782 because petitioner had not shown the information was of more than "marginal relevance" to the
26 foreign proceedings); *In re Al Sadeq*, 2021 WL 2828810, at *3 (N.D. Cal. Mar. 30, 2021) (denying
27 applicants' request to serve subpoenas on Google and Dropbox to identify hackers because it was "unclear
28 how the information," "even if probative of hacking," "would be relevant to the substance of the

underlying claims" in the foreign proceedings); *see also* Fed. R. Civ. P. 45(B)(i) (stating that a Court may quash a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information").

**B.     The Discretionary *Intel* Factors Also Warrant Quashing Or Modifying The Subpoena.**

Even if Path and Tempest had satisfied the statutory prerequisites in § 1782 (which they did not and cannot), the Court would still "retain[] substantial discretion to . . . deny the requested discovery" under the *Intel* factors.  *Khrapunov*, 931 F.3d at 926. These factors include: "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which event 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of . . . the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'" *ISC MCC EuroChem v. Chauhan,* 2018 WL 9650037, at \*1 (6th Cir. Sept. 14, 2018) (quoting *Intel*). Proposed Intervenor Mr. Roosen challenges the first, third, and fourth prongs.

**1.     Path And Tempest Have Not Established That The Discovery They Seek Is Unavailable Through The Canadian Proceeding Or Gervais's Discord Data.**

Although Discord is not a party to the Canadian proceeding, the first *Intel* factor still favors Mr. Roosen and GSK because the Discord data Path and Tempest seek is presumably "also in the possession of" parties to the action, namely Mr. Gervais.  What Path and Tempest are ostensibly after is Discord "account data" and "header" information for communications between Mr. Gervais and Mr. Roosen— which, if they existed, would be in Gervais' Discord data just as much as Roosen's or GSK's Discord data.  Path and Tempest should therefore explain why they cannot rely on Gervais's Discord data alone and need the competitively sensitive information of their competitor.  *See In re LG Electronics Deutschland GmbH*, 2012 WL 1836283, at \*2 ("[T]he information to be sought from Qualcomm . . . relates exclusively to Qualcomm's licensing or authorized use of Mitsubishi intellectual property.

- 18 -

1    Mitsubishi is the plaintiff in the German action . . . LG has not explained why that information cannot

2    be obtained from Mitsubishi in either lawsuit."); *In re Ex Parte LG Electrs. Deutschland GmbH*, 2012

3    WL 1836283, at *2; *see also In re Ex Parte Apple Inc.*, 2015 WL 5838606, at *4 (S.D. Cal. Oct. 7, 2015)

4    (first factor favored respondent when information sought from the third party was likely in the possession

5    of a party to the underlying action); *In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie*

6    *Bank Ltd.*, 2015 WL 3439103, at *7 (D. Nev. May 28, 2015) ("overlap of the discovery" between

7    discovery sought from respondent and from party tipped first factor in favor of respondent).

8    **2.     Path and Tempest's Anton Piller Order And Corresponding Subpoena**
     **Evidences An Attempt To Circumvent Canada's Discovery Restrictions.**

9

10   Where there is a "perception that an applicant has side-stepped less-than-favorable discovery rules

11   by resorting immediately to § 1782," this factor may weigh against the application.  *In re Cathode Ray*

12   *Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013); *In re Digitechnic,* 2007

13   WL 1367697, at *5 (W.D. Wash. May 8, 2007) (granting a motion to quash, in part, for the failure to seek

14   discovery in France before filing the Section 1782 petition).

15   Given the suspect and secretive nature of the Canadian proceedings and the nature of the lawyer

16   who obtained the Anton Piller order (*see supra* Background), the Court cannot determine at this time

17   which way this factor leans.  If anything, based on the little that is known about the Canadian proceedings,

18   it leans in favor of Mr. Roosen and GSK, because of the pending motion (on information and belief) to

19   set aside the Anton Piller order forming the sole basis for the subpoena.  Moreover, the Anton Pillar order

20   itself appears to have been entirely drafted by that lawyer and intended to be rubber-stamped by a judge

21   who has now, based on information and belief, recused himself in the face of a motion alleging bias and

22   recommended transferring the case out of his small-town courthouse to Toronto for lack of judicial

23   resources.  It is thus unclear whether a new judge considering the proceedings would resurrect the Anton

24   Piller order—which expired more than six months ago.

25   Moreover, the Anton Piller order does not authorize the discovery Path and Tempest seek here

26   from Discord regarding Mr. Roosen and GSK.  For that reason, Path and Tempest's § 1782 application

27   can be viewed as an attempt to circumvent the discovery processes in Canada—because there is no

28   indication that any Canadian court (or even the judge who on information and belief has recused himself)

has authorized discovery from Mr. Roosen and GSK, or if even Canada's discovery rules would permit the discovery Path and Tempest seek in regard to Mr. Roosen and GSK, given the circumstances.

### 3.    Path And Tempest's Requests Are Overbroad.

The fourth *Intel* factor also strongly favors Mr. Roosen and GSK because the subpoena seeks discovery that is not narrowly tailored nor proportional to the needs of the case—thus running afoul of Federal Rule of Civil Procedure 26. Under the Federal Rules of Civil Procedure, which are incorporated by reference in § 1782, district courts "must limit the frequency or extent of discovery . . . if it determines that the . . . discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); 28 U.S.C. § 1782(a). Courts often deny § 1782 discovery where the applicant requests "[a]ll documents" and "all communications" or otherwise seeks discovery of breadth. *See, e.g.*, *Winet v. Arthur J. Gallagher & Co.*, 2020 WL 6449230, at *2 (S.D. Cal. Nov. 3, 2020) (request for production which sought "all documents" concerning, evidencing, and reflecting sales is overbroad and not proportional to the needs of the case); *In re App. of Auto-Guadeloupe Investissement S.A., for an Ord. to Take Discovery Pursuant to 28 U.S.C. Section 1782*, 2012 WL 4841945, at *9 (S.D.N.Y. Oct. 10, 2012) (granting motion to quash several § 1782 discovery requests that sought "[a]ll communications" or "[a]ll documents").

Path and Tempest's § 1782 subpoena seeks expansive discovery. For instance, they seek from Discord "[a]ll account data," and "[a]ny and all headers of messaging data" associated with Mr. Roosen, along with the login history "for any and all" of his Discord accounts. (*See* ECF No. 29.) The overbreadth of these requests is even clearer when coupled with the fact that Path and Tempest are purportedly interested in Mr. Roosen's use of Discord's messaging feature to allegedly "defame" them and solicit their customers. *See* ECF No. 1 at 1.) Yet Applicants' information requests are not narrowly tailored geographically or to the time period of the alleged unlawful conduct. Instead, Applicants seek all information related to Mr. Roosen that Discord has in its possession, without regard to whether such information is in the United States or abroad and whether or not such information relates to their claims in the Canadian proceedings. Accordingly, because Applicants' requests are not narrowly tailored "temporally, geographically or in their subject matter," their § 1782 subpoena should be quashed. *See In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) (denying

- 20 -

1 | application Section 1782 requests as unduly burdensome "where they are not narrowly tailored, request

2 | confidential information and appear to be a broad 'fishing expedition' for irrelevant information").

## II.   IN THE ALTERNATIVE, THE COURT SHOULD MODIFY THE SUBPOENA, AND ONLY PERMIT PRODUCTION ON AN "OUTSIDE COUNSEL'S EYES' ONLY" BASIS.

### A.   The Subpoena Still Violates The Stored Communications Act By Requiring Production Of The Names of Private, Invite-Only Servers and Channels, Which Reveals Content.

The SCA "prohibits electronic communication service providers from 'knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service.'" *In re Path Network, Inc.*, 2023 WL 8115045, at *11 (N.D. Cal. Nov. 22, 2023). Path and Tempest's request for the servers and channels Mr. Roosen has joined and maintained would reveal customer lists, contacts, and the content being discussed in those servers and channels, as explained above. Such information, which includes trade secrets, would therefore constitute "content" within the meaning of the SCA under the circumstances. Therefore, the Court should reject Path and Tempest's request for that information, just like it rejected its request for passwords.

### B.   The Timeframe Should Be Limited To June 24, 2022 to January 9, 2023.

The subpoena, as served, has no time limitation. (*See* ECF No. 27 at 9-10.) It thus seeks all available data from Mr. Gervais, Mr. Roosen, and others from time immemorial to the present. But the purported purpose of the subpoena is to seek discovery for the Canadian proceeding. As the "Statement of Claim" in the Canadian proceeding reveals, however, the relevant time frame is not unlimited, but instead expressly limited to approximately 6 months.

As for the beginning of the relevant time period, the "Statement of Claim" alleges that, "On or about June 24, 2022, unbeknownst to the Plaintiff, Gervais *began* providing confidential and/or defamatory information with respect to the Plaintiffs to the CEO and founder of GSK – Rene 'Renaul' Roosen." (ECF No. 1-2, at 40, ¶ 89 (emphasis added).) As for the ending of the relevant period, the Statement of Claim does not allege any potentially relevant communications after January 9, 2023—which makes sense because Mr. Gervais had "turned over" by January 10, 2023, his "various electronic devices" to the solicitor and forensic expert in compliance with the Anton Piller order. (ECF No. 1-2

1    at 55-56, ¶¶ 156-57, *id.* at 59, ¶ 169.)

2          If the Court were to order the production of any data (which it should not), it should therefore

3    limit the production to data from between June 24, 2022 and January 9, 2023.  That period is more than

4    sufficient because it covers the purported creation on January 5, 2023, of the username "Archetype,"

5    who allegedly ransomed Path and Tempest's source code the same day.  Accordingly, the Court should

6    limit the subpoena to the narrowly tailored timeframe the "Statement of Claim" itself establishes.

7          **C.  Mr. Roosen's Data Should Be Carved Out Entirely From The Subpoena Because He Is
            Not A Defendant In The Canadian Litigation.**

8

9          Mr. Roosen is *not* a defendant in the Canadian proceeding.  Rather, the defendants are only Mr.

10   Curtis Gervais and his company Packet Rabbit, Inc.  Again, what Path and Tempest are ostensibly after

11   is "account data" and "header" information for communications between Mr. Gervais and Mr. Roosen—

12   which if they existed would be in Mr. Gervais' Discord data just as much as Mr. Roosen's data.  As the

13   party seeking discovery, Path and Tempest bear the burden of establishing otherwise if they want data

14   of Mr. Roosen, who is a nonparty to the Canadian proceeding unlike Mr. Gervais who is a party.

15   Accordingly, if not quashed entirely (which it should be for the reasons discussed above), Discord

16   should not be producing Mr. Roosen's data in response to the subpoena.  It should only be producing

17   Mr. Gervais' data, and even then, it should not be required to produce *all* of Mr. Gervais's data.  It

18   should only have to produce data pertinent to the Canadian litigation, which can be culled from the data

19   collected by running searches over the data using, among other things, Plaintiffs' suspected aliases for

20   Mr. Roosen.

21         **D.  Mr. Nacker (ryz0r)'s Data Should Be Carved Out Entirely From The Subpoena Because
            the Canadian Complaint Contains No Allegations About Him.**

22

23         Like Mr. Roosen, Mr. Nacker is not a defendant in the Canadian proceeding.  And the Canadian

24   complaint does not allege that he did anything in connection with Mr. Gervais' alleged actions.  Mr.

25   Nacker is only an innocent third-party—and the only reason Path and Tempest are going after his data is

26   because, as explained above, Mr. Nacker fills a customer service role for GSK and therefore his data

27   would provide customer names and contact information that Path and Tempest could then use to poach

28   GSK's customers.  Such customer lists and contact information are trade secrets deserving of protection.

1    (*See* Nacker Decl. ¶¶ 1-20.)

2        **E. Any Production Should Be Subject To An "Outside U.S. Counsel's Eyes' Only"**
3        **Designation And Treated Accordingly.**

4        Given the parties involved, the nature of the information sought, and Mr. Webb's known hacking

5    ability, good cause exists to order any production to be designated "outside counsel eyes only."  *See*

6    *generally Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys.*, Inc., 2007 WL 4169628, at *1 (N.D.

7    Cal. Nov. 20, 2007) ("Under this protective order, the parties are allowed to designate discovery materials

8    containing trade secrets [as] 'Outside Counsel Eyes Only.'").  It should also be limited to *U.S.* outside

9    counsel's eyes only, at least until more transparency occurs in regard to the Canadian proceedings.

10   **III.    IN THE ALTERNATIVE, THE COURT SHOULD STAY EXECUTION OF THE**
11       **SUBPOENA PENDING FURTHER DISCLOSURE ABOUT THE SECRETIVE,**
         **MYSTERIOUS, AND POSSIBLY ILLEGITIMATE CANADIAN PROCEEDINGS**
12       **FORMING THE SOLE BASIS FOR THE SUBPOENA.**

13       Given the suspect and far-from-transparent nature of the Canadian proceedings, the Court

14   should—at a minimum—exercise its broad discretion and stay execution of the subpoena until Path and

15   Tempest provide more information about the Canadian proceedings, including its current status and the

16   Anton Piller order serving as the sole basis for the subpoena here.  *In re NCAA Student-Athlete Name &*

17   *Likeness Litig.*, 2010 WL 5644656, at *3 (N.D. Cal. Dec. 17, 2010) ("The Court has discretion whether

18   or not to stay proceedings and discovery . . . .").

19                                    **CONCLUSION**

20       For the foregoing reasons, the Court should permit Rene Roosen and HostingKing, Inc, doing

21   business as Game Server Kings, to intervene in this action for the purpose of moving to quash, modify, or

22   stay the subpoena to Discord, Inc.  The Court should also quash the subpoena in its entirety and vacate its

23   order allowing the subpoena to be served on Discord in the first place.  At a minimum, the Court should

24   modify the subpoena to limit the subpoena's scope and timeframe and order that any information produced

25   in response to the subpoena be designated "Outside U.S.'s Counsel's Eyes' Only" and treated accordingly.

26

27

28

1    Dated: January 22, 2024                          MAYER BROWN LLP

2

3                                                      By:  */s/ Douglas A. Smith*
                                                           Douglas A. Smith
4
                                                      Attorneys for Rene Roosen and
5                                                     Hosting King, Inc., d/b/a Game Server Kings

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[CORRECTED] RENE ROOSEN'S AND GAME SERVER KING'S MOTION TO INTERVENE AND
QUASH, MODIFY, OR STAY EXECUTION OF THE SUBPOENA TO DISCORD, INC.,
CASE NO. 3:23-MC-80148-PHK