RITA M. HAEUSLER (SBN 110574)
rita.haeusler@hugheshubbard.com
HANNAH A. BOGEN (SBN 324294)
hannah.bogen@hugheshubbard.com
HUGHES HUBBARD & REED LLP
1999 Avenue of the Stars, 9th Floor
Los Angeles, CA 90067-4620
Telephone: (213) 613-2800
Facsimile: (213) 613-2950

Attorneys for Applicants Path Network, Inc. and Tempest Hosting, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re *Ex Parte* Application of<br><br>Path Network, Inc. and Tempest Hosting, LLC,<br><br>             Applicants. | CASE NO. 3:23-MC-80148-JST<br><br>**OPPOSITION OF APPLICANTS PATH NETWORK, INC. AND TEMPEST HOSTING, LLC TO RENE ROOSEN AND GAME SERVER KING'S CORRECTED MOTION TO INTERVENE AND QUASH, MODIFY, OR STAY EXECUTION OF THE SUBPOENA TO DISCORD, INC.**<br><br>Judge: Hon. Jon S. Tigar<br><br>Date: March 28, 2024<br><br>Time: 2:00 p.m.<br><br>Courtroom: 6 - 2ⁿᵈ Floor (Virtual Hearing) |

OPPOSITION OF APPLICANTS PATH NETWORK, INC. AND TEMPEST HOSTING, LLC TO RENE ROOSEN AND GAME SERVER KING'S CORRECTED MOTION TO INTERVENE AND QUASH, MODIFY, OR STAY EXECUTION OF THE SUBPOENA TO DISCORD, INC.

280468473_2

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.............................................................3

    I.       THE PARTIES...................................................................................................3

    II.      PATH AND TEMPEST REQUEST, AND RECEIVE, EXTORDINARY PRE-LITIGATION INJUNCTIVE RELIEF IN CANADA...................................5

    III.    PATH AND TEMPEST FILE SUIT AGAINST GERVAIS AND PR IN CANADA .........................................................................................................7

    IV.    PATH AND TEMPEST SEEK DISCOVERY FROM DISCORD IN THE UNITED STATES IN AID OF THE *GERVAIS* ACTION....................................9

    V.     THE INSTANT PROCEEDINGS ...................................................................10

ARGUMENT .......................................................................................................................10

    I.       The DISCORD SUBPOENA IS PROPER .........................................................10

        A.    The Subpoena Complies with Section 1782 and the *Intel* Factors. ...........10

            1.     The Discord Subpoena Satisfies Section 1782. ...........................12

            2.     The Discord Subpoena Satisfies all *Intel* Prongs...........................13

        B.    The Discord Subpoena is Narrowly Tailored. ...........................................15

        C.    Roosen is Properly Included in the Discord Subpoena.............................16

        D.    Roosen's Other Reasons for Quashing the Discord Subpoena Fail...........17

CONCLUSION .....................................................................................................................20

OPPOSITION OF APPLICANTS PATH NETWORK, INC. AND TEMPEST HOSTING, LLC TO RENE ROOSEN AND GAME SERVER KING'S CORRECTED MOTION TO INTERVENE AND QUASH, MODIFY, OR STAY EXECUTION OF THE SUBPOENA TO DISCORD, INC.

280468473_2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................................................................18

*Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc.*,
   893 F.3d 1176 (9th Cir. 2018) ................................................................................18

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)........................................................................................ *passim*

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
   978 F.3d 653 (9th Cir. 2020) ..................................................................................17

*Ishiyama v. Google LLC*,
   No. 22-MC-80192-EJD, 2022 WL 17970190 (N.D. Cal. Dec. 27, 2022).........................10, 11

*Nextdoor.com, Inc. v. Abhyanker*,
   2014 WL 1648473 (N.D. Cal. Apr. 23, 2014) ........................................................18

*Obodai v. Indeed, Inc.*,
   No. 13-80027-MISC EMC, 2013 WL 1191267 (N.D. Cal. Mar. 21, 2013)...........................19

*Optiver Australia Pty. Ltd. & Anor. v. Tibra Trading Pty. Ltd. & Ors.*,
   No. C 12-80242 EJD PSG, 2013 WL 256771 (N.D. Cal. Jan. 23, 2013)................................19

*In re Request for Int'l Judicial Assistance from the Turkish Ministry of Justice*,
   2016 WL 2957032 (N.D. Cal. May 23, 2016) ........................................................19

*Thompson v. Doel*,
   2013 WL 5544607 (N.D. Cal. Oct. 7, 2013)...........................................................19

**Statutes and Rules**

28 U.S.C. § 1782 ................................................................................................ *passim*

Fed. R. Civ. Proc. § 1782 ................................................................................10, 15

**Others/ Miscellaneous**

*Litigation and Enforcement in Canada: Overview*, Practical Law Country Q&A 7-
   502-0711 (February 5, 2024) ...................................................................................5

OPPOSITION OF APPLICANTS PATH NETWORK, INC. AND TEMPEST HOSTING, LLC TO RENE ROOSEN AND GAME SERVER
KING'S CORRECTED MOTION TO INTERVENE AND QUASH, MODIFY, OR STAY EXECUTION OF THE SUBPOENA TO DISCORD, INC.
280468473_2

1   Path Network, Inc. ("Path") and Tempest Hosting, LLC ("Tempest"; collectively,

2   "Applicants") hereby respectfully submit this Opposition to Rene Roosen ("Roosen") and Hosting

3   King, Inc., d/b/a Game Server Kings' ("GSK") Motion to Intervene and Quash, Modify, or Stay

4   Execution of the Subpoena to Discord, Inc. ("Motion"; "Discord".)

5   **INTRODUCTION**

6   Path and its subsidiary, Tempest, both Arizona data hosting and data security companies, are

7   currently suing Curtis Gervais, a former Tempest employee, and his company, Packet Rabbit Inc., in

8   Canada ("PR"; the "*Gervais* Action").[1] In the *Gervais* Action, Path and Tempest assert claims

9   against Gervais and PR for, among other things, misappropriation of confidential information,

10  dissemination of defamatory lies about Path and Tempest to third parties, and spoliation of evidence.

11  Additionally, and of fundamental importance here, Path and Tempest allege that Gervais and PR

12  acted in concert with Roosen in many of these efforts.  Specifically, Path and Tempest allege that

13  Gervais misappropriated Path and Tempest's confidential information and sent it to Roosen, who

14  then used it to defame Path and Tempest and try to convince Path's and Tempest's customers to

15  leave them and migrate to GSK, a competitor company that Roosen founded.  Moreover, Path and

16  Tempest allege that Gervais and Roosen used multiple online accounts, including chat accounts

17  hosted by a messaging platform called Discord, to engage in this misconduct.[2]

18  After taking several steps to collect discovery in Canada, on May 5, 2022, Path and Tempest

19  applied for a subpoena in the Northern District of California pursuant to 28 U.S.C. § 1782 ("Section

20  1782") seeking additional relevant evidence for the *Gervais* Action.  In its application, Path and

21  Tempest sought to require Discord, a California-based company, to provide account and messaging

22  data for Gervais, Roosen, Archetype (a suspected Gervais alias), and various third parties identified

23  in the *Gervais* Action as parties to whom Gervais made defamatory statements and disclosed

24

25  _____

[1] Gervais incorporated PR in November 2020 and is its sole officer and director.

26
[2] Roosen does not reside in Canada and as a result he is not named in the *Gervais* Action.

27  Nevertheless, he is heavily mentioned throughout the Gervais Action statement of claim and is a
critical actor in Gervais's defamatory scheme.

28

confidential information.  Subsequently, Path, Tempest, and Discord engaged in substantial briefing, attended a hearing with the Court[3], and engaged in additional meet and confer efforts to ensure that any subpoena issued complied with the Federal Rules of Civil Procedure, the Stored Communications Act ("SCA"), was otherwise permissible under Section 1782, and that a protective order was in place.  On December 26, 2023, the Court issued and served a legitimate and lawful subpoena on Discord (the "Discord Subpoena").

Discord was expected to make an electronic production pursuant to the Discord Subpoena on January 22, 2024.  On January 21, 2024, Roosen and GSK filed the instant Motion.

In their Motion, Roosen and GSK launch malicious and baseless attacks on the credibility of Path's and Tempest's officers and Canadian counsel (as well a Canadian judge) and question the validity of a pre-discovery search and seizure order Path and Tempest obtained in Canada (the Anton Piller Order) in an attempt to convince the Court that, given the "suspicious" nature of the Anton Piller Order, the Court should quash the Discord Subpoena.

In addition to being unfounded and incorrect, Roosen's and GSK's arguments miss the mark because they focus solely on the Anton Piller Order and ignore the existence of the primary case – the *Gervais* Action – and Path's and Tempest's legitimate, and statutorily provided for, ability to obtain discovery from a U.S. non-party for use in *that action*.

Roosen and GSK also attempt to leverage their unfounded credibility attacks to further an argument that the Discord Subpoena is nothing more than an attempt by Path and Tempest to steal GSK's trade secret information.  Again, their arguments fail, as the purported trade secret information is either already publicly available or not called for by the subpoena.

---

[3] From May 5, 2022 to January 31, 2024, this cases was presided over by the Honorable Peter H. Kang.  As of February 1, 2024, the case is now presided over by the Honorable Jon S. Tigar. When discussing the procedural history of this case, the term "Court" refers to the Honorable Peter H. Kang.  When asking for future relief, "Court" refers to the Honorable Jon S. Tigar.

Contrary to Roosen's and GSK's assertions, the Discord Subpoena is a straightforward attempt to obtain relevant, appropriate discovery for use in the legitimate and ongoing *Gervais Action*, and accordingly, Roosen's and GSK's Motion should be denied.[4]

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    THE PARTIES

Path is an Arizona company that provides online data hosting and cyber security services to subscribers.  (Affidavit of Daina Slenys ("Slenys Affidavit") Ex. A at ¶ 3, ECF No. 1-3.) Tempest, Path's subsidiary, is an Arizona company that provides online virtual hosting services. (*Id.* at ¶ 4.)  Tempest specializes in leasing servers to customers and providing online virtual hosting.  (*Id.*)  Path owns and operates the servers and provides cutting-edge cyber security and data protection to ensure the data stored on the servers leased by customers is not compromised. (*Id.* at ¶ 17.)

Gervais is a Canadian citizen who became a Path and Tempest customer in or about June 2020.  (*Id.* at ¶ 20.)  He incorporated PR, a Canada corporation, in November 2020.  *Id.*  He is PR's sole director and officer.  (*Id.* at ¶6.)  PR is also an online virtual hosting company that operates and leases servers to customers for a monthly fee.  (*Id.* at ¶ 21.)  From approximately July 8, 2021, to September 16, 2022, Gervais, who lives in Ontario, Canada, also worked for Tempest. (*Id.* at ¶ 6.)  As a result of his work, he had access to confidential information about both Tempest and Path.  (*Id.*)

On or about June 24, 2022, Tempest demoted Gervais based on his admitted cyber hacking.  (*Id.* at ¶¶ 70-81.)  Shortly after his demotion, Gervais targeted Path and Tempest. Gervais disclosed Path's and Tempest's confidential information to third parties including GSK, made defamatory comments concerning Path and Tempest and told third parties of his intentions to harm Path and Tempest, including by "drown[ing]" the companies.  (*Id.* at ¶¶ 83-86.)

---

[4] Path and Tempest do not oppose Roosen and GSK's arguments regarding the right to intervene in these proceedings, but their request for quashing, altering or limiting the subpoena should be denied.

1    As the CEO and founder of GSK, a company that is a competitor to Path, Roosen is a

2   critical actor in Gervais' defamatory scheme - the two have conspired together to harm Path and

3   Tempest.  (*Id.* at ¶¶ 97-100, 115-119.)  Specifically, Gervais provided Roosen with confidential

4   and/or false information about Path and Tempest, which Roosen used to convince *additional* third

5   parties to terminate their user agreements with Path and Tempest and instead start a relationship

6   with GSK.  (*Id.*)  Discord is one of the primary platforms that Gervais and Roosen use to

7   communicate with each other and with third parties in their effort to defame Path and Tempest and

8   destroy their businesses by poaching clients, including by using the Archetype, Renual, and CMG

9   aliases to do so.  (*Id.*; Affidavit of Tom Warren ("Warren Affidavit") at ¶ 33, Ex. A at ¶89, ECF

10  No. 1-2.)

11    On September 15, 2022, Gervais resigned from Tempest.  (*Id.* Ex. A at ¶¶ 112-114.)

12  Beginning on January 5, 2023, Path and Tempest believe that Gervais began using the alias

13  Archetype in his ongoing efforts to harm them.  (*Id.* at ¶¶ 156-166.)  Specifically, Archetype used

14  Discord to offer Path's and Tempest's confidential source code and other confidential information

15  for sale to third parties (which, assuming it is Gervais, he collected during his employment, which

16  is propriety information vital to the operation and success of Path's and Tempest's businesses) on

17  the dark web for upwards of $800,000.00.  (*Id.*)  Despite posting on Discord that Archetype had

18  access to Path's and Tempest's confidential source code and other confidential data, when Path

19  representatives attempted to correspond with Archetype (using fake usernames to conceal their

20  identity) to confirm the confidential data was real, Archetype refused to disclose additional

21  information unless they paid Archetype $50,000.00.  (*Id.*)  Because Gervais was one of the only

22  Path and Tempest employees who had access to this data, and given Gervais's many other

23  attempts to damage Path, Path and Tempest believe that Archetype is Gervais and that Gervais

24  was ransoming this data.  (*Id.*)  Additionally, Path and Tempest confirmed that Gervais accessed

25  some of the confidential data that Archetype ransomed on Discord as recently as June and August

26  of 2022, even though he was not required to interact with those databases as part of his job.  (*Id.*)

27

28

On information and belief, Gervais and Roosen, acting together and separately, continue to use various aliases to defame Path and Tempest, poach their clients for GSK's and Roosen's benefit, and disseminate or threaten to sell proprietary and confidential information.  (*Id.* at ¶¶ 97-100, 115-119.)

## II.    PATH AND TEMPEST REQUEST, AND RECEIVE, EXTORDINARY PRE-LITIGATION INJUNCTIVE RELIEF IN CANADA

In preparation for filing a civil claim against Gervais in Canada, on or about December 21, 2022, Path and Tempest filed a Notice of Action, Motion Record, and Factum in the Canadian Court seeking pre-litigation evidence preservation, and a general injunctive order related to the *Gervais* Action.  (Slenys Affidavit ¶ 4.)  Under Canadian law, a party can file *ex parte* requests for these extraordinary forms of injunctive relief to prevent prospective defendants from destroying evidence upon learning of litigation.[5]

On January 9, 2023, after reviewing written submissions and conducting an *ex parte* hearing, the Canadian Court issued the following orders (the "Canadian Court's Orders"):

- An Anton Piller Order, which is analogous to a search warrant in the United States, with respect to Gervais' residence in Lanark, Ontario[6];

- A Stand and Deliver Order, which requires Gervais turn over off-site evidence not located at Gervais' residence in Lanark, Ontario, and assets of PR to the Plaintiffs[7]; and

---

[5] An Anton Piller order allows a claimant to enter the defendant's premises and search for and seize certain items or documents that are likely to be destroyed.  A party seeking an Anton Piller order must establish (1) an extremely strong prima facie case, (2) the damage, potential or actual, must be very serious to the claimant, and (3) clear evidence that the defendants have in their possession incriminating documents or other information, and there is a real possibility that they may destroy such material before discovery can be performed.  *Litigation and Enforcement in Canada: Overview*, Practical Law Country Q&A 7-502-0711 (February 5, 2024).

[6] The Canadian Court's Orders require, among other things, that Warren collect Discord messaging data involving Gervais, Roosen, Archetype, Renual, and CMG. (Warren Affidavit Exs. B, C, F.)

[7] PR's off-site data is Gervais' off-site data because he is the sole director and officer of PR and he uses PR to engage in unlawful conduct in order to shield himself from liability. (Warren Affidavit

5

- A general injunctive order, which prohibits Gervais from continuing certain misconduct that forms the basis for the *Gervais* Action.

(*Id.* at ¶¶ 5-7; Warren Affidavit ¶¶ 3-4.)  In issuing its Orders, the Canadian Court found that the circumstances exist for granting the Anton Piller Order in that:

> 1) The Plaintiff has demonstrated a strong prima facie case;
> 2) The damage to the Plaintiff of Gervais' alleged misconduct, potential or actual, is very serious;
> 3) There is convincing evidence that Gervais, as well as corporations under his direction or related to him, have in their possession incriminating evidence; and
> 4) There is a real possibility that Gervais and others acting under his control may destroy, disseminate or make use of that evidence, before the discovery process can do its work [citation omitted].

(Warren Affidavit ¶¶ 4-5; Slenys Affidavit ¶ 8.)

On January 10, 2023, during the execution of the Canadian Court's Orders, three laptops, two cell phones, two iPads, and numerous credit cards in PR's name were turned over by the authorities conducting the search to Warren, one of the court-appointed independent data forensics specialists.  (Slenys Affidavit Ex. A ¶¶ 168-170; Warren Affidavit ¶¶ 10-12.)  Also during the execution of the Canadian Court's Orders, Warren attempted to search, image, and save data from Gervais and PR's cloud-based accounts, which included Discord.  (*Id.* at ¶ 171; *Id.* at ¶¶ 10-14.)  When asked for the passwords to his various devices, Gervais stated that they were stored on an encrypted repository called "LastPass."  (*Id.*; *Id.* at ¶ 11.)  Gervais' LastPass password list showed that he had 417 sets of login credentials for various applications and websites.  (*Id.* at ¶ 172; *Id.* at ¶ 12.)

Before the search concluded for the day, Warren changed Gervais' LastPass password such that Gervais could not access the account and delete relevant evidence while the searches and preservation efforts remained ongoing.  (*Id.* at ¶¶ 173, 176; *Id.* at ¶ 13.)

However, days later when Warren attempted to access Gervais' LastPass account to complete the execution of the Canadian Court's Orders, LastPass sent Gervais an email to verify

---

Ex. A at ¶¶ 7, 224; *see also* Warren Affidavit Ex. B (Canadian Court order using Gervais and PR interchangeably); Warren Affidavit Ex. C (same).)

that the login attempt was valid. (*Id.* at ¶ 181; *Id.* at ¶ 24.)  Gervais failed to respond to Warren's

requests to verify the log-in attempt. (*Id.* at ¶ 182; *Id.* at ¶ 25.)  Gervais ultimately claimed he was

unable to verify the log-in attempt because he was locked out of both his email and his LastPass

accounts.  (*Id.*; *Id.)*  Gervais claimed that despite his efforts, he could not regain access to his

email.  (*Id.* at ¶¶ 186, 195; *Id.*)

On January 20, 2023, the Canadian Court extended its Orders to June 2, 2023.  (*Id.* at ¶

190; *Id.* at ¶ 34; Warren Affidavit Ex. H.)  On May 11, 2023, the Canadian Court again extended

those Orders until July 27, 2023, the date of an upcoming hearing.  (Declaration of Hannah A.

Bogen ("Bogen Decl." Ex. A.)  On July 27, 2023, the Canadian Court again extended the above

Orders until October 19, 2023, the new date for the hearing originally scheduled for July 27, 2023.

(*Id.* Ex. B.)  On October 11, 2023, the Canadian Court suspended all case deadlines, including the

October 19, 2023 deadline above, pending adjudication of a motion to transfer the *Gervais* Action

to Toronto, which remains pending.  (*Id.* Ex. C.)

To date, despite substantial efforts, Warren has been unable to gain access to Gervais'

email, Discord, and/or LastPass accounts.  (Warren Affidavit ¶¶ 49-51.)

### III.    PATH AND TEMPEST FILE SUIT AGAINST GERVAIS AND PR IN CANADA

On March 9, 2023, Path and Tempest filed the *Gervais* Action, for which the pre-litigation

discovery described above was intended to be used.[8]  (*See* Slenys Affidavit Ex. A; Bogen Decl. ¶

2.)  In the *Gervais* Action, Path and Tempest allege that Gervais (i) misappropriated confidential

information for his unauthorized use and benefit, (ii) solicited Path and Tempest's customers and

staff using that misappropriated confidential information, (iii) conspired with others, including

Roosen, to cause harm to Path and Tempest, (iv) contacted Path and Tempest's customers,

investors, and staff for the purposes of disseminating false and defamatory misinformation on the

internet and to third parties regarding Path and Tempest's officers and the financial health of Path

and Tempest, (v) used PR as his *alter ego* to shield himself from liability and commit additional

---

[8] The *Gervais* Action and the Canadian Court's Orders are collectively referred to as the
"Canadian Proceedings."

misconduct, and (vi) continues to engage in spoliation of evidence of his tortious and wrongful conduct by intentionally destroying evidence and falsely claiming he cannot access data that the Canadian Court ordered him to produce.  (*See* Slenys Affidavit Ex. at ¶¶ 227, 236-237.)

Path and Tempest asserted claims against Gervais and PR for:

1. Unlawful Interference in Economic Interests and Breach of Confidence;
2. Breach of Contract(s) (both Gervais' Employment Agreement with Path and his Independent Contractor Agreement);
3. Piercing the Corporate Veil/Gervais' Use of PR as his Alter Ego;
4. Breach of Fiduciary Duty and Trust;
5. Internet Harassment;
6. Conspiracy to Harm Path; and
7. Spoliation of Evidence.

(*See* Warren Affidavit Ex. A. ¶¶ 215-238)

Roosen is a key actor in four of Path's and Tempest's seven claims against Gervais and PR (although, as a non-Canadian resident, he is not named as a defendant in the *Gervais* Action). (*See* Warren Affidavit Ex. A.).  Specifically, Path and Tempest allege that Gervais shared Path's and Tempest's confidential information with Roosen and worked with Roosen to use that information, as well as defamatory statements, to solicit Path's and Tempest's clients and potential clients to join Roosen's company GSK, and that they conspired together to unlawfully interfere in Path and Tempest's economic interests, to breach fiduciary duties owed to Path and Tempest, to engage in internet harassment, and to harm Path.  (Warren Affidavit Ex. A at ¶¶ 89, 97-100, 208, 215-235.)  Path's and Tempest's allegations against Gervais also include allegations detailing the way in which Archetype, one of Gervais' suspected aliases, threatened to sell Path and Tempest's confidential source code and data on the dark web for upwards of $800,000.00.  (*Id.* at ¶¶ 156-66.) Path and Tempest also allege that Gervais has engaged in spoliation of evidence relevant to the above conduct in the following ways:

- Secretly accessing email accounts which he claims to be locked out of and quickly deleting contents;

- Secretly accessing his Discord account from which he claims to be locked out;

- Sequestering information with respect to the PR servers, equipment and data as housed at a second Data Center location;

- • Seeking help from PR customers to access and remove relevant evidence from PR servers at a secure data center; and

- • Destroying documents and evidence to affect the outcome of the litigation and in an attempt to further conceal his wrongful conduct and the wrongful conduct of all Defendants.  Id. at ¶¶ 236-38.

## IV.  PATH AND TEMPEST SEEK DISCOVERY FROM DISCORD IN THE UNITED STATES IN AID OF THE *GERVAIS* ACTION

In furtherance of the *Gervais* Action, on May 5, 2022, Path and Tempest filed an *Ex Parte* Application for an Order to Take Evidence Pursuant to Section 1782 (the "Application") seeking a subpoena to Discord.  (*See* ECF No. 1.)  Section 1782 governs the collection of evidence to be used in foreign proceedings and permits assistance to foreign tribunals so long as certain criteria are met.  *See* 28 U.S.C. § 1782.  In the Application, Path and Tempest asked the Court to issue a subpoena requiring Discord to produce account and messaging data associated with Roosen and Gervais and various usernames that were suspected aliases they used to engage in the misconduct alleged in the *Gervais* Action.  (*See* ECF No. 1.)

On August 16, 2023, the Court issued a tentative ruling on the Application (s*ee* ECF No. 15) and on August 17, 2023, the Court held a hearing to discuss the proposed subpoena.  (*See* ECF Nos. 7, 15, 16.)  During the hearing, the Court ordered Path, Tempest, and Discord to meet and confer and revise the subpoena to meet with the requirements outlined in its August 16, 2023 tentative ruling, and to brief any unresolved issues.  (*See* ECF No. 16.)  Of relevance here, those requirements included ensuring that the subpoena does not unnecessarily implicate third parties unrelated to the litigation and was not unduly burdensome or overbroad.  (*See* ECF No. 24 at ¶3-7)

Between August 17, 2023 and August 25, 2023, Path, Tempest, and Discord met and conferred regarding the above issues and on September 1, 2023, they submitted a joint stipulation and proposed protective order to govern the case (ECF No. 19) and supplemental briefing regarding the issues they could not resolve through meet and confer efforts, including whether or not the subpoena as written sought communications in violation of the Stored Communications Act ("SCA").  (*See* ECF Nos. 21, 22.)  After reviewing the briefing, on November 22, 2023, the

9

1   Court issued an order granting in part and denying in part Path's and Tempest's original

2   Application.  (*See* ECF No. 23.)  The Court ordered the parties to meet and confer on a final

3   subpoena that complied with its November 22, 2023 order, the Federal Rules of Civil Procedure,

4   Section 1782, and the SCA, and submit it, along with a joint stipulation, for the Court's review

5   within 30 days.  (*Id.*)

        On or around December 26, 2023[9], Path, Tempest, and Discord filed a joint stipulation and

6   the Discord Subpoena that was mutually agreed to and complied with the Court's November 22,

7   2023 order.  (*See* ECF No. 27.)  The Court issued it on the same date.  (ECF No. 29.)

8

9   **V.    THE INSTANT PROCEEDINGS**

10        On January 21, 2024, the day before Discord was scheduled to make its production,

11  Roosen and GSK filed the instant Motion, which was subsequently corrected the following day.

12  (*See* ECF Nos. 30, 31.)

13                                **ARGUMENT**

14  **I.    THE DISCORD SUBPOENA IS PROPER**

15        **A.    The Subpoena Complies with Section 1782 and the *Intel* Factors.**

16        Pursuant to 28 U.S.C. § 1782, the Court has authority to order the production of evidence

17  in aid of a foreign proceeding if (1) the request made "by a foreign or international tribunal," or by

18  "any interested person"; (2) the request seeks evidence, whether it be the "testimony or statement"

19  of a person or the production of "a document or other thing"; (3) the evidence is intended "for use

20  in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery

21  resides or is found in the district of the district court ruling on the application for assistance.

22  *Ishiyama v. Google LLC*, No. 22-MC-80192-EJD, 2022 WL 17970190, at *1 (N.D. Cal. Dec. 27,

23  2022) (citations omitted); 28 U.S.C. § 1782.  In addition to the statutory factors, the Supreme

24

25  [9] Path, Tempest, and Discord originally filed a joint stipulation and revised subpoena in
    compliance with the Court's 30-day deadline.  (*See* ECF No. 24.)  However, that docket entry was
26  removed because the parties inadvertently included confidential birth date information.  (*See* ECF
    Nos. 25-26, 28.)  Accordingly, the docket shows that the parties submitted a final stipulation and
27  revised subpoena for the Court's review on December 26, 2023.  (*See* ECF No. 27.)

28

                                            10

Court set forth the following discretionary factors that may be considered in deciding whether to grant an application for production of evidence for use in a foreign proceeding: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" . . . (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the [Section] 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." *Ishiyama*, 2022 WL 17970190, at *1 (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).)

On November 22, 2023, after substantial briefing and a hearing with the parties, the Court found that the Discord Subpoena met all of the statutory requirements pursuant to Section 1782 and that all but one of the discretionary factors outlined in *Intel Corp.,* 542 U.S. 241, weighed in favor of granting Path's and Tempest's subpoena as drafted, with the unmet factor weighing toward modifying, but still issuing, the subpoena:

> In sum… Applicants have satisfied all three statutory requirements… discovery relating to the foreign proceeding is authorized under Section 1782…[however,] the subpoena as drafted risks imposing further undue burden on Discord both in its search for responsive documents and in its attempts to reasonably filter out the truly irrelevant misidentified information from the information on the specific Messrs. Gervais and Roosen actually of interest…[h]owever, the Court finds that Applicants' failure to satisfy this discretionary factor does not require a negative finding on the threshold issue of whether any discovery should be authorized in the first instance; rather this factor requires the Court to find that the proposed discovery, in its present form, should be modified…[t]herefore, the Court GRANTS-IN-PART Applicants' application for leave to serve a document subpoena on Discord, and GRANTS Applicants leave to submit a revised subpoena as discussed further herein after appropriate meet and confer with Discord.

(*See* ECF No. 23 pp. 7-18.)  Specifically, the Court held that the subpoena as drafted was unduly burdensome and overbroad because (1) the place of production – Los Angeles – would be over 100 miles from Discord's headquarters in San Francisco, California, (2) the subpoena needed defined terms and additional identifying information so that accounts connected to Gervais and Roosen could be easily preserved and collected, (3) the disclosure of account passwords and

1  message content violated the Stored Communications Act ("SCA"), and (4) a protective order was

2  required.  (*See* ECF No. 23 pp. 14-33.)

3  After engaging in meet and confer efforts to revise the subpoena as ordered by the Court,

4  on December 26, 2023, Path, Tempest, and Discord filed a joint stipulation and proposed order,

5  attaching the Discord Subpoena, in the form in which it was ultimately issued.  (*See* ECF Nos. 27,

6  29.)  As outlined in the stipulation, (1) Discord would produce responsive materials electronically,

7  such that it would not be required to travel any distance to make a production, and that, if hard

8  copy transmission was necessary, Path and Tempest would send a representative to Discord's

9  headquarters to collect the hard copies (ECF No. 27 ¶ 9), (2) the Discord Subpoena would include

10  definitions and additional identifying information so that Gervais's and Roosen's accounts could

11  be easily preserved and collected (*Id.* ¶ 3), (3) the Discord Subpoena would no longer seek

12  passwords or contents of electronic communications and would thus comply with the SCA (*Id.* ¶¶

13  2, 6), and (4) any productions in response to the Discord Subpoena would be subject to the joint

14  and stipulated protective order as issued on September 1, 2023.  (*See* ECF No. 19.)  On December

15  26, 2023, the same date the Discord Subpoena was submitted to the Court, the Court issued it and

16  it was deemed served on Discord.  (ECF No. 29.)

17  **1.    The Discord Subpoena Satisfies Section 1782.**

18  For the reasons outlined in Path's and Tempest's Application (ECF No. 1) and the Court's

19  November 22, 2023 order (ECF No. 29), the Discord Subpoena satisfies the statutory factors in

20  Section 1782.  Roosen and GSK's arguments to the contrary lack merit and are little more than red

21  herrings designed to distract the Court from Roosen's own alleged misconduct and prohibit Path

22  and Tempest from obtaining evidence of that misconduct.

23  Roosen spends much of his Motion suggesting that the Anton Piller Order has expired, and

24  that its expiration ends the litigation in Canada.  (Mot. pp. 15-16, ECF No. 31.)  As an initial

25  matter, the Anton Piller Order remains in full force and effect.  (*See* Bogen Decl.)  That said, even

26  if the Anton Piller Order, a pre-litigation search and injunctive order, had expired, it would have

27  little to no relevance here as the discovery sought in this matter is for use in the *Gervais* Action,

28

which remains pending.  (See ECF No. 1 (describing the foreign proceedings for which discovery is sought as the *Gervais* Action); ECF No. 23 pp. 9-10 (Court order noting that the discovery is for use in a foreign proceeding and relevant to both the *Gervais* Action and the Canadian Court's Order).)

Roosen and GSK also argue that the scope of the Anton Piller Order shows that Roosen and GSK should be excluded from the Discord Subpoena because the Anton Piller Order only calls for the search and seizure of Gervais's devices, not those of Roosen or GSK.  (Mot. pp. 16-17.)  Roosen's reliance on the Anton Piller Order is once again misplaced.  Path and Tempest did not seek the Discord Subpoena solely to collect evidence pursuant to, or for, the Anton Piller Order.  Instead, Path and Tempest sought the Discord Subpoena to collect evidence for use in the *Gervais* Action, and in aid of the Canadian Court's Orders, as recognized by the Court in its November 22, 2023 order.  (ECF No. 23 pp. 9-10; Bogen Decl. ¶ 2.)  The *Gervais* Action accuses Gervais and Roosen of conspiring together to unlawfully interfere in Path and Tempest's economic interests, to breach fiduciary duties owed to Path and Tempest, to engage in internet harassment, and to harm Path by using defamatory and confidential information. (Warren Affidavit Ex. A at ¶¶ 89, 97-100, 208, 215-235.)  The Anton Piller Order, and the instant Discord Subpoena, are both designed to collect information relevant to the *Gervais* Action and the Canadian Proceedings as a whole.  (Bogen Decl. ¶ 2; See Slenys Affidavit Exs. A-D.)  Because Roosen and GSK are critical actors in the defamatory scheme alleged in the *Gervais* Action, Roosen and GSK's Discord data are highly relevant to the Canadian Proceedings and rightfully included in the Discord Subpoena.

### 2.    The Discord Subpoena Satisfies all *Intel* Prongs.

Roosen's and GSK's arguments that the Discord Subpoena does not satisfy the first, third, and fourth *Intel* discretionary factors are also without merit.  (*See* Mot. pp. 18-21.)  As to the first factor, whether "the person from whom discovery is sought is a participant in the foreign proceeding", *Intel Corp.*, 542 U.S. 241, Roosen and GSK seemingly acknowledge that the factor is met because Discord is not a party to the *Gervais* Action, but argue that, despite that, Path and

1    Tempest should be required to show that the evidence sought from Discord cannot be obtained

2    from Gervais's data alone.  (Mot. pp. 18-19.)  Putting aside whether any such demonstration

3    should be required, it is clear that the evidence sought from Discord cannot be obtained solely

4    from Gervais's data.  By way of example, although the *Gervais* Action alleges that Roosen and

5    Gervais acted together to harm Path, it does not mean they *always* acted together, or that Roosen

6    never acted alone, and thus Discord's records related to Gervais would only capture a portion of

7    the relevant evidence.  Moreover, the subpoena asks for account information, including aliases and

8    usernames employed by Roosen, which are relevant to demonstrating which of Gervais's

9    communication occurred with Roosen, and would not be produced if the subpoena was limited to

10   Gervais alone.  Further, to the extent Gervais deleted messages with Roosen before Discord

11   implemented preservation measures but Roosen did not, those messages would only remain in

12   Roosen's data.  As Discord is not a party to the *Gervais* Action (and, although not essential to this

13   factor, the data sought cannot be obtained solely from Gervais's data), the Discord Subpoena

14   properly seeks data related to Roosen.

15         As to the third factor, "whether the [Section] 1782(a) request conceals an attempt to

16   circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United

17   States", *Intel Corp.*, 542 U.S. 241, Roosen argues that "the suspect and secretive nature of the

18   Canadian proceedings" and the potential expiration of the Anton Piller Order prohibit the Court

19   from determining which way this factor leans.  (Mot. p. 19.)  Roosen's argument is utterly without

20   merit.  Other than Roosen's specious assertions regarding proceedings that were, per Canadian

21   statutory rules, conducted under seal, Roosen fails to identify any ways in which Path's and

22   Tempest's subpoena request attempts to circumvent foreign proof gathering restrictions.  To the

23   contrary, as explained in Path's and Tempest's Application and the Court's November 22, 2023

24   Order (*See* ECF Nos. 1, 29), the discovery requested is in line with and *in furtherance* of the

25   Canadian Court's Orders requiring discovery in this matter.

26         Finally, as to the fourth factor, whether the request is otherwise "unduly intrusive or

27   burdensome", *Intel Corp.*, 542 U.S. 241, Roosen's arguments are again without merit.  (Mot. pp.

28

20-21.)  The Discord Subpoena seeks relevant and easily accessible information to be rightfully used in the Canadian Proceedings.  Path and Tempest established, and Discord and the Court agreed, that the Discord Subpoena as written complies with the Federal Rules of Civil Procedure, Section 1782, and *Intel*.  (ECF No. 27.)

In sum, the Discord Subpoena complies with Section 1782 and the *Intel* Factors, and all of Roosen's and GSK's arguments to the contrary are unfounded.

### B.    The Discord Subpoena is Narrowly Tailored.

As detailed in briefing and agreed to by both Discord and the Court, the Discord Subpoena as written seeks data relevant to the Canadian Proceedings, is not unduly burdensome or overbroad, and otherwise complies with the Federal Rules of Civil Procedure.  (*See* ECF Nos. 1, 27, 29.)  As discussed above, the Court determined that the initial draft of the subpoena contained certain requests that were overbroad and unduly burdensome, and it ordered Path, Tempest, and Discord to meet and confer and revise the subpoena.  (See ECF Nos. 15, 23.)  The parties met and conferred and narrowed the subpoena.  The Court held that the new version, the Discord Subpoena, was proper in all respects, and issued it.  (*Compare* ECF No. 23 pp. 7-18; ECF No. 27; ECF No. 29.)

Despite this background, Roosen and GSK argue that the Discord Subpoena is overbroad because it (1) seeks irrelevant information and (2) is unlimited in time.[10]  Both arguments fail.

First, all data sought by the Discord Subpoena is patently relevant to the Canadian Proceedings.  (*See* Bogen Decl. ¶ 2; Warren Affidavit Exs. A-D.)  Data concerning and demonstrating Roosen's and GSK's activity on Discord, one of the platforms on which they are alleged to have conspired and taken actions to harm Path and Tempest, is undoubtedly relevant to

---

[10] Roosen also argues that the Discord Subpoena is overbroad because it seeks information about Mr. Nacker, a GSK employee who purportedly uses the name "Ryz0r" on Discord.  (Mot. 22.)  Mr. Nacker was included in the Discord Subpoena based on the Canadian Court's inclusion of his purported username, Ryz0r, in the search terms to be used in connection with the Anton Piller Order.  (*See* Warren Affidavit Exs. B, F.)  That said, Path and Tempest do not oppose the request to remove "Ryz0r" from the Discord Subpoena.

15

OPPOSITION OF APPLICANTS PATH NETWORK, INC. AND TEMPEST HOSTING, LLC TO RENE ROOSEN AND GAME SERVER KING'S CORRECTED MOTION TO INTERVENE AND QUASH, MODIFY, OR STAY EXECUTION OF THE SUBPOENA TO DISCORD, INC.
280468473_2

the case.  Second, the Discord Subpoena's lack of date restrictions is appropriate under the

circumstances.  Here, although Path and Tempest allege the *suspected* timeframe that Gervais and

Roosen conspired together, (Warren Affidavit Ex. A ¶ 89 (describing time frame as "on or about"

June 24, 2022")), Gervais's and Roosen's alleged misconduct may have started before Path and

Tempest's current understanding and, upon information and belief, much of that misconduct

continues today.  Applying arbitrary start and end dates to the Discord Subpoena could eliminate

highly relevant information concerning the formation of the conspiracy and any spoliation of

evidence related to Path's and Tempest's case.  Accordingly, the timeframe as stated in the

Discord Subpoena is proper.

In sum, the Discord Subpoena seeks relevant information and is appropriately scoped with

respect to time frame.  As this Court previously held, the Discord Subpoena is proper.  (*See* ECF

No. 27.)  The Court should deny Roosen and GSK's Motion.

### C.   Roosen is Properly Included in the Discord Subpoena.

Roosen's and GSK's arguments that they should not be included in the Discord Subpoena

are also without merit.  (Mot. pp. 20-21.)  Roosen and GSK are repeatedly discussed in the

statement of claim – the initiating document – in the *Gervais* Action.  (*See* Warren Affidavit Ex.

A.)  Specifically, Roosen is described as Gervais's co-conspirator in unlawfully interfering with

Path's and Tempest's economic interests, breaching fiduciary duties owed to Path and Tempest,

engaging in internet harassment, and harming Path and Tempest using defamatory and

confidential information.  (*Id.* at ¶¶ 89, 97, 100, 208, 215-235.)  Roosen is also named in Schedule

A to the Anton Piller Order, which orders the collection of Gervais's communications mentioning

Roosen.  (*See* Warren Affidavit Ex. B Schedule A, subd. xiv., p.92.)  Roosen and GSK are also

listed as relevant terms in the Canadian Court's Orders to guide Warren's review for relevant data

when collecting information from Gervais's devices.  (*See* Warren Affidavit Ex. F, Schedule A, p.

123.)

Roosen and GSK are both mentioned at length in the Canadian Proceedings and are

properly included in the Discord Subpoena.

**D.    Roosen's Other Reasons for Quashing the Discord Subpoena Fail.**

Roosen and GSK raise various other arguments in support of their request to quash the Discord Subpoena, all of which are based on untruths and distractions that are irrelevant to the true purpose of the instant litigation – to gather relevant evidence in aid of a foreign proceeding where who is "good" and who is "bad" will be determined by the Canadian Court.  Each of Roosen's and GSK's speculative assertions about the purpose of the Discord Subpoena are dispelled below.

First, contrary to Roosen's and GSK's unsupported allegations, the Canadian Proceedings are not "secretive" or "suspicious."  (Mot. p. 6.)  They are properly filed, and currently pending proceedings under Canadian law (in which, notably, the Canadian Court, in a public ruling, found that Path and Tempest had "demonstrated a strong prima facie case" and that the "damage to [Path and Tempest] of Gervais' alleged misconduct, potential or actual, is very serious.").  (*See* Warren Affidavit Ex. E.)[11]

Second, the Discord Subpoena is not being used to collect Roosen's and GSK's confidential trade secret information.  (*See* Mot.)  Roosen and GSK argue throughout the Motion that its servers and channels contain customer lists that constitute trade secrets, and that the Discord data will reveal those secrets.  (*Id.*)  This argument is baseless as Roosen's and GSK's customer lists are in the public domain and can be accessed at any time.  (Declaration of Marshal Webb ("Webb Decl.") ¶¶2-6, Exs. A-D.)  Accordingly, under both federal and California law, they do not constitute trade secrets.  *See, e.g., InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 659-664 (9th Cir. 2020) (finding that, to constitute a trade secret, an owner must take reasonable measures to keep the information secret and the information must derive independent

---

[11] Contrary to Roosen and GSK's assertions that the Canadian Proceedings are somehow "secretive" or "suspicious," in nature (Mot. p. 6), the Court previously took Judicial Notice of the fact that the Canadian Court was "the Superior Court of Justice in Ontario" and that "Superior courts are the highest level of courts in a province or territory. They deal with the most serious criminal and civil cases and have the power to review the decisions of the provincial and territorial courts."  (ECF No. 23 at 12-13.)

economic value, actual or potential, from not being generally known to, and not being readily

ascertainable through proper means by, another person who can obtain economic value from the

disclosure or use of the information); *Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc.*,

893 F.3d 1176, 1188 (9th Cir. 2018) ("The subject matter of trade secrets 'must be sufficiently

novel, unique, or original that it is not readily ascertainable to competitors'…a trade secret cannot

ordinarily consist of matters of public knowledge." (citation omitted)); *Nextdoor.com, Inc. v.*

*Abhyanker*, 2014 WL 1648473, at *4 (N.D. Cal. Apr. 23, 2014) ("Information that is generally

known to the public or in an industry lacks the requisite secrecy.").[12]

Third, contrary to Roosen's and GSK's assertions, the Discord Subpoena does not violate

the SCA.  (Mot. p. 21.)  Pursuant to the Court's November 22, 2023 order, and through

discussions with Discord, the prior version of the Discord Subpoena was revised to remove any

requests for content, resulting in the current Discord Subpoena.  Despite this background, Roosen

and GSK argue that the Discord Subpoena violates the SCA because "Path and Tempest's request

for the servers and channels Mr. Roosen has joined and maintained would reveal customer lists,

contacts, and the content being discussed in those servers and channels..." (Mot. p. 21.)  As an

initial matter, the Discord Subpoena explicitly states that its requests do not "include the contents

of electronic communications." (ECF No. 29 at ¶ 2.)  Accordingly, Roosen's assertion that the

subpoena calls for "the content being discussed in those servers and channels" is unfounded.

(Mot. p. 21.)  With regard to Roosen's argument that disclosure of GSK's customers and contacts

would violate the SCA, that assertion is contrary to well established law, which holds that names

are not content under the SCA.  *See, e.g.*, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D.

Cal. 2015) (finding that the SCA does not apply to non-content, including account data, such as

usernames and bibliographical information, that does not disclose the "substance, purport, or

meaning" of a communication);  *In re Request for Int'l Judicial Assistance from the Turkish*

---

[12] The fact that the customer lists are readily available online also debunks Roosen's claims that Path and Tempest are seeking the Discord Subpoena to obtain those lists instead of in furtherance of the Canadian Proceedings.  (*See* Webb Decl. Exs. A-D.)

*Ministry of Justice*, 2016 WL 2957032, at *2 (N.D. Cal. May 23, 2016) (citing *Thompson v. Doel*, 2013 WL 5544607, at *1, 3 (N.D. Cal. Oct. 7, 2013) (approving subpoena, providing the application sought "documents sufficient to identify: 'the names, addresses, telephone numbers, email addresses, and Media Access Control addresses of the owner' of the email address, but not the content of any email."); *Optiver Australia Pty. Ltd. & Anor. v. Tibra Trading Pty. Ltd. & Ors.*, No. C 12-80242 EJD PSG, 2013 WL 256771, at *3 (N.D. Cal. Jan. 23, 2013) (ordering compliance with subpoena for non-content metadata including "[d]ocuments sufficient to show the recipient(s), sender, date sent, date received, date read, and date deleted of emails, email attachments, or Google Talk messages..."); *Obodai v. Indeed, Inc.*, No. 13-80027-MISC EMC, 2013 WL 1191267, at *3 (N.D. Cal. Mar. 21, 2013) ("[s]ince subscriber information is not protected by the SCA, Indeed may obtain non-content information pursuant to a valid, civil subpoena.").  Accordingly, Roosen's claims that the Discord Subpoena should be quashed or modified because it violates the SCA are meritless.

Fourth, Roosen's request that only U.S. counsel for Path and Tempest be able to review any data produced pursuant to the Discord Subpoena is unwarranted and would defeat the purpose of the Discord Subpoena.  (Mot. p. 21-22.)  The Discord Subpoena seeks evidence for use in the Canadian Proceedings, which are being handled by Canadian counsel, and thus Canadian counsel needs access to the materials.  (*See* ECF No. 1.)  Further, Roosen offers no basis, other than his own manufactured claims of impropriety in the Canadian Proceedings, for this request.  As demonstrated by the Bogen Declaration and all exhibits thereto, the Canadian Proceedings are legitimate and ongoing.[13]  (*See* Bogen Decl. Exs. A-C.)  They are rightfully sealed as is common in cases concerning high risks of spoliation, not in an effort to hide information from this Court.[14]

---

[13] Importantly, Roosen and GSK exclusively argue that the Anton Piller Order is expired, which it is not.  (Mot. pp. 15-16.)  Accordingly, any insinuation that the Canadian Proceedings as a whole are somehow "expired" or terminated should be disregarded.

[14] Notably, the proceedings were under seal long before this Court became involved, demonstrating that the sealing was motivated by Canadian procedure and not a desire to hide

19

1    Under the instant circumstances, producing documents for U.S. Counsel's Eyes Only is

2    unwarranted and would defeat the purpose of the Discord Subpoena.

3         All of Roosen and GSK's remaining reasons to quash the Discord Subpoena fail and

4    Roosen's and GSK's Motion should be denied.

5                                   **CONCLUSION**

6         For the foregoing reasons, Path and Tempest respectfully request that the Court issue an

7    order denying Roosen's and GSK's Motion.

8

9    DATED:  February 5, 2024                          RITA M. HAEUSLER

10                                                     HANNAH A. BOGEN
                                                       HUGHES HUBBARD AND REED LLP
11

12                                          By:  _____

13                                                     Hannah A. Bogen
                                                      Attorneys for Applicants
14                                                 PATH NETWORK, INC. AND
                                                   TEMPEST HOSTING, LLC
15

16

17

18

19

20

21

22

23

24

25

26

27   information from this Court.  (*See* Warren Affidavit Ex. A (Statement of Claim filed on March 9,
     2023, nearly one year before Roosen and GSK's Motion was filed).)

28
                                              20