1  HANNAH A. BOGEN (SBN 324294)
   hannah.bogen@hugheshubbard.com
2  HUGHES HUBBARD & REED LLP
   1999 Avenue of the Stars, 9th Floor
3  Los Angeles, CA 90067-4620
   Telephone:  (213) 613-2800
4  Facsimile:  (213) 613-2950

5  Attorneys for Applicants
   PATH NETWORK, INC. AND
6  TEMPEST HOSTING, LLC

7

8                 **UNITED STATES DISTRICT COURT**

9                 **NORTHERN DISTRICT OF CALIFORNIA**

10  In Re Ex Parte Application of          CASE NO.: 3:23-MC-80148-JST

11  Path Network, Inc. and Tempest Hosting,  **PATH NETWORK INC. AND TEMPEST**
    LLC,                                     **HOSTING, LLC'S SURREPLY OF**
12                                           **APPLICANTS PATH NETWORK, INC. AND**
                         Applicants.         **TEMPEST HOSTING, LLC TO RENE**
13                                           **ROOSEN AND GAME SERVER KINGS'**
                                             **REPLY IN SUPPORT OF ITS CORRECTED**
14                                           **MOTION TO INTERVENE AND QUASH,**
                                             **MODIFY, OR STAY EXECUTION OF THE**
15                                           **SUBPOENA TO DISCORD, INC.**

16

17                                           Judge:  Hon. Jon S. Tigar
                                             Courtroom 6 – 2nd Floor
18

19

20

21

22

23

24

25

26

27

28

280892238_1

TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .......................................1

    A.  The Server Industry Generally.......................................................................1

    B.  Customer Identities and Contact Information.................................................2

    C.  Discord...........................................................................................................2

III.  ARGUMENT.......................................................................................................2

    A.  GSK's Customer Lists Are Not Trade Secrets Under California or Federal Law.........2

        1.  GSK's Customer Lists Have No Independent Economic Value Because They are Publicly Available ...............................3

        2.  GSK Cannot Make Reasonable Efforts to Maintain the Secrecy of its Customer List Because GSK Does Not Control Whether Its Customer List Is Public ...............................5

IV.  CONCLUSION...................................................................................................6

i

## I.  INTRODUCTION

In an attempt to prevent Path Network, Inc. ("Path") and Tempest Hosting, LLC ("Tempest") (collectively, "Applicants") from securing data permitted by statute and Supreme Court caselaw, and agreed to by Discord and Magistrate Judge Peter H. Kang, Rene Roosen ("Roosen") and Game Server Kings ("GSK") filed a Motion to Intervene and to Quash on January 26, 2024 ("Motion"), accusing Applicants of wrongfully attempting to secure trade secret data for what they purported was an illegitimate foreign proceeding.  As explained in Applicants' Opposition to the Motion ("Opposition"), Roosen's and GSK's claims are not only inflammatory and insulting, but also speculative, unfounded and incorrect.

After hearing argument on the Motion on March 28, 2024 ("Hearing"), the Court requested additional briefing on Roosen's and GSK's argument that its customer lists are trade secrets and should thus be protected.  (*See* ECF No. 39, March 28, 2024 Minute Entry.)  Despite bearing the burden of demonstrating that the lists are trade secrets, Roosen and GSK never define "trade secrets" in their Motion or Reply, or explain how GSK's customer identities and contact information meet the elements required under California or federal law.  Nor could they make such a demonstration, because (1) the identities and contact information of their customers are publicly available on numerous websites, and (2) because they are publicly available, they do not satisfy the test for trade secrets under California or federal law.

For the reasons detailed below, and those contained in the Opposition and discussed during the Hearing, the Court should deny Roosen's and GSK's Motion in its entirety and the Discord Subpoena should be updated to call for data through the date of the Court's Order, and executed.

## II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Applicants hereby incorporate the Factual and Procedural Background on pages 3-10 of Path and Tempest's Opposition.  (*See* ECF No. 37 pp. 3-10.)

### A.  The Server Industry Generally

Path, Tempest, GSK, and Cosmic Global, Inc. ("Cosmic Global"), another company owned by Roosen, all operate in the data and server hosting and leasing industry.  In this industry, companies sell or lease server space to customers, which allows the customers to have an online

1  presence and offer services to their own clients.  (Supplemental Declaration of Marshal Webb

2  ("Suppl. Webb Decl.") ¶ 2.)  Typically, customers monetize the server space they obtain from the

3  companies in some way, including by providing online gaming or website hosting services to their

4  own clients.  (*Id.* ¶¶ 2, 14.)  For this to be possible, the customer's identity must be available and

5  accessible to internet users, who are their actual and potential clients.  (*Id.*)  For this reason, it is

6  exceedingly rare that the customers in this space configure their servers to be private.  (*Id.*)

7      **B.**      **Customer Identities and Contact Information**

8      When a customer buys or leases server space, the customer's identity is typically accessible

9  on public domains so that it can be monetized.  (Suppl. Webb Decl. ¶¶ 14-15.)  In the rare

10  circumstances where a customer chooses to conceal its identity and contact information, it must take

11  affirmative steps to do so, including configuring its software to be outside of public view.  (*Id.*).

12      **C.**      **Discord**

13      GSK uses Discord to communicate with its customers, sometimes using private chats or

14  private chat groups.  (*See* Reply pp. 9-10.)  The privacy setting on a Discord chat or chat group is

15  completely unrelated to a customer's privacy settings when they lease or buy server space from

16  GSK.  (Suppl. Webb Decl. ¶¶ 15-16.)  Although creating a private Discord chat group may prevent

17  the public from accessing GSK's chats with its customers, it has no effect on whether its customers'

18  identities or contact information are publicly available through the methods described in the

19  Opposition and the attached Declaration.  (*Id.*)  Discord is a communication platform that can be

20  used once individuals know or find another, whereas the identity and listings described in the

21  Opposition and Declaration are necessary to participating in and monetizing the use of the internet.

22  There is no relationship between the two.  (Suppl. Webb Decl. ¶ 16.)

23  **III.**    **ARGUMENT**

24      **A.**      **GSK's Customer Lists Are Not Trade Secrets Under California or**

25             **Federal Law**

26      Pursuant to California law, "'trade secret' means information, including a formula, pattern,

27  compilation, program, device, method, technique, or process, that: (1) Derives independent

28  economic value, actual or potential, from **not being generally known to the public or to other**

**persons** who can obtain economic value from its disclosure or use, and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  Both of these elements must be established before a protectable trade secret can be found." *Kovesdy v. Kovesdy*, No. C 10-02012 SBA, 2010 WL 3619826, at *6 (N.D. Cal. Sept. 13, 2010) (citing Cal. Civ.Code § 3426.1(d) (citations omitted) (emphasis added).)  In addition to the elements required under California law, federal law also requires that the information not be "readily ascertainable." *See* 18 U.S.C. § 1839(3)(B).  GSK's customer lists do not constitute trade secrets under California or federal law because they are (1) generally known to the public, and (2) their secrecy is not maintained.

### 1.    GSK's Customer Lists Have No Independent Economic Value Because They are Publicly Available

California state and federal courts routinely find that customer lists are not trade secrets if the content of the lists are publicly available. *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc*., 28 Cal. App. 5th 923, 945 (2018) (affirming summary judgment on misappropriation of trade secrets claim in part because identities and contact information were already known and also available on multiple social media pages); ; *AirDefense, Inc. v. AirTight Networks, Inc.*, No. C 05-04615JF, 2006 WL 2092053, at *7 (N.D. Cal. July 26, 2006) ("Once a customer list is designated as public information and not a trade secret, it is available for use by anyone.") (citing *Am. Credit Indem. Co. v. Sacks*, 213 Cal. App. 3d 622, 632 (Ct. App. 1989).); *Scott v. Snelling & Snelling, Inc.*, 732 F. Supp. 1034, 1044–45 (N.D. Cal. 1990) ("The assertion that the customer lists constitute a trade secret…can be dismissed…without much difficulty. [T]he typical customers of [this business] are large and small companies of all sorts, easily discoverable through public sources."); *Religious Tech. Ctr. v. Netcom On–Line Communic'n Svcs., Inc.,* 923 F.Supp. 1231, 1256 (N.D.Cal.1995) ("Although work posted to an Internet newsgroup remains accessible to the public for only a limited amount of time, once that trade secret has been released into the public domain, there is no retrieving it.... [O]nce posted, the works los[e] their secrecy.") (citations omitted).)

Here, GSK's customer lists and contact information do not "derive independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from [their] disclosure or use," and they are "readily ascertainable" from

1   multiple public sources.  Cal. Civ.Code § 3426.1(d); 18 U.S.C. § 1839(3)(B); (*See* Webb Decl. Exs.

2   A-D, ECF No. 37-2; Suppl.Webb Decl. Exs. F-H; *Id.* ¶¶ 3-13.)  Contrary to Roosen's and GSK's

3   assertions, the identity of GSK's customers is generally known to the public, as the customers (and

4   their status as GSK customers) are visible on various websites accessible to the public.  (*Id.*)

5   Specifically, as explained in detail in Applicants' Opposition, websites including, but not limited to,

6   bgp.tools and battlemetrics.com contain information sufficient to identify GSK's customers.  (*See*

7   Webb Decl. Exs. A-D.)

8          Roosen and GSK suggest in their Reply that bgp.tools does not show GSK's customers

9   because there are no customers listed in the "Downstream" tab of its bgp.tools page. (Declaration of

10  Rene Roosen ("Roosen Decl.") ¶ 6, ECF no. 38-4).  This argument is misleading at best.  While it is

11  true that no customers are currently shown on GSK's "Downstream" tab, GSK's customers are

12  shown on a separate tab on bgp.tools, the "Prefixes" tab.  (Suppl. Webb. Decl. ¶¶ 8-9, Ex. F.)

13  Additionally, the reason GSK's "Downsteam" tab does not presently show customers is because

14  Roosen moved those customers to his other company, Cosmic Global, shortly after the Court issued

15  its November 22, 2023, order indicating that the Discord Subpoena would be issued.  (Suppl. Webb

16  Decl. ¶ 6; *Id.* Ex. E.)  The identity of those customers is available on Cosmic Global's site on

17  bgp.tools, under the "Downstream" tab.  (*Id.*)

18         Roosen and GSK also claim that many of its customers are not shown on bgp.tools or

19  battlemetrics.com, and thus its customer list is not publicly available.  (Reply pp. 9-10.)  As

20  Applicants explained in the Opposition, bgp.tools and battlemetrics.com are only two of the ways

21  the identity of GSK's customers is publicly available, not the only ways.  (Webb Decl. ¶ 3; Suppl.

22  Webb Decl. ¶¶ 3-13, Exs. F-H.)  Additionally, as Roosen presumably knows, to the extent one of

23  GSK's customers is not listed on bgp.tools or battlemetrics.com, the identity of that customer can be

24  found by inputting the IP addresses listed on GSK's bgp.tools page into another public website to

25  find the customer's domain name or other identification or contact information.  (Suppl. Webb Decl.

26  ¶ 9, Exs. F-H.)  All of these methods are available to the public.  (*Id.,* Exs. E-H.)  It is exceedingly

27  rare that a customer would choose to configure its software to keep its identity and contact

28  information private.  (*Id.* ¶ 14.)  This is because the customer can only keep its identity private by

1    disconnecting itself from the internet, which eliminates the customer's ability to engage with its own

2    customers or potential customers, thus prohibiting them from monetizing the server.  (*Id.* ¶¶ 14-15.)

3    For the same reason, these customers are likely less profitable for a hosting company.  (*Id.*)

4        In sum, the identity of the vast majority, if not all, of GSK's customers and their associated

5    contact information is easily ascertainable through various public sources, and thus GSK's customer

6    lists and contact information do not satisfy the first prong of the trade secret definition under

7    California or federal law.

8        **2.    GSK Cannot Make Reasonable Efforts to Maintain the Secrecy of its**

9        **Customer List Because GSK Does Not Control Whether Its Customer**

10        **List Is Public**

11        Even if Roosen and GSK could demonstrate that GSK's customer list is not generally known

12    to the public or to other persons (which they cannot), they could not satisfy the second element of

13    the analysis – that the list is "the subject of efforts that are reasonable under the circumstances to

14    maintain its secrecy".  Cal. Civ.Code § 3426.1(d); 18 U.S.C. § 1839(3)(b).

15        In their Motion and Reply, GSK and Roosen fail to articulate any efforts they have taken to

16    maintain the secrecy of their customers' identity, likely because such efforts did not – and could not

17    – exist given the nature of the industry.  (*See* Mot., Reply.)  In the industry, in order to monetize

18    server space (particularly for gaming servers, a primary customer for Game Server Kings),

19    customers must be findable, and thus identifiable, on the internet.  (Suppl. Webb Decl. ¶¶ 14-15.)  If

20    GSK had tried to conceal its customers' identities and locations, it likely would have lost virtually all

21    of its customers, as the customers' names and locations must be publicly accessible for the

22    customers to monetize the services they offer.  Further, even if a customer did decide to keep its

23    identity and contact information private, the *customer* would make that choice and effectuate the

24    change by reconfiguring its own software; it would not be GSK's choice or doing.  (Suppl. Webb

25    Decl. ¶¶ 14-15.)

26        Roosen and GSK note in their Reply that GSK communicates with its customers on private,

27    rather than public Discord channels and suggest that this demonstrates the secrecy of their identity

28    and, presumably, GSK's efforts to keep them secret.  (Reply pp. 9-10.)  To avoid any confusion, the

1   fact that GSK uses private Discord chat groups to communicate with customers does not constitute

2   an effort to "maintain the secrecy" of its customers' identities because the identities of those

3   customers was already publicly available (i.e., not secret) on other websites when they were

4   engaging in the chats.  Indeed, given the fact that the chats occurred after the fact of disclosure, they

5   are irrelevant to the trade secret analysis.  *See Religious Tech. Ctr.*, 923 F.Supp. 1231 ("[O]once that

6   trade secret has been released into the public domain, there is no retrieving it.... once posted, the

7   works lost their secrecy.") (citations omitted).)

8          In sum, GSK's "customer lists" do not meet the second prong of the trade secret definition

9   under California or federal law, and the Court should deny the Motion.

10  **IV.    CONCLUSION**

11         For the foregoing reasons, Applicants respectfully request that the Court Deny Roosen and

12  GSK's Motion in its entirety.

13

14   DATED:  April 11, 2024                    HANNAH A. BOGEN
                                              HUGHES HUBBARD & REED LLP
15

16                                    By:_____

17                                            Hannah A. Bogen
                                            Attorneys for Applicants
18                                     PATH NETWORK, INC. AND
                                            TEMPEST HOSTING, LLC
19

20

21

22

23

24

25

26

27

28