UNITED STATES DISTRICT COURT                *ORIGINAL*

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jon S. Tigar, Judge

| | | |
|---|---|---|
| In Re Ex Parte Application | ) | **Motion to Intervene and** |
| of Path Network, Inc. and | ) | **Quash, Modify, or Stay** |
| Tempest Hosting, LLC, | ) | |
| | ) | NO. 23-mc-80148 JST |
| | ) | |
| | ) | Pages 1 - 34 |
| _____ | ) | |
| | | Oakland, California |
| | | Thursday, March 28, 2024 |

**REPORTER'S TRANSCRIPT OF ZOOM WEBINAR PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Movants:            Mayer Brown LLP
                        333 South Grand Avenue, 47th Floor
                        Los Angeles, California  90071
                BY:  DOUGLAS A. SMITH, ATTORNEY AT LAW

For Respondents:        Hughes Hubbard & Reed LLP
                        1999 Avenue of the Stars, Ninth Floor
                        Los Angeles, California  90067-4620
                BY:  HANNAH A. BOGEN, ATTORNEY AT LAW

Reported By:        Raynee H. Mercado, CSR No. 8258

    Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

```
1    Thursday, March 28, 2024                           2:01 p.m.

2                      P R O C E E D I N G S

3                         (Zoom Webinar)

4                            --o0o--

5

6         THE CLERK:  Your Honor, now calling civil matter

7    23-mc-80148, In Re: Ex-parte Application of Path Network, Inc.

8    and Tempest Hosting LLC v. Discord, Inc.

9       If counsel could please state their appearances for the

10   record starting with counsel for plaintiffs.

11        MS. BOGEN:  Good morning [sic], Your Honor.  Hannah

12   Bogen for applicants Path Network, Inc. and Tempest Hosting,

13   LLC.

14        MR. SMITH:  Good afternoon, Your Honor.  Doug Smith

15   of Mayer Brown LLP in Los Angeles, California, on behalf of

16   intervenors Rene Roosen and Hosting King, Inc. doing business

17   as Game Server Kings.

18        THE COURT:  Very good.  Welcome.

19      It's Mr. Smith's motion to quash, so, Mr. Smith, you can

20   go first.  I have some questions for each of you.  I'll give

21   you each 15 minutes.  If my questions eat up all of your time,

22   might give you a little more.

23      Mr. Smith, you can go first.

24        MR. SMITH:  Yes, Your Honor.  Thank you.

25      Path and Tempest's request here for a subpoena is,
```

1     frankly, an abuse of the subpoena process, particularly with

2     respect to my clients, Mr. Rene Roosen and Hosting King, Inc.

3     doing business as Game Server Kings.

4         The Court should squash the subpoena in its entirety.

5     Path and Tempest first sought the issuance of the subpoena

6     from the court almost a year ago on May 22nd -- May 22, 2023.

7     The original subpoena was wildly overbroad, unduly intrusive,

8     burdensome, and unlawful, as Magistrate Judge Kang determined.

9         In particular, the subpoena sought the contents of

10    communications in flagrant disregard --

11        **THE COURT:**  How does that help you?  I mean, Judge --

12    Judge Kang did whatever he did, so now the subpoena is no

13    longer too broad.  It's whatever he decided was appropriate,

14    right?

15        **MR. SMITH:**  Your Honor --

16        **THE COURT:**  My question is, how does -- let's -- so

17    let's say that Path came to court and asked for something that

18    they should not have done.

19        First of all, that happens five days a week here in the

20    district court.  The only reason it doesn't happen seven days

21    a week is we're not open on the weekends.  People are

22    constantly asking us for things that we don't think they're

23    entitled to.

24        But let's say they did that.  How does that help you?  How

25    does that help me decide that their subpoena should now be

1    quashed?

2            **MR. SMITH:**  Right, Your Honor.

3       So until the subpoena issues, there's precedent in the

4    circuit that Mr. Roosen and Hosting King, who are the

5    targets -- ultimate targets of the subpoena, couldn't have

6    moved to squash beforehand.  It would have been premature.

7       So once the subpoena issues, Mr. Roosen and Game Server

8    Kings had the ability to move to quash.  And as we set forth,

9    the subpoena is based on the Anton Piller order in the

10   Canadian proceeding.  That Anton Piller order, the civil

11   equivalent of a criminal search warrant, expired more than

12   five months ago.  There's no --

13           **THE COURT:**  Well, let's stop exactly right there,

14   because you say a few times in your brief that they have to be

15   able to prove that they can use the information in the pending

16   proceeding.  You cite a Second Circuit case called *Certain*

17   *Funds* that you really like on the point, and that's

18   essentially the argument.

19      The problem that -- that I think there is with that

20   argument is first, *Certain Funds* is not a case that says you

21   have to have a -- an ongoing proceeding with an open period of

22   discovery before you can get a 1782.  As I read *Certain Funds*,

23   and I read it very quickly, the problem in that case was the

24   parties who were seeking information were not parties to the

25   underlying proceeding that I want to say was taking place in

1   Saudi Arabia.

2        And so what the Second Circuit said was, because of your

3   status -- your status, not the status of the Saudi Arabian

4   proceeding -- you have no ability to put information before

5   that tribunal at all.  That's why the -- they were not

6   successful.

7        And, in fact, what the *Intel* case that you cite several

8   times in your brief says is, we reject the view that 1782

9   comes into play only when adjudicated proceedings are pending

10  or imminent.  Instead, we hold that Section 1782(a) requires

11  only that a dispositive ruling by the commission reviewable by

12  the European courts must be within reasonable contemplation.

13       So I think the only thing that -- that Path and the other

14  entity have to establish is something less than the fact that

15  these proceedings are imminent.

16       I don't think they have to establish that there's some

17  open discovery order that they fit into.

18       So I guess that's a long prelude.  My question to you is,

19  is what I just said wrong?

20            **MR. SMITH:**  Well, Your Honor, your read of Second

21  Circuit decision is correct, but it stands for the fundamental

22  proposition that merely because discovery might be relevant

23  for use in a -- in a foreign proceeding isn't the end of the

24  inquiry.

25       The applicants must be able to actually use the evidence

1    that's obtained through the subpoena in the proceeding itself.

2    And here, the basis for the subpoena was initially the Anton

3    Piller order.  That is undisputed now has expired, so there's

4    no basis to get the discovery based on the Anton Piller order.

5         Now, when it was revealed that the Anton Piller order had

6    expired, Path and Tempest now pivot to arguing, oh, well, we

7    need the subpoena so Discord in order to get evidence for

8    discovery in the Canadian litigation.

9         And the question is there is, well, is that proper?  And

10   the *Foda* case, a Northern District of California case that we

11   cite and block quoted in our reply brief, makes clear that you

12   don't know if the evidence is actually going to be used in the

13   proceeding if discovery, for example, hasn't even opened yet.

14        And here, there's no indication that discovery has opened

15   in the Canadian proceeding.  Also the submissions by Path and

16   Tempest themselves reveal that the Court has stayed all

17   proceedings in that case pending a judge reassignment, a

18   transfer of the case to Toronto, and a pending ruling on a

19   motion to set aside the Anton Piller order as wrongly granted

20   in the first instance.

21        So by Path and Tempest seeking this discovery in this

22   litigation argue [sic] is that they're violating the stay in

23   the Canadian proceeding; they're also circumventing whatever

24   restrictions the Court might impose on discovery because

25   discovery isn't even open yet in the Canadian proceeding.

1        So that's why --

2            THE COURT:  So let's -- so we're -- it sounds like

3    we're on the same point that we've been on.

4        What is your best case -- what is any case for the

5    proposition that there needs to be a period of open -- that a

6    period of discovery needs to be open at the time the Court

7    issues a subpoena under 1782?

8        Is that *Foda*, which I've not yet read, because it would

9    seem to be very contrary to the proposition from the *Intel*

10   case that I quoted a moment ago.

11           MR. SMITH:  Well, it's -- it's Path and Tempest's

12   burden to show that the discovery will actually be used in the

13   Canadian case.

14           THE COURT:  That's not what I just asked you.

15       I'm asking you, first of all, is -- what is the -- given

16   what I -- given how I read *Intel*, which seems to me to be very

17   clear, says there doesn't have to be a current proceeding; it

18   could be imminent or whatever's lower than imminent.  That's

19   what it says.

20       So where's the authority that says there has to be a

21   period of discovery that's open at the time the 1782 subpoena

22   is issued?  'Cause that would be the opposite of *Intel*.  And

23   maybe the answer is *Foda*, but that's my question.

24       What is the authority for that?

25           MR. SMITH:  *Foda*, Your Honor.  I mean, again, it has

1   to be for use in the proceeding, and if discovery is not

2   opened yet, you can't say it's going to be for use in the

3   proceeding even if it's imminent.

4        Again, the Court in Canada is going to decide whether the

5   Anton Piller order was void ab initio.  Maybe it should not

6   have been issued to begin with.  And you can't just get

7   discovery willy-nilly on the idea that, you know, there's

8   going to be potentially be a proceeding -- a foreign

9   proceeding at some point.  I mean, that's speculative.  Right?

10       And here, you know, there's also the issue of one of the

11  discretionary factors is whether there's a circumvention on

12  the limitations imposed by the foreign court on discovery.

13       And here, there is a stay of all proceedings.  So what

14  Path and Tempest are doing are asking this Court essentially

15  to allow it to violate the stay of all proceedings in the

16  Canadian litigation by allowing the subpoena to issue.

17       Also, again, discovery isn't opened in that case, so, you

18  know, to talk -- we're not in the situation where there is a

19  potential future litigation.  The fact is there is a Canadian

20  litigation.  There are orders in that Canadian litigation that

21  Path and Tempest must abide by.  And what they're doing by

22  moving -- seeking the subpoena here in -- in the United States

23  is they're circumventing those Canadian court orders.

24            **THE COURT:**  You draw the analogy that the Canadian

25  proceeding is like a closed proceeding, but you don't argue

1    that it actually is a closed proceeding, do you?

2         **MR. SMITH:**  Your Honor, the -- the entire case is

3    under seal.  And I've tried -- my office has tried to --

4         **THE COURT:**  Mr.  Smith?

5         **MR. SMITH:**  Yes, Your Honor.

6         **THE COURT:**  The thing that you're stating now, you

7    can say in just a moment.  But my question is a "yes" or "no"

8    question.

9         **MR. SMITH:**  Sure.

10        **THE COURT:**  You do not contend that the Canadian

11   proceeding is closed, do you?

12        **MR. SMITH:**  Closed -- I mean, what is your -- what is

13   your definition of "closed," I guess is what I'm asking.

14        **THE COURT:**  Well, I'm not -- I'm not trying to be coy

15   about it.  Your -- one of your briefs says -- one of your

16   brief correctly states the proposition of law that the 1782

17   relief is not available with respect to a closed foreign

18   proceeding.  That's true.  That's one of the things that

19   *Intel* --

20        **MR. SMITH:**  Oh, okay.

21        **THE COURT:**  And what you say in your brief is, the

22   Court should treat this as though it is a closed proceeding.

23       And my question to you, which I take from your brief, is I

24   take that point.  But you do not actually contend that the

25   Canadian proceeding is closed, do you?

1          **MR. SMITH:**  Ah.  Now I understand your question, Your

2     Honor.

3        So the reason that argument is in there is because the --

4          **THE COURT:**  Mr. Smith?

5          **MR. SMITH:**  Yes.

6          **THE COURT:**  You do not actually contend that the

7     Canadian proceeding is closed, do you?

8          **MR. SMITH:**  Not the proceeding itself, but the

9     execution of the search warrant is closed so that's why I said

10    it was akin to a closed proceeding.

11       Once the search warrant has expired, you -- a party cannot

12    execute on that.  The pre-litigation discovery period has

13    closed.  And that's the argument.  So that's why if the

14    subpoena is based on the pre-litigation discovery Anton Piller

15    order, that is now closed because the order has expired.

16       All the evidence has been seized, obtained.  And, Your

17    Honor, the Anton Piller order was never targeted at Mr. Roosen

18    or Game Server Kings at all.  It was only targeted at

19    Mr. Gervais and his Discord data.  So to issue a subpoena here

20    to Discord seeking data from Mr. Roosen and also Game Server

21    Kings falls far outside the scope of the Anton pillar order

22    that was issued.

23       It wasn't a search of the premise of Mr. Roosen or Game

24    Server Kings, and, therefore --

25          **THE COURT:**  Right.

1          **MR. SMITH:**  Yeah.

2          And, Your Honor, you know, putting aside the -- the aid of

3    whether the Anton Piller order has expired, which it has, the

4    subpoena itself is still vastly overbroad, and it reflects a

5    improper attempt to obtain trade secrets from a direct and

6    primary competitor.

7          As we've argued in the brief, you know, the subpoena

8    sought, for example, the Discord data of a username -- named

9    ryz0r.  Path and Tempest knew full well that ryz0r was not an

10   alias or Discord username of Mr. Roosen.  Yet, they

11   nonetheless put it in the subpoena and not until we --

12   Mr. Roosen intervened and had a declaration from Mr. Ryan

13   Nacker, who is ryz0r, that, you know, that is his username,

14   did Path and Tempest now back off from the fact that they are

15   trying to get data from that particular username.

16         That is just one example of why this subpoena is overbroad

17   on its face.

18         It also -- another example is it has no time limit

19   whatsoever.  If you look -- look at the allegations in the

20   Canadian proceeding, the relevant time period is a mere six

21   months from around June 2022 through January 2023.  Yet, Path

22   and Tempest want Discord data from Mr. Roosen and Game Server

23   Kings from the entire period that's available on -- on

24   Discord.

25         That is way overbroad.  There is no reason why it needs to

1   be broader.  And as we argued in the brief, it's not plausible

2   that Curtis Gervais was communicating allegedly confidential

3   information or defamatory information to Mr. Roosen before

4   June 2022.

5        The reason is, Mr. Gervais was working for Path and

6   Tempest at that time and was actually, you know, hacking into

7   Game Server Kings, working on behalf of Path and Tempest.  And

8   that's why he allegedly was demoted from his position as CEO,

9   so it's just implausible that there was any sort of defamation

10  or exchange of confidential information before January --

11  June 2022.

12       Moreover, with respect to the ending time period in

13  January 2023, that's when the Anton Piller order issued.

14  That's when the injunction against Mr. Gervais issued.  That's

15  when all his devices were seized and searched.

16       There is no plausible allegation that any sort of

17  confidential information was transferred to Mr. Roosen or

18  defamatory statements continued after that point.

19       So if the subpoena issues at all, it needs to be limited

20  to that six-month time period.

21       Also, Your Honor, the subpoena again seeks the data and

22  the information of Mr. Roosen.  That is not what the Canadian

23  proceeding is about.  The Canadian proceeding is about

24  Mr. Gervais --

25            THE COURT:  I think you can hold your fire on that

1    issue.  I want to ask Ms. Bogen about that.

2         **MR. SMITH:**  Yes, Your Honor.

3       So the -- so basically -- you know, at the end of the day,

4    what is going on here with the subpoena is that a direct

5    competitor is trying to get at the trade secret information of

6    Mr. Roosen and Game Server Kings.

7       As we set forth in the declarations, Game Server Kings

8    uses Discord to provide customer service functions, right?  So

9    the way Discord is set up, there is a channel -- sorry -- a

10   server and then when -- in that -- within that server are

11   various channels.  And the way Game Server Kings operates is

12   that it creates a channel for each of its customers, right?

13   And in the -- in that channel, they invite -- and this is

14   private only -- they invite the customers contexts -- contacts

15   to participate.

16      And that customer can raise issues, can -- they can

17   discuss pricing, other matters.  And what the subpoena

18   seeks -- and this was snuck in sort of at the last minute

19   after, you know, Magistrate Judge Kang looked at -- had the

20   hearing on the subpoena.

21      The subpoena seeks the server names and channels that

22   Mr. Roosen and Game Server Kings has joined.  There's

23   absolutely no reason to get that -- that information other

24   than the fact that Path and Tempest want to know the customers

25   that Game Server Kings has and the contacts at those

 1    particular customers, right?

 2        Because if you -- if you think about it, the subpoena at

 3    this point is narrowed to non-content.  So there really is no

 4    reason to get a list of customers and a list of customer

 5    contacts, right?  And even if there -- the subpoena provides

 6    for header information, when Mr. Roosen may have talked to X,

 7    Y and Z, that's not going to establish anything.  It's not

 8    going to show that he conveyed confidential information or

 9    provided allegedly defamatory statements.  Why?  Because the

10    content of that communication is not being provided.

11        So at the end of the day, the subpoena, because it's now

12    limited to non-content, isn't going to provide anything of use

13    or value to the --

14            **THE COURT:**  I'm sure -- I'm sure if the applicant

15    thought they could get content, they would have asked for it.

16    And so --

17            **MR. SMITH:**  And --

18            **THE COURT:**  So what they -- excuse me.

19            **MR. SMITH:**  Yeah.

20            **THE COURT:**  And so my -- my inference is that they're

21    going to do what litigators in discovery do.  They're going to

22    get what they can get out of the subpoena, and then they'll

23    follow up by way of interrogatory or deposition or whatever

24    the appropriate Canadian or American discovery device is to

25    find out more in those instances where what appears to be a

1    relevant contact took place.  I don't know.

2          **MR. SMITH:**  But it's not going to show relative --

3    relevant contacts, Your Honor, because it's going to be a list

4    of people that Mr. Roosen talked to.  And it's not going to be

5    a list of people that Mr. Roosen talked to that may have

6    provided confidential information, right, because it's not

7    going to disclose the content of the communications.  The --

8    Magistrate Judge Kang has already.

9          **THE COURT:**  He says it's Kong [phonetic] by the way.

10          **MR. SMITH:**  Sorry, Kong [phonetic].

11          **THE COURT:**  Yeah.

12          **MR. SMITH:**  And they -- the -- he's already

13    disallowed that.  So at the end of the day, the subpoena

14    serves no useful purpose, except it's going to disclose the

15    confidential information, i.e., the customer list, the

16    customer contacts of Game Server Kings, which then Path and

17    Tempest can use to potentially poach those customers from GSK.

18      Also, you know, as we set forth in the brief, we're not

19    dealing with, you know, an innocuous CEO of a company.  We're

20    dealing with someone that was a black hat --

21          **THE COURT:**  Yeah, I have to say, Mr. Smith.  I

22    wondered if you were going to go there.  The whole sinister

23    cast that hangs over this briefing, really, I don't think took

24    me to the place you were hoping.  The --

25                      (Simultaneous colloquy.)

1    **THE COURT:**  -- tremendous amount of sort of

2    pot-boiler language in the brief that I don't -- it just

3    didn't help me very much.

4        **MR. SMITH:**  Yes, Your Honor.  And it's just -- you

5    know, it's a -- it's a fear of GSK because of the prior

6    history of its -- of the CEO of its primary competitor, so it

7    was in there for that reason.

8        And with that, Your Honor, you know, at a minimum, because

9    all the Canadian court proceedings are stayed, this Court

10   should at a minimum stay execution of the subpoena until

11   further developments occur in the Canadian litigation.

12       You know, again, the Anton Piller order might be deemed

13   void ab initio.  It's unclear whether the case will actually

14   enter into discovery in the first place.

15       **THE COURT:**  Thanks.  Mr. Smith, just so you know, I

16   added a few minutes to your time --

17       **MR. SMITH:**  Thank you.

18       **THE COURT:**  -- which expired a few minutes ago.

19       Ms. Bogen, so let me actually start by just asking you

20   some questions --

21       **MS. BOGEN:**  Absolutely.

22       **THE COURT:**  -- to help frame this.

23       I don't think you need to argue the points I was

24   discussing with Mr. Smith because I think those turn out the

25   way I indicated in my remarks to him.

1    I am curious about this trade secret point.  You address

2  that in your opposition with someone's declaration.  And then,

3  appropriately, the Roosen -- Mr. -- intervenors -- I'll just

4  say intervenors -- responded in their reply, as -- as one

5  would expect.

6    So I don't know what your client's response to the reply

7  is regarding whether this information is, in fact, trade

8  secret.

9            **MS. BOGEN:**  Yes, Your Honor.

10    The -- this information, the customer names, are not trade

11  secrets.  I can tell you that right now.

12    I would like to respond -- I would like to note first for

13  the Court that in order for something to be a trade secret, it

14  does have to meet certain factors under California and federal

15  law.  And one of those factors is that the owner of those

16  trade secrets has to take reasonable measures to keep them out

17  of public view.

18    As we showed the Court, the customer lists are publicly

19  available.  I understand that Mr. Roosen's argument was not

20  all customer lists are publicly available and that there are

21  private chats in which certain customer names are kept out of

22  the public view.

23    This is not accurate.  After speaking to our clients,

24  there are still other websites that can be used to find these

25  customer names, but more importantly --

1      **THE COURT:**  I don't have that in the record before

2   me.  I mean, you seem like a credible lawyer, but I -- but

3   I -- it would be a rare day in which I simply took your word

4   for it, right?

5      I mean, you and I can agree that what you just said is not

6   in the record.

7      **MS. BOGEN:**  Yes, we can agree on that, Your Honor.

8      And I'm happy to file a supplemental declaration.  I

9   understand it's not in the record now, but I can represent to

10   you that, pivoting briefly to a separate point, Mr. Roosen is

11   not the one who determines whether or not these customer names

12   are kept in or out of the public view.  It's the customer

13   themselves, who is interacting with these servers, that sets

14   them up in a way that keeps them out of the public view.

15      So, technically, Mr. Roosen is not an owner and just

16   because certain private chats on GSK servers exist does not

17   automatically mean that the participants in those chats are

18   the same users that are keeping their information private.

19   It's apples and oranges.

20      And we are happy to submit a supplemental briefing or

21   declaration to the extent you need it, but I do understand

22   it's not record, and I apologize for that.

23      **THE COURT:**  No.  No need to be apologize.  It just

24   needs to be clear what's appropriate for me to consider or

25   not.  It's --

```
 1              (Simultaneous colloquy.)
 2         MS. BOGEN:  -- want to point out if Your Honor would
 3    permit, just because Mr. Roosen and GSK say that something is
 4    a trade secret, though, does not automatically make it a trade
 5    secret.  That word is sprinkled throughout both the corrected
 6    motion and the reply.  But Mr. Roosen never goes into any
 7    analysis as to why these names standing alone constitute
 8    customer lists or constitute trade secrets.
 9       And the failure to do that analysis at all should take it
10    out of the Court's consideration completely.
11         THE COURT:  Well, that's a good argument.  I would
12    have to say I think there's a lot of history on the side of
13    customer lists in general being protectable.
14         MS. BOGEN:  I understand that, but even the cases
15    that hold that customer lists are trade secrets go through
16    that analysis.  And I -- our position is that that's a
17    critical piece that's missing here.
18         THE COURT:  Okay.
19       All right.  Let me ask you something else.  So the
20    argument is made that you're going get -- you don't need
21    Mr. Roosen's information that doesn't involve Mr. Gervais, if
22    I'm saying that correctly, because you're going to get
23    Gervais's information.  And that will automatically pick up
24    any communications between Gervais and Roosen's, so why do you
25    need Roosen's information separately?
```

 1          What's the answer for that?

 2          **MS. BOGEN:**  We need separately Mr. Roosen's

 3     information separately because there's no guarantee that

 4     Roosen and Gervais always acted together.  It's entirely

 5     possible that Mr. Roosen acted alone in furtherance of the

 6     conspiracy by himself.

 7          And if you look to the language of the some of the orders

 8     issued by the Canadian Court -- not to say that this case is

 9     only about those orders, but if you do look at them, they make

10     statements stating that there is convincing evidence that

11     Roosen and those acting under his control are engaging in

12     misconduct.  That's the Warren affidavit that was attached to

13     our original application, Tab E, page 110.  So this case is

14     not just about Gervais.

15          It's about people acting under his control as well.  And

16     it doesn't follow that just because they weren't acting

17     entirely together at all times, that Mr. Roosen was out of his

18     control when he was acting alone.

19          It's entirely possible that he was acting in furtherance

20     of the conspiracy on his own without Gervais sitting next to

21     him at all times.

22          **THE COURT:**  I don't know if I'll reach this

23     conclusion, but what if I were to find that the subpoena would

24     or would be likely to call for the production of trade secret

25     information?

1    At the moment, the parties' positions are Mr. Smith's

2  position, which is I should limit access to United States only

3  counsel, which is a level of protection that I have never

4  afforded in any litigation because it would mean excluding

5  even the Canadian lawyers from access, and I just -- I don't

6  think I -- I can't imagine doing that.  But, anyway, that's

7  his position.

8    And your position is essentially there shouldn't be --

9  this case does not call for the issuance of a separate

10  protective order other than the one that was approved by judge

11  Kang.

12    Is that were you want the bidding to stop?

13    You understand what I'm saying?  I'm a baseball

14  arbitration person, okay?

15    I don't -- I don't want to reinvent the wheel for every

16  single decision that comes across my desk.  I just don't -- I

17  just don't have the capacity to do that.  So very often, I

18  just take the parties' two positions, and I pick one.  It

19  might not be the one that I would have chosen if I start from

20  scratch, but it's -- I just don't have the energy to start

21  everything from scratch.

22    So my question is, is there -- do you think that if I

23  thought trade secrets might be in play, there is further work

24  that could be done on the existing protective order to

25  reassure the intervenors?

1    **MS. BOGEN:** Absolutely, Your Honor. Some sort of

2    additional provision in the protective order guaranteeing that

3    the data is not going to be misused for that purpose --

4    I mean, that being said, there would have to be an

5    understanding that if certain customers ultimately leave GSK

6    and go to Path, that could also happen without Path or Tempest

7    having anything to do with it, so that does feel a little bit

8    dangerous. But I think that we could certainly work with the

9    wording to ensure those protections, because at the end of the

10   day, this case isn't about trade secrets.

11   Both parties -- at least subject to this instant motion --

12   think that the other party is engaging in misconduct

13   and poaching their clients, and that's what the whole case is

14   about.

15   So I think it just gets a little sticky when you get into

16   the weeds of it. And it might be something that would be

17   better determined by the Canadian Court once it has all the

18   information, because the fact is we just don't know yet what

19   this discovery is going to show. And that's why we're seeking

20   it, to further the Canadian action.

21   **THE COURT:** How do I put my fingers on the Canadian

22   complaint in the record?

23   **MS. BOGEN:** It is Tab A to the Warren affidavit

24   that's attached to the original application, ECF 1.

25   **THE COURT:** Thanks. Give me just a second. I

```
1    have -- I was working on something totally different right
2    before this hearing so I don't even have the right docket open
3    on my computer.
4              MS. BOGEN:  No problem.
5         I can given you the page number.
6              THE COURT:  No, that's fine.  You said it's attached
7    to the declaration of Tom Warren.
8              MS. BOGEN:  Yes.
9              THE COURT:  At ECF 1-2.
10             MS. BOGEN:  Exactly.
11             THE COURT:  Yeah.  Give me just a second.
12                  (Pause in the proceedings.)
13             THE COURT:  So is the -- is the equivalent to what we
14   would call the complaint, the statement of claim?
15             MS. BOGEN:  Yes.  And in these proceedings, that's
16   not sealed.  I just want to make that clear.
17             THE COURT:  Okay.  All right.
18        Let me see if I had other questions for you.
19             MS. BOGEN:  If I could just add one note on the trade
20   secrets issue, if you'll allow me, Your Honor.
21             THE COURT:  Sure.  Yeah.  Please.
22             MS. BOGEN:  So I understand there's a concern of
23   trade secret theft that's brought by Mr. Roosen and GSK.  But
24   the fact is -- and I know it's not record.  I am representing
25   to you, though, that if Path wanted to access GSK and Roosen's
```

1    customers, they could, so that's not the goal of this

2    subpoena.  The goal is to see how Roosen and Gervais are

3    co-conspiring to harm them.

4        And as the court in Discord have recognized over the past

5    now ten months that this has been pending, the Discord

6    subpoena is fully legitimate.  And it's not being used for any

7    ulterior motive or improper purpose.

8            **THE COURT:**  Yeah, I appreciate -- I appreciate both

9    of your representations about your client's motives and goals

10   and the other side's -- your clients think each other are

11   liars and knaves, so --

12           **MS. BOGEN:**  Yeah.

13           **THE COURT:**  -- I have to take all of the unsupported

14   things with the large grain of salt.

15       Okay.  I think that was it.  You can go ahead and make

16   whatever other additional argument you wanted to make.

17           **MS. BOGEN:**  Give me one moment, Your Honor.

18       I don't want to take up your time discussing things that

19   we've already discussed.

20       I wanted to preliminarily say that, you know, this case

21   has been pending for some time, and the parties did engage in

22   two rounds of meet-and-confer efforts and two rounds of

23   briefing to ensure that the subpoena was lawful in every way,

24   that it didn't violate the Stored Communications Act, that a

25   protective order to protect all relevant parties' rights was

1    in place.  And that is what got us to the issuance of the

2    subpoena on December 26th.  And it should be given some weight

3    that Judge Kang did hold that the subpoena was proper after

4    all of that time.

5        But turning briefly to Mr. Roosen's arguments, I think the

6    court already discussed this so feel free to tell me to move

7    on.  But the case is not just about the Anton Piller order,

8    but also it's not expired.

9        The case was suspended, and the exact language of that

10   judge's order suspending the case says, "all issues and

11   procedures are suspended."  It doesn't say "stayed," so those

12   representations are just without merit.

13       But even if that order was expired, this case is about

14   much more than that.  In the Court's November --

15            THE COURT:  I think you win this point.  I'll just

16   tell you.  I --

17            MS. BOGEN:  Okay.

18            THE COURT:  -- think you win this point.

19            MS. BOGEN:  I'll move on.

20            THE COURT:  We're running down a very narrow alley

21   right now.  *Intel* couldn't be clearer.

22            MS. BOGEN:  Yeah.

23            THE COURT:  The Canadian proceeding is open, even if

24   there's no activity taking place in the case right now.

25            MS. BOGEN:  Okay.

1      **THE COURT:**  And you -- your party is going to have --

2    your clients are going to have standing to present evidence to

3    that tribunal --

4      **MS. BOGEN:**  Um-hmm.

5      **THE COURT:**  -- if they want to at some point.

6      We don't have -- whatever that Second Circuit case was.

7    That's Common [sic] Funds, whatever it is.  That's not the

8    issue here.

9      **MS. BOGEN:**  Um-hmm.

10      **THE COURT:**  And so that's -- I'm not worried about

11    any of those issues.

12      **MS. BOGEN:**  Okay.

13      I think the only issues I wanted to raise with you are

14    Mr. Roosen's arguments in the alternative, so the

15    U.S. Attorney's Eyes Only -- it's our position that it would

16    defeat the entire purpose of 1782, which is collect --

17      **THE COURT:**  I'm not going to --

18                    (Simultaneous colloquy.)

19      **THE COURT:**  I'm not going to issue an attorneys' --

20    I'm not going to issue an order that says you get 1782 but no

21    one in Canada can see it.  That's not what the order says.

22      **MS. BOGEN:**  Okay.  Thank you, Your Honor.

23      And then with respect to the time limitation, our position

24    is that it's arbitrary, but we would ask if the Court is

25    inclined to issue any sort of limitation that it extend them

1   till present day, because as stated in the Warren affidavit,

2   there's evidence suggesting that preservation of data remains

3   an issue.

4       We have no reason to believe that any of the alleged

5   misconduct has stopped by January 9, 2023, just because that's

6   the last allegation in the statement of claim.

7       And then the last request that Mr. Roosen makes is to hold

8   on execution of the subpoena until there's more clarity into

9   the Canadian proceeding.  Path has established that these

10  proceedings are legitimate.

11      And, lastly, any request for sanctions should be

12  completely rejected.  This is a legitimate request for a

13  subpoena.  There's no frivolous --

14          **THE COURT:**  I think sanctions requires a separate

15  motion under our local rules.  And I -- and this is not a

16  sanctions case anyway.  You don't need to address it.

17          **MS. BOGEN:**  Okay.

18      Well, for the reasons outlined, this -- Path and Tempest

19  respectfully request that the Court deny Mr. Roosen and GSK's

20  motion.

21      Thank you, Your Honor.

22          **THE COURT:**  Mr. Smith, you want a couple minutes to

23  respond?  It's your burden.

24          **MR. SMITH:**  Yes, Your Honor.

25      With respect to the time limitation which opposing counsel

1    just spoke to, she said, there was -- you know, that -- they

2    have -- believed that maybe that the conveyance of

3    confidential information or defamatory statements are

4    continuing today.  That's pure speculation.  There is

5    absolutely no evidence of that in the record.  All that there

6    is is what's in the -- the statement of claim in the Canadian

7    case.

8         Again, the last --

9         **THE COURT:**  I think she's bargaining with you in real

10   time, and she's using me as a foil to do it.

11        She -- what she's saying to you is, if I can have until

12   the present day, I'll give you the bottom end of the

13   timelines.  I mean, that's not actually what she said.  But

14   it's net effect of what she said.  You can decide you don't

15   want the deal.  But that's what she was doing.

16        **MR. SMITH:**  Right, and then -- we're happy to meet

17   and confer with her if that's what Your Honor wants us to do.

18        And to make it clear, when Counsel is talking about the

19   parties meeting and conferring, that was only Discord with

20   Path and Tempest.  Mr. Roosen and Game Server Kings were not

21   part of that proceeding whatsoever --

22        **THE COURT:**  I didn't say anything to Ms. Bogen, but

23   the fact that Judge Kang made whatever findings he made

24   doesn't have -- doesn't have much bearing on today, because --

25   I beg your pardon -- you were not a party to that proceeding,

1    so by definition, your concerns were not considered, so

2    whatever Judge Kang said it was not addressed to your

3    concerns.  So don't worry about that.

4         **MR. SMITH:**  Thank you, Your Honor.

5         Regarding the issue of the trade secrets, you know, the

6    argument that's being made that we didn't adequately allege

7    trade secrets or establish trade secrets, I don't believe that

8    was made in the opposition.

9         But as Your Honor notes, customer lists, customer

10   contacts, that's quintessential trade secret information.  GSK

11   does meet all the requirements for trade secret protection.

12   In particular, when it uses Discord, there's the option to

13   make the channel and the server public.  But there's also to

14   make it private invite only, and that's how Game Server Kings

15   uses it.  They only allow private invite only -- they only

16   send private-invite-only invitations to each of its customers

17   to then log on to the website, right?

18        So, you know, again, it's quintessential trade secret

19   information.  And, again, you know, this Canadian litigation,

20   I want to emphasize that it is targeting Mr. Gervais.  Right?

21        Mr. Gervais --

22        **THE COURT:**  Well, I just pulled up that statement of

23   claim, and Mr. Roosen's right in there.

24        **MR. SMITH:**  Mr. Roosen is right -- is mentioned in

25   the statement of claim as allegedly the recipient of the

1   confidential information.  But he is not a defendant in the

2   Canadian proceeding.

3          **THE COURT:**  Would he submit to the jurisdiction of

4   the Canadian courts?

5          **MR. SMITH:**  Sorry.  What was your question?

6          **THE COURT:**  Would he -- the argument is made that the

7   reason he's not a defendant is that he's not subject to the

8   jurisdiction of the Canadian courts.  I'm just curious to know

9   if he wants to call that bluff, would he submit for the

10  jurisdiction of the Canadian courts?

11         **MR. SMITH:**  I'm not prepared to ask -- answer that

12  question.  I would have to speak with him, but they -- you

13  know, I'm not sure there was even an attempt by Path and

14  Tempest to bring him into the Canadian courts or if -- even if

15  that was asked.

16      You know, Game Server Kings is a U.S. based company.  I

17  think it's telling that Path and Tempest have not tried to sue

18  Game Server Kings here in the United States despite this

19  alleged conspiracy in the Canadian proceeding, Your Honor.

20      And, you know, I understand your point about the *Intel*

21  case.  But I also want to make clear that another one of the

22  factors -- isn't just -- you know, is the information for use

23  in the Canadian proceeding.

24      But, again, are there -- is there -- are there -- are Path

25  and Tempest circumventing the limits on discovery imposed by

1    the Canadian court?  We heard Ms. -- opposing counsel say that

2    everything was suspended.  That seems to be semantics.

3    Whether suspension equals a stay.  To me, that's one in the

4    same thing.  When you suspend all proceedings, that means

5    you're staying the proceedings.

6        The discovery is not going on.  There are serious issues

7    that need to be resolved in the Canadian case.  Again, the

8    case is getting -- to my understanding is being transferred

9    out of Perth, Canada, to a courthouse in Toronto.  There's

10   going to be a new judge.  There's still the pending motion to

11   set aside the Anton Piller order.

12       All that needs to be resolved before this subpoena should

13   issue.  And there's ample precedent -- and we've cited a case

14   to this effect in our brief -- that the Court has the power to

15   stay issuance of the proceedings -- or of the -- of the

16   subpoena until there are further developments in the foreign

17   proceeding; here, you know, whether discovery is even going to

18   be allowed to go forward.  And then if so, to what extent.

19       The Court can, you know, exercise its discretion in

20   deference to the Canadian court proceedings, which, again, are

21   suspended, which, to my knowledge, means that they're stayed.

22           **THE COURT:**  Very good.  I'm going to wrap it up.

23       Let me ask -- I do think that the record could be a little

24   better on this trade secret question.  I don't remember as I

25   sit here whether there's -- you know, Ms. Bogen argued that

1    the intervenors did not do a good enough job in establishing

2    legally that these categories of information are trade

3    secrets.  I don't have an opinion about that, 'cause I just

4    don't remember the briefing off the top of my head.

5        The part that I think I might benefit from a little more

6    information about is Ms. Bogen says, hey, it's not in the

7    record, but, Judge, I think I can prove to you that,

8    notwithstanding the reply -- I want to say it was Roosen

9    declaration -- we can show that none of this stuff is trade

10   secret.  We can show it as a factual matter.

11       But if I gave Ms. Bogen that opportunity, obviously,

12   Mr. Smith, I'd get -- let you have the last word, so she'd

13   file a very short surreply, and you'd file a sur-surreply.

14       And, Ms. Bogen, if you wanted to include in there some

15   additional legal authorities that you thought would be helpful

16   on the questions of whether these things are trade secrets at

17   all or whether intervenors had met their burden, you could.

18   And -- and even though -- and even though Mr. Smith would have

19   the last word, I think, Mr. Smith, I would let you cure

20   whatever deficiencies Ms. Bogen is accusing you of in your

21   legal support for whether these things are trade secrets.

22       I would just -- even though it wouldn't be coming in

23   simultaneously, I would like to hear a little more from both

24   of you on that question if you'd like to provide it.

25       Eight pages, I think, sounds about the right amount.

```
 1          Ms. Bogen, how does that sound to you?

 2          MS. BOGEN:  Eight pages total or joint briefing four

 3     and four?

 4          THE COURT:  No, no.  Total, but double -- you know,

 5     double-spaced.

 6          MS. BOGEN:  Yes.  That's fine.  Your Honor.

 7          THE COURT:  And then, you know, you can attach

 8     whatever declaration you need to to your brief to establish as

 9     a factual matter what you said at the hearing today, which is

10     that in addition to the website cited in your materials, there

11     are other ways in which your client could get a hold of this

12     information if they wanted it.

13          And then, Mr. Smith, you could have eight pages to reply.

14          MR. SMITH:  Appreciate that, Your Honor.  We're happy

15     to brief.

16          I'll just point out that if this information is all truly

17     public, it just further underscores that there's no need to

18     subpoena the information, which is an argument we made in --

19          THE COURT:  Yeah, I recall that argument from your

20     brief.  I got it.

21          Ms. Bogen, when can you have that brief in, do you think?

22          MS. BOGEN:  I defer to the Court on whatever works

23     best for it, but I don't think we should have a problem

24     submitting it within the next 14 days.

25          Is that too long?
```

1            **THE COURT:**  It's not too long for me.  You're the one

2    who wants the information, so -- I mean, that's why I started

3    with you.

4            **MS. BOGEN:**  Fourteen days.

5            **THE COURT:**  You want the train to go faster, and

6    Mr. Smith wants it to go slower, so 14 days is fine.

7        Mr. Smith, you want 14 days to respond?

8            **MR. SMITH:**  Yes, Your Honor.  That'd be sufficient.

9            **THE COURT:**  Okay.  So then we're looking at April 11

10   and April 25.  I probably won't ask for a further hearing, so

11   unless I order otherwise, the motion will then go under

12   submission at that point.

13           **MS. BOGEN:**  Okay.

14           **THE COURT:**  Thank you both for your arguments today.

15           **MS. BOGEN:**  Thank you, Your Honor.

16           **MR. SMITH:**  Thank you, Your Honor.

17           **THE CLERK:**  Thank you, Judge.

18          (Proceedings were concluded at 2:43 P.M.)

19                          --o0o--

20

21

22

23

24

25

**CERTIFICATE OF REPORTER**

     I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____

Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

Thursday, April 25, 2024