1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6
7   IN RE EX PARTE APPLICATION OF          Case No. 23-mc-80148-JST
    PATH NETWORK, INC.; AND TEMPEST
8   HOSTING, LLC,
                                           **ORDER GRANTING MOTION TO**
9                    Plaintiff,            **INTERVENE AND**
                                           **ORDER DENYING MOTION TO**
10          v.                             **QUASH SUBPOENA; GRANTING IN**
                                           **PART AND DENYING IN PART**
11  DISCORD INC.,                          **MOTION TO MODIFY SUBPOENA;**
                                           **AND DENYING MOTION TO STAY**
12                   Defendant.            **EXECUTION OF SUBPOENA**

13                                         Re: ECF No. 31
14
15          Before the Court is a motion to intervene and motion to quash, modify, or stay execution
16  of subpoena filed by Rene Roosen and Game Server Kings ("GSK").[1]  ECF No. 31.  The Court
17  will grant the motion to intervene, deny the motion to quash the subpoena, grant in part and deny
18  in part the motion to modify the subpoena, and deny the motion to stay execution.
19  **I.      BACKGROUND**
20          Because the facts underlying this case are well-known to the parties and are detailed in
21  Judge Kang's prior order, ECF No. 23 at 1–6, the Court only summarizes them here.
22          Path Network, Inc. and Tempest Hosting, LLC (collectively "Path") applied for the court's
23  assistance obtaining discovery from Discord, Inc., for use in a Canadian legal action against
24  former Tempest CEO Curtis Gervais and his company, Packet Rabbit, Inc.  ECF No. 1-1 ¶ 1.  In
25  the Canadian proceeding, Path alleges that Gervais and Packet Rabbit have disclosed confidential
26  information about and defamed Path, ECF No. 1-3 at 29–39, and that Gervais acted in concert
27  ──────────────
28  [1] In this order, the Court generally will refer to the proposed intervenors collectively as "Roosen"
    for the sake of simplicity.

United States District Court
Northern District of California

with Roosen to convince customers to terminate agreements with Path and instead patronize

Roosen's company, GSK, ECF No. 1-2 at 11 n.1. Neither Roosen nor GSK is a defendant in the

Canadian proceeding. *See* ECF No. 1-1 ¶ 1.

On November 22, 2023, Judge Kang granted in part Path's application for discovery

assistance and ordered the parties to make certain revisions to the proposed subpoena to Discord.

ECF No. 23. The parties revised the subpoena accordingly, and Judge Kang issued it on

December 26, 2023. ECF No. 29. The subpoena commands Discord to produce the following

information:

> 1) All account data, not including the contents of electronic communications, associated with Curtis Gervais, including any aliases, usernames or Discord tags he used, such as cmg#82391;
>
> 2) All account data, not including the contents of electronic communications, associated with Rene Roosen, including any aliases, usernames or Discord tags he used, such as Renual#7394;
>
> 3) All account data, not including the contents of electronic communications, associated with Archetype#8484;
>
> 4) Roosen, Gervais and Archetype#8484's login history for any and all Discord accounts, including but not limited to cmg#8239, Renual#7394, and Archetype#8484; and
>
> 5) Any and all headers of messaging data associated with any of Roosen, Gervais, or Archetype#8484's Discord account(s) including cmg#8239, Renual#7394 and Archetype#8484.

ECF No. 29 at 9.

On January 22, 2024, Roosen filed a combined motion to intervene and motion to quash,

modify, or stay execution of the subpoena. ECF No. 31. The case was then reassigned to this

Court on February 1, 2024. ECF No. 35. Path filed an opposition to Roosen's motion on

February 5, 2024. ECF No. 37. Roosen replied on February 12, 2024. ECF No. 38. The Court

heard oral argument on the motion on March 28, 2024, and ordered supplemental briefing on the

trade secrets issue. *See* ECF No. 39. Path filed its supplemental brief on April 11, 2024, ECF No.

40, and Roosen filed his supplemental brief on April 25, 2024, ECF No. 43.

## II.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1782. *CPC Pat. Techs.*

United States District Court
Northern District of California

1 | *PTY Ltd. v. Apple, Inc.*, No. 21-MC-80091-JST, 2023 WL 3579314, at *3 (N.D. Cal. Jan. 3, 2023).

2 | **III.    LEGAL STANDARD**

3 |     **A.    Motion to Intervene**

4 |       Federal Rule of Civil Procedure 24(a)(2) provides for intervention as a matter of right

5 | where the potential intervenor "claims an interest relating to the property or transaction that is the

6 | subject of the action and is so situated that disposing of the action may as a practical matter impair

7 | or impede the movant's ability to protect its interest, unless existing parties adequately represent

8 | that interest."  The requirements of intervention as of right under Rule 24(a)(2) are as follows:

> (1) [T]he [applicant's] motion must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

13 | *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (alterations in original) (9th

14 | Cir. 2011) (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006)).

15 | Proposed intervenors must satisfy all four criteria.  *Perry v. Proposition 8 Official Proponents*,

16 | 587 F.3d 947, 950 (9th Cir. 2002).  In evaluating motions to intervene, "courts are guided

17 | primarily by practicable and equitable considerations, and the requirements for intervention are

18 | broadly interpreted in favor of intervention."  *United States v. Alisal Water Corp.*, 370 F.3d 915,

19 | 919 (9th Cir. 2004).

20 |     **B.    Motion to Quash, Modify, or Stay Execution of Subpoena**

21 |       Roosen moves to quash Path's subpoena pursuant to Section 1782.  *See de Leon v. Clorox*

22 | *Co.*, 2020 WL 4584204, at *4 (N.D. Cal. Aug. 10, 2020) (explaining that "the ultimate targets of a

23 | § 1782 discovery order issued to third parties have standing to challenge the district court's power

24 | to issue a subpoena under the terms of an authorizing statute" (internal quotation marks and

25 | citation omitted)).  "As in other civil contexts, the movant bears the burden of persuading the

26 | Court to quash subpoenas issued pursuant to § 1782."  *In re King.com Ltd.*, WL 4364286, at *7

27 | (N.D. Cal. Aug. 16, 2016) (citation omitted). Section 1782 permits district courts to order

28 | discovery for use in foreign proceedings pursuant to a request where:

*United States District Court*
*Northern District of California*

> (1) the person from whom the discovery is sought "resides or is found" in the district of the district court where the application is made; (2) the discovery is "for use in a proceeding in a foreign or international tribunal"; and (3) the application is made by a foreign or international tribunal or "any interested person."

*Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (citations omitted).  Discovery under Section 1782 is conducted "in accordance with the Federal Rules of Civil Procedure."  28 U.S.C. § 1782(a).

"The courts have stressed that, even if [the absolute requirements of Section 1782] are met, a district court still retains the discretion to deny a request."  *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.,* 634 F.3d 557, 563 (9th Cir. 2011); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) (noting that "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so").  In making this discretionary determination, courts consider:

> (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."

*In re Vahabzadeh*, 2020 WL 7227205 (N.D. Cal. Dec. 8, 2020) (quoting *Intel*, 542 U.S. at 264–65).  The Court is also guided by Section 1782's "twin aims of providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts."  *Intel*, 542 U.S. at 252 (citation omitted).

## IV.  DISCUSSION

### A.  Motion to Intervene

Roosen argues that he may intervene in this case as of right because the issued subpoena orders the production of information from his Discord account.  ECF No. 31 at 21–22; *see* ECF No. 29 at 9.  Path does not oppose the motion to intervene.  ECF No. 37 at 6 n.4.  Roosen's motion

1    is timely, and he has a significant interest in these proceedings that other parties will not

2    sufficiently protect.  *See Freedom from Religion Found., Inc.*, 644 F.3d at 841.  He therefore

3    satisfies the Rule 24(a)(2) requirements, and the Court grants the motion.

4             **B.       Motion to Quash, Modify, or Stay Execution of Subpoena**

5             Roosen argues that the subpoena in this matter should be quashed, modified, or stayed

6    because it fails to satisfy the requirements of Section 1782 and several of the discretionary *Intel*

7    factors.

8                      **1.       Statutory Requirements**

9             Roosen argues that the subpoena fails to meet Section 1782's requirement that the

10   discovery be "for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a);

11   *see* ECF No. 31 at 23–26.  He focuses first on a pre-litigation search warrant, known as an "Anton

12   Piller" order, that the Canadian court issued in the Canadian case to prevent the destruction of

13   evidence.  *See* ECF Nos. 1-2 at 82–94, 23 at 3.  He characterizes that order as "the sole basis for

14   the subpoena" here.  ECF No. 31 at 23.  Roosen argues that the Court should quash the subpoena

15   in this matter because the Anton Piller order has apparently expired and because the subpoena

16   "exceeds the scope" of the Anton Piller order.  ECF No. 31 at 23–25.

17            The purpose of Section 1782 is to provide discovery for use in foreign proceedings that

18   otherwise would not be available in those proceedings.  *See Intel*, 542 U.S. at 264–65.  Roosen

19   cites no authority for the proposition that discovery under Section 1782 must be within the scope

20   of a valid domestic discovery order in the foreign proceeding.  His repeated assertion that this

21   subpoena amounts to Path's attempt to execute an invalid warrant is unpersuasive.  *See* ECF Nos.

22   31 at 23; 38 at 7.  Path has demonstrated that it seeks discovery for use in its pending action

23   against Gervais and Packet Rabbit.  *See* ECF No. 23 at 9–10; *see also* ECF No. 37 at 15–16.

24   Neither the expiration of the Anton Piller order nor its different scope relative to the subpoena in

25   this case undermines that showing.

26            Roosen next argues that the requested discovery is not "for use in" the Canadian

27   proceeding because that proceeding was instituted with "improper ulterior motives."  ECF No. 31

28   at 25.  He asserts that "the subpoena is nothing more than an improper backdoor attempt by Path

United States District Court
Northern District of California

and Tempest—who are the direct and only significant competitors to Game Server Kings—to obtain trade secret and other confidential information . . . ." ECF No. 31 at 9. Roosen spends a significant portion of his filings expressing concern about nature of the Canadian proceedings, which he describes as "the secretive, mysterious, and possibly illegitimate Canadian lawsuit." ECF No. 31 at 15. He describes the proceedings as being "shielded in a mysterious cloak of secrecy" because they are sealed. ECF No. 31 at 9. He also makes a variety of negative comments about Path's Canadian attorney. *Id.* at 16-17.

These arguments pertain more clearly to the "nature and character of the foreign proceeding," which can be a discretionary consideration for the Court. *See Intel*, 542 U.S. at 264; *see also, e.g.*, *In re Application of Shahrokh Mireskandari*, 2013 WL 12085135, at *1 (C.D. Cal. Jan. 7, 2013). The Court is not persuaded, however, that Roosen's concerns about "the suspicious circumstances of the secretive, mysterious, and perhaps wholly illegitimate Canadian proceedings and equally illegitimate Anton Piller order" are more than speculation and surmise. ECF No. 31 at 9. This Court takes into account that the Canadian Court necessarily found a strong prima facie case as a prerequisite to issuing the Anton Piller order. *See* ECF No. 1-2 at 3; *id.* at 110. Roosen questions the legitimacy of that order because "[o]n information and belief, the judge who issued the Anton Piller order has recused himself from the case in the face of a motion seeking his recusal for bias," but even assuming that such a motion was made and Judge Abrams recused himself, there is no evidence that the order was vacated or that its validity has been called into question.[2] ECF No. 31 at 17.

Roosen expresses a similar concern about the scope of the subpoena in this matter. He argues that the fact that Roosen and GSK are named in the subpoena, despite not being defendants in the Canadian action, "strongly indicates that Path and Tempest are not seeking Mr. Roosen's and GSK's Discord data for use in the Canadian litigation—but rather to perhaps compete unfairly against GSK, including by poaching its clients." ECF No. 31 at 25. He argues that Path and

---

[2] While Roosen asserted on January 22, 2024 that "Gervais and Packet Rabbit have a pending motion to set aside the Anton Piller order as improperly granted," ECF No. 31 at 17, there is no indication ten months later that such a motion—if it was ever filed—was granted.

1    Tempest "likely know how GSK uses Discord to provide customer service to its customers and

2    names its Discord servers and channels accordingly." *Id.*

3           Path responds that the demand for Roosen's individual account information is "highly

4    relevant" to the Canadian action, which "accuses Gervais and Roosen of conspiring together" to

5    harm Path.  ECF No. 37 at 16.  It describes Roosen and GSK as "critical actors in the defamatory

6    scheme alleged" in the Canadian proceedings.  *Id.*  Although Roosen is not a defendant in the case,

7    Path asserts that it nonetheless needs evidence of instances where Roosen may have "acted alone"

8    without Gervais, lest the records "only capture a portion of the relevant evidence."  ECF No. 37 at

9    17.

10          Roosen's argument that his individual Discord records are not "for use" in the Canadian

11   proceeding because he is not a defendant in that action misses the point.  Although Path did not

12   name Roosen as a defendant because he is not a Canadian resident, the action is predicated on the

13   theory that Roosen conspired with Gervais to commit the alleged acts.  *See, e.g.*, ECF No. 37 at

14   11, 19.  The Canadian complaint discusses Roosen by name and alleges a conspiracy between him

15   and Gervais.  As Path explains, evidence of Roosen's independent conduct may illuminate or

16   corroborate how its allegedly stolen information was disseminated and used.  Because the

17   production of only Gervais's Discord records would not include Roosen's interactions to which

18   Gervais was not a party, Path has established a need to request Roosen's individual records for use

19   in the Canadian action.  *See* ECF No. 31 at 30.  The Court therefore denies Roosen's motion to

20   modify the subpoena with respect to the request to remove the demand for Roosen's individual

21   Discord records.

22                        **2.    Discretionary *Intel* Factors**

23          Roosen next argues that three of the discretionary *Intel* factors counsel in favor of quashing

24   the subpoena.

25                        **a.    Participation in the Foreign Proceeding**

26          First, Roosen contends that Path has failed to establish that the discovery it seeks is

27   unavailable through the Canadian proceedings.  ECF No. 23 at 26–27; *see Intel*, 542 U.S. at 264

28   ("[W]hen the person from whom discovery is sought is a participant in the foreign

United States District Court
Northern District of California

1    proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when

2    evidence is sought from a nonparticipant in the matter arising abroad.").  Although Discord is not

3    a participant in the foreign proceeding, Roosen asserts that Path should be required to obtain

4    Gervais's records from Gervais himself rather than Discord.  ECF No. 31 at 26–27.  Roosen does

5    not explain why he believes that he has standing to assert Gervais's rights in this matter.  The

6    Court is satisfied that this factor weighs in favor of granting discovery assistance because Discord

7    is not a participant in the foreign proceeding.  *See id.*; ECF No. 23 at 11–12.

8                          **b.      Attempt to Circumvent Foreign Restrictions**

9            Next, Roosen asserts that the Anton Piller order in the Canadian case and the subpoena

10    issued in this matter are improper attempts to skirt Canada's discovery restrictions.  ECF No. 31 at

11    27–28; *see Intel*, 542 U.S. at 265 ("[A] district court could consider whether the § 1782(a) request

12    conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a

13    foreign country or the United States.").  This argument is premised on the false equivalency

14    Roosen draws between the Anton Piller order and the subpoena issued to Discord, as well as the

15    speculative aspersions he casts on the legitimacy of the Canadian proceedings.  For the reasons set

16    forth above, the Court is not persuaded by these criticisms, and finds that this factor does not

17    weigh in favor of quashing the subpoena.

18                          **c.      Undue Intrusion or Burden**

19            Finally, Roosen argues that the subpoena is unduly intrusive and overbroad.  ECF No. 31

20    at 28–29; *see Intel*, 542 U.S. at 265 (noting that "unduly intrusive or burdensome requests may be

21    rejected or trimmed").  This argument partly overlaps with the contention that Roosen's individual

22    communications are outside the scope of the Canadian proceeding because he is not a party, *see*

23    ECF No. 31 at 30, which the Court has already considered and rejected.

24            Beyond that contention, Roosen asserts that complying with the subpoena would require

25    GSK to disclose customer lists that constitute trade secrets or, at a minimum, confidential

26    information.  *E.g.*, ECF Nos. 31 at 13, 29–30; 43 at 4–8.

27            Although Section 1782 "imposes no substantive limitation on the discovery to be had,"

28    *Intel*, 542 U.S. at 260 n.11, the Supreme Court has noted that courts may employ "'the controls on

United States District Court
Northern District of California

discovery'" in the Federal Rules of Civil Procedure "to prevent improper discovery of trade secrets and other confidential information," *In re Takada*, No. 22-MC-80221-VKD, 2023 WL 1452080, at *5 n.5 (N.D. Cal. Feb. 1, 2023) (quoting *Intel*, 542 U.S. at 266); *see also Baxalta Inc. v. Genentech*, Inc., No. 16-MC-80087-EDL, 2016 WL 11529803, at *8–9 (N.D. Cal. Aug. 9, 2016) (applying Federal Rules of Civil Procedure to discovery requests under Section 1782 that encompassed confidential information and trade secrets); *Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 93 (3d Cir. 2010) (reviewing district court's order quashing subpoena that required production of confidential information under Rule 45).

Under Rule 45 of the Federal Rules of Civil Procedure, a court may "quash or modify the subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). Even if a subpoena seeks trade secrets or confidential information, however, the court may choose to order production if the serving party "shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship." Fed. R. Civ. P. 45(d)(3)(C).

A "trade secret" consists of:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). Federal law additionally requires that, for information to constitute a trade secret, that information not be "readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3)(B).

Path argues that GSK's customer lists are not protectable as trade secrets because they are publicly available. It describes how, within the server hosting and leasing industry, customers' IP addresses typically become public when customers monetize the server space that they rent from a host like GSK. ECF No. 40 at 5–6. Public websites such as bgp.tools and battlemetrics.com

United States District Court
Northern District of California

9

"contain information sufficient to identify GSK's customers." *Id.* at 6.  In addition, "the identity of [GSK's customers] can be found by inputting the IP addresses listed on GSK's bgp.tools page into another public website to find the customer's domain name or other identification or contact nformation." *Id.*  According to Path, it is "exceedingly rare that the customers in this space configure their servers to be private," which, though possible, would require "affirmative steps" such as "configuring its software outside of public view." *Id.*  This is because "the customer can only keep its identity private by disconnecting itself from the internet, which eliminates the customer's ability to engage with its own customers or potential customers, thus prohibiting them from monetizing the server." *Id.* at 7.  For these reasons, Path argues that GSK's customer identities are publicly available and not a trade secret.  *Id.*

Roosen disputes that all its customers' identities are publicly available.  He argues that the process by which Path obtained GSK's customer lists is too complicated for the Court to consider the information "generally known" or "readily ascertainable."  ECF No. 43 at 4, 7.  In addition, Roosen distinguishes between its general customer base, whose information might be available as described above, and GSK's elite tier of "enterprise clients," whose information is not available. Enterprise clients, GSK's "most high-valued customers," receive "personalized and tailored support service[s]" administered through a "private-only Discord server."  ECF No. 43 at 6; *see* ECF No. 43-1 ¶¶ 3–8 (describing enterprise clients).  The identifies of enterprise clients are not visible on public websites such as bgp.tools or battlemetrics.com. *Id.* at 8.  That is because "GSK's enterprise clients only rent bare metal servers from GSK— an activity that cannot be monitored by websites such as bgp.tools." *Id.* at 9.  Roosen specifies that "the independent value of GSK's customer lists is that they consist of GSK's non-public enterprise customers, for whom GSK devotes extensive time and effort in tailoring its services for each specific enterprise client needs through Discord." *Id.* at 8.

"Customer information such as sales history and customer needs and preferences constitute trade secrets." *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993)); *see also Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 76 (N.D. Cal. 2020) (discussing when "client

1    information may qualify as a trade secret").  "[W]here the employer has expended time and effort

2    identifying customers with particular needs or characteristics, courts will prohibit former

3    employees from using this information to capture a share of the market."  *Pyro Spectaculars N.,*

4    *Inc. v. Souza*, 861 F. Supp. 2d 1079, 1088 (E.D. Cal. 2012) (quoting *Morlife, Inc. v. Perry*, 56 Cal.

5    App. 4th 1514, 1521–22 (1997)).  "'Customer lists containing merely public information that can

6    easily be compiled by third parties will not be protected as trade secrets; however, where the party

7    compiling the customer lists . . . expends a great deal of time, effort and expense in developing the

8    lists and treats the lists as confidential in its business, the lists may be entitled to trade secret

9    protection . . . .'"  *Id.* at 1089 (quoting *Fireworks Spectacular, Inc. v. Premier Pyrotechnics, Inc.*,

10    147 F. Supp. 2d 1057, 1066 (D. Kansas 2001)).  Based on a review of the foregoing, the Court

11    concludes that the identities of GSK's enterprise clients are a trade secret, but the identities of its

12    other clients are not.

13           In addition to enterprise clients' identities not being publicly known, GSK has taken

14    affirmative steps to maintain the confidentiality of that information.  GSK maintains a private

15    Discord server that can only be accessed by invitation.  ECF No. 43-1 ¶ 5.  GSK "implements

16    certain procedures to verify the individual before they are able to join the private Discord server."

17    *Id.*  The private Discord server is also designed to prevent enterprise clients from interacting with

18    one another or anyone except for Roosen and their respective customer service contact.  *Id.* ¶ 6.

19    Roosen has sufficiently shown that enterprise clients' identities are not readily ascertainable by

20    competitors and that the company makes efforts to preserve their secrecy.  *See Wyndham Resort*

21    *Dev. Corp. v. Bingham*, No. 2:10-CV-01556-GEBKJM, 2010 WL 2740158, at *5 (E.D. Cal. July

22    9, 2010) (granting injunction because, among other things, "Plaintiffs have shown that they took

23    measures reasonable under the circumstances to maintain the secrecy of their customer lists").

24    Accordingly, the Court is persuaded that the identities of GSK's enterprise clients are protectable

25    as trade secrets.  *See, e.g.*, *Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1088 (E.D.

26    Cal. 2012) (noting that "a customer list can be found to have economic value because its

27    disclosure would allow a competitor to direct its sales efforts to those customers who have already

28    shown a willingness to use a unique type of service or product" (quoting *Morlife, Inc. v. Perry*, 56

United States District Court
Northern District of California

1    Cal. App. 4th 1514, 1522 (1997)).

2          Although the identities of enterprise customer qualify as a trade secret, the Court can still

3    order production if Path "shows a substantial need for the testimony or material that cannot be

4    otherwise met without undue hardship." Fed. R. Civ. P. 45(d)(3)(C).  Path seeks Roosen's

5    Discord account information to investigate whether patterns in his contacts corroborate the theory

6    that Roosen and Gervais disseminated Path's confidential information.  *See, e.g.*, ECF No. 37 at

7    16.  It alleges (and Roosen and GSK do not deny) that GSK uses private Discord chat groups to

8    communicate with its customers.  Because exclusion of Roosen or GSK's Discord information

9    from the subpoena would mean excluding such communications, without any meaningful

10   alternative way of obtaining them, the Court finds that Path has shown substantial need.

11   Accordingly, the Court will exercise its discretion to require production of Roosen's account

12   information as described in the subpoena.  *See* Fed. R. Civ. P. 45(d)(3)(C); *Bogard Constr., Inc. v.*

13   *Oil Price Info. Serv., LLC*, 604 F. Supp. 3d 895, 899 (N.D. Cal. 2022) (ordering production or

14   disputed material where subpoenaing party demonstrated substantial need and no alternative

15   means of obtaining the information).

16          Roosen also contends that the Court should limit the subpoena to the timeframe of June 24,

17   2022 to January 9, 2023, reflecting the approximate start and end dates of the conduct alleged in

18   the complaint.  ECF No. 31 at 29–30.  Path respond that it seeks records from outside that

19   timeframe because it suspects that the conduct might have begun sooner than or continued after

20   those dates.  ECF No. 37 at 18–19.  The Court finds that the lack of a timeframe in the current

21   subpoena is reasonable in the context of Path's discovery needs and denies the request for this

22   modification.  *See Chevron Corp. v. Donziger*, 2013 WL 4536808, at *11 (N.D. Cal. Aug. 22,

23   2013) (denying request to narrow timeframe of subpoena because "there is nothing inherently

24   overbroad about a discovery request that spans multiple years").

25          Roosen further contends that the Discord username "ryz0r," which belongs to GSK

26   employee Ryan Nacker, is improperly included in the subpoena because no allegations in the

27   Canadian action concern Nacker and because his records would reveal information about GSK's

28   customer support operations.  ECF No. 31 at 30; see ECF No. 29 at 10 (subpoena requiring

United States District Court
Northern District of California

12

1     production related to "ryzor" or "ryzOr").  Path does not oppose the removal of Nacker's

2     username from the subpoena.  ECF No. 37 at 18 n.10.  Roosen's request to modify the subpoena

3     in this way is granted.

4           Finally, Roosen argues that if the Court does not quash the subpoena, it should order that

5     any records produced are for "U.S. outside counsel's eyes only" due to the lack of transparency

6     that he perceives regarding the Canadian proceedings.  ECF No. 31 at 31.  This restriction would

7     defeat the purpose of the subpoena by prohibiting the use of the records in the Canadian action, in

8     which Path and Tempest are represented by Canadian counsel.  *See* ECF No. 37 at 22–23.  The

9     Court will not require such a designation.

10                             **CONCLUSION**

11           For the foregoing reasons, Roosen's motion to intervene is granted.  The motion to quash

12     the subpoena is denied.  The motion to modify the subpoena is granted in part as to the request

13     that the username "ryzor" or "ryzOr" be deleted from the subpoena.  *See* ECF No. 29 at 9–10.  All

14     other modification requests are denied.  The motion to stay execution of the subpoena is denied.

15           **IT IS SO ORDERED.**

16     Dated:  November 18, 2024



                                  JON S. TIGAR
                           United States District Judge

*United States District Court*
*Northern District of California*